**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re: | ) ) Chapter 11 ) |
| CAESARS ENTERTAINMENT OPERATING COMPANY, INC., et al.,[1] | ) ) Case No. 15-01145 (ABG) ) ) |
| Debtors. | ) (Joint Administration Requested) ) |

**DEBTORS' APPLICATION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO EMPLOY AND RETAIN PRIME CLERK LLC AS NOTICE, CLAIMS, AND SOLICITATION AGENT, EFFECTIVE NUNC PRO TUNC TO THE PETITION DATE, AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this application (this "Application") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Retention Order"), (I) appointing Prime Clerk LLC ("Prime Clerk") as notice, claims, and solicitation agent (the "Notice, Claims, and Solicitation Agent") in the Debtors' chapter 11 cases, effective nunc pro tunc to the Petition Date (defined below), pursuant to that certain services agreement (the "Services Agreement"), by and between the Debtors and Prime Clerk, a copy of which is attached hereto as **Exhibit B**, (II) authorizing the Debtors to prepare a consolidated list of creditors in the electronic format or formats currently maintained in the ordinary course of business (the "Mailing Matrix") in lieu of submitting a formatted mailing matrix or any list of parties in interest to the Clerk (defined below), (III) authorizing the Debtors

---

[1] The last four digits of Caesars Entertainment Operating Company, Inc.'s tax identification number are 1623. Due to the large number of Debtors in these chapter 11 cases, for which the Debtors have requested joint administration, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims, noticing, and solicitation agent at https://cases.primeclerk.com/CEOC.

to mail, with the assistance of Prime Clerk, the initial notices and all subsequent notices to all creditors listed in the Mailing Matrix, (IV) authorizing the Debtors to file a consolidated list of the Debtors' 50 largest unsecured creditors, and (V) granting related relief.  In support of the Application, the Debtors submit the Declaration of Benjamin P.D. Schrag, Executive Vice President of Prime Clerk (the "Schrag Declaration"), which is attached hereto as **Exhibit C** and incorporated by reference herein.  In further support of the Application, the Debtors respectfully state as follows.

### Jurisdiction and Venue

1. The United States Bankruptcy Court for the Northern District of Illinois (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are section 156(c) of title 28 of the United States Code, 28 U.S.C. §§ 1–4105 (the "Judicial Code"), section 503(b) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rule 1007(a)(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 1007-2(B) and 5005-3(D) of the Local Rules of the United States Bankruptcy Court for the Northern District of Illinois (the "Local Rules").

KE 34167833

**Background**[2]

4. Caesars Entertainment Operating Company, Inc. ("CEOC"), together with its Debtor and non-Debtor subsidiaries, provides casino entertainment services and owns, operates, or manages 38 gaming and resort properties in 14 states and five countries, operating primarily under the Caesars®, Harrahs®, and Horseshoe® brand names. The Debtors represent the largest, majority-owned operating subsidiary of Caesars Entertainment Corporation ("CEC"), a publicly traded company that is the world's most diversified casino-entertainment provider. CEC, through its ownership and economic interests in CEOC, Caesars Entertainment Resort Properties ("CERP"), and Caesars Growth Partners ("CGP"), owns, operates, or manages 50 casinos in 14 U.S. states and 5 countries, covering 3 million square feet of gaming space, 42,000 hotel rooms, 45 million customer loyalty program participants, and 68,000 employees.

5. The Debtors employ approximately 32,000 people through geographically diverse operations throughout the United States, including seven regional casino properties located in the Midwest (across Illinois, Indiana, Iowa, and Missouri); six regional casino properties located in the Southeast (throughout Louisiana, Mississippi, and North Carolina); four casinos located in Arizona, California, Maryland, and Pennsylvania; four casinos located in Nevada, including the world famous Caesars Palace at the heart of the Las Vegas Strip; and two casinos located in Atlantic City, New Jersey. On a consolidated basis, CEOC and its subsidiaries reported approximately $993 million of Adjusted EBITDA on net revenues of approximately $5.4 billion for the twelve months ending September 30, 2014.

---

[2] The facts and circumstances supporting the Application are set forth in the *Declaration of Randall S. Eisenberg, Chief Restructuring Officer of Caesars Entertainment Operating Company, Inc., in Support of First Day Pleadings* (the "First Day Declaration"), filed contemporaneously herewith.

6. On the date hereof (the "Petition Date"), each of the Debtors filed a petition with this Court under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Concurrently with the filing of this Motion, the Debtors requested procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b). No party has requested the appointment of a trustee or examiner in these chapter 11 cases, and no committees have been appointed or designated.

**Relief Requested**

7. By this Application, the Debtors respectfully request entry of an order: (a) appointing Prime Clerk as Notice, Claims, and Solicitation Agent in the Debtors' chapter 11 cases, effective _nunc pro tunc_ to the Petition Date, (b) authorizing the Debtors to prepare a consolidated Mailing Matrix, (c) authorizing the Debtors to mail, with the assistance of Prime Clerk, the initial notices and all subsequent notices to all creditors listed in the Mailing Matrix, (d) authorizing the Debtors to file a consolidated list of the Debtors' 50 largest unsecured creditors, and (e) granting related relief.

**Prime Clerk's Qualifications**

8. As described in the First Day Declaration, there may be thousands of creditors and other parties in interest in the Debtors' chapter 11 cases. In any case of this size, Local Rule 1007-2(b) requires the Debtors to employ a notice or claims agent. Accordingly, the Debtors propose to engage Prime Clerk to act as the Debtors' Notice, Claims, and Solicitation Agent. This retention is the most effective and efficient manner of noticing the thousands of creditors and parties in interest of the filing of these chapter 11 cases and other developments. In that capacity, Prime Clerk will transmit, receive, docket, and maintain proofs of claim filed in connection with these chapter 11 cases.

9.  Prime Clerk is comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases. Prime Clerk's professionals have experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity. Prime Clerk's professionals have acted as debtor's counsel or the official claims and noticing agent in other large bankruptcy cases. Prime Clerk's active cases include: In re dELiA*s, Inc., No. 14-23678 (RDD) (Bankr. S.D.N.Y. Dec. 10, 2014); In re Aereo, Inc., No. 14-13200 (SHL) (Bankr. S.D.N.Y. Nov. 25, 2014); In re ALCO Stores, Inc., No. 14-34941 (SGJ) (Bankr. N.D. Tex. Nov. 14, 2014); In re Dendreon Corp., No. 14-12515 (PJW) (Bankr. D. Del. Nov. 12, 2014); In re SIGA Tech., Inc., No. 14-12623 (SHL) (Bankr. S.D.N.Y. Oct. 28, 2014); In re Inversiones Alsacia S.A., No. 14-12896 (MG) (Bankr. S.D.N.Y. Oct. 16, 2014); In re NII Holdings, Inc., No. 14-12611 (SCC) (Bankr. S.D.N.Y. Sept. 16, 2014); In re Trump Entertainment Resorts, Inc., No. 14-12103 (KG) (Bankr. D. Del. Sept. 10, 2014); In re Mineral Park, Inc., No. 14-11996 (KJC) (Bankr. D. Del. Aug. 27, 2014); In re Windsor Petroleum Transp. Corp., No. 14-11708 (PJW) (Bankr. D. Del. Aug. 12, 2014); In re Entegra Power Group LLC, No. 14-11859 (PJW) (Bankr. D. Del. Aug. 6, 2014); In re Crumbs Bake Shop, Inc., No. 14-24287 (MBK) (Bankr. D.N.J. Jul. 17, 2014); In re Tactical Intermediate Holdings, Inc., No. 14-11659 (KG) (Bankr. D. Del. Jul. 9, 2014); In re MIG, LLC, No. 14-11605 (KG) (Bankr. D. Del. Jul. 2, 2014); In re FL 6801 Spirits LLC, No. 14-11691 (SCC) (Bankr. S.D.N.Y. June 3, 2014); In re Universal Cooperatives, Inc., No. 14-11187 (MFW) (Bankr. D. Del. May 13, 2014); In re GSE Environmental, Inc., No. 14-11126 (MFW) (Bankr. D. Del. May 6, 2014); In re Coldwater Creek Inc., No. 14-10867 (BLS) (Bankr. D. Del. Apr. 14, 2014); In re MEE Apparel LLC, No. 14-16484 (CMG) (Bankr. D.N.J. Apr. 4, 2014); In re Autoseis,

Inc., No. 14-20130 (RSS) (Bankr. S.D. Tex. Mar. 27, 2014); In re Legend Parent, Inc., No. 14-10701 (RG) (Bankr. S.D.N.Y. Mar. 21, 2014); In re QCE Finance LLC, No. 14-10543 (PJW) (Bankr. D. Del. Mar. 17, 2014); In re Sbarro LLC, No. 14-10557 (MG) (Bankr. S.D.N.Y. Mar. 13, 2014); In re Ashley Stewart Holdings, Inc., No. 14-14383 (MBK) (Bankr. D.N.J. Mar. 11, 2014); In re MACH Gen, LLC, No. 14-10461 (MFW) (Bankr. D. Del. Mar. 5, 2014); In re Noble Logistics, Inc., No. 14-10442 (CSS) (Bankr. D. Del. Mar. 4, 2014); In re Optim Energy, LLC, No. 14-10262 (BLS) (Bankr. D. Del. Feb. 12, 2014); In re Tuscany Intl Holdings (U.S.A.) Ltd., No. 14-10193 (KG) (Bankr. D. Del. Feb. 4, 2014); In re Capsule Int'l Holdings LLC f/k/a Constar Int'l Holdings LLC, No. 13-13281 (CSS) (Bankr. D. Del. Dec. 20, 2013); In re Green Field Energy Servs., Inc., No. 13-12783 (KG) (Bankr. D. Del. Oct. 29, 2013); In re Old FENM Inc. f/k/a Fresh & Easy Neighborhood Mkt. Inc., No. 13-12569 (KJC) (Bankr. D. Del. Oct. 1, 2013).[3]

10. By appointing Prime Clerk as the Notice, Claims, and Solicitation Agent in these chapter 11 cases, the distribution of notices, the processing of claims, and the solicitation of votes will be expedited and the Clerk of the United States Bankruptcy Court for the Northern District of Illinois (the "Clerk") will be relieved of the administrative burden of processing what may be an overwhelming number of claims. The Debtors submit, based on all engagement proposals obtained and reviewed, that Prime Clerk's rates are competitive and reasonable given Prime Clerk's quality of services and expertise. The terms of Prime Clerk's retention are set forth in the Services Agreement; provided, however, that Prime Clerk is seeking approval solely

---

[3] Because of the voluminous nature of the orders cited herein, such orders have not been attached to the Application. Copies of these orders are available upon request to the Debtors' proposed counsel.

6

KE 34167833

of the terms and provisions as set forth in this Application and the proposed Retention Order attached hereto.

### Services to be Provided

11. Specifically, the Debtors seek to engage Prime Clerk to provide, to the extent the Debtors request, certain noticing, claims processing, and solicitation services including, without limitation:

   a. preparing and serving required notices and documents in these chapter 11 cases in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtors and/or the Court, including (i) notice of the commencement of these chapter 11 cases and the initial meeting of creditors under section 341(a) of the Bankruptcy Code, (ii) notice of any claims bar date, (iii) notices of objections to claims and objections to transfers of claims, (iv) notices of hearings on motions filed by the Office of the United States Trustee for the Northern District of Illinois ("U.S. Trustee"), (v) notices of transfers of claims, (vi) notices of any hearings on a disclosure statement and confirmation of the Debtors' plan or plans of reorganization, including under Bankruptcy Rule 3017(d), (vii) notice of the effective date of any plan, and (viii) all other notices, orders, pleadings, publications, or other documents as the Debtors or Court may deem necessary or appropriate for an orderly administration of these chapter 11 cases.

   b. maintaining an official copy of the Debtors' schedules of assets and liabilities and statements of financial affairs (collectively, the "Schedules"), listing the Debtors' known creditors and amounts owed thereto;

   c. maintaining (i) a list of all potential creditors, equity holders, and other parties-in-interest and (ii) a "core" mailing list consisting of all parties described in Bankruptcy Rule 2002(i), (j), and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010 and updating and making said lists available upon request by a party-in-interest or the Clerk;

   d. furnishing a notice to all potential creditors of the last date for filing proofs of claim and a form for filing a proof of

KE 34167833

   claim, after such notice and form are approved by the Court, and notifying the said potential creditors of the existence, amount, and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

e.  maintaining a post office box or address for the purpose of receiving claims and returned mail and processing all mail received;

f.  for <u>all</u> notices, motions, orders, or other pleadings or documents served, preparing and filing or causing to be filed with the Clerk an affidavit or certificate of service within seven (7) business days of service which includes (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service, and (iv) the date served;

g.  processing all proof of claims received, including those received by the Clerk, checking said processing for accuracy, and maintaining the original proofs of claim in a secure area;

h.  maintaining the official claims register for each Debtor (collectively, the "<u>Claims Registers</u>") on behalf of the Clerk; upon the Clerk's request, providing the Clerk with certified, duplicate, unofficial Claims Registers; and specifying in the Claims Registers the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, (iv) the amount asserted, (v) the asserted classification(s) of the claim (<u>e.g.</u>, secured, unsecured, priority, etc.), (vi) the applicable Debtor, and (vii) any disposition of the claim.

i.  recording all transfers of claims and providing any notices of such transfers as required by to Bankruptcy Rule 3001(e);

8

j.  relocating, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of Prime Clerk, not less than weekly;

k.  upon completion of the docketing process for all claims received to date for each case, turning over to the Clerk copies of the Claims Registers for the Clerk's review (upon the Clerk's request);

l.  monitoring the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and making necessary notations on and/or changes to the claims register and any service or mailing lists, including to identify and eliminate duplicative names and addresses from such lists;

m.  identifying and correcting any incomplete or incorrect addresses in any mailing or service lists;

n.  assisting in the dissemination of information to the public and responding to requests for the administrative information regarding these chapter 11 cases as directed by the Debtors or the Court, including through the use of a case website and/or call center;

o.  if these chapter 11 cases are converted to cases under chapter 7 of the Bankruptcy Code, contacting the Clerk's office within three (3) days of notice to Prime Clerk of entry of the order converting the cases;

p.  thirty (30) days prior to the close of these chapter 11 cases, to the extent practicable, requesting that the Debtors submit to the Court a proposed order dismissing Prime Clerk as Claims, Noticing, and Solicitation Agent and terminating its services in such capacity upon completion of its duties and responsibilities and upon the closing of these chapter 11 cases;

q.  within seven (7) days of notice to Prime Clerk of entry of an order closing these chapter 11 cases, providing to the Court the final version of the Claims Registers as of the date immediately before the close of the chapter 11 cases;

r.  at the close of these chapter 11 cases, boxing and transporting all original documents, in proper format, as provided by the Clerk's office, to (i) the Federal Archives Record Administration, located at Central Plains Region,

      200 Space Center Drive, Lee's Summit, MO 64064 or (ii) any other location requested by the Clerk's office; and

  s. providing such other claims processing, noticing, plan solicitation, and related administrative services as may be requested from time to time by the Debtors.

12. The Claims Registers shall be open to the public for examination without charge during regular business hours and on a case-specific website maintained by Prime Clerk.

13. Prime Clerk will follow the notice, claims, and solicitation procedures that conform to the guidelines promulgated by the Clerk, the Judicial Conference of the United States, and as may be entered by the Court's order.

## **Professional Compensation**

14. The fees to be charged by Prime Clerk in connection with these chapter 11 cases are set forth in the Services Agreement. The Debtors propose that the cost of Prime Clerk's services be paid from the Debtors' estates pursuant to section 156(c) of title 28 of the United States Code and section 503(b)(1)(A) of the Bankruptcy Code. The Debtors respectfully submit that Prime Clerk's rates for its services in connection with the notice, claims processing, and solicitation services are competitive and comparable to the rates charged by their competitors for similar services. Indeed, the Debtors conducted a review and competitive comparison of other firms prior to selecting Prime Clerk as notice, claims, and solicitation agent and, following arm's-length negotiations, determined Prime Clerk's rates to be more than reasonable given the quality of Prime Clerk's services and Prime Clerk's prior bankruptcy expertise.

15. Furthermore, the Debtors respectfully submit that the fees and expenses incurred by Prime Clerk are administrative in nature and, therefore, should not be subject to the standard fee application procedures for professionals. Specifically, the Debtors request authorization to compensate Prime Clerk in accordance with the terms and conditions set forth in the Services

10

Agreement upon Prime Clerk's submission to the Debtors of invoices summarizing, in reasonable detail, the services rendered and expenses incurred in connection with services provided by Prime Clerk to the Debtors.

16. Prior to the Petition Date, the Debtors provided Prime Clerk with a retainer in the amount of $75,000 (the "Retainer"). Prime Clerk seeks to apply the retainer to all prepetition invoices, thereafter, to have the retainer replenished to the original retainer amount, and thereafter, to hold the retainer during these chapter 11 cases as security for the payment of fees and expenses incurred under the Services Agreement.

**Indemnification**

17. As part of the overall compensation to Prime Clerk under the terms of the Services Agreement, the Debtors have agreed to certain indemnification and contribution obligations. The Services Agreement provides that the Debtors will indemnify, defend, and hold harmless Prime Clerk and its members, officers, employees, representatives, and agents under certain circumstances specified in the Services Agreement, except in circumstances resulting from Prime Clerk's its own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence, fraud, or willful misconduct or as otherwise provided in the Services Agreement or Retention Order. Both the Debtors and Prime Clerk believe that such indemnification obligations are customary, reasonable, and necessary to retain the services of a claims, noticing, and solicitation agent in these chapter 11 cases.

**Prime Clerk's Disinterestedness**

18. The Debtors have many creditors, and accordingly, Prime Clerk may have rendered and may continue to render services to certain of these creditors. Prime Clerk has not and will not represent the separate interests of any such creditor in these cases. Additionally, Prime Clerk employees may, in the ordinary course of their personal affairs, have relationships

11

KE 34167833

with certain creditors of the Debtors.  For example, one or more of Prime Clerk's employees may have obligations outstanding with financial institutions that are creditors of the Debtors or may have used the Debtors' services.

19. Although the Debtors do not propose to employ Prime Clerk under section 327 of the Bankruptcy Code, to the best of the Debtors' knowledge, information, and belief, and except as disclosed in the Schrag Declaration, Prime Clerk has represented that it neither holds nor represents any interest adverse to the Debtors' estates in connection with any matter on which it would be employed and that it is a "disinterested person," as referenced in section 327(a) of the Bankruptcy Code and as defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code.  Prime Clerk will supplement its disclosure to the Court if any facts or circumstances are discovered that would require disclosure.

## Basis for Relief

20. Section 156(c) of title 28 of the United States Code, which governs the staffing and expenses of a bankruptcy court, authorizes the Court to use "facilities" or "services" other than the office of the Clerk for administration of bankruptcy cases.  It states:

> Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States.  The utilization of such facilities or services shall be subject to such conditions and limitations as the pertinent circuit council may prescribe.

28 U.S.C. § 156(c).

21. In addition, Local Rule 1007-2(B) provides, in relevant part, as follows:

> Claims Agent.  On motion of the debtor or trustee, the court may authorize retention of a claims agent under 28 U.S.C. § 156(c) to prepare and maintain the claims register.  In all cases with more

12

>than 500 creditors, the debtor must file a motion to employ a notice
>or claims agent approved by the clerk to perform this function.

N.D. Ill. Bankr. L.R. 1007-2(B).

22. Accordingly, section 156(c) of title 28 of the United States Code empowers the Court to utilize outside agents and facilities for notice and claims purposes, provided that the Debtors' estates pay the cost of such services. Additionally, Local Rule 1007-2(B) provides that in all cases with over 500 creditors (such as these chapter 11 cases), a debtor is required to file a motion to retain a claims agent. Therefore, for all of the foregoing reasons, the Debtors believe that the retention of Prime Clerk as the Notice, Claims, and Solicitation Agent in these chapter 11 cases is necessary and in the best interests of the Debtors, their estates, and their creditors. Furthermore, the Debtors respectfully submit that the fees and expenses that would be incurred by Prime Clerk under the proposed engagement would be administrative in nature and, therefore, should not be subject to standard fee application procedures of professionals.

23. Courts in this jurisdiction have approved similar relief in other chapter 11 cases. See, e.g., In re ITR Concession Co., No. 14-34284 (PSH) (Bankr. N.D. Ill. Sept. 24, 2014); In re Keywell L.L.C., No. 13-37603 (EW) (Bankr. N.D. Ill. Feb. 12, 2014); In re Lyon Workspace Prods., L.L.C., No. 13-02100 (JSB) (Bankr. N.D. Ill. Feb. 27, 2013); In re Edison Mission Energy, No. 12-49219 (JPC) (Bankr. N.D. Ill. Dec. 18, 2012); In re The Shorebank Corp., No. 12-00581 (ABG) (Bankr. N.D. Ill. Jan. 11, 2012); In re Hartford Computer Hardware, Inc., No. 11-49744 (PSH) (Bankr. N.D. Ill. Dec. 15, 2011); In re Clare Oaks, No. 11-48903 (PSH) (Bankr. N.D. Ill. Dec. 8, 2011); In re Chicagoland Conservative Jewish High School Found., No. 11-19342 (SPS) (Bankr. N.D. Ill. May 11, 2011); In re GEI-RP (f/k/a Giordano's Enters., Inc.), No. 11-06098 (ERW) (Bankr. N.D. Ill. Mar. 9, 2011); In re Fairview Ministries, Inc., No. 11-04386 (SPS) (Bankr. N.D. Ill. Feb. 15, 2011); In re Amcore Fin., Inc., No. 10-37144

KE 34167833

(SPS) (Bankr. N.D. Ill. Aug. 24, 2010); In re Life Fund 5.1 LLC, No. 09-32672 (ABG) (Bankr. N.D. Ill. Oct. 7, 2009); In re IFC Credit Corp., No. 09-27094 (JPC) (Bankr. N.D. Ill Aug. 18, 2009); In re XMH Corp. 1 (f/k/a Hartmarx Corp.), No. 09-02046 (BWB) (Bankr. N.D. Ill. Jan. 26, 2009); In re Commercial Mortg. & Fin. Co., No. 08-73242 (MB) (Bankr. N.D. Ill. Dec. 3, 2008); In re Printers Row, LLC, No. 08-17301 (ERW) (Bankr. N.D. Ill. Sept. 29, 2008); In re Kimball Hill, Inc., No. 08-10095 (SPS) (Bankr. N.D. Ill. Apr. 25, 2008); In re Millcreek Broad., L.L.C., No. 07-03121 (JPC) (Bankr. N.D. Ill. May 15, 2007); In re Neumann Homes, Inc., No. 07-20412 (ERW) (Bankr. N.D. Ill. Nov. 28, 2007); In re McLeodUSA, Inc., No. 05-63230 (JHS) (Bankr. N.D. Ill. Oct. 31, 2005).[4]

## Waiver for Filing Formatted Mailing Matrix

24.     Pursuant to Bankruptcy Rule 1007(a)(1) and Local Rule 1007-1, a chapter 11 petition for relief is to be accompanied by a Mailing Matrix in a computer readable format designed and published from time to time by the Clerk.  Permitting the Debtors to maintain a consolidated list of their creditors in electronic format only, in lieu of filing a creditor matrix, is warranted under the circumstances of these cases.  Indeed, because the Debtors have thousands of potential creditors and other parties in interest, converting the Debtors' computerized information to a format compatible with the matrix requirements would be a burdensome task and would greatly increase the risk and recurrence of error with respect to information already intact on computer systems maintained by the Debtors or their agents.  Moreover, the Debtors, working together with Prime Clerk, already have prepared a single, consolidated list of the Debtors' creditors in electronic format.  Accordingly, the Debtors believe that maintaining the

---

[4]   Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Application.  Copies of these orders are available upon request to the Debtors' proposed counsel.

14

KE 34167833

Mailing Matrix as proposed herein is in the best interest of the Debtors' estates and all parties in interest.

### Single Consolidated List of the 50 Largest General Unsecured Creditors

25.    Bankruptcy Rule 1007(d) requires the Debtors to file "a list containing the name, address, and claim of the creditors that hold the twenty (20) largest unsecured claims, excluding insiders." Fed. R. Bankr. P. 1007(d).  This list is primarily used by the U.S. Trustee to evaluate the types and amounts of unsecured claims against the Debtors and thus to identify potential candidates to serve on an official committee of unsecured creditors appointed in the case pursuant to section 1102 of the Bankruptcy Code.[5]  The Debtors submit that a single consolidated list of their combined 50 largest non-insider unsecured creditors (the "Top 50 List") in these cases would be more reflective of the body of unsecured creditors that have the greatest stake in these cases than separate lists for each of the Debtors.

26.    In light of the foregoing, the Debtors submit that authority to file the Top 50 List in these chapter 11 cases is in the best interests of the estates and will facilitate the efficient and orderly administration of these cases.  Specifically, the Debtors believe that a single, consolidated list of the Debtors' 50 largest general unsecured, non-insider creditors will aid the U.S. Trustee in its efforts to communicate with these creditors.  The Debtors have, therefore, prepared the Top 50 List, which to the best of the Debtors' information, knowledge, and belief consists of the top unsecured creditors of the Debtors, excluding insiders.

---

[5]  "The purpose of the separate list of [●] largest creditors required by this provision in the rules is to enable the clerk to identify members and the court to appoint immediately an unsecured creditors' committee in compliance with II U.S.C. §1102(a)(1)." In re Dandy Doughboy Donuts, Inc., 66 B.R. 457, 458 (Bankr. S.D. Fla. 1986); see also 9 Collier on Bankruptcy ¶ 1007.5 (Lawrence P. King, et al., eds., 15th ed. 2001) ("[T]he larger [unsecured creditor] list and information about the claims of the creditors on the list enables the United States Trustee to determine the different types of claims existing in order to assure that a fully representative committee is appointed.").

KE 34167833

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

27. To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### Notice

28. The Debtors have provided notice of this Motion to: (a) the Office of the United States Trustee for the Northern District of Illinois; (b) the entities listed on the Consolidated List of Creditors Holding the 50 Largest Unsecured Claims; (c) the administrative agent for the Debtors' credit facility; (d) the indenture trustees for each of the Debtors' secured and unsecured notes; (e) counsel to certain holders of claims against the Debtors regarding each of the foregoing referenced in clauses (c) and (d); (f) the state attorneys general for states in which the Debtors conduct business; (g) the Office of the United States Attorney for the Northern District of Illinois; (h) the Internal Revenue Service; (i) the Securities and Exchange Commission; (j) the gaming commissions for each of the states in which the Debtors operate or manage a casino; (k) counsel to CEC; and (l) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### Waiver of Page Limit Restrictions

29. Given the complexity of issues addressed herein, the Debtors respectfully requests that the fifteen page limit established by Local Rule 5005-3(D) be waived for this Motion.

### No Prior Request

30. No prior request for the relief sought in this Application has been made to this or any other court.

WHEREFORE, the Debtors respectfully request entry of, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and granting such other relief as is just and proper.

Executed on January 14, 2015

By: _____
Mary E. Higgins
Chief Financial Officer and Treasurer
Caesars Entertainment Operating Co.
One Caesars Palace Drive
Las Vegas, NV 89109