UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CAESARS ENTERTAINMENT, | ) | No. 15 B 1145 |
| OPERATING CO., INC., *et al.*, | ) | (Jointly administered) |
| | ) | |
| Debtors. | ) | Judge Goldgar |

### MEMORANDUM OPINION

This matter is before the court for ruling on the motion of debtors Caesars Entertainment Operating Company, Inc., and certain subsidiaries (collectively "Caesars") to disband the Official Committee of Second Priority Noteholders (the "Noteholders Committee"). (Dkt. No. 384). The Noteholders Committee is one of two committees that the United States trustee ("U.S. Trustee") appointed under section 1102(a)(1) of the Bankruptcy Code, 11 U.S.C. § 1102(a)(1), at the beginning of these cases. Because a bankruptcy court has no power to disband a committee that the U.S. Trustee has appointed under section 1102(a)(1), the motion will be denied.

### 1. Jurisdiction

The court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1334(a) and the district court's Internal Operating Procedure 15(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

### 2. Background

The few relevant facts are drawn from the motion and responses, from other papers in the bankruptcy cases, and from the court's docket. No facts are in dispute.

The debtors in these cases describe themselves as the primary operating units of the

"Caesars gaming enterprise." The debtor named in the caption, Caesars Entertainment Operating Company, Inc. ("CEOC"), is a subsidiary of non-debtor Caesars Entertainment Corporation. The rest of the debtors are subsidiaries of CEOC.

On January 12, 2015, three creditors filed an involuntary bankruptcy petition against CEOC in the District of Delaware. Three days later, on January 15, 2015, CEOC and the other debtors filed voluntary chapter 11 petitions in this district. After initially staying the voluntary cases, the bankruptcy court in Delaware determined under Rule 1014(b), Fed. R. Bankr. P. 1014(b), that all of cases should proceed in this district. The Delaware court lifted the stay and transferred the involuntary case here. The cases are pending.[1]

On January 28, 2015, the U.S. Trustee issued a notice that on February 4, 2015, he would hold a meeting to form a committee of unsecured creditors. Before the February 4 meeting, counsel for Caesars sent the U.S. Trustee a letter arguing at length that holders and trustees of Caesars' second lien notes and subsidiary guaranteed notes were not suitable to serve on an official unsecured creditors committee. Among the holders of second lien notes are the petitioning creditors in the involuntary case.

The February 4 meeting must have taken place, because the next day the U.S. Trustee filed not one but two notices with the court. The first was a notice of the appointment of an unsecured creditors committee (the "Unsecured Creditors' Committee"). The second was a notice of the appointment of an "official committee of second priority noteholders."

---

[1] Caesars has since moved to suspend proceedings in the involuntary case. The petitioning creditors in the involuntary case have responded by moving for consolidation of the involuntary and voluntary cases and have requested a determination that the earlier order for relief in the involuntary case serves as the order for relief for all the cases. The two motions are a problem for another day.

Nothing in the record explains why the U.S. Trustee chose to appoint the Noteholders Committee in addition to the Unsecured Creditors' Committee. The U.S. Trustee gave no reasons for doing so. He did not have to give reasons. *See In re ShoreBank Corp.*, 467 B.R. 156, 162 (Bankr. N.D. Ill. 2012) ("The U.S. Trustee did not provide a rationale or make a record [in appointing a committee] for the simple reason that the Code did not require him to.").

Unhappy with this state of affairs, Caesars now moves for an order disbanding the Noteholders Committee. Caesars argues that (1) an intercreditor agreement to which each Committee member is a party would prevent the Committee from performing many of its statutory functions, *see* 11 U.S.C. § 1103(c); (2) the noteholders are sophisticated business entities who do not need a committee to represent their interests; and (3) a second committee in the case will dramatically increase administrative costs with no corresponding benefit to the estates. Alternatively, if the Committee is not disbanded, Caesars asks to have the two committees merged ("reconstituted" is Caesars' term) or at a minimum to limit the Noteholders Committee's activities so as not to duplicate the work of the Unsecured Creditors' Committee.

Other parties have weighed in. UMB Bank, the first lien notes indenture trustee, joins Caesars' motion, as do the Ad Hoc Committee of First Lien Noteholders and the Ad Hoc Committee of First Lien Bank Lenders. The Noteholders Committee not surprisingly objects to the motion, as do the U.S. Trustee and the Unsecured Creditors' Committee. BOKF, N.A., a member of the Noteholders Committee, joins that Committee's objection. So does the Ad Hoc Committee of Holders of 12.75% Second Priority Senior Secured Notes due 2018. Wilmington Trust, N.A., an indenture trustee for certain senior unsecured notes, joins the Unsecured Creditors' Committee's objection.

### 3. Discussion

When the Bankruptcy Code was enacted in 1978, bankruptcy courts had authority to appoint creditors committees in chapter 11 cases. Kenneth N. Klee & K. John Shaffer, *Creditors' Committees under Chapter 11 of the Bankruptcy Code*, 44 S.C. L. Rev. 995, 1001-02 (1993). With the expansion of the U.S. Trustee program in 1986, however, Congress transferred that authority to the U.S. Trustee. *Id.* at 1002; *In re Mercury Fin. Co.*, 240 B.R. 270, 275 (N.D. Ill. 1999). The U.S. Trustee's role is now described in section 1102(a)(1). That section provides that the U.S. Trustee "shall appoint a committee of creditors holding unsecured claims and may appoint additional committees of creditors or of equity security holders as the United States trustee deems appropriate." 11 U.S.C. § 1102(a)(1).

The rest of section 1102(a) spells out the powers left to the bankruptcy court. Section 1102(a)(2) says the court "may order the appointment of additional committees of creditors or of equity security holders if necessary to assure adequate representation . . . ." 11 U.S.C. § 1102(a)(2). Section 1102(a)(3) says that in a small business case the court "may order that a committee of creditors not be appointed." 11 U.S.C. § 1102(a)(3). And section 1102(a)(4) says the court can order the U.S. Trustee "to change the membership of a committee" if a change is "necessary to ensure adequate representation of creditors or equity security holders." 11 U.S.C. § 1102(a)(4).

Those are the only powers over committees the Code gives the court. There are no others. In particular, nothing in section 1102(a) confers on the court the power to disband a committee the U.S. Trustee has appointed under section 1102(a)(1). *See In re Dewey & LeBoeuf LLP*, No. 12-12321 MG, 2012 WL 5985325, at *3 (Bankr. S.D.N.Y. Nov. 29, 2012); *In re Pacific Ave., LLC*, 467 B.R. 868, 870 (Bankr. W.D.N.C. 2012) ("There is no specific statutory

provision for disbanding a creditors' committee."); *In re JNL Funding Corp.*, 438 B.R. 356, 361 (Bankr. E.D.N.Y. 2010) ("Section 1102 is silent as to this Court having power to order a committee to be disbanded . . . ."); *In re Texaco, Inc.*, 79 B.R. 560, 565 (Bankr. S.D.N.Y. 1987); *see also* 1 Robert E. Ginsberg & Robert D. Martin, *Ginsberg & Martin on Bankruptcy* § 4.02[B][1] at 4-46 to 47 (Susan V. Kelley, ed. 2013-1 Supp.) ("There is no statutory authority to disband a committee . . . .").[2]

Because section 1102(a) grants specific powers, and because the power to disband a committee is not one of them, the only fair reading of the statute is that there is no such power. As the U.S. Trustee observes, this is a straightforward application of the interpretive doctrine *expressio unius est exclusio alterius* – the expression of one thing is the exclusion of another. *See, e.g., POM Wonderful LLC v. Coca Cola Co.*, ___ U.S. ___, 134 S. Ct. 2228, 2238 (2014). When a statute expressly grants courts the authority to take certain actions, that express grant implies the prohibition of other actions. *Gomez v. United States*, 490 U.S. 858, 872 (1989); *Continental Casualty Co. v. United States*, 314 U.S. 527, 533 (1942) ("Generally speaking, a 'legislative affirmative description' implies denial of the nondescribed powers.").

Whether Caesars' concerns about the Noteholders Committee are well-taken, then, is beside the point. Even if they are, section 1102(a) does not authorize the court to disband the Committee. *In re New Life Fellowship, Inc.*, 202 B.R. 994, 996 (Bankr. W.D. Okla. 1996)

---

[2] The Bankruptcy Rules likewise do not empower a court to disband a committee appointed under section 1102(a)(1). The lone exception is Rule 2007(c). On motion of a party in interest, and after notice and a hearing, Rule 2007(c) not only permits but requires the court to "direct the United States trustee to vacate the appointment" of a committee if its members were members of a committee "organized by creditors before the commencement of [the] case" and if the appointment "failed to satisfy requirements of section 1102(b)(1) . . . ." Fed. R. Bankr. P. 2007(c). There is no such committee in this case.

(finding "the specific language . . . of section 1102(a)(1) compel[s] the conclusion that the court . . . is without power to abolish the committee"); *see also Dewey*, 2012 WL 5985325, at *3 (suggesting in dictum that the language of section 1102(a)(1) "would seem to leave little or no role" for the court). Caesars' motion to disband the Noteholders Committee must be denied.

Caesars concedes that section 1102(a) does not itself empower a bankruptcy court to disband a committee appointed under section 1102(a)(1). Caesars contends the power resides instead in section 105(a) of the Code, which allows the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Some courts have agreed with this contention. *See, e.g., In re City of Detroit*, 519 B.R. 673, 680 (Bankr. E.D. Mich. 2014) (dictum); *JNL Funding*, 438 B.R. at 360; *cf. Pacific Ave.*, 467 B.R. at 870 (relying on section 105(d)).

Section 105(a) confers no such power. That section gives bankruptcy courts the power only to implement existing Code provisions. *Courtney v. Halleran*, 485 F.3d 942, 948 (7th Cir. 2007); *In re Kmart Corp.*, 359 F.3d 866, 871 (7th Cir. 2004). It is neither an "independent source of rights," *Village of Rosemont v. Jaffe*, 482 F.3d 926, 935 (7th Cir. 2007), nor a source of "substantive authority," *In re UAL Corp.*, 412 F.3d 775, 778 (7th Cir. 2005). Because it is neither, section 105(a) does not allow bankruptcy courts to contradict the Code, *Law v. Siegel*, ___ U.S. ___, 134 S. Ct. 1188, 1194 (2014) – such as by exercising powers the Code does not confer, *Petro v. Mishler*, 276 F.3d 375, 378 (7th Cir. 2002); *In re Lloyd*, 37 F.3d 271, 275 (7th Cir. 1994) (declaring that section 105(a) does not allow courts to "create rights outside the Code"); *see also In re Fesco Plastics Corp.*, 996 F.2d 152, 154 (7th Cir. 1993) (stating that "when a specific Code section addresses an issue," section 105(a) cannot be employed "to achieve a result not contemplated by the Code").

Section 105(a) thus is not a vehicle for reading into section 1102(a)(1) a power to do away with statutory committees when section 1102(a)(1) itself grants no such power – and especially when section 1102(a)(1) grants other powers but not that one. *New Life Fellowship*, 202 B.R. at 997. The approach suggested in *City of Detroit* – that section 105(a) authorizes the exercise of that power because the Code does not "explicitly prohibit" it, *City of Detroit*, 519 B.R. at 680 – is consequently incorrect. Had Congress wanted to give bankruptcy courts the power to abolish committees appointed under section 1102(a)(1), it could have done so. It chose not to. That choice must be respected. *New Life Fellowship*, 202 B.R. at 997; *see In re New Energy Corp.*, 739 F.3d 1077, 1079 (7th Cir. 2014) (noting that judges must "implement the Bankruptcy Code as written, rather than make changes that they see as improvements").[3]

For the same reasons, Caesars' alternative requests – to "reconstitute" the Noteholders Committee by merging it with the Unsecured Creditors' Committee or limit the scope of the Noteholders Committee's activities – must be rejected. Usually, "reconstituting" a committee means adjusting its membership. *See, e.g., In re Dow Corning Corp.*, 212 B.R. 258, 264 (E.D. Mich. 1997); *ShoreBank*, 467 B.R. at 160; *Mercury Fin. Co.*, 224 B.R. at 383; 7 *Collier on Bankruptcy* ¶ 1102.05 at 1102-25 to -26 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2014). As the Noteholders Committee rightly observes, merging it with another committee

---

[3] Other decisions Caesars cites involved questions of committee membership and are therefore distinguishable on their facts. *See, e.g., In re Mercury Fin. Co.*, 224 B.R. 380, 383 (Bankr. N.D. Ill. 1998) (ordering committee disbanded as an exercise of the court's power to "reconstitute" committee), *aff'd*, 240 B.R. 270 (N.D. Ill. 1999). Since 2005, moreover, bankruptcy courts have had express statutory authority to order changes to the membership of committees (though only to ensure adequate representation). *See* 11 U.S.C. § 1102(a)(4); *ShoreBank*, 467 B.R. at 160 (discussing the history of the judicial power to regulate committee membership). To the extent *Mercury* and other pre-2005 decisions relied on section 105(a) as the source for that authority, *see ShoreBank*, 467 B.R. at 160 (noting that between 1986 and 2005 courts invoked section 105(a)), they were incorrect.

would not so much adjust its membership as eliminate the Committee altogether. Eliminating the Noteholders Committee is not an option.[4]

Limiting the Committee's activities is not an option either. Section 1103 of the Code addresses the powers and duties of committees appointed under section 1102. *See* 11 U.S.C. § 1103. Nothing in section 1103 authorizes a bankruptcy court to define those powers and duties in such a way as to place limits on a committee's activities beyond the limits in section 1103 itself. Neither Caesars nor any of its allies has cited any authority supporting the existence of such a power. Needless to say, it cannot be located in section 105(a). *See Petro*, 276 F.3d at 378; *Lloyd*, 37 F.3d at 275.

None of this means, of course, that the concerns Caesars raises as reasons to disband the Noteholders Committee or restrict what it can do are illegitimate. In its objection to Caesars' motion, the U.S. Trustee actually shares those concerns. It appears a central issue in this case will be several prepetition transactions the Noteholders Committee describes as insider deals that "denuded [the] chapter 11 estates of billions of dollars." (Noteholders Comm. Obj. at 1). These transactions will now be the subject of investigations by not one but two official committees, as well by an examiner who even Caesars agrees should be appointed. The estates will pay for all of these investigations, and Caesars is right to be worried that the costs of needlessly duplicative work will take a hefty bite out of the estates.

---

[4] *Texaco*, which Caesars cites, ordered the merger of two committees of unsecured creditors, *Texaco*, 79 B.R. at 565-67, but the decision is wholly unconvincing. *Texaco* treats the question as one of adequate representation, not recognizing that merging one committee with another "adjusts" the membership of the first committee right out of existence. *Id.* at 566. *Texaco* (a decision issued after the 1986 amendment to section 1102 deprived bankruptcy courts of the power to regulate committee membership) also supplies no authority for any judicial power to merge committees – except legislative history stating that courts retained their authority post-amendment to appoint additional committees, a different matter entirely. *Id.*

But there are other ways to avoid those costs that do not violate the Code. The U.S. Trustee correctly observes that the court can control the two official Committees' employment of professionals, including the terms on which they are employed. *See* 11 U.S.C. § 328(a). The court can also control the compensation of those professionals. *See* 11 U.S.C. § 330(a). And the court can control the scope of the examiner's investigation, *see* 11 U.S.C. § 1104(c), as well as the examiner's compensation, *see* 11 U.S.C. § 330(a). Compensation of Committee professionals and the examiner is something all parties, including Caesars and the U.S. Trustee, will have a chance to address before a single cent is awarded on a final basis.[5]

Caesars' concerns are best addressed through these Code provisions, not by the unauthorized disbanding or hamstringing of a committee the U.S. Trustee has appointed under section 1102(a)(1).

### 4. Conclusion

The motion of debtors Caesars Entertainment Operating Company, Inc., and certain subsidiaries to disband the Official Committee of Second Priority Noteholders is denied. A separate order will be entered consistent with this opinion.

Dated: March 9, 2015

_____
A. Benjamin Goldgar
United States Bankruptcy Judge

---

[5] It may be that the Committees (and perhaps the examiner, too) will coordinate their investigations to avoid needless duplication. Indeed, the Unsecured Creditors' Committee says in its objection to Caesars' motion that discussions to that end have already begun.