## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CAESARS ENTERTAINMENT OPERATING COMPANY, INC., et al.,[1] | ) Case No. 15-01145 (ABG) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Hr'g Date: Oct. 21, 2015 at 1:30 p.m. (CT)** |
| | ) |

### NOTICE OF DEBTORS' MOTION FOR ENTRY
### OF AN ORDER (A) APPROVING SETTLEMENT BY
### AND BETWEEN DEBTOR DESERT PALACE, INC. AND THE
### U.S. DEPARTMENT OF THE TREASURY FINANCIAL CRIMES
### ENFORCEMENT NETWORK AND (B) GRANTING RELATED RELIEF

**PLEASE TAKE NOTICE** that on the **21st day of October, 2015, at 1:30 p.m. (prevailing Central Time)** or as soon thereafter as counsel may be heard, the Debtors shall appear before the Honorable A. Benjamin Goldgar or any other judge who may be sitting in his place and stead, in the Ceremonial Courtroom (Room No. 2525) in the Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, Illinois 60604, and present the attached *Debtors' Motion for Entry of an Order (A) Approving Settlement By and Between Debtor Desert Palace, Inc. and the U.S. Department of the Treasury Financial Crimes Enforcement Network and (B) Granting Related Relief* (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that any objection to the Motion must be filed with the Court by **October 14, 2015, at 4:00 p.m. (prevailing Central Time)** and served so as to be actually received by such time by: (a) counsel to the Debtors; (b) the Office of the United States Trustee for the Northern District of Illinois; and (c) any party that has requested notice pursuant to rule 2002 of the Federal Rules of Bankruptcy Procedure, a schedule of such parties may be found at https://cases.primeclerk.com/CEOC.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion as well as copies of all documents filed in these chapter 11 cases are available free of charge by visiting https://cases.primeclerk.com/CEOC or by calling (855) 842-4123 within the United States or Canada or, outside of the United States or Canada, by calling +1 (646) 795-6969. You may also obtain copies of any pleadings by visiting the Court's website at www.ilnb.uscourts.gov in accordance with the procedures and fees set forth therein.

---

[1]     A complete list of the Debtors and the last four digits of their federal tax identification numbers may be obtained at https://cases.primeclerk.com/CEOC.

Dated:  September 30, 2015
Chicago, Illinois

*/s/ David R. Seligman, P.C.*

James H.M. Sprayregen, P.C.
David R. Seligman, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

- and -

Paul M. Basta, P.C.
Nicole L. Greenblatt
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022-4611
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

*Counsel to the Debtors and Debtors in Possession*

KE 37557361

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CAESARS ENTERTAINMENT OPERATING | ) Case No. 15-01145 (ABG) |
| COMPANY, INC., et al.,[1] | ) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Hr'g Date: Oct. 21, 2015 at 1:30 p.m. (CT)** |
| | ) |

## DEBTORS' MOTION FOR ENTRY OF AN ORDER (A) APPROVING SETTLEMENT BY AND BETWEEN DEBTOR DESERT PALACE, INC. AND THE U.S. DEPARTMENT OF THE TREASURY FINANCIAL CRIMES ENFORCEMENT NETWORK AND (B) GRANTING RELATED RELIEF

The above-captioned debtors (collectively, the "Debtors") file this motion (this "Motion") for entry of an order (the "Order"), substantially in the form attached hereto as **Exhibit A**, (a) approving the Consent to the Assessment of Civil Money Penalty (the "Consent Order"), dated August 20, 2015, by and between Debtor Desert Palace, Inc., d/b/a Caesars Palace Las Vegas ("CPLV") and the United States Department of the Treasury Financial Crimes Enforcement Network ("FinCEN," and together with CPLV, the "Parties"), a copy of which is attached to the Order as **Exhibit 1**, and (b) granting related relief.  In support of this Motion, the Debtors respectfully state as follows.

---

[1]    A complete list of the Debtors and the last four digits of their federal tax identification numbers may be obtained at https://cases.primeclerk.com/CEOC.

## Jurisdiction and Venue

1.      The United States Bankruptcy Court for the Northern District of Illinois (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are section 363(b)(1) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Relief Requested

4.      The Debtors request entry of an order (a) approving the Consent Order and (b) granting related relief.

## Background

### I.      The Chapter 11 Cases.

5.      Caesars Entertainment Operating Company, Inc. ("CEOC"), together with its Debtor and non-Debtor subsidiaries, provides casino entertainment services and owns, operates, or manages 38 gaming and resort properties in 14 states and five countries, operating primarily under the Caesars®, Harrahs®, and Horseshoe® brand names.  The Debtors represent the largest, majority-owned operating subsidiary of Caesars Entertainment Corporation, a publicly traded company that is the world's most diversified casino-entertainment provider.

6.      On January 15, 2015 (the "Petition Date"), each of the Debtors filed a voluntary petition with this Court under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to

4

Bankruptcy Rule 1015(b).   No party has requested the appointment of a trustee in these chapter 11 cases.   On February 5, 2015, the Office of the United States Trustee appointed the statutory committee of unsecured claimholders and the official committee of second priority noteholders.

7.     On January 12, 2015, certain petitioning creditors filed involuntary petitions with the United States Bankruptcy Court for the District of Delaware (the "Delaware Court") against CEOC, thereby commencing an involuntary chapter 11 case only as to that entity (the "Involuntary Case").   No order for relief pursuant to section 303(h) of the Bankruptcy Code has been entered in the Involuntary Case, and the appropriateness of such relief has not been determined as of the date hereof.   On January 28, 2015, the Delaware Court transferred the Involuntary Case to this Court [Del. Docket No. 220].

8.     On March 25, 2015, the Court approved the appointment of an examiner in these voluntary cases [Docket No. 992].   On May 11, 2015, the examiner filed his first interim report [Docket No. 1520], on June 23, 2015, the examiner filed his second interim report [Docket No. 1805], on August 7, 2015, the examiner filed his third interim report [Docket No. 2022], and on September 21, 2015, the examiner filed his fourth interim report [Docket No. 2236].   The examiner has not filed his final report at this time.

## II.     The BSA Investigation.

9.     Casinos are defined as "financial institutions" in the Bank Secrecy Act and its implementing regulations (collectively, the "BSA").   CPLV was required under the BSA to maintain an anti-money laundering program ("BSA/AML Program"), file certain reports, and maintain certain records.   See, e.g., 31 U.S.C. § 5312(a)(2)(X), 31 C.F.R. § 1010.100(t)(5) (definitions); 31 U.S.C. §§ 5318(a)(2), (h), 31 C.F.R. § 1021.210 (BSA/AML Programs); 31 C.F.R. § 1021.320(a)(2) (suspicious activity reporting).   The BSA is administered by

5

FinCEN, which has broad authority to assess civil money penalties against casinos for violations of the BSA, <u>see</u> 31 U.S.C. § 5321(a)(1); 31 C.F.R. § 1010.820, and to obtain equitable relief, such as injunctions, to enjoin violations of or to enforce compliance with the BSA, <u>see</u> 31 U.S.C. § 5320.  FinCEN has delegated authority for examining casinos for compliance with applicable provisions of the BSA to the Internal Revenue Service, Small Business/Self-Employed Division (the "<u>IRS SB/SE</u>").

10.     As described more fully in the Consent Order, in 2012, the IRS SB/SE examined CPLV for compliance with the BSA and identified violations of the BSA/AML Program, reporting, and recordkeeping requirements.   Among other things, the IRS SB/SE identified deficiencies in implementation of internal controls related to CPLV's private gaming salons and branch office locations and failures to file required Suspicious Activity Reports ("<u>SARs</u>").  Based on a referral by the IRS, in October 2013, FinCEN notified CPLV that it was investigating the issues raised by the IRS examination and considering enforcement action.  As a result of that investigation, FinCEN concluded that CPLV had violated the requirements under the BSA to develop and implement a BSA/AML Program and to detect and report certain suspicious activity.

## III.    The Consent Order.

11.     In May 2015, CPLV received correspondence from representatives of FinCEN, which contained a proposed consent order setting forth FinCEN's determination of CPLV's violations of the BSA.  FinCEN requested that CPLV enter into the proposed consent order and agree to a civil money penalty based on the BSA violations.

12.     In the interest of reducing or avoiding disruptions to business operations, greater potential civil money penalties, detrimental publicity, and other potentially negative issues, CPLV focused on reaching a consensual resolution.  CPLV and FinCEN therefore entered into

6

negotiations over the terms and conditions of a potential consent to the assessment of a civil

money penalty.  As a result of those good-faith, arm's-length settlement discussions, the Parties

have reached the resolution embodied in the Consent Order.  The Debtors, in their sound

business judgment and in consultation with their advisors, concluded that entry into the Consent

Order is in the best interests of CPLV's estate and represents a fair and reasonable alternative to

a unilateral assessment by FinCEN of a civil money penalty, which could exceed $30 million

under the penalty provisions of the BSA, followed by potentially protracted litigation.  The

Debtors also vetted the Consent Order with their various creditor constituents prior to entry into

the Consent Order.

13.   The following is a summary of the key terms of the Consent Order:[2]

- *Civil Money Penalty*:  FinCEN has determined that grounds exist to assess a civil money penalty of $8 million against CPLV.  The penalty will be allowed as a general unsecured claim against CPLV, subject to the United States' rights of setoff or recoupment (if any, and subject to the Debtors' rights and defenses thereto), effective upon the Court's approval of the Consent Order.  In addition, CPLV consents to the assessment of the civil money penalty and admits to the facts stated in the Consent Order and that its conduct violated the BSA.

- *Undertakings*:  CPLV will undertake, or continue to undertake, a number of specific improvements to its BSA/AML Program and related recordkeeping and reporting requirements, including the following:

  o  <u>External Independent Reviewer</u>.  CPLV will engage and retain an independent, external, qualified, and experienced external auditor (the "<u>Third-Party Reviewer</u>"), not subject to any conflict of interest, and subject to FinCEN's determination of non-objection after FinCEN's review of the engagement contract, to examine Caesars' BSA compliance program and to conduct risk-based independent testing of Caesars' BSA/AML Program.[3]  The Third-Party Reviewer will commence its first

---

[2]   The summary of the Consent Order provided herein is qualified in its entirety by the Consent Order itself.  In the case of any inconsistency between this summary and the Consent Order, the Consent Order will govern.

[3]   Consistent with this undertaking, CPLV has engaged KPMG LLP to serve as its Third-Party Reviewer.  FinCEN has reviewed the terms of KPMG LLP's engagement letter with CPLV and has no objection to its employment for this purpose.  The Debtors believe that KPMG LLP's retention for this purpose is considered an "ordinary course" retention in this District,

review within 60 days of approval of the Consent Order, and annually thereafter for the next three years.  The Third-Party Reviewer will prepare written reports to the CEOC board of directors and the relevant audit committee with BSA governance responsibility for Caesars Palace.  The Third-Party Reviewer must also transmit those reports and all draft reports to FinCEN and the IRS SB/SE simultaneously with any transmission to CPLV or its agents.  To the extent that the report identifies any material deficiencies in Caesars' programs and procedures, Caesars will address and rectify the deficiencies as soon as is reasonably practicable and will advise FinCEN and IRS SB/SE of the remedial steps taken.

o   BSA/AML Program Report.  CPLV must submit comprehensive reports to FinCEN within 180 days of approval of the Consent Order, and annually thereafter for the next three years, documenting the implementation of its BSA/AML Program and detailing all initiatives to improve BSA compliance and any material breakdowns or deficiencies in internal controls, and management's responses and action plan to address any issues raised in the Third Party-Reviewer's report.  The report must also include:  the most recent AML risk assessment methodology and risk assessment; the status of BSA staffing and organization and governance initiatives; any revised policies and procedures, including with respect to any revised policies and procedures; and the quality assurance (compliance testing) program.

o   Training Plan.  Within 90 days of approval of the Consent Order, and annually thereafter for the next three years, CPLV must provide to FinCEN and IRS SB/SE:  a copy of its training program provided to employees; attendance records of all employees and officers who attended the program; and the results of any testing to ensure knowledge of BSA/AML Program, recordkeeping, and reporting requirements.

o   SAR Look-Back.  CPLV must conduct, or engage a third party to conduct, within 180 days of approval of the Consent Order, a review of all transactions conducted through CPLV branch offices in Asia and in Monterey Park, California, for the period of January 1, 2012, through December 31, 2014, consistent with the SAR regulations for casinos.  Based on the results of this review, CPLV will file SARs or amend previously filed SARs, as appropriate, consistent with the SAR regulations for casinos, and will advise FinCEN and IRS SB/SE of the filings.  Any third-party will be subject to FinCEN's determination of non-objection after FinCEN's review of the engagement contract.

---

because it does not involve the administration of the bankruptcy estate.  See, e.g., In re Renaissance Residential of Countryside, LLC, 423 B.R. 848, 856 (Bankr. N.D. Ill. 2010) (the key focus when determining if a professional requires retention under section 327 of the Bankruptcy Code is whether the employment involves administering or assisting with the administration of the case).  However, because KPMG LLP is already a retained professional in these chapter 11 cases, the Debtors are disclosing this additional representation out of an abundance of caution.

8

- ***Release*:** Execution of the Consent Order, upon it being effective, and compliance with the terms of the assessment and the Consent Order, settles all claims that FinCEN may have against CPLV for the conduct described in Section II of the Consent Order.

## Basis for Relief

14.     A court may authorize a debtor to enter into a settlement so long as it is a sound exercise of the debtor's business judgment. See 11 U.S.C. § 363(b); In re UAL Corp., 443 F.3d 565, 571 (7th Cir. 2006) (use under section 363 of the Bankruptcy Code must "[make] good business sense"); In re Schipper, 933 F.2d 513, 515 (7th Cir. 1991) (section 363 sale involves exercise of fiduciary duties and requires an "articulated business justification"); In re Olde Prairie Block Owners, LLC, 448 B.R. 482, 492 (Bankr. N.D. Ill. 2011) (same). Moreover, when applying the "business judgment" standard to a use of estate property under section 363, a debtor's judgment is "entitled to great judicial deference as long as a sound business reason is given." See In re Efoora, Inc., 472 B.R. 481, 488 (Bankr. N.D. Ill. 2012).

15.     Similarly, Bankruptcy Rule 9019(a) permits a bankruptcy court to approve a debtor's "compromise or settlement" after notice and a hearing, if such settlement is "fair and equitable and in the best interests of the bankruptcy estate." Depoister v. Mary M. Holloway Found., 36 F.3d 582, 586 (7th Cir. 1994); see also In re Energy Co-op., Inc., 886 F.2d 921, 927 (7th Cir. 1989) ("The benchmark for determining the propriety of a bankruptcy settlement is whether the settlement is in the best interests of the estate."). Settlements should be approved unless "the settlement 'falls below the lowest point in the range of reasonableness.'" In re Commercial Loan Corp., 316 B.R. 690, 698 (Bankr. N.D. Ill. 2004) (internal citations omitted). Settlements and compromises are favored in bankruptcy because they expedite case administration and reduce unnecessary administrative costs. See Fogel v. Zell, 221 F.3d 955, 960 (7th Cir. 2000). In determining whether a compromise is in the best interests of the estate, the Court must compare "the settlement's terms with the litigation's probable costs and probable

KE 37557361

benefits." LaSalle Nat'l Bank v. Holland (In re Am. Reserve Corp.), 841 F.2d 159, 161 (7th Cir.

1987).  Relevant factors a bankruptcy court should consider include "the litigation's probability

of success, its complexity, and its 'attendant expense, inconvenience and delay.'" Commercial

Loan, 316 B.R. at 697 (quoting Am. Reserve Corp., 841 F.2d at 161).

16.     Here, CPLV's entry into and performance under the Consent Order represents a

sound exercise of business judgment and is in the best interest of CPLV's estate.   The Consent

Order falls well within the range of reasonable litigation outcomes as to the issues encompassed

by the Consent Order and represents an efficient resolution of FinCEN's claim in a manner that

avoids costly litigation and potential disruption to CPLV's business operations and restructuring

efforts.

17.     First, failure to reach a consensual resolution with FinCEN would have exposed

CPLV to the risk of a unilateral assessment of penalties against CPLV on terms far less favorable

than those negotiated in the Consent Order.  In particular, pursuant to the penalty provisions of

the BSA, FinCEN could have assessed a civil penalty in excess of $30 million, significantly

greater than the $8 million penalty negotiated in the Consent Order.  FinCEN has also agreed to a

general unsecured claim rather than litigating over priority or dischargeability issues.  Moreover,

FinCEN could have imposed additional administrative compliance measures to those negotiated

in the Consent Order.  Instead, the resolution negotiated in the Consent Order appropriately

balances the remedial purpose of the Consent Order against the practical realities of CPLV's

ability to comply with its undertakings under the Consent Order in a reasonably efficient and

cost-effective manner.

18.     Second, entry into the Consent Order avoids costly and fact-intensive litigation

during a sensitive time in the Debtors' overall restructuring efforts.  In the absence of a Consent

Order, CPLV may have had to engage in protracted litigation with FinCEN over its BSA compliance. Litigation to resolve the issues between the Parties would be complex and likely necessitate extensive discovery and motion practice. Such litigation and the attendant uncertainty of outcome would come at a tremendous expense to the Debtors' estates and creditors, both in terms of cost of the litigation itself and the potential disruption to the Debtors' restructuring efforts.

19.     <u>Finally</u>, the Consent Order is in the best interests of the Debtors' estates, as it avoids the deleterious effect protracted litigation with the United States government may have on CPLV's business operations and compliance with the myriad regulatory requirements necessary to conduct its operations. More specifically, public litigation over BSA compliance could have unintended consequences potentially detrimental to the Debtors' ongoing business operations, including with respect to, among other things, regulatory compliance and customer perception. The Consent Order instead efficiently resolves FinCEN's issues with minimal disruption to CPLV's operations while also ensuring that CPLV will diligently comply with the BSA's requirements.

20.     For the reasons set forth herein, among others, the Debtors submit that the settlement embodied in the Consent Order represents an exercise of the Debtors' sound business judgment and should be approved.

### <u>Notice</u>

21.     The Debtors have provided notice of this Motion to the entities on the Service List (as defined in the Case Management Order and available on the Debtors' case website at https://cases.primeclerk.com/CEOC). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

11

WHEREFORE, the Debtors respectfully request entry of an order, substantially in the

form attached hereto as **Exhibit A**, granting the relief requested herein and granting such other

relief as is just and proper.

| | |
|---|---|
| Dated: September 30, 2015<br>Chicago, Illinois | */s/ David R. Seligman, P.C.*<br>James H.M. Sprayregen, P.C.<br>David R. Seligman, P.C.<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>300 North LaSalle<br>Chicago, Illinois 60654<br>Telephone:    (312) 862-2000<br>Facsimile:    (312) 862-2200 |

- and -

Paul M. Basta, P.C.
Nicole L. Greenblatt
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022-4611
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

*Counsel to the Debtors and Debtors in Possession*