**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>CAESARS ENTERTAINMENT OPERATING COMPANY, INC., et al.,[1]<br><br>       Debtors.<br><br>CAESARS ENTERTAINMENT OPERATING COMPANY, INC., et al.,<br><br>                          Movant,<br><br>    -against-<br><br>STATUTORY UNSECURED CLAIMHOLDERS' COMMITTEE,<br><br>                         Respondent. | Chapter 11<br><br>Case No. 15-01145 (ABG)<br><br>(Jointly Administered) |

**OBJECTION OF STATUTORY UNSECURED CLAIMHOLDERS' COMMITTEE**
**OF CAESARS ENTERTAINMENT OPERATING COMPANY, INC., *ET AL.***
**TO DEBTORS' MOTION TO SCHEDULE DISCLOSURE STATEMENT HEARING**

To the Honorable A. Benjamin Goldgar, United States Bankruptcy Judge:

      The statutory unsecured claimholders' committee (the "UCC") of Caesars Entertainment Operating Company, Inc., *et al.* (the "Debtors") respectfully submits this objection (the "Objection") to the *Debtors' Motion for Entry of an Order (A) Scheduling a Hearing on the Adequacy of the Debtors' Disclosure Statement, (B) Establishing the Deadline for Filing Objections to the Disclosure Statement and Replies Thereto, (C) Approving the Form and Manner of Notice of the Disclosure Statement Hearing, and (D) Granting Related Relief* [ECF No. 2532] (the "Motion"), and avers as follows:

---

[1] A complete list of the Debtors and the last four digits of their federal tax identification numbers may be obtained at https://cases.primeclerk.com/CEOC.

**Objection**

1.  <u>The UCC's Position</u>.  As the UCC understands the situation, there is no plausible scenario in which these chapter 11 cases will be ready for a disclosure statement hearing in late January.  Rather, to comply with their restructuring support agreement ("<u>RSA</u>") (which is not a court-approved agreement) and to procure the ability to bring on a disclosure statement hearing quickly, the Debtors want to schedule a disclosure statement hearing now that could then be adjourned from time to time.  That way, when the cases are ready, the Debtors may be able to schedule a disclosure statement hearing on shortened notice.

2.  In summary, the UCC submits the Motion should be denied because (a) as noted, the Debtors can request a disclosure statement hearing on shortened notice if that is appropriate when there is a plausible, confirmable plan, and (b) the first lien creditors being paid nearly in full under the RSA, and who, under the proposed plan, benefit as the Debtors' cash piles up over time, will be hard pressed to terminate the RSA and reject such plan treatment at any later date.  Conversely, if the Court is inclined to grant the Motion, the UCC requests that the Debtors be directed to provide all parties in interest immediately with all records of CEOC's Special Governance Committee's deliberations that enabled it to reach the conclusion that the currently proposed plan recovers from non-debtors a fair amount to compensate for all the transactions in which CEOC transferred value to them.  The Debtors represented from the outset of these cases that the Special Governance Committee was undertaking that analysis, *see Mem. in Support of Chapter 11 Pets.* at 38–39, ECF No. 4, though the UCC has, from the outset, maintained that the Special Governance Committee and its advisors did not provide CEOC with any independence with respect to CEOC's rights against CEC and its affiliates.

3.  The UCC does acknowledge that the Debtors are just now attempting to negotiate with the creditors who will actually suffer the lion's share of losses in these cases, but

2

while the UCC hopes to reach consensual resolutions as quickly as possible, so far there is no certainty of that outcome.

4. <u>Given the Number of Outstanding Contingencies, the Scheduling of a Disclosure Statement Hearing Now is Premature</u>. At the last omnibus hearing, this Court extended the Debtors' exclusivity period due to the "number of outstanding contingencies" that demand resolution before these chapter 11 cases can proceed at "a substantially faster pace. . . ." Oct. 21, 2015 Hr'g Tr. 5:21–23. To name just a few, material uncertainties exist in respect of: (i) the involuntary petition; (ii) the existence and treatment of 1111(b) deficiency claims at subsidiary Debtors; (iii) the pending challenges against liens encumbering substantial estate assets; (iv) the marketing process and auction of new equity in the reorganized Debtors; (v) the pending appeal related to the Debtors' request for a section 105(a) injunction of actions brought against non-debtor parent Caesars Entertainment Corporation ("<u>CEC</u>"), and the plan's release and discharge of non-debtors' liabilities; and (vi) the Examiner's report. Now that this Court and the District Court have refused to temporarily enjoin actions against CEC, the proposed plan's dependency on the discharge of non-debtors, which is a permanent injunction of the same actions, appears highly unlikely. With such material issues outstanding, this Court already has questioned the appropriateness of seeking approval of a disclosure statement in the short term. *See* Sept. 28, 2015 Hr'g Tr. 36:19–21 (The Court: "Are you ***actually*** expecting to have a disclosure statement hearing on or before December 15th?") (emphasis added).

5. <u>The Examiner's Investigation Has Been Hindered by Repeated Delays Inflicted by CEC and the Sponsors</u>. The Debtors contend this Court must move forward with a disclosure statement hearing in the week of January 25, 2016 so the Debtors can meet the Disclosure Statement Approval Milestone in the RSA embodied in the Debtors' proposed plan. *See* Motion ¶ 1. The Disclosure Statement Approval Milestone, which contemplated approval of

3

a disclosure statement by the earlier of February 15, 2016 or 60 days after the filing of the Examiner's final report, presumed the Examiner would have completed his investigation by December 15, 2015. *Examiner's Fifth Interim Report* ¶ 21, ECF No. 2535 ("In order to reach this milestone, the RSA contemplates that the Examiner will need to file his final report, if at all possible, sometime between November 15, 2015 or, at the latest, December 15, 2015."); *Motion* ¶ 2 ("[The Debtors] currently expect that the examiner will issue his report in December or sometime thereafter, but before the Debtors' requested Disclosure Statement Hearing.").

    6.  Not even twenty-four hours after the Debtors filed the Motion, the Examiner filed a status report again reiterating that continued delays in document production and witness interview scheduling on the part of CEC and its sponsors have rendered the Examiner unable to meet his expected delivery of a final report on December 15, 2015. *See Examiner's Fifth Interim Report* ¶ 16 ("As previously mentioned in the Prior Interim Reports, there was, and in some cases continues to be, substantial delay in the production of documents to the Examiner from certain key parties."); ¶ 22 ("[G]iven the delays in document production, the substantial volume of documents recently produced, and the repeated requests of the parties to reschedule interviews to later dates, the Final Report will not be filed on or before December 15, 2015.").[2]

---

[2] *See also Examiner's Third Interim Report* ¶ 17, ECF No. 2022 ("[C]ounsel to the Examiner [has] spent a substantial amount of time addressing issues relating to the decision by certain third parties to withhold documents on the basis of an assertion of privilege held by certain non-debtor entities (namely, the parent company, CEC)."); *Examiner's Fourth Interim Report* ¶ 17, ECF No. 2236 ("[T]here has been substantial delay in the production of documents to the Examiner from certain key parties."); ¶ 24 ("Given the delays in document production, the substantial volume of documents recently produced, and the repeated requests of the parties to reschedule interviews to later dates, meeting the current milestones will be, at best, very difficult."). Compounding this problem, entire document productions had been improperly wholesale designated "Examiner's Eyes Only," which prevents the UCC and other interested parties from reviewing the documents. Additionally, documents had been produced in such a manner that the Examiner had been unable to reproduce them in the Examiner's database, which delayed for many months the ability of the UCC to conduct its own review.

As the Examiner has not even been able to conclude his first round of witness interviews, it is wholly unrealistic to think he could deliver his final report by the Debtors' requested disclosure statement hearing in the week of January 25, 2016.

7. <u>The Debtors' Rush to Confirmation With a Premature Disclosure Statement Hearing Will Deprive Unsecured Claimholders of the Information Necessary to Evaluate the Plan</u>. The Debtors have long insisted these chapter 11 cases accelerate on an expedited track,[3] while simultaneously holding the creditors suffering losses at bay by means of the Examiner's investigation and protocols blocking depositions by statutory committees representing those impacted creditor constituencies. Now the Debtors want to push through a plan with the support of creditors being paid nearly in full, before, in the absence of a consensual plan, creditors taking losses can get the facts and request derivative standing to prosecute avoidance actions and negotiate arms' length settlements of substantial claims the Debtors not only refuse to pursue, but seek to release and settle for negligible value under their proposed plan.

8. As the linchpin of their strategy to prevent creditors from negotiating an arms' length resolution of the avoidance actions at issue, the Debtors created a purportedly independent Special Governance Committee of CEOC's board of directors ostensibly "charged with, among other things, conducting an independent investigation into potential claims that the

---

[3] *See* Oct. 16, 2015 Hr'g Tr. 133:22–23 (Debtors' Counsel: "Our interest is to go as fast as we can . . . ."); 133:24–25, 134:1 (The Court: ". . . there is a speed with which you go, and then there's the speed with which I go."); 134:3–7 (The Court: "I have been saying since I think we first met that people are setting deadlines for themselves in this case, and those deadlines aren't binding on me, and I can only do so much."); 134:10–13 (The Court: "So whatever private agreements there are between creditors and the debtor, those are one thing, and what I can do is something else."). The notion that creditors being paid nearly in full would not agree simply to extend the Disclosure Statement Approval Milestone for a period of time to allow the parties to make progress on the outstanding contingencies raises serious questions about their true motivations.

5

Debtors and/or their creditors may have against CEC or its affiliates, including claims that would eventually form the basis of filed creditor complaints." *Mem. in Supp. of Chapter 11 Pets.* at 8, ECF No. 4. Despite the assertion that CEOC's board of directors created the Special Governance Committee for this purpose, CEOC soon filed a complaint in New York seeking to declare as lawful the Controversial Transactions that became the subject of numerous CEOC creditor lawsuits and to extinguish CEOC's claims against CEC. *See* Compl., *Caesars Entm't Operating Co., Inc. v. Appaloosa Inv. Ltd. P'Ship I*, No. 652392/2014 (N.Y. Sup. Ct. Aug. 5, 2014); Am. Compl., *Caesars Entm't Operating Co., Inc. v. Appaloosa Inv. Ltd. P'ship I*, No. 652392/2014 (N.Y. Sup. Ct. Sept. 15, 2014). CEOC did this even though the relief sought would benefit CEC to the detriment of CEOC's creditors. With the same sponsors controlling CEOC and CEC, the Special Governance Committee could only masquerade as independent and blessed a unilateral and unfair "settlement" now being imposed on unsecured claimholders by the Debtors.

9. This leaves unsecured claimholders to vote on a plan that proposes to discharge non-debtors' debts and release the Debtors' sponsors from all liability for claims "settled" by a sham Special Governance Committee while having deprived unsecured claimholders of the information necessary to effectively evaluate the plan and negotiate a fair settlement. *See Debtors' First Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* at 5, 23, 61, ECF No. 2402 (". . . the Releasing Parties . . . conclusively, absolutely, unconditionally, irrevocably, and forever discharge and release . . . the Released Parties [including CEC and the sponsors] . . . ."). For all of these reasons, the Court should not schedule a disclosure statement hearing now.

10. In the event the Court determines to proceed with the scheduling of a disclosure statement hearing at this premature stage of these chapter 11 cases, it should condition

the schedule on (i) the Debtors' agreement to provide all parties in interest with any reports and other records produced by the Special Governance Committee as part of its investigation and all other discovery necessary to evaluate the Debtors' plan, and (ii) deadlines reasonable for all parties.  For example, the UCC notes the Motion improperly reduces the minimum disclosure statement objection period set forth in Bankruptcy Rule 2002(b) to just fourteen days.

WHEREFORE the UCC respectfully requests the Court to (a) deny the Motion, or (b) if the Court schedules a disclosure statement hearing, order the Debtors to provide all parties in interest with the discovery described in paragraph 2 herein, and (c) grant the UCC such other and further relief as it deems just and proper.

Dated: November 10, 2015  
Chicago, Illinois

By: /s/  *Paul V. Possinger*  
One of its attorneys

Martin J. Bienenstock (*admitted pro hac vice*)  
Judy G.Z. Liu (*admitted pro hac vice*)  
Philip M. Abelson (*admitted pro hac vice*)  
Vincent Indelicato (*admitted pro hac vice*)  
PROSKAUER ROSE LLP  
Eleven Times Square  
New York, New York 10036  
Tel: (212) 969-3000  
Fax: (212) 969-2900

-and-

Jeff J. Marwil (IL #6194054)  
Mark K. Thomas (IL #6181453)  
Paul V. Possinger (IL #6216704)  
Brandon W. Levitan (IL #6303819)  
PROSKAUER ROSE LLP  
70 W. Madison St.  
Chicago, Illinois 60602-4342  
Tel:  (312) 962-3550  
Fax:  (312) 962-3551

*Attorneys for the Statutory Unsecured Claimholders' Committee of Caesars Entertainment Operating Company, Inc., et al.*