**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>CAESARS ENTERTAINMENT<br>OPERATING COMPANY, INC.[1]<br><br>            Debtors. | Chapter 11<br><br>Case No. 15-01145 (ABG) |

**DEBTORS' OBJECTION TO MOTION OF THE OFFICIAL COMMITTEE OF
SECOND PRIORITY NOTEHOLDERS TO RECONSIDER ORDER GRANTING
DEBTORS' APPLICATION FOR RETENTION OF KIRKLAND & ELLIS LLP**

The Committee's entire motion rests on the premise that K&E gave "incomplete and misleading" testimony at the retention hearing. The Committee is wrong. K&E partner James Sprayregen testified truthfully, accurately and completely in all respects. The Committee does not even cite, let alone attempt to meet, the rigorous three-part test for setting aside a judgment under Federal Rule of Civil Procedure 60(b)(3). That is because it cannot meet even one of the three independent requirements.

First, K&E did not provide incomplete or misleading testimony at the retention hearing or engage in any "fraud" or "misconduct"—let alone the type necessary to set aside a judgment. Mr. Sprayregen's testimony was, and is, entirely truthful and accurate. Second, K&E did nothing to prevent the Committee from fairly presenting its case. The Committee knew before trial that K&E provided advice to the CEOC independent directors about the New York Action, knew that those independent directors abstained from the CEOC board vote on filing the lawsuit, and knew that the New York Action was filed two days after the CEOC board meeting. Yet, the

---

[1] A complete list of the Debtors is available at https://cases.primeclerk.com/CEOC.

Committee never requested the board minutes in discovery or questioned Mr. Sprayregen at trial about K&E's role at the board meeting or K&E's advice to the CEOC independent directors. Had the Committee asked these questions, the answers would have confirmed Mr. Sprayregen's testimony, and further established K&E's disinterestedness. Rule 60 is not designed to permit a second bite at the trial apple for discovery that was never requested, questions that were never asked, and answers that were never given.

Finally, the Committee has not and cannot establish that its challenge to K&E's disinterestedness has merit. K&E recognizes that it has an ongoing obligation to remain disinterested. As the Court previously found, on the question of disinterestedness, actions speak louder than words. K&E's actions—including leading a rigorous investigation that found CEOC's parent engaged in certain voidable transfers, requiring a contribution of at least $1.5 billion from CEC before proposing a plan of reorganization, and moving for the appointment of an independent examiner—confirm its disinterestedness and lack of bias. The Court's findings and decision, based on a careful review of K&E's conduct, remain unimpeachable. It is (once again) time to close this chapter and allow the Debtors and their chosen counsel to continue the important and difficult task of reorganizing the Debtors to maximize the value of the Debtors' assets. For the reasons set forth below, the Debtors respectfully request that the Court deny the Committee's motion for reconsideration at the November 18 hearing.

## BACKGROUND

In late June 2014, the CEOC board appointed two independent directors, Steven Winograd and Ronen Stauber. (Apr. 23, 2015 Hr'g Tr. at 21:11-13)[2] On July 3, 2014, the

---

[2] The facts set forth herein are based on evidence at the retention hearing and documents attached to briefs on the Committee's motion. Because this record, relied on by the Committee, does not begin to raise a valid basis to set aside the Court's judgment that K&E is disinterested, the motion should be denied without further discovery or briefing.

2

independent directors selected K&E as CEOC's restructuring counsel. (5/28/15 Order Granting Retention Appl. [Dkt. No. 1713] ("Order") at 3)  Based on advice from K&E, the CEOC board promptly formed a Governance Committee, which consisted of the two CEOC independent directors, that was charged with representing CEOC's interests on any issues where CEOC had a potential conflict with its parent, Caesars Entertainment Corporation ("CEC"), or any of its affiliates. (*Id.* at 6; Apr. 23, 2015 Hr'g Tr. at 87:5-9)  The Governance Committee also promptly began an investigation into certain transactions through which CEOC had transferred significant assets to CEC or its affiliates (the "Disputed Transactions"). (Order at 6; Apr. 23, 2015 Hr'g Tr. at 71:12-20)  K&E led the investigation and retained Professor Jack Williams, who previously has served as an examiner and as a financial advisor to the examiner in prominent chapter 11 cases, to serve as an independent financial advisor. (*Id.*; Apr. 23, 2015 Hr'g Tr. at 71:21-72:23)

Before CEOC had appointed the independent directors to the board or retained K&E, certain noteholders had sent notices of default to CEOC related to the Disputed Transactions. (Comm. Ex. 36 at 5-7; Comm. Ex. 90 at 14)  CEOC and the noteholders had agreed to a standstill until early August with respect to the notices of default. (*See* Mot. Ex. I at 12)  As the end of the standstill approached, it appeared the noteholders would sue CEC and CEOC imminently. (Mot. Ex. K)  Accordingly, a New York law firm, Friedman Kaplan, drafted a declaratory judgment action that would allow CEC and CEOC to litigate issues related to the alleged defaults in New York state court instead of the noteholders' chosen venue. (*See* Comm. Ex. 36)  The action sought declarations that CEOC had not defaulted under its bond indentures and CEC and CEOC had not breached any fiduciary duties or engaged in fraudulent transfers related to the Disputed Transactions (the "New York Action"). (*Id.*)  K&E was not counsel of record for CEOC in the New York Action. (Order at 7)

3

On Sunday, August 3, 2014, the CEC board held a telephonic meeting during which it authorized the filing of the New York Action. (Mot. Ex. I at 11) Later that day, the CEOC board—which consisted of the same CEC board members who earlier that day had approved the filing on behalf of CEC and the two CEOC independent directors—held a 13-minute telephonic meeting to vote on whether CEOC likewise should approve the filing of the New York Action. (*Id.* at 11-13; Order at 3; Comm. Ex. 71) At the time, the independent directors and K&E were new to CEOC, and had just begun an investigation into the Disputed Transactions. (Apr. 23, 2015 Hr'g Tr. at 71:12-15, 72:24-73:10; Order at 3, 6)

Four K&E restructuring lawyers attended the August 3rd telephonic CEOC board meeting: Paul Basta, Nicole Greenblatt, David Seligman and James Sprayregen. (Mot. Ex. I at 11) The K&E litigators working with the Governance Committee on the investigation did not attend. (*See id.*) During the call, the CEOC board discussed whether it made sense for CEOC to file a declaratory judgment action preemptively in New York or wait to be sued in the noteholders' preferred forum. (Mot. Ex. K) One of the CEOC independent directors, Mr. Winograd, asked whether CEOC faced additional or incremental risks by commencing an action rather than waiting to be sued. (*Id.*) One of the K&E restructuring lawyers on the call (not Mr. Sprayregen) responded that because the noteholders were likely to sue CEOC imminently, K&E did not think there were any additional or incremental claims that could arise as a result of CEOC initiating the lawsuit instead of waiting to be sued; to the extent there were any such claims, they would be manageable. (*Id.*; Apr. 23, 2015 Hr'g Tr. at 198:6-199:13)

K&E had concerns about the relief sought in the New York Action. (*See* Ex. 1, J. Sprayregen Dep. Tr. at 146:10-21) Because the CEOC independent directors and K&E were just beginning an investigation into potential claims against CEC, including those addressed in the

4

declaratory relief sought in the New York Action, the CEOC independent directors abstained from the decision whether to file the lawsuit.  (Mot. Ex. I at 11; Apr. 23, 2015 Hr'g Tr. at 71:12-15, 72:24-73:10, 200:11-21; Order at 3, 6)  During the 13-minute call, neither the CEOC independent directors nor K&E opined in any way on the merits of the underlying fraudulent transfer or fiduciary duty claims.  (Mot. Ex. K)  With the two independent directors abstaining, the remaining members of the CEOC board authorized the filing of the New York Action—just as they had done moments earlier as CEC directors.  (Mot. Ex. I at 11-13)

As suspected, the noteholder suit was imminent.  On August 4, 2014, Jones Day filed a lawsuit against CEC and CEOC in Delaware Chancery Court asserting claims related to the Disputed Transactions.  (Mot. at 5 n.2)  The next day, Friedman Kaplan filed its declaratory judgment complaint on behalf of CEC and CEOC in New York state court.  (Comm. Ex. 36)  Through discovery in the Delaware action, CEC produced the August 3rd CEOC board minutes to Jones Day in May 2015.  (Mot. at 5 n.2)  Jones Day received a second copy of those minutes when CEC produced them to the Examiner in July 2015.  (*Id.*)  At the time, K&E believed that the minutes were privileged as counsel was not aware that they had been provided to CEOC's auditor.  (*Id.* at 9)  Although believing that only the Examiner would receive copies of them and they would not be used in any of the ongoing chapter 11 litigation because they were privileged, K&E nonetheless proposed revisions to the August 3rd minutes in mid-May 2015 to ensure that CEOC's internal corporate records were accurate by correcting who attended the meeting, and clarifying the advice that K&E provided and why the independent directors abstained.  (*Id.* at 8-9; Mot. Ex. K)  The CEOC board unanimously approved the modified minutes on June 10, 2015.  (Mot. Ex. I)  When K&E learned the minutes had been provided to CEOC's auditors, it also

5

promptly produced both versions of the August 3rd minutes to Jones Day for use in connection with the involuntary trial. (Mot. at 8 n.4, 9)

Shortly after filing their voluntary chapter 11 petitions, the Debtors filed an application to retain K&E as Debtors' counsel. (Order at 8) Only the Committee objected. (*Id.*) The Committee's original objection did not reference the New York Action. (*Id.*; *see also* Obj. of Comm. to K&E's Employment Appl. [Dkt. 464]) Its pretrial brief scarcely referenced it, noting only that the New York Action remained pending and K&E had not taken "any steps" to cause CEOC to withdraw it.[3] (Comm.'s Pretrial Br., ¶¶ 11-12) At the retention hearing, Mr. Sprayregen testified that K&E was not counsel to CEOC in the New York Action and the two independent directors abstained from the vote of the CEOC board on whether to approve the filing of the lawsuit. (Apr. 23, 2015 Hr'g Tr. at 86:5-22) On cross examination, Mr. Sprayregen also testified that he attended the August 3rd telephonic board meeting at which the issue of whether to file the New York Action was raised to the CEOC board. (*Id.* at 198:23-199:13) But the Committee's counsel did not inquire further regarding K&E's role at the board meeting.

On May 28, 2015, the Court entered an order approving the Debtors' application to retain K&E. The Court found that the Committee "did not present evidence demonstrating that Kirkland has a bias against the estates" including through CEOC's filing of the New York Action. (Order at 15, 17) Approximately five months after the order was entered (and its counsel first received a copy of the August 3rd minutes), the Committee filed its motion on October 21, 2015 asking the Court to reconsider its order approving K&E's retention.

---

[3] After the retention trial, the Governance Committee, based on the results of its investigation to date, voted to dismiss CEOC's claims in the New York Action on the grounds that certain of the claims against CEC "likely have merit." (Ex. 2) K&E became counsel of record for CEOC in June 2015 solely to secure the dismissal of the New York Action.

6

## **DISCUSSION**

I. **The Committee Bears a Heavy Burden of Proving that K&E Procured the Retention Order Through Fraud, Misrepresentation or Misconduct.**

The premise of the Committee's motion—that K&E engaged in false or misleading conduct at the retention hearing—is wrong. K&E testified truthfully, accurately and completely. The Committee does not meet any prong of the three-part test for setting aside a judgment.

Rule 60(b) allows a court to relieve a party from a final judgment or order based on fraud, misrepresentation, or misconduct by an opposing party. Fed. R. Civ. P. 60(b)(3).[4] Relief under Rule 60(b) is "an extraordinary remedy" that "is granted only in exceptional circumstances." *Dickerson v. Board of Educ.*, 32 F.3d 1114, 1116 (7th Cir. 1994); *Mares v. Busby*, 34 F.3d 533, 535 (7th Cir. 1994). This reflects the federal court system's strong preference for finality. *Margoles v. Johns,* 798 F.2d 1069, 1072 (7th Cir. 1986).

The Committee does not cite—much less attempt to satisfy—the standard that courts in the Seventh Circuit use to determine whether to set aside a judgment under Rule 60(b)(3). To succeed on such a motion, a party must show that it had [i] "a meritorious claim that [ii] [it] was prevented from 'fully and fairly presenting' at trial [iii] as a result of the adverse party's fraud, misrepresentation, or misconduct." *Wickens v. Shell Oil Co.*, 620 F.3d 747, 758–59 (7th Cir. 2010); *see also Lonsdorf v. Seefeldt,* 47 F.3d 893, 897 (7th Cir. 1995). Courts in the Seventh

---

[4] Tellingly, the Committee nowhere sets out the legal standard for its motion. The Committee appears to proceed under 60(b)(3)—the only subsection of Rule 60 that it references—and it cites *Lonsdorf*, which analyzed a 60(b)(3) claim. (Mot. at 10) But it hints that there may be some other unspecified bases for its motion. It cannot obtain relief under Rule 60(b)(2), which permits reconsideration only where there is "newly discovery evidence that, with reasonable diligence, could not have been discovered . . . ." Fed. R. Civ. P. 60(b)(2); *Mumford v. Bowen*, 814 F.2d 328, 329-30 (7th Cir. 1986). As discussed below, the Committee never requested through discovery the minutes that it refers to as "newly discovered evidence." The Committee likewise briefly references the Court's inherent power, but concedes that the "inherent power of the bankruptcy courts is expressed, among other places, in Federal Rule of Civil Procedure 60(b)." (Mot. at 10)

Circuit often focus on the second and third prongs, since a failure to meet these requires denial of the motion without reaching the merits of the movant's claim. *Provid. Sav. Bank v. Popovich,* 71 F.3d 696, 699 (7th Cir. 1995). As set forth below, the Committee cannot satisfy any part of the Seventh Circuit's three-part inquiry.

## II.     K&E Did Not Engage in Fraud, Misrepresentation, or Misconduct.

The Committee bases its entire argument to set aside the Court's judgment on brief testimony that Mr. Sprayregen provided at the retention hearing regarding the New York Action. The Committee does not contend that Mr. Sprayregen's testimony was actually false or that K&E procured the retention order by fraud. Instead, it argues, based on the August 3rd minutes, that Mr. Sprayregen's testimony was "incomplete and misleading."[5]  (Mot. at 1, 5, 15)

Mr. Sprayregen's testimony was, and is, entirely truthful, accurate and complete. At the retention hearing, he testified as follows regarding the New York Action:

- Mr. Sprayregen attended a telephonic CEOC board meeting where the "subject of filing this lawsuit was raised to the board." (Apr. 23, 2015 Hr'g Tr. at 198:23-199:8)

- The two independent board members forming the Governance Committee, who had recently begun an investigation with K&E into the Disputed Transactions, abstained from the vote on whether to file the New York Action. (*Id.* at 199:6-13; 200:11-17; *accord id.* 85:19-86:19)

- "K&E did not represent [CEOC] in the [New York Action]." (*Id.* at 200:5-10; *accord* 86:20-22; 196:10-14)

---

[5] Even if Mr. Sprayregen's testimony had somehow been "incomplete and misleading" (which it was not), that would not constitute the kind of fraud, misrepresentation or misconduct necessary to set aside a judgment. *Taylor v. Texgas Corp.*, 831 F.2d 255, 259–60 (11th Cir. 1987); *Harduvel v. Gen. Dynamics Corp.*, 801 F. Supp. 597, 610 n.24 (M.D. Fla. 1992); *Metlyn Realty Corp. v. Esmark, Inc.*, 763 F.2d 826, 834 (7th Cir. 1985). Indeed, it is the role of cross-examination to expose an adversary's allegedly "incomplete or misleading testimony." *Paige v. Sandbulte*, 917 F.2d 1108, 1111 (8th Cir. 1999); *E.F. Hutton & Co. v. Berns*, 757 F.2d 215, 217 (8th Cir. 1985); *Kubsch v. Neal*, 800 F.3d 783, 801 (7th Cir. 2015).

8

The Committee does not challenge the truthfulness of Mr. Sprayregen's testimony or offer any contrary evidence. Instead, the Committee argues that Mr. Sprayregen's testimony was misleading because he failed to volunteer advice that K&E gave at the board meeting. In particular, the Committee focuses on advice that K&E provided in response to a question from an abstaining, newly-appointed independent director of the CEOC board regarding whether the act of filing the New York Action in CEOC's preferred venue of New York state court (rather than waiting to get sued by noteholders elsewhere) created additional risks to CEOC. (Mot. Ex. K) Both the question, and the advice, had nothing to do with the merits of any fraudulent transfer or fiduciary duty claims and, therefore, could not suggest a purported K&E bias against the estates, as the Committee now claims. Mr. Sprayregen, however, did not testify about those discussions during the retention hearing because the Committee never asked about them. (*See* Apr. 23, 2015 Hr'g Tr. at 195:6-201:7)

The Committee now feigns surprise at this purportedly newly-discovered evidence. But its counsel's failure to ask about these issues was not the result of ignorance or K&E misdirection. On the contrary, the Committee was well aware at the time of trial that K&E had discussions with the CEOC board regarding the New York Action. At his deposition, Mr. Sprayregen testified that:

- Other K&E lawyers communicated with CEOC about the New York Action and the relief requested in that action. (Ex. 1 at 145:21-146:9)

- K&E had conversations with the CEOC independent directors about the New York Action, and the independent directors then abstained from the CEOC board's vote on initiating that lawsuit. (*Id.* at 149:12-150:24)

- Mr. Sprayregen had knowledge regarding K&E expressing "concerns" to CEOC about the New York Action. (*Id.* at 146:10-21)

In fact, Committee counsel attempted to explore the substance of communications among K&E and either CEOC or its independent directors at the deposition. CEOC counsel objected to

9

certain of those questions as privileged and instructed Mr. Sprayregen not to testify about the substance of K&E's advice on these topics. (*Id.* at 147:21-148:3; 148:13-20; 149:25-150:24) Of course, Committee counsel was free to challenge those instructions if they thought the instructions were improper. But counsel never did.

Thus, as of the hearing, Committee counsel knew that K&E attended the CEOC board meeting where the non-independent CEOC directors voted to file the New York Action, advised the CEOC independent directors regarding the lawsuit, and expressed concerns to and had other communications with CEOC about the lawsuit. The Committee also marked an interrogatory response as a trial exhibit that identified the August 3rd CEOC board meeting (Comm. Ex. 71), and its lead counsel argued in closing based on that exhibit that K&E attended the board meeting but failed to stop CEOC from filing the lawsuit. (Apr. 24, 2015 Hr'g Tr. at 419:6-23)

Yet, during trial, Committee counsel never inquired about any communications at the board meeting between K&E and any CEOC directors. Knowing that K&E had expressed concerns regarding the New York Action, this omission may have been a tactical decision by counsel to avoid creating further evidence of K&E's disinterestedness. In any event, had the Committee's counsel chosen to explore the issue further, and had the Court permitted the testimony over a likely privilege objection, the Committee would have learned what Mr. Winograd subsequently testified to in his deposition: at the board meeting, a K&E lawyer honestly answered Mr. Winograd's question about whether filing the New York Action exposed CEOC to additional risk, but neither the independent directors nor K&E ever opined in any way on the merits of the underlying claims in the New York Action. Indeed, because the independent directors and K&E were just beginning their investigation, neither was in a position to do so.

(Mot. Ex. K; Order at 6)  Such evidence, had the Committee chosen to elicit it, does not even begin to suggest that K&E is biased against the estates.

Not surprisingly, courts do not allow parties to remedy their failures or tactical decisions at trial through a Rule 60(b) motion.  *Plattner v. Strick Corp.*, 102 F.R.D. 612, 616 (N.D. Ill. 1984) (Rule 60(b)(3) does not allow a party "to remedy its own lack of preparation in failing to obtain the [evidence] prior to or during the course of the trial."); *Jackson v. City of Pittsburgh*, 2011 WL 3443951, at *32 (W.D. Pa. Aug. 8, 2011) (same); *Chevron Corp. v. E-Tech Int'l*, 2011 WL 1898908, at *7 (S.D. Cal. May 19, 2011) ("Losing the battle of persuasion the first time around does not give rise to a second bite at the apple in the form of a Rule 60(b)(3) motion…."); *Prymula v. N. Trust Co.*, 1995 WL 276037, at *1 (N.D. Ill. May 9, 1995) (same).  Accordingly, the Committee cannot overturn the Court's order approving K&E's retention—which is supported by entirely truthful testimony—on the grounds that Mr. Sprayregen never testified at trial on issues about which the Committee's counsel never asked him.

### III. K&E Did Not Prevent the Committee From Presenting its Case.

The Committee likewise was not "prevented from fully and fairly presenting [its case] at trial."  *Wickens*, 620 F.3d at 758–59.  It does not even attempt to meet this standard.  Nor could it.  The Committee bases its entire argument on the August 3rd minutes.  (Mot. at 1, 5-6, 11-14)  Yet, despite knowing that K&E advised the CEOC independent directors about the New York Action, and knowing that the independent directors then abstained from the CEOC board vote on whether to file the action, the Committee never requested the minutes in discovery.  This failure is also fatal to the Committee's request for relief under Rule 60(b)(3).  *Ross v. Corp. of Mercer Univ.*, 2007 WL 1521605, at *4 (M.D. Ga. May 23, 2007) ("A party who fails to take advantage

of discovery opportunities to determine relevant facts … cannot cry foul afterwards in the form of a Rule 60(b)(3) motion and expect to be rewarded for her shortcomings.").

Recognizing this fundamental flaw, the Committee now claims that the board minutes were responsive to two of its document requests. But those requests sought "All Documents Concerning any Conflicts between Your work for the Special Governance Committee and Your work for any other Person…," and "All Documents Concerning any Conflicts between Your work for the [sic] CEOC and Your work for any other Person…." (Mot. Ex. H, Am. Doc. Requests 10-11) Had the Committee actually wanted CEOC board minutes, there was a simple way to draft that request: "Produce all CEOC board minutes relating to the New York Action." It never did. In any event, K&E objected to these two "conflict" requests on the grounds that there were no conflicts between K&E's work for the Governance Committee or CEOC and its work for anyone else. (Ex. 3, K&E's Obj. and Resp. to Committee's Doc. Requests, Nos. 10-11) The Committee did not pursue either request further.

It is not surprising that the Committee never requested the CEOC board minutes approving the New York Action. As this Court observed, the New York Action was largely an afterthought in the Committee's ever-shifting theories as to why K&E should be disqualified. (Order at 8) The Committee's original objection did not reference the New York Action. (*Id*.; *see also* Obj. of Comm. to K&E's Employment Appl. [Dkt. 464]) Its pretrial brief devoted a scant two paragraphs to the lawsuit, noting only that the NY Action remained pending and K&E had not taken "any steps" to cause CEOC to withdraw it.[6] (Comm.'s Pretrial Br., ¶¶ 11-12) The testimony at trial was similarly fleeting. In fact, it was not until the Committee's closing

---

[6] Under the pretrial order, "[a]ny legal claim, theory, or argument not raised and thoroughly discussed in a party's trial brief with appropriate citations to legal authority will be deemed forfeited." Given the Committee's limited treatment of its theory before trial, it also waived its argument that K&E was biased due to the New York Action.

12

argument that the New York Action became a "super-important fact" purportedly demonstrating K&E's lack of disinterestedness. (Order at 14-15)

In short, K&E did not engage in any misconduct that prevented the Committee from fully presenting its case.[7]  For this reason as well, the Committee's motion fails as a matter of law.

## IV.    The Committee Has Not Shown It Possessed a Meritorious Claim.

The motion separately fails because the Committee's challenge to K&E's disinterestedness was and remains meritless.  *Wickens*, 620 F.3d at 758–59.

### A.  The August Board Minutes Do Not Undermine K&E's Disinterestedness.

The Committee repeatedly mischaracterizes the minutes upon which it so heavily relies. In connection with the involuntary trial, the Committee's counsel requested that one of CEOC's independent directors, Mr. Winograd, respond to a written deposition question regarding the August 3rd board minutes. (Mot. Ex. K)  Mr. Winograd's response, which he provided under oath before the Committee filed this motion, explains that:

- The August 3rd minutes were "subsequently modified" because the discussion of K&E's advice in the original minutes was "confusing and ambiguous as drafted" and the reasons that the CEOC independent directors abstained from voting on whether to initiate the lawsuit "were not stated as completely as they could have been." (*Id.*)

- The original August 3rd minutes also erroneously indicated that Mr. Sprayregen was the only attendee from K&E. In fact, there were four K&E attendees. (*Compare* Mot. Ex. G *with* Mot. Ex. I)

- Because the two CEOC independent directors along with "CEOC's restructuring counsel, Kirkland & Ellis, were just beginning an investigation into issues related to the underlying fraudulent transfer and fiduciary duty claims, [the independent directors] abstained from the decision to file the suit." (Mot. Ex. K)

- At the August 3rd meeting, Mr. Winograd asked whether "CEOC faced additional or incremental risks by commencing the action in New York … instead of waiting for the noteholders to sue CEOC."  It was only in response to this question that another

---

[7]  The Committee also fails to explain why it waited until October to bring the motion. Jones Day admits it has had a copy of the August 3rd minutes since May 2015. (Mot. at 5 n.2)

13

        lawyer from K&E—not Mr. Sprayregen as the original minutes had erroneously indicated—responded that "counsel was of the opinion that such a suit by the noteholders was highly likely and imminent and, given this, they could not think of any additional or incremental claims that could arise as a result of CEOC taking affirmative steps to bring the action vs. waiting for the noteholders to sue and, to the extent such additional or incremental claims arose, they would be manageable." (*Id.*)

- Significantly, Mr. Winograd made clear that "[m]y recollection is that neither the members of the Governance Committee nor K&E opined on the merits of the underlying fraudulent transfer or fiduciary duty claims." (*Id.*)

This is what the Committee would have learned had its counsel elected to ask at trial about K&E's role at the August 3rd board meeting. It is fully consistent with Mr. Sprayregen's testimony, and it in no way shows a K&E bias against the estate or any class of creditors.

     In place of evidence, the Committee stacks false inference upon false inference in its quest to relitigate K&E's disinterestedness. For example, neither Mr. Sprayregen nor any other K&E lawyer needed to "form[] a view on the merits of the potential claims for fraudulent transfer and breach of fiduciary duty" (Mot. at 12) to answer Mr. Winograd's narrow question. Indeed, at that time neither K&E nor the Governance Committee had formed any view on the merits of the Disputed Transactions or the New York Action. (Apr. 23, 2015 Hr'g Tr. at 85:21-86:12; Mot. Ex K) Accordingly, neither K&E nor the CEOC independent directors took a position on either issue. Moreover, neither the CEOC independent directors nor K&E had any ability to stop the CEOC board, dominated by representatives of Apollo, TPG and CEC, from initiating the action on behalf of CEC and CEOC. Indeed, as the minutes reflect, the non-independent directors from Apollo, TPG and CEC, who had just voted at a CEC board meeting to authorize CEC to bring the New York Action, voted moments later wearing their CEOC board hats for CEOC to join the suit. (Mot. Ex. I) As this Court previously recognized, the Committee's arguments regarding the New York Action always were of slight probative value. (Order at 16) They remain so.

14

### B. The Court's Findings, Based on K&E's Conduct, Remain Correct and Demonstrate that K&E is Disinterested.

In concluding that the Committee failed to meet its burden of proving that K&E was not disinterested, the Court followed the old maxim that actions speak louder than words. (*Id.*) As the Court found, K&E's actions demonstrated its disinterestedness, including by commencing the investigation, retaining highly qualified independent financial experts to evaluate the Disputed Transactions, conducting an extensive investigation, concluding that the estate had valid claims arising out of certain of those transactions, negotiating a substantial contribution from CEC that forms the basis for Debtors' proposed plan, and seeking the appointment of an independent examiner. (*Id.*) And, despite K&E's philosophy that a consensual restructuring best maximizes the value of the estate for all creditors, K&E remains ready, willing, and able to sue CEC, its sponsors and their principals to recover the transferred assets should a consensual plan prove unworkable. (Apr. 23, 2015 Hr'g Tr. at 68:22-69:9, 69:23-70:20)

In short, despite the Committee's ever-shifting theories, the Court's findings that K&E is disinterested remain unimpeachable, and the Committee's latest attack on K&E offers no evidence to the contrary. Because its challenge to K&E's disinterestedness lacks merit, the Committee's motion fails for this reason as well.[8]

### CONCLUSION

For the foregoing reasons, the Committee's motion should be denied.

---

[8] The Committee vaguely suggests in passing that K&E failed to disclose matters affecting its disinterestedness. (Mot. at 11-12) K&E agrees that a professional employed by the estate has an ongoing obligation to disclose any connections or conflicts that later arise. *In re Gluth Bros. Const., Inc.*, 459 B.R. 351, 364 (Bankr. N.D. Ill. 2011). K&E has done that on an ongoing basis, including by fully disclosing any potential connections or conflicts with CEC and its sponsors. The fact that K&E attended the August 3rd CEOC board meeting and discussed procedural issues related to the New York Action in its role as CEOC's restructuring counsel does not give rise to a conflict.

| | |
|---|---|
| Dated: November 10, 2015<br>Chicago, Illinois | */s/ David J. Zott, P.C.*<br>James H.M. Sprayregen, P.C.<br>David R. Seligman, P.C.<br>David J. Zott, P.C.<br>Jeffrey J. Zeiger, P.C.<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>300 North LaSalle<br>Chicago, Illinois 60654<br>Telephone: (312) 862-2000<br>Facsimile: (312) 862-2200<br><br>- and -<br><br>Paul M. Basta, P.C. (admitted *pro hac vice*)<br>Nicole L. Greenblatt (admitted *pro hac vice*)<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>601 Lexington Avenue<br>New York, New York 10022-4611<br>Telephone: (212) 446-4800<br>Facsimile: (212) 446-4900<br><br>*Counsel to Debtors and Debtors in Possession* |