**Exhibit B**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CAESARS ENTERTAINMENT | ) | No. 15 B 1145 |
| OPERATING CO., INC., *et al.*, | ) | (Jointly administered) |
| | ) | |
| Debtors. | ) | Judge Goldgar |

## MEMORANDUM OPINION

Before the court for ruling are two motions of debtors Caesars Entertainment Operating Co., Inc. ("CEOC") and some of its subsidiaries to enforce the automatic stay against the Board of Trustees of the National Retirement Fund and the National Retirement Fund itself (collectively, the "NRF"). The NRF is a pension fund that sponsors a plan in which five Caesars companies were participating employers. The first motion asserts the NRF violated the stay when it expelled the five Caesars employers from the plan. The second motion charges the NRF with violating the stay again when it sent two other Caesars companies a notice and demand for payment of the withdrawal liability. The debtors want both the expulsion and the notice and payment demand declared void.

For the reasons set forth below, the motions will be denied.

### 1. Jurisdiction

The court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1334(a) and the district court's Internal Operating Procedure 15(a). A motion to enforce the automatic stay is a core proceeding under 28 U.S.C. § 157(b)(2). *Johnson v. Smith*, 575 F.3d 1079, 1083 (10th Cir. 2009); *In re Williams*, 474 B.R. 604, 605 (Bankr. N.D. Ill. 2012).

## 2. Background

The facts are taken from the parties' papers, the exhibits to the declarations of Stephen Hackney (one in Case No. 15 B 1145 and another in Adversary Proceeding No. 15 A 131), the exhibits to the declaration of David Hillman, and the court's docket. No facts are in dispute.[1]

The debtors in these jointly-administered chapter 11 cases are the primary operating units of a larger group of companies the debtors commonly describe as "the Caesars gaming enterprise" (collectively, "Caesars"). The debtor in the lead case is CEOC. The debtors in the other cases are subsidiaries of CEOC.

The NRF is a multiemployer pension fund established under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001, *et seq.*, that provides benefits to more than 400,000 people. The NRF sponsors two pension plans called the "Legacy Plan" and the "Adjustable Plan." Each is a defined benefit plan subject to ERISA. The Legacy Plan is in "critical" status because it is projected to have a substantial funding deficiency during the next ten years. In 2014, the NRF therefore froze the Legacy Plan effective December 31, 2014, and created a new Adjustable Plan effective January 1, 2015. All employers required to contribute to the Legacy Plan must contribute to the Adjustable Plan.

Five subsidiaries and affiliates of CEOC are employers (the "Caesars employers" or

---

[1] The NRF agrees no facts are in dispute. In briefing the motions, however, the debtors contended the NRF's responses raised factual issues requiring discovery. Because the fully-briefed motions were then continued for several months while the parties tried unsuccessfully to settle their differences, on October 28, 2015, the debtors were ordered to file a written statement (1) clarifying whether they still believed discovery was necessary, and (2) describing the factual issues on which they proposed to take discovery. The statement filed identified six such issues, only two of which the debtors said warranted discovery. But given why the motions will be denied, five of the six issues are irrelevant, and the sixth poses a legal rather than a factual issue. So the debtors' professed need for discovery provides no reason to delay a decision.

simply the "employers") that have collective bargaining agreements under which the employers must make contributions to the NRF. The employers are Bally's Park Place, Inc., Boardwalk Regency Corp., Chester Downs & Marina, LLC, Parball Corp., and Harrah's Operating Co. CEOC owns 99.5% of Chester and 100% of Bally's, Boardwalk, and Parball. Harrah's is 100% owned by Caesars Entertainment Resort Properties ("CERP"), which in turn is owned by Caesars Entertainment Corp. ("CEC"), the majority owner of CEOC. CEOC is not now and never has been a participating employer in the NRF.[2]

At some point before December 2014, a dispute arose between the NRF and Caesars. Caesars contends the NRF demanded unreasonable concessions from it and threatened to expel the Caesars employers from the NRF if the concessions were not granted. In late December 2014, the NRF entered into a standstill agreement with CEC, CEOC, and CERP under which the NRF agreed not to expel any of the employers, and the Caesars parties agreed not to incur an "Insolvency Event" (a defined term) without first giving the NRF five days notice.

The pause was brief. On January 8, 2015, Caesars notified the NRF that it was terminating the standstill agreement given the expected chapter 11 bankruptcies of CEOC and certain subsidiaries. CEC immediately filed an action against the NRF in the district court in New York contesting the NRF's right to expel the Caesars employers.

Four days later, on January 12, 2015, three of CEOC's second lien noteholders filed an

---

[2]    The debtors disagree, claiming CEOC was an "employer" under three of the collective bargaining agreements. The NRF responds that although CEOC may technically fall under the definition of "employer" in the agreements, and although it may therefore have had a secondary obligation to make contributions, CEOC is not a signatory to any of the agreements, has no union employees itself, and so was not a "contributing employer" to the NRF. Because the parties have not supplied copies of the collective bargaining agreements, the question of CEOC's precise status cannot be answered. But since the debtors' theory for claiming the NRF violated the stay does not depend on whether CEOC was a "contributing employer," the question is irrelevant.

involuntary petition against CEOC in the bankruptcy court in Delaware. The petition was directed only at CEOC; none of the five Caesars employers was made an alleged debtor.

That same day, the NRF trustees voted to expel the five Caesars employers from the NRF. (The employers were expelled although together they formed the largest contributor to the NRF with $13 million in annual contributions, although they had for decades made all the contributions required, and although the employers intended to continue making contributions and had no desire to withdraw from the NRF.) The NRF sent a notice dated January 12 to the five Caesars employers informing them of the expulsion. The notice was addressed only to the five employers; it was not addressed to CEOC. The notice said that nothing in it "shall, or shall be deemed to, constitute an action that would be a violation of the automatic stay" in the Delaware involuntary case.[3]

On January 15, CEOC and more than 170 of its subsidiaries filed chapter 11 voluntary petitions in this district.[4] Of the Caesars employers expelled from the NRF, three (Bally's, Boardwalk, and Parball) are debtors in the voluntary cases. The other two (Chester and Harrah's) are not. Neither is CEC or CERP.

About a month after the voluntary petitions were filed, on February 13, the NRF sent CEC and CERP a notice assessing their withdrawal liability under ERISA and demanding payment. *See* 29 U.S.C. § 1399(b)(1). The notice said that CEC, CERP, "and all members of

---

[3] The next day, January 13, the NRF sent a corrected notice to the Caesars employers. The January 13 notice changed the statement in the first notice that the NRF would "cease accepting contributions from each and every Caesars Employer, effective immediately." The new notice made clear that the NRF would no longer accept contributions to the Legacy Plan but said the employers' obligations to contribute to the Adjustable Plan were unaffected. The corrected notice contained the same qualification about the automatic stay.

[4] The Delaware bankruptcy court later transferred the involuntary case against CEOC to this district. Both the involuntary case and the voluntary cases are pending.

-4-

their controlled group that have not filed for bankruptcy" had "incurred a complete withdrawal" from the NRF, making the "Employer" (as the notice defined those entities) subject to ERISA withdrawal liability.[5/] The withdrawal liability, the notice added, totaled $363,622,615, payable in quarterly installments of $5,981,493.64 the first of which was due March 15, 2015. The notice was not sent to CEOC or any of the other debtors in the voluntary cases. The NRF did not demand payment from CEOC or any other debtor, and the notice specifically said it was "addressed solely to those members of the Employer that are not debtors . . . ."

When neither CEC nor CERP paid the March 15 installment, the NRF filed an action against them in the district court in New York. Neither CEOC nor any of the debtors was named as a defendant. (The complaint's caption names as "John Doe" defendants "all other trades or businesses under common control" with CEC or CERP "that have not filed for bankruptcy.")

Shortly before the March 15 installment was due, the debtors filed a motion in the voluntary cases to enforce the automatic stay under section 362(a) of the Bankruptcy Code, 11 U.S.C. § 362(a). The motion noted that the involuntary petition against CEOC had given rise to the stay, since "a petition filed under section . . . 303 . . . operates as a stay" of certain creditor action. *Id.* The motion asserted that the NRF's January 12 decision to expel the employers violated the stay – specifically, sections 362(a)(1) and (3) – because ERISA subjected to

---

[5/] Under ERISA, all trades or businesses under "common control," 29 U.S.C. § 1301(b)(1), sometimes called "the controlled group," are subject to withdrawal liability when an employer in the group withdraws. *See* discussion, *infra*, at 10-11, 14. Because ERISA provides that "a complete withdrawal from a multiemployer plan occurs when an employer . . . permanently ceases to have an obligation to contribute under the plan," 29 U.S.C. § 1383(a)(1), withdrawal liability is possible even though the "withdrawal" consists of the expulsion of the employer from the plan rather than the employer's voluntary act, Jeffrey Lewis, Myron D. Rumeld & Ivelisse Berio LeBeau, eds., *Employee Benefits Law* at 17-17 (3d ed. 2012). Whether the expulsion is proper depends on the terms of the plan. *See, e.g., Borntrager v. Central States Se. & Sw. Areas Pension Fund*, 577 F.3d 913, 920-21 (8th Cir. 2000).

-5-

withdrawal liability not only the expelled employers but also CEOC. The debtors asked to have the expulsion declared void.

Shortly after the March 15 installment was due, the debtors filed a second motion, this one noting that the voluntary cases had given rise to the stay, since "a petition filed under section 301" likewise "operates as a stay" of certain creditor action. 11 U.S.C. § 362(a). The motion asserted that the NRF's February 13 notice and demand for payment violated the stay – specifically, sections 362(a)(3) and (6) – because ERISA deemed the demand a demand for payment not only from CEC and CERP but also from CEOC and the other debtors. The debtors asked to have the notice and payment demand declared void.[6]

The NRF denies violating the stay and objects to both motions. The NRF concedes the stay bars it from pursuing the debtors for withdrawal liability – except through a proof of claim in the voluntary cases, which the NRF has filed. But the NRF insists it has not done so, pointing out it has taken no action against any debtor.[7] Non-debtors, on the other hand, are not protected, the NRF says, and the NRF contends it can collect from them without running afoul of section 362(a). Any other result, it argues, would defeat withdrawal liability as a remedy under ERISA.

---

[6] On the same day the debtors filed the first motion to enforce the stay, they filed a separate adversary complaint against NRF. Count I of the amended complaint requests a declaratory judgment that the notice and payment demand violated the stay. Count II requests a declaratory judgment that the notice and payment demand binds neither CEOC nor any of the other debtors. Count III asks to "extend" the stay to the debtors' non-debtor affiliates, protecting them from the notice and payment demand. The NRF has moved to dismiss the complaint. The debtors also filed a motion seeking injunctive relief under Count III. The NRF has objected to that motion.

[7] The NRF goes farther, declaring that it "has not taken and does not take the position that: (i) the Debtors must make quarterly withdrawal liability payments . . . ; (ii) the Debtors are bound by the arbitration deadlines [in ERISA] . . . ; (iii) nonpayment by the Debtors of quarterly withdrawal liability payments constitutes a waiver of any rights the Debtors may have to challenge the NRF's claim in these bankruptcy cases; or (iv) the Debtors are bound by the outcome of any arbitration or legal proceeding instituted by the Non-Debtors."

-6-

### 3. Discussion

The motions to enforce the automatic stay will be denied. As the NRF rightly notes, the stay protects only a debtor in a bankruptcy case, property of a debtor, and property of a debtor's bankruptcy estate. Non-debtors and their property are not protected. Since all the NRF's actions in expelling the Caesars employers and attempting to collect withdrawal liability were directed at non-debtors, the NRF did not violate the stay.

The automatic stay under section 362(a) is, of course, one of the "fundamental protections afforded to debtors by the bankruptcy laws." *Reedsburg Util. Comm'n v. Grede Foundries, Inc. (In re Grede Foundries, Inc.)*, 651 F.3d 786, 790 (7th Cir. 2011) (internal quotation omitted). The stay provides "a statutory injunction against efforts outside of bankruptcy to collect debts from a debtor who is under the protection of the bankruptcy court." *St. Catherine Hosp. of Ind., LLC v. Indiana Family & Soc. Servs. Admin.*, 800 F.3d 312, 315 (7th Cir. 2015). But that injunction runs in favor of the "*debtor*," *id.* (emphasis added), not someone who has not filed bankruptcy. Because the stay is a statutory creation, its scope is confined by the terms of the statute creating it. Sections 362(a)(1), (3), and (6) – the portions on which the debtors here rely – protect "the debtor," 11 U.S.C. §§ 362(a)(1), (6), and "property of the estate," 11 U.S.C. § 362(a)(3). They do not protect anyone or anything else.

This follows not only from the plain language of section 362(a) but also from sections 1201(a) and 1301(a). In those sections, Congress explicitly stayed acts of creditors to collect consumer debts of a debtor in a chapter 12 or 13 case "from any individual that is liable on such debt with the debtor, or that secured such debt . . . ." 11 U.S.C. §§ 1201(a), 1301(a). When Congress wants to protect non-debtors, in other words, it knows how. It did not protect them in section 362(a). *In re Lengacher*, 485 B.R. 380, 383-84 (Bankr. N.D. Ind. 2012) (making this

point and citing the co-debtor stays in sections 1201(a) and 1301(a)); *see also Pitts v. Unarco Indus., Inc.*, 698 F.2d 313, 314 (7th Cir. 1983) (per curiam) (noting that "Chapter 13 expressly provides for the stay of an action against a co-debtor but Chapter 11 does not").

Because section 362(a) is clear, courts in this circuit – including the court of appeals – have repeatedly held that the automatic stay does not apply to non-debtors or their property. *See, e.g., Fox Valley Constr. Workers Fringe Benefit Funds v. Pride of the Fox Masonry & Expert Restorations*, 140 F.3d 661, 666 (7th Cir. 1998); *United States v. Wright*, 57 F.3d 561, 562 (7th Cir. 1995); *In re James Wilson & Assocs.*, 965 F.2d 160, 170 (7th Cir. 1992); *Pitts*, 698 F.2d at 314; *NNN Cypresswood Dr. 25, LLC v. WBCMT 2007-C33 Office 9729, LLC*, 517 B.R. 828, 832 (N.D. Ill. 2013); *Lengacher*, 485 B.R. at 383; *In re Richard B. Vance & Co.*, 289 B.R. 692, 696-97 (Bankr. C.D. Ill. 2003) (observing that the "overwhelming majority of courts" agree on this point). The stay protects the debtor, but it poses no bar to a creditor's actions against non-debtor third parties – including third parties who are "guarantors, sureties, insurers, partners, and other persons liable" on the same debt. *Wright*, 57 F.3d at 562.[8/]

The NRF here did not commence or continue any sort of action or proceeding against a "debtor," 11 U.S.C. § 362(a)(1), take any action to recover a claim against a "debtor," 11 U.S.C. § 362(a)(6), or act to obtain possession of or exercise control over "property of the estate," 11

---

[8/] Some courts have found an exception to section 362(a)(1) under which proceedings against "non-bankrupt co-defendants" can be stayed in "unusual circumstances." *See A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986) (internal quotation omitted). *A.H. Robins* is perhaps the leading decision for this view. But the Seventh Circuit has never adopted the *A.H. Robins* exception: in *International Bus. Machs. v. Fernstrom Storage & Van Co. (In re Fernstrom Storage & Van Co.)*, 938 F.2d 731 (7th Cir. 1991), and again in *Fox Valley Constr. Workers*, 140 F.3d 661, the court mentioned the exception and then found it inapplicable without ever endorsing it. *See Fox Valley Constr. Workers*, 140 F.3d at 666; *Fernstrom*, 938 F.2d at 736. Even if there were such an exception, it would not apply here. *See* discussion, *infra*, at 12 n.10.

-8-

U.S.C. § 362(a)(3). The NRF expelled the five Caesars employers on January 12, the same day the involuntary case was filed. But the alleged debtor in the involuntary case was CEOC. None of the Caesars employers were or are alleged debtors in that case.[2] The notice specifically said that nothing in it should be deemed to violate the stay in the involuntary case against CEOC.

Three days later, the voluntary cases were filed, so that by the time the NRF sent out its notice and payment demand on February 13 three of the five employers were in fact debtors in bankruptcy cases. But the notice and payment demand was not sent to them. It was sent to CEC and CERP, neither of which was a debtor in the voluntary cases. The notice and payment demand specifically said that it was addressed only to CEC, CERP, and other Caesars entities that were subject to withdrawal liability but not debtors. The civil action the NRF filed was likewise expressly aimed at non-debtors.

At no point, in short, did the NRF direct any sort of action against any debtor or against property of the estate in any debtor's bankruptcy case. Because it did not, the NRF did not violate the stay.

The debtors contend the expulsion as well as the notice and payment demand were stay violations even if not directed at them. They base that contention on ERISA itself. For purposes of ERISA, they note, all of the Caesars entities discussed here (the debtors, CEOC, CEC, CERP,

---

[2] This assumes a plan's expulsion of an employer would violate the stay if the employer were in fact a debtor in a bankruptcy case. The NRF suggests it would not, arguing that the expulsion did not impose any new liability but simply established the date for calculating a pre-existing obligation. Courts disagree on the question. *Compare Huber v. Casablanca Indus., Inc.*, 916 F.2d 85, 96 (3d Cir. 1990) (stating that withdrawal liability "represents a pre-existing obligation . . . and is not simply 'incurred' as of the date of withdrawal" (internal quotation omitted)), *with CPT Holdings, Inc. v. Industrial & Allied Employees Union Pension Plan*, 162 F.3d 405, 409 (6th Cir. 1998) (finding "no enforceable right to payment for withdrawal liability until an employer actually withdraws from a plan, leaving the plan underfunded"). The Seventh Circuit appears not to have considered it. Since the employers here were not debtors when they were expelled, the question need not be addressed.

-9-

and the Caesars employers) are a "single employer" because they are under "common control," 29 U.S.C. § 1301(b)(1), members of what is called the "controlled group," *see Chicago Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. El Paso CGP Co.*, 525 F.3d 591, 595-96 (7th Cir. 2008). When the NRF expelled the Caesars employers, their withdrawal subjected all controlled group members – the debtors, too – to withdrawal liability. 29 U.S.C. § 1381(a). The notice and payment demand NRF later sent to CEC and CERP likewise constituted a notice and demand to the debtors because notice of withdrawal liability to one controlled group member is notice to all. *Central States, Se. & Sw. Areas Pension Fund v. Nitehawk Express, Inc.*, 223 F.3d 483, 496 (7th Cir. 2008). By operation of law, the debtors assert, the expulsion and the notice and payment demand were directed at them. Both violated the stay, and both are consequently void.

The NRF does not quarrel with the factual premises of the debtors' argument (the Caesars entities here do in fact constitute a "single employer" under ERISA) or its legal ones (controlled group liability does in fact operate as the debtors describe), and the syllogism has a superficial appeal. Ultimately, though, the argument is unpersuasive for two reasons.

First, the liability of controlled group members is joint and several. *Central States, Se. & Sw. Areas Pension Fund v. CLP Venture, LLC*, 760 F.3d 745, 747-49 (7th Cir. 2014). When liability is joint and several, the party to whom the liability is owed "may choose to collect the entire indebtedness from one or more of the liable parties, to the exclusion of others." *United States v. Charles George Trucking, Inc.*, 34 F.3d 1081, 1087 (1st Cir. 1994); *see also Akzo Coatings, Inc. v. Aigner Corp.*, 30 F.3d 761, 772-73 (7th Cir. 1994). This is no less true of ERISA withdrawal liability. With each controlled group member independently liable, *I.A.M. Nat'l Pension Fund v. TMR Realty Co.*, 431 F. Supp. 2d 1, 24-25 (D.D.C. 2006), the plan

sponsor can sue one or more of them for all or any part of the amount due, *Central States, Se. & Sw. Areas Pension Fund v. Hayes*, 789 F. Supp. 1430, 1434 (N.D. Ill. 1992).

Because controlled group members are jointly and severally liable, the bankruptcy of one member "has no bearing on the liability of" the others. *McDonald v. Centra*, 118 B.R. 903, 927 (D. Md. 1990), *aff'd*, 946 F.2d 1059 (4th Cir. 1991); *see also Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 121 (4th Cir. 1991) (stating that "the bankruptcy of one control group member cannot be used to offset or reduce the joint and several obligations of other members of the control group"); *Central States, Se. & Sw. Areas Pension Fund v. Chatham Props.*, 929 F.2d 260, 263-64 (6th Cir. 1991); *I.A.M. Nat'l Pension Fund v. Slyman Indus., Inc.*, 901 F.2d 127, 129 (D.C. Cir. 1990) (finding that a debtor-member's "protection from suit pursuant to the Bankruptcy Code simply cannot affect the derivative legal liability of a nonbankrupt affiliate").[10]

In particular, the automatic stay does not prevent a plan sponsor from collecting withdrawal liability from the non-debtor members. The Seventh Circuit specifically held as much in *Central States, Se. & Sw. Areas Pension Fund v. Slotky*, 956 F.2d 1369 (7th Cir. 1992), reasoning that even if a notice and payment demand to a debtor violated the stay, the only effect would be "that the pension plan could not proceed against [the debtor] unless the bankruptcy judge lifted the stay." *Id.* at 1376. "The demand," the court said, "would still be effective

---

[10] This is why the *A.H. Robins* exception to the automatic stay, assuming it holds sway in this circuit, is no help to the debtors here. The exception applies "when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *A.H. Robins*, 788 F.2d at 999; *see also In re Klarcheck*, 508 B.R. 386, 393-94 (Bankr. N.D. Ill. 2014) (holding that the stay bars an action against a non-debtor when the debtor is "the real party in interest"). The exception is inapplicable, though, when the third party is "independently liable, as for example, where the debtor and another are joint tortfeasors . . . ." *A.H. Robins*, 788 F.2d at 999; *see also Variable Parameter Fixture Dev. Corp. v. Morpheus Lights, Inc.*, 945 F. Supp. 603, 608 (S.D.N.Y. 1996).

against nonbankrupt members of the controlled group . . . ." *Id.*[11]/ Other courts agree. *See, e.g., TMR Realty*, 431 F. Supp. 2d at 20-21 (finding the stay "had no impact" on notices sent to non-debtor members); *Local 478 Trucking & Allied Indus. Pension Fund v. Jayne*, 778 F. Supp. 1289, 1324-25 (D.N.J. 1991) (holding that the stay "does not extend to other members of a controlled group"); *Cardone Realty Corp. v. Teamsters Pension Fund of Phila.*, 99 B.R. 202, 205-06 (W.D.N.Y. 1989). No case holds otherwise. The debtors cite none.

The debtors try to distinguish *Slotky* because the case involved a notice and demand for payment, not the expulsion of a controlled group member. But the debtors' position on both claimed stay violations is the same. The debtors contend the NRF's expulsion of the non-debtor employers subjected debtor CEOC to withdrawal liability as a matter of law. The debtors also contend the NRF's notice and payment demand to non-debtors CEC and CERP was a notice and demand to debtor CEOC and the other debtors as a matter of law. In both instances, the debtors assert that actions taken against *non-debtors* are void as violations of the stay because of their *legal effects* under ERISA on one or more *debtors*. *Slotky*'s conclusion that the stay does not shield non-debtor members of a controlled group from withdrawal liability applies equally to both.

The second reason the debtors' argument fails to persuade is that the relief the debtors

---

[11]/ The court in *Slotky* observed that a notice and demand for payment might not violate the stay even if directed to a debtor. *Id.* The debtors here dismiss that observation as a mere "obiter dictum." Whether the observation can be so easily dismissed is questionable, given the court made the same observation again in *Central States, Se. & Sw. Areas Pension Fund v. Basic Am. Indus., Inc.*, 252 F.3d 911, 918 (7th Cir. 2001) (stating that "although 'demanding' payment from a debtor in bankruptcy . . . is normally a violation of the automatic stay, the demand for payment of withdrawal liability is probably an exception to this principle"), and trial judges in this circuit "are well advised to pay close attention to the court's considered dicta," *United States v. Gold*, 77 F. Supp. 2d 936, 941 n.2 (S.D. Ind. 1999) (Hamilton, J.). But since the NRF did not direct its notice and demand to a debtor, there is no need to decide how much weight the *Slotky* observation deserves.

want conflicts with the purpose of withdrawal liability under ERISA. Withdrawal liability is the product of the Multiemployer Pension Plan Amendments Act of 1980 (the "MPPAA"). Before the MPPAA, employers had "a perverse incentive" to withdraw from financially weak multiemployer plans to avoid liability if the plans terminated. *Central States Se. & Sw. Areas Pension Fund v. Messina Prods., LLC*, 706 F.3d 874, 878 (7th Cir. 2013); *see generally Milwaukee Brewery Workers' Pension Plan v. Jos. Schlitz Brewing Co.*, 513 U.S. 414, 416-17 (1995). To discourage withdrawals and ensure the solvency of pension plans, Congress amended ERISA in the MPPAA to impose mandatory liability on withdrawing employers for their proportionate share of unfunded vested benefits. *Messina*, 706 F.3d at 878; *McDougall v. Pioneer Ranch L.P.*, 494 F.3d 571, 574 (7th Cir. 2007).

But the MPPAA did not only make withdrawal liability mandatory. It also retained the ERISA provision defining a "single employer" to include each trade or business under "common control" with the withdrawing employer. 29 U.S.C. § 1301(b)(1); *see Chatham Props.*, 929 F.2d at 264. Withdrawal liability thus became the compulsory responsibility of the entire controlled group. The idea was to prevent an employer "from shirking [its] ERISA obligations by fractionalizing operations into many separate entities," *Messina*, 706 F.3d at 878, avoiding liability by "shifting its assets to its back pockets," *McDonald*, 118 B.R. at 927. In "disregard[ing] the usual legal barriers between affiliated, but legally distinct, businesses," controlled group liability promotes the "viability of multiemployer pension plans." *UFCW Local One Pension Fund v. Enivel Props., Inc.*, 791 F.3d 369, 371 (2d Cir. 2015).

The debtors, though, would turn ERISA against itself. Their argument takes ERISA provisions designed to expand withdrawal liability beyond the withdrawing employer and, in tandem with the automatic stay under the Bankruptcy Code, uses them to restrict that liability.

Under the debtors' theory, the expulsion of the non-debtor employers subjected debtor CEOC to withdrawal liability as a member of the controlled group, so that the very act that constituted the employers' withdrawal from the NRF violated the stay. Because acts that violate the stay are ordinarily void, *Middle Tenn. News Co. v. Charnel of Cincinnati, Inc.*, 250 F.3d 1077, 1082 (7th Cir. 2001), there was no withdrawal and could be none. The notice to the non-debtors and demand for payment, similarly, was a notice and demand to the debtors as members of the controlled group and therefore violated the stay. Because acts that violate the stay are void, *id.*, there was no notice and demand and could be none. As the debtors would have it, withdrawal liability is impossible whenever one controlled group member is a debtor in a bankruptcy case because the stay protects the controlled group as well as the debtor.

Far from ensuring the "viability" of multiemployer plans, the debtors' theory accomplishes the opposite, invoking ERISA and the Code to protect non-debtors and prevent plan sponsors from collecting withdrawal liability. That is not what Congress had in mind in enacting the MPPAA. Courts have rebuffed attempts to change the controlled group concept "from a tool of recovery into a shield against liability." *Central States, Se. & Sw. Areas Pension Fund v. Landvatter*, No. 89 C 5228, 1992 WL 93227, at *2 (N.D. Ill. Apr. 30, 1992) (citing *McDonald*, 118 B.R. at 926); *see also Teamsters Joint Council No. 83*, 947 F.2d at 122. Nor is it what Congress had in mind in adopting the automatic stay. *See Lynch v. Johns-Manville Sales Corp.*, 710 F.2d 1194, 1197 (6th Cir. 1983) (noting that the legislative history discloses an intent "to stay proceedings against the debtor, and no other"); *Pitts*, 698 F.2d at 314 (same).

### 4. Conclusion

For these reasons, the motions of debtors Caesars Entertainment Operating Co., Inc. and subsidiaries to enforce the automatic stay against the Board of Trustees of the National Retirement Fund and the National Retirement Fund are denied. A separate order will be entered consistent with this opinion.

Dated: November 12, 2015

                                            A. Benjamin Goldgar
                                            United States Bankruptcy Judge