FILED 3/16/2017 THOMAS G. BRUTON CLERK, U.S. DISTRICT COURT

DOC # 5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Caesars Entertainment Operating Company, et al. (the "Debtors"),<br><br>           Plaintiff,<br><br>- against -<br><br>Rowen Seibel,<br><br>           Defendant.<br><br>This document relates to:<br>IN RE CAESARS ENTERTAINMENT OPERATING COMPANY, INC., et al., N.D. IL. Case No 15-01145 | Case No.: 17MISC 34<br><br>ECF Case<br><br>**MEMORANDUM IN SUPPORT OF MOTION TO COMPEL** |

FILED U.S. DISTRICT COURT 2017 JAN 31 PM 4:47 S.D. OF N.Y.

**MEMORANDUM OF LAW IN SUPPORT OF DEBTORS' MOTION TO COMPEL COMPLIANCE WITH SUBPOENA *DUCES TECUM***

The instant motion arises out of a series of contested matters involving certain of the Debtors and two of their former contractual counterparties, LLTQ Enterprises, LLC ("LLTQ") and FERG, LLC ("FERG"). On December 15, 2016, the Debtors properly served Rowen Seibel, the member and manager of LLTQ and FERG, with two subpoenas for documents relating to those contested matters. The subpoenas set January 3, 2017, as the deadline to produce the requested documents. On that day, Mr. Seibel did not produce any of the requested documents. Nor did Mr. Seibel serve any objections or seek additional time to respond. When Mr. Seibel did not respond, counsel for the Debtors contacted a law firm currently representing Mr. Seibel in other pending litigation and noted that Mr. Seibel had not provided any responses or objections to the subpoena.

Counsel for the Debtors also notified the law firm representing LLTQ and FERG that Mr. Seibel had missed the deadline to respond to the subpoena.

Despite these efforts, more than 45 days have now passed since the subpoena was first served, and Mr. Seibel has not objected to the subpoena or produced a single document. By any measure, this represents a clear failure to timely object to a subpoena—particularly where, as here, the subpoenaed party is familiar with litigation and his discovery obligations. Nor does there appear to be any reasonable justification for Mr. Seibel's failure to timely respond when, eight days after the response deadline had passed, he (a) filed a complaint against a non-Debtor Caesars entity in Nevada district court and (b) attached to that complaint two declarations he executed.

Given the circumstances, the Debtors respectfully request that the Court compel Mr. Seibel to produce all documents sought by the subpoena by March 3, 2017, and find that Mr. Seibel's failure to timely object to the subpoena constitutes a waiver of any available objections.

## BACKGROUND AND PROCEDURAL HISTORY

In 2012, the Debtors entered into two agreements relating to the development and operation of a Gordon Ramsay-branded pub in Las Vegas: (a) a development and operation agreement with LLTQ (N. Greenblatt Decl. at Ex. 1); and (b) a development, operation, and licensing agreement with Mr. Ramsay (N. Greenblatt Decl. at Ex. 2). Two years later, the Debtors entered into two agreements relating to the development and operation of a Gordon Ramsay-branded pub in Atlantic City: (a) a consulting agreement with FERG (N. Greenblatt Decl. at Ex. 3); and (b) a development, operation, and licensing agreement with Mr. Ramsay (N. Greenblatt Decl. at Ex. 4). At the time, Mr. Seibel was the manager and member of both LLTQ and FERG. The LLTQ and FERG agreements provide those entities with a share of the pubs'

2

revenue in exchange for certain services relating to the design, development, construction, and operation of the pubs. (N. Greenblatt Decl. at Ex. 1, LLTQ Agreement; N. Greenblatt Decl. at Ex. 3, FERG Agreement).

On January 15, 2015, the Debtors filed a voluntary petition for bankruptcy in the United States Bankruptcy Court for the Northern District of Illinois. As part of their restructuring efforts, the Debtors determined that the rejection of the LLTQ and FERG agreements (and the entry into new agreements with Mr. Ramsay) was of substantial benefit to the estates. The Debtors moved to reject the LLTQ and FERG agreements, and LLTQ and FERG objected. LLTQ and FERG also filed a motion seeking the payment of administrative expenses, and the Debtors objected to that motion. The bankruptcy court treated these motions as related and, for the first 15 months of the litigation, the Debtors took discovery on what they believed were the key issues—the enforceability of certain restrictive covenants in the contracts, the purportedly integrated nature of the LLTQ/FERG and Ramsay agreements, and the benefits (if any) LLTQ and FERG provided to the estate postpetition. On August 20, 2016, the discovery landscape changed.

On that day, the Debtors first became aware of news articles reporting that Mr. Seibel had been sentenced to a month in prison.[1] According to these articles, on April 18, 2016, Mr. Seibel pled guilty to one count of a corrupt endeavor to obstruct and impede the due administration of the Internal Revenue Laws, 26 U.S.C. § 7212, a Class E Felony. According to the charging

---

[1] *See* Jesse Drucker & Christian Berthelsen, *Restauranteur Seibel Sent to Jail, Then Kitchen, in Tax Scam* (Bloomberg, Aug. 19, 2016), https://www.bloomberg.com/news/articles/2016-08-19/restaurateur-turned-tax-dodger-readies-for-manhattan-sentencing; Bradley Martin, *IRS Busts Caesars Palace's Serendipity 3 Owner Rowen Seibel; The Gordon Ramsay Partner Will Serve One Month in Prison*, (Eater Las Vegas, Aug. 22, 2016) http://vegas.eater.com/2016/8/22/12580248/Rowen-Seibel-jail-sentence-IRS-tax-evasion.

3

document submitted by the United States government, Mr. Seibel had, for more than a decade, illegally utilized Swiss bank accounts and Panamanian shell corporations to commit tax fraud.

In the heavily-regulated casino industry, Caesars must have full disclosure regarding its business relationships and the parties to those relationships. Without this information, Caesars risks entering into commercial relationships and/or associations that are unacceptable to the various gaming regulatory agencies that have jurisdiction over Caesars and its affiliates. Such gaming regulatory agencies have broad and unfettered discretion to impose disciplinary actions against a gaming licensee, including, without limitation, the revocation of the gaming licenses and/or the imposition of additional conditions, limitations, and monetary fines upon such licensee.

For that reason, the LLTQ and FERG agreements were expressly conditioned on Mr. Seibel's representations that he (a) was not engaged in any illegal activity and (b) had disclosed all material facts relating to any activities that could render him an "Unsuitable Person" under the agreements.[2] (N. Greenblatt Decl. at Ex. 1, LLTQ Agmt. § 10.2; N. Greenblatt Decl. at Ex. 3, FERG Agmt. § 11.2). To further protect itself, Caesars also required LLTQ, FERG, and Mr. Seibel to provide updated disclosures if any prior disclosures regarding suitability subsequently became inaccurate. (N. Greenblatt Decl. at Ex. 1, LLTQ Agmt. § 10.2; N. Greenblatt Decl. at Ex. 3, FERG Agmt. § 11.2). Finally, to the extent LLTQ, FERG, or Mr. Seibel failed to satisfy any of these requirements, the agreements provided Caesars with sole discretion to terminate the

---

[2] Under the LLTQ and FERG agreements, an "Unsuitable Person" includes, *inter alia*, an individual (a) whose association could cause Caesars to face disciplinary action; (b) whose association with Caesars could be anticipated to violate any gaming laws or regulations; or (c) "is or might be engaged or about to be engaged in any activity which could adversely impact the business or reputation of Caesars or its Affiliates." (N. Greenblatt Decl. at Ex. 1; N. Greenblatt Decl. at Ex. 3).

4

relationship. (N. Greenblatt Decl. at Ex. 1, LLTQ Agmt. § 10.2; N. Greenblatt Decl. at Ex. 3, FERG Agmt. § 11.2).

Despite these explicit obligations, Mr. Seibel did not disclose his criminal activities when the contracts were first negotiated and executed. Nor did Mr. Seibel provide the Debtors with an updated disclosure after he pled guilty. Instead, Mr. Seibel attempted to transfer his membership interest and management duties in LLTQ and FERG just *one week* before he was scheduled to plead guilty. Even in that instance, however, Mr. Seibel never disclosed the rationale for the transfer, leaving the Debtors to learn about the felony conviction—and the illegal activities underlying that conviction—through press reports that finally surfaced months later. Upon learning of Mr. Seibel's felony conviction, the Debtors terminated the LLTQ and FERG agreements "effective immediately."

In November 2016, the Debtors attempted to serve Mr. Seibel with two subpoena *duces tecum* seeking documents relating to, *inter alia*, the conduct underlying his felony conviction, his failure to disclose that conduct to Caesars, and his purported assignment of his membership interests and management duties.[3] (N. Greenblatt Decl. at Ex. 5; N. Greenblatt Decl. at Ex. 6). The Debtors asked counsel for LLTQ and FERG if they would be willing to accept service on behalf of Mr. Seibel but they refused to do so. (N. Greenblatt Decl. at Ex. 7, B. Arnault 10/21/2016 letter to N. Rugg & S. Chaiken). The Debtors contacted Paul Sweeney, Mr. Seibel's attorney in separate litigation pending against Gordon Ramsay, on three occasions about

---

[3] The Debtors prepared two subpoenas for Mr. Seibel—one to Mr. Seibel in his personal capacity and one to Mr. Seibel as legal guardian for his mother. Though Mr. Seibel ultimately pled guilty to obstructing or impeding the due administration of the internal revenue laws under 26 U.S.C. § 7212(a), in his submissions to the court he never accepted responsibility for his actions and instead attempted to blame his mother for his illegal conduct. As a result, the Debtors are seeking certain documents from both Mr. Seibel and Mr. Seibel's mother relating to the respective roles they played in the illegal conduct.

accepting service on Mr. Seibel's behalf. (N. Greenblatt Decl. at Ex. 8, B. Arnault 10/21/2016 letter to N. Rugg & S. Chaiken). Mr. Sweeney did not respond to any of the Debtors' requests. The Debtors also tried to serve Mr. Seibel on numerous occasions at his home but were not successful in their attempts. Finally, on December 15, 2016, the Debtors properly served Mr. Seibel while he was serving his 30-day prison sentence. (N. Greenblatt Decl. at Ex. 9, R. Seibel Subpoena with Proof of Service; N. Greenblatt Decl. at Ex. 10, R. Seibel Subpoena with Proof of Service).

The subpoena Mr. Seibel received requested that he produce documents by 4:00 p.m. on January 3, 2017. Mr. Seibel did not produce any documents. Nor did he serve Debtors with any objections to the subpoena or request additional time to respond. When the Debtors did not receive any response from Mr. Seibel, they informed counsel for LLTQ and FERG (and the law firm representing Mr. Seibel in other pending litigation) and asked if Mr. Seibel was being represented by an attorney. (N. Greenblatt Decl. at Ex. 11, B. Arnault 1/3/2017 email to N. Rugg, B. Ziegler, and S. Chaiken.). Counsel for LLTQ and FERG did not know if Mr. Seibel had retained counsel with respect to the subpoena but presumed that he had. (*Id.*, N. Rugg 1/6/2017 email to B. Arnault.) They also noted that Mr. Seibel had been dealing with some family health issues since his release from prison. (*Id.*)

As of the date of the instant Motion, more than 45 days have passed since Mr. Seibel was first served with the subpoena *duces tecum*. Mr. Seibel has not, however, produced a single document, or made any attempt to confer with the Debtors regarding the specific document requests.

Though apparently unwilling to respond to the Debtors' subpoena, Mr. Seibel had no issue participating in—and initiating—other litigation. In fact, just eight days after the deadline

6

to produce documents had passed, Mr. Seibel initiated litigation in a district court in Nevada. R. Seibel v. PHWLV, LLC, No. 2:17-cv-00091-RFB-PAL, (D. Nev.). In connection with that litigation, Mr. Seibel executed two declarations—one containing 61 paragraphs and the other containing 29 paragraphs—dated January 9, 2017 (six days after the deadline to produce documents). (N. Greenblatt Decl. at Ex. 12, R. Seibel Declaration (Ex. 1); N. Greenblatt Decl. at Ex. 13, R. Seibel Declaration (Ex. 2)).

Despite the Debtors' best efforts to elicit a response from Mr. Seibel, they have received none. As a result, the Debtors were forced to file the instant motion compelling Mr. Seibel to respond to the outstanding subpoena *duces tecum*.

## ARGUMENT

### A. Mr. Seibel Should be Compelled to Produce Documents in Response to the Debtors' Subpoena *Duces Tecum*.

A party is entitled to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . ." Fed. R. Civ. P. 26(b)(1). Rule 45 of the Federal Rules of Civil Procedure allows a party to issue a subpoena requesting the production of documents and electronically stored information. If a subpoenaed party fails to respond, the serving party may move for an order compelling production. Fed. R. Civ. P. 45(d)(2)(B)(i); s*ee Cent. States, Se. & Sw. Areas Pension Fund v. King Dodge, Inc.*, 2011 WL 2784118, at *2 (E.D. Mo. July 15, 2011) ("When a non-party subpoena recipient fails to respond to a Rule 45 subpoena, the party serving the subpoena may file a motion to compel compliance with the subpoena . . .")

As discussed below, Mr. Seibel's failure to object or respond to the subpoena results in a waiver of any objections to the specific requests contained therein. Even if, however, Mr. Seibel had objected to the relevance of the Debtors' requests, those objections would not be well-taken.

7

Here, the Debtors have requested, *inter alia*, documents relating to (a) what information (if any) Mr. Seibel disclosed to Caesars regarding his illegal conduct; and (b) the assignment of his interests and duties under the LLTQ and FERG agreements. (N. Greenblatt Decl. at Ex. 5; N. Greenblatt Decl. at Ex. 6). Both categories of documents are relevant.

*First*, the LLTQ and FERG agreements imposed on Mr. Seibel an ongoing duty to disclose any information relating to suitability. (N. Greenblatt Decl. at Ex. 1, § 10.2; N. Greenblatt Decl. at Ex. 3, § 11.2). These agreements also contain representations and covenants from Mr. Seibel, LLTQ, and FERG that "no representation or warranty made herein by [LLTQ, FERG, or Mr. Seibel] contains any untrue statement of a material fact, or omits to state a material fact necessary to make such statements not misleading." (N. Greenblatt Decl. at Ex. 1, § 9.1(f); N. Greenblatt Decl. at Ex. 3, § 10.1(f)). Despite Mr. Seibel's duties and representations, the conduct that was revealed in connection with his felony conviction indicates that he omitted a number of material facts relating to suitability.

If the Debtors are correct that Mr. Seibel failed to update the Debtors and/or omitted information regarding his illegal activities when he entered into the agreements, the agreements are likely void, voidable, or void ab initio. *See* Restatement (Second) of Contracts § 164 (1981) ("If a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by the other party upon which the recipient is justified in relying, the contract is voidable by the recipient."). And, if the agreements can be rescinded, LLTQ and FERG no longer have any basis to receive administrative claims. Nor can they argue that the Debtors' attempts to reject the agreement are improper (*i.e.*, if rescinded, there would be no contracts to reject).

*Second*, the Debtors have recently obtained evidence indicating that Mr. Seibel did not, as he claims, assign all of his duties and obligations. If the documents obtained from Mr. Seibel confirm that there was no such assignment, Mr. Seibel is still responsible for performing the duties and obligations under the LLTQ and FERG agreements. But, as Mr. Seibel implicitly conceded when he assigned all of those duties and obligations a week before pleading guilty, the LLTQ and FERG agreements prohibit him from having such a relationship with Caesars. This evidence is therefore relevant to LLTQ and FERG's argument that the agreements were not properly terminated.

### B. Mr. Seibel's Failure to Respond to the Subpoena Results in a Waiver of Any Objections to the Debtors' Requests.

The Federal Rules of Civil Procedure require a party to object to a subpoena within 14 days. Fed. R. Civ. P. 45(d)(2)(i) ("The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served.") If a subpoenaed party fails to timely respond or object to a subpoena, the responding party waives any objections that may have been available. *UBS Int'l Inc. v. Itete Brasil Instalacoes Telefonicas Ltd.*, No. 09 CIV. 4286(LAK), 2010 WL 743371, at *3 (S.D.N.Y. Feb. 24, 2010); *Smith v. Conway Org., Inc.*, 154 F.R.D. 73 (S.D.N.Y. 1994) ("Failure to make timely objection to document request waived protection of attorney work-product rule"); *Israel v. Carpenter*, No. 95CIV2703DABJCF, 2002 WL 1424594, at *1 (S.D.N.Y. June 28, 2002) (finding party waived any objections to subpoena where it failed to raise them in a timely manner).

Here, the Debtors properly served Mr. Seibel with a subpoena on December 15, 2016. He was required to object to the requests within 14 days. Fed. R. Civ. P. 45(d)(2)(i) ("The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served."). He did not. As of the date of this Motion, more than 45 days have

9

passed since Mr. Seibel was served with the subpoena and he has yet to provide any objections to the document requests.

There is no valid justification for Mr. Seibel's decision to ignore the subpoena. He is a frequent participant in litigation and a party to at least three pending lawsuits, and is therefore familiar with his discovery obligations.[4] And, based on the fact that he filed a lawsuit on January 11, 2017—which included two declarations he executed—he had the time and resources necessary to participate in litigation.

Under these circumstances, Mr. Seibel has waived any objections that may be available and he should be required to produce all of the documents requested by the subpoena.

## CONCLUSION

For the foregoing reasons, the Debtors respectfully request an Order from the Court:

1. Granting the Debtors' Motion to Compel;

2. Compelling Rowen Seibel to produce all documents responsive to the Debtors' subpoena; and

3. Finding that Rowen Seibel's failure to timely object to the subpoena constitutes a waiver of any available objections.

---

[4] *Rowen Seibel v. Gordon Ramsay*; Ind. No. 651046/14, (Sup. Ct. New York County); *In re: GR Burgr, LLC v. Rowen Seibel*, No. 12825 (VCS), (Del. Ch.); *R. Seibel v. PHWLV, LLC*, No. 2:17-cv-00091-RFB-PAL (D. Nev.)

Dated: January 31, 2017  
Chicago, Illinois

/s/ Nicole Greenblatt  
Nicole L. Greenblatt, P.C.  
**KIRKLAND & ELLIS LLP**  
**KIRKLAND & ELLIS INTERNATIONAL LLP**  
601 Lexington Avenue  
New York, New York 10022-4611  
ngreenblatt@kirkland.com  
Telephone:  (212) 446-4800  
Facsimile:  (212) 446-4900

*Counsel to the Debtors and Debtors-in-Possession*