**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>CAESARS ENTERTAINMENT<br>OPERATING COMPANY, INC., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 15-01145 (ABG)<br><br>Jointly Administered |

**EARL OF SANDWICH'S OBJECTION TO
WHITEBOX'S MOTION FOR PROTECTIVE ORDER**

Earl of Sandwich (Atlantic City), LLC ("Earl") objects to the motion for a protective order filed by Whitebox Advisors LLC ("Whitebox") on January 12, 2018 [ECF No. 7732], and states:

**BACKGROUND**

1. In its responses and objections to Earl's requests for production, dated December 18, 2017, Whitebox conditioned production of all documents (confidential and non-confidential) on Earl's stipulating to a protective order. After a meet-and-confer held the next day, Whitebox agreed to commence producing non-confidential documents, and confidential documents after Earl and Whitebox agreed to terms of a protective order, provided Earl agreed not to disclose documents marked "Confidential" pending entry of the same, conditions to which Earl agreed (not agreeing would have exposed Earl to sanction risk, under Rule 26(c)(3), had Whitebox's production actually included documents eligible for protection). Whitebox thereafter produced 362 pages, marking all but 40 (89%) Confidential. Earl does not believe that any of Whitebox's production constitutes confidential commercial information, under Rule 26(c)(1)(G), or 11 U.S.C. § 107(b) or Rule 9018.[1]

---

[1] The entirety of Whitebox's Confidential production is comprised of (a) documents that are already public (Exhibits A-B, D to the Declaration of Bryan Seyfried, annexed to Whitebox's Transfer of Claim); (b) e-mails exchanged between Whitebox and Cowen Special Investments LLC ("Cowen") from January 12 to 18, 2017; (c) the draft claim transfer agreement Cowen sent to Earl long before the start of this litigation, which agreement's choice of law clause Whitebox states governs this proceeding and forms a part of the alleged Earl-Cowen agreement, even as Whitebox ignores that agreement's New York forum selection clause; (d) the Assignment and Release Agreement between Whitebox and Cowen, dated June 19, 2017 ("A&R Agreement"), upon which this litigation is premised and as to which neither Whitebox nor Cowen has any reasonable expectation of privacy; and (e) 10 pages of Bloomberg messages exchanged

2. Cowen initially refused to produce any documents in response to Earl's document subpoena pending entry of a protective order, not even non-confidential documents, even though Cowen agreed to produce documents in its responses and objections, served December 14, 2017.

3. None of Earl's production, made December 8, 2017, with two small supplemental productions made December 14, 2017 and January 5, 2018, has been designated as Confidential.

4. At the January 3, 2018 hearing on Prime Clerk LLC's motion for a protective order, Earl stated that Whitebox submitted the prior, proposed stipulated protective order to the Court (Tr. at 12:16-20, annexed hereto as <u>Exhibit 1</u>), and the Court stated "It is hard for me, frankly, to imagine that there would be good cause here [under Rule 26(c)(1)]. I just can't see how anything involved in this dispute would be in any way confidential," but invited the person seeking confidential treatment to "explain why" good cause exists "by motion" (*id.* at 14:14-24).

5. Earl advised Whitebox and Cowen of the Court's statement the same day, forwarding them a rough copy of the transcript provided by Debtors' counsel. Earl also advised Whitebox to move for a protective order if it was so inclined, and asked Cowen to promptly produce its non-confidential documents, as well as documents it believed were Confidential on substantially the same terms Whitebox agreed to produce said documents. Cowen refused, forcing Earl to move to compel on January 10, 2018 (No. 1:18-mc-14-RJS, S.D.N.Y.). Cowen produced documents two days later on those same terms, marking 100% of its production Confidential.[2]

---

between Whitebox and Cowen between January 17, 2017 and April 26, 2017. Earl and Whitebox have already conferred concerning the propriety of Whitebox's designations. Whitebox refused to de-designate <u>any</u> of the foregoing, on the ground it could result in public disclosure as to the manner in which it conducts business.

[2] Cowen's production is comprised entirely of e-mails and Bloomberg messages between it and Earl or Whitebox concerning the alleged Earl trade, and a draft and markup of the claim transfer agreement Cowen prepared and sent to Earl. Most of the communications produced have already been publicly filed. Earl disputes the propriety of Cowen's designation as to all documents produced.

# ARGUMENT

**I.    WHITEBOX HAS NOT CARRIED ITS BURDEN UNDER RULE 26**

6.     Under Rule 26(c), the Court "has the power to issue a protective order only upon a showing of good cause." *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994). The party seeking the order has the burden to show good cause. *Wiggins v. Burge*, 173 F.R.D. 226, 228 (N.D. Ill. 1997). In addition, the party seeking the "extraordinary relief" available under section 107(b) and Rules 9018 must "provide the court with <u>specific</u> factual and legal authority demonstrating that a particular document at issue is properly classified as 'confidential.'" *In re Anthracite Capital, Inc.*, 492 B.R. 162, 171 (Bankr. S.D.N.Y. 2013) (emphasis added) (denying relief on ground that movants "failed to allege with specificity what information is jeopardized").

7.     Whitebox's sole argument for protection is that its "internal communications and certain communications and agreements [with] Cowen … relate[] to the buying and selling of securities and … would affect Whitebox's ability to negotiate future claims trades," citing *In re Lomas Fin. Corp.*, 1991 WL 21231 (S.D.N.Y. Feb. 11, 1991). (Motion ¶¶14-15; *see also id*. ¶8.)

8.     Whitebox has not met its burden. <u>First</u>, Whitebox has not offered specific factual or legal authority demonstrating a particular document is commercial information, as required by *Anthracite*, instead arguing the contested matter's subject matter is itself cause to restrict public access to substantially all documents produced to Earl. <u>Second</u>, *Lomas* is inapposite. In *Lomas*, the creditors' committee disclosed in a public filing key information from a plan outline the debtors prepared and circulated with a legend stating it was confidential. On the debtors' motion, the Bankruptcy Court sealed the filing, on the ground that not doing so could disrupt the "quite active" market for the debtors' securities and claims. *Id*. at *1. The District Court affirmed, rejecting the committee's argument, based on *In re Itel Corp.*, 17 B.R. 942, 944 (B.A.P. 9th Cir. 1982), that commercial information in Rule 26(c) covers only information whose disclosure may give competitors an unfair advantage. *Lomas*, 1991 WL 21231, at *2 ("That interpretation is too narrow.

The same words 'commercial information' … include information related 'to the buying and selling of securities on the open market'"). Here, however, there is no "active" market for claims, now that the claims register closed under Section VI.F.1 of the Debtors' now-effective plan [ECF No. 6334-2]. Moreover, Whitebox's communications with Cowen and the A&R Agreement do not relate to the sale of securities. Rather, they relate to the transfer of Cowen's alleged right to purchase Earl's claim, which falls outside the scope of the definition of "security" in 11 U.S.C. § 101(49). <u>Third</u>, three years after *Lomas*, the Second Circuit defined "commercial information" by reference to the very definition *Lomas* rejected. *In re Orion Pictures Corp.*, 21 F.3d 24, 27 (2d Cir. 1994) (citing *Itel Corp.*, 17 B.R. at 944). The *Itel/Orion* definition of the term has been adopted in this district. *In re Handy Andy Home Imp. Ctrs., Inc.*, 199 B.R. 376, 381 (Bankr. N.D. Ill. 1996).

## II.  THE PROPOSED ORDER ATTEMPTS TO SHIFT TO EARL THE BURDEN OF PROVING DOCUMENTS DESIGNATED CONFIDENTIAL QUALIFY AS SUCH

9. Whitebox's proposed order, if entered, would inappropriately shift to Earl the burden of proving documents Whitebox and Cowen designated as Confidential constitute commercial information, should Earl wish to use those documents herein (*e.g.*, in a summary judgment motion, pretrial order, or pre-/post-trial briefing). The proposed order by its terms does not permit sealing (Motion Ex. A, ¶7) or redaction, but instead would purport to permit provisional sealing under Local District Rule 26.2(c). Local Bankruptcy Rule 5005-4.D, however, does not permit provisional sealing, and requires a prior order permitting sealing or redaction with respect to specified documents before Earl can file or submit a document under seal or with redactions. Securing said order would, in turn, require Earl to file a motion in advance arguing that the document(s) it seeks to seal or redact qualify as commercial information, which makes no sense given that Earl does not believe any portion of Whitebox's or Cowen's production qualifies as such. Absent said order, Earl would be precluded from publicly filing any portion of Whitebox's or Cowen's "Confidential" production pursuant to Paragraph 5 of the proposed order.

4

**CONCLUSION**

Whitebox is likely correct that disclosure of documents designated Confidential would affect its (and Cowen's) ability to negotiate future claim trades. (Motion ¶15.) However, that is not because anything in documents designated Confidential includes commercial information (claim trade pricing information therein (which Whitebox has already publicly filed) is by now roughly a year old, and its disclosure would not impact Cowen's or Whitebox's current or future positions in the marketplace), but rather because potential bankruptcy claim sellers may not wish to do business with Cowen or Whitebox if the A&R Agreement becomes a matter of public record. Respectfully, that is not a basis for protection under Rule 26(c), or limiting public access to papers under section 107(b) or Rules 9018. The motion should be denied.

Dated: January 14, 2018                           Respectfully submitted,

                                                  /s/ Jeffrey Chubak
                                                  Jeffrey Chubak (admitted *pro hac vice*)
                                                  STORCH AMINI PC
                                                  140 East 45th Street, 25th Floor
                                                  New York, New York 10017
                                                  Tel: (212) 497-8247
                                                  Fax: (212) 490-4208
                                                  jchubak@storchamini.com

                                                  - and -

                                                  Joseph D. Frank (IL No. 6216085)
                                                  FRANKGECKER LLP
                                                  325 North LaSalle Street, Suite 625
                                                  Chicago, Illinois 60654
                                                  Tel: (312) 276-1400
                                                  Fax: (312) 276-0035
                                                  jfrank@fgllp.com

                                                  *Counsel to Earl of Sandwich (Atlantic City), LLC*

# **EXHIBIT 1**

**Jan. 3 Hr'g Tr. Excerpt**

```
                                                                    1

 1            IN THE UNITED STATES BANKRUPTCY COURT
            FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                       EASTERN DIVISION

 3


 4   CAESARS ENTERTAINMENT OPERATING )
     COMPANY, INC., et al.,          )    No. 15 B 01145
 5                                   )    Chicago, Illinois
                                     )    9:30 a.m.
 6                   Debtor.         )    January 3, 2018

 7


 8            TRANSCRIPT OF PROCEEDINGS BEFORE THE
                HONORABLE A. BENJAMIN GOLDGAR
 9


10


11   APPEARANCES:

12   For the Debtors:            Mr. Scott Lerner;

13   For the Earl of Sandwich:   Mr. Joseph Frank;

14

15

16

17

18

19

20

21   Court Reporter:             Amy Doolin, CSR, RPR
                                 U.S. Courthouse
22                               219 South Dearborn
                                 Room 661
23                               Chicago, IL  60604.

24

25
```

1  you're always free to raise that objection.  If you
2  do -- there's an argument that you don't have to do
3  this -- it seems to me that Rule 5.1 of the civil
4  rules would require you to give notice to the United
5  States that you are drawing into question the
6  constitutionality of a bankruptcy rule.  Now, Rule
7  5.1 talks about statutes.  I don't know that this is
8  a statute.  But I'm going to require you to notify
9  the attorney general if you're going to raise a
10 jurisdictional argument that it seems to me draws
11 into question the constitutionality of 3002(e)(2).
12           MR. FRANK:  Well --
13           THE COURT:  But we're sort of getting
14 ahead of ourselves.
15           MR. FRANK:  Yeah, we are.  We are.
16           So, Your Honor, I appreciate your
17 ruling on the motion for protective order.  And, you
18 know, just so Your Honor is clear, we did submit a
19 protective order motion, or rather, Whitebox did, to
20 the court.  I don't know whether that's been entered.
21           THE COURT:  Well, I'll get to that in
22 a second.  So what I'd like to do then, consistent
23 with the ruling that I made today on the motion for
24 protective order, is get an order from you that you
25 can draw up that's consistent with my ruling which

1  would be granting the motion in part and denying it
2  in part and describing what's permitted and what's
3  not permitted.
4              MR. LERNER:  If I may, Your Honor.
5              THE COURT:  Yes.
6              MR. LERNER:  The discovery here that
7  you permitted I think still is of marginal relevance.
8  And it seems to me that one way to proceed would be
9  to have discovery from Whitebox occur first, and then
10 if further discovery from Prime Clerk as to the
11 communications between Prime Clerk and Whitebox is
12 deemed insufficient, then we can go back and look for
13 communications to and from Whitebox.  But these are
14 documents that Whitebox should have in its
15 possession.  Whitebox is a party to the dispute.
16 Prime Clerk is a third party.
17             We certainly can provide documents if
18 there's some indicia that they're not complete or
19 that there is something to be gained here, but I
20 still view this discovery as awfully tangential to
21 the narrow issue in this case.
22             THE COURT:  Not anymore, not now that
23 I've narrowed it.  And I don't think it's
24 particularly burdensome.  And I am not feeling real
25 kindly toward Prime Clerk these days anyway.  So,

1  even though I think I have the ability to order
2  discovery in the way you suggest, I don't usually do
3  that, and I don't see that any efficiencies are
4  really to be gained.  So, I will decline your
5  invitation.
6              MR. LERNER:  Okay.
7              THE COURT:  And you can go ahead.
8              Now, I was provided with a proposed
9  stipulation and order.  It's a protective order.
10 This is a separate protective order matter between I
11 guess it's Whitebox and Earl of Sandwich.  And what
12 I'm going to insist on since the proposed order -- I
13 have a couple problems with the proposed order.
14             The first is it says "good cause
15 appearing."  Well, I don't see any good cause.  And
16 if you're going to have me make a finding that
17 there's good cause, then I'm going to need a motion
18 that suggests there's good cause.  I'm not as a rule
19 a fan of protective orders.  It is hard for me,
20 frankly, to imagine that there would be good cause
21 here.  I just can't see how anything involved in this
22 dispute would be in any way confidential.  But you
23 can explain why.  Okay?
24             So I'd like this done by motion,
25 please.  I realize you're running up against sort of

16

1           THE COURT:  You can raise it in due
2  course.
3           MR. FRANK:  We're making two different
4  jurisdictional arguments, but --
5           THE COURT:  Well --
6           MR. FRANK:  -- the one you're
7  suggesting, the one Your Honor is suggesting I also
8  understand, and it's intriguing.  I'm not sure it's
9  the hill we want to die on in this case, but I'll
10 talk to my client about it.
11          THE COURT:  Well, I'll let you decide
12 where to die.
13          MR. FRANK:  Thank you, Your Honor.
14          (Which were all the proceedings had in
15           the above-entitled cause, January 3,
16           2018, 9:30 a.m.)
17 I, AMY B. DOOLIN, CSR, RPR, DO HEREBY CERTIFY
   THAT THE FOREGOING IS A TRUE AND ACCURATE
18 TRANSCRIPT OF PROCEEDINGS HAD IN THE ABOVE-
   ENTITLED CAUSE.
19
20
21
22
23
24
25

## CERTIFICATE OF SERVICE

I certify on January 14, 2018, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties who have requested notice by operation of the Court's CM/ECF system. Copies were also served by e-mail on Whitebox Advisors LLC and Cowen Special Investments LLC at the following addresses:

| **Counsel to Whitebox Advisors** | **Counsel to Cowen Special Investments** |
|---|---|
| Aaron L. Hammer | Scott Balber |
| Jack O'Connor | Steven Jacobs |
| SUGAR FELSENTHAL GRAIS & HAMMER LLP | HERBERT SMITH FREEHILLS NEW YORK LLP |
| ahammer@sfgh.com | scott.balber@hsf.com |
| joconnor@sfgh.com | steven.jacobs@hsf.com |
| - and - | |
| Douglas Mintz | |
| Ayanna Lewis-Gruss | |
| ORRICK, HERRINGTON & SUTCLIFFE, LLP | |
| dmintz@orrick.com | |
| alewisgruss@orrick.com | |

/s/ Jeffrey Chubak