# **EXHIBIT 3**

**Bradly Schwab Deposition Tr. (Excerpt)**

Page 1

1
2        IN THE UNITED STATES BANKRUPTCY COURT
3        FOR THE NORTHERN DISTRICT OF ILLINOIS
4                    EASTERN DIVISION
5
6
   In re:                          ) Case No. 15-01145
7                                  ) (ABG)
   CAESARS ENTERTAINMENT            )
8  OPERATING COMPANY, INC.,         ) Chapter 11
   et al.,                          )
9                                  )
              Debtors.              )
10 ----------------------------)
11
12
13
14
15
16         DEPOSITION OF BRADLY SCHWAB
17              New York, New York
18          Tuesday, January 16, 2018
19
20
21
22
23 Reported by:
24 KRISTIN KOCH, RPR, RMR, CRR
25 JOB NO. 135595A

Case 15-01145   Doc 7766-3   Filed 01/23/18   Entered 01/23/18 18:40:30   Desc
Exhibit 3 - Schwab Depo. Tr. (Excerpt)   Page 3 of 8

Page 33

1                     B. Schwab
2  paragraph, the second sentence in particular,
3  the one which begins "if this is a transaction
4  Planet Hollywood would like to pursue."
5      A.   Uh-huh.
6      Q.   Is it correct that you understood at
7  that point in time that you did not have an
8  agreement concerning the terms of a purchase
9  and sale agreement with Earl of Sandwich?
10          MR. BALBER:  Object to the form of
11      the question.
12      A.   As I said, I don't remember
13 specifically at that point in time.  All I can
14 refer to is what's written in front of me.
15      Q.   Is it fair to say that you wouldn't
16 have said "if this is a transaction Planet
17 Hollywood would like to pursue" if you
18 understood you had a deal at that point in
19 time?
20          MR. BALBER:  Object to the form of
21      the question.
22      A.   It's just words.  I mean, I think
23 there is a transaction based on 59.72 percent
24 of 2.15 million.
25      Q.   Based on the e-mails that we have

Case 15-01145  Doc 7766-3  Filed 01/23/18  Entered 01/23/18 18:40:30  Desc
Exhibit 3 - Schwab Depo. Tr. (Excerpt)  Page 4 of 8

Page 34

1  B. Schwab
2  reviewed so far, did you understand Cowen to
3  have had an agreement with Earl of Sandwich
4  concerning the purchase and sale of the
5  bankruptcy claim?
6      A.    Can you define "agreement"?
7      Q.    A mutual understanding concerning
8  the purchase and sale of the bankruptcy claim
9  whose terms were defined -- under defined
10 terms.
11     A.    I would say an understanding to
12 employ best efforts to move forward to see if
13 you could get to a document that's mutually
14 acceptable.
15     Q.    Is that based solely on Thomas'
16 2:04 p.m. e-mail on the third page of the -- of
17 Exhibit 81?
18     MR. BALBER:  Object to the form of
19     the question.
20     A.    I guess it is.  I mean, if you are
21 just referring to an e-mail, I guess.
22     Q.    Do you remember having spoken with
23 Thomas Avallone?
24     A.    I remember speaking -- I know there
25 was a conversation.  I don't remember the

Case 15-01145   Doc 7766-3   Filed 01/23/18   Entered 01/23/18 18:40:30   Desc
Exhibit 3 - Schwab Depo. Tr. (Excerpt)    Page 5 of 8

Page 35

1                     B. Schwab
2    contents of the conversation.
3         Q.    I am going to refer you to the
4    9:47 a.m. e-mail that precedes it on the same
5    page in which Thomas Avallone writes to you:
6    "Please forward draft document."
7               Do you remember having received this
8    e-mail?
9         A.    I don't recall receiving it, but
10   it's here.
11        Q.    Sitting here today, what did you
12   understand this response to mean?
13        A.    That there is an understanding to
14   push forward all subject to figuring out a
15   purchase and sale agreement, which is subject
16   to negotiation based on the terms and
17   conditions that were listed earlier.
18        Q.    Is it possible that Tom was
19   responding to your e-mail -- to the second
20   paragraph of your 3:47 p.m. e-mail "please
21   confirm that you are good with the above terms
22   and I will forward you a purchase and sale
23   agreement for review"?
24              MR. BALBER:  Object to the form of
25         the question.

Case 15-01145   Doc 7766-3   Filed 01/23/18   Entered 01/23/18 18:40:30   Desc
Exhibit 3 - Schwab Depo. Tr. (Excerpt)    Page 6 of 8

Page 37

1                    B. Schwab

2       A.    No.  Not that I know.  And this is
3  Thursday.  No, I don't believe there is.
4       Q.    You testified earlier that Cowen
5  Special Investments did not record bankruptcy
6  claim trades absent the existence of an
7  Assignment of Claim Agreement; is that correct?
8              MR. BALBER:  Objection.
9       Mischaracterizes the witness' prior
10      testimony.
11             You can answer.
12      A.    We did not put anything on the books
13 and records until there were signed purchase
14 and sale agreements.
15      Q.    On January 12 did you instruct --
16 withdrawn.
17             Following this e-mail exchange, did
18 you do anything to ensure that this claim trade
19 was reflected on Cowen's books and records?
20      A.    After the correspondence I had I
21 wasn't involved in the transaction ever again.
22      Q.    Do you know who was involved?
23      A.    I would -- I mean, from the
24 standpoint of Gail was managing the process and
25 then it went from there.

Case 15-01145   Doc 7766-3   Filed 01/23/18   Entered 01/23/18 18:40:30   Desc
Exhibit 3 - Schwab Depo. Tr. (Excerpt)    Page 7 of 8

Page 38

1                        B. Schwab

2       Q.   Do you know if Gail did anything to
3  ensure that the trade was reflected on the
4  books and records of Cowen Special Investments?
5       A.   Not that I'm aware of, just because
6  you wouldn't put it on the books and records
7  unless there is an executed purchase and sale
8  agreement.
9       Q.   Did Thomas ever tell you that any
10 transaction with Earl would be subject to the
11 approval of Robert Earl?
12      A.   I don't remember.  I only know there
13 was a conversation which I don't remember the
14 contents of.
15      Q.   Did Thomas ever advise you that he
16 was a member of the Official Committee of
17 Unsecured Creditors in the Caesars Chapter 11
18 cases?
19      A.   I don't remember.
20           (Exhibit 83, e-mail dated January
21      12, 2017, Bates stamped Confidential
22      CSI_00000112 through Confidential
23      CSI_00000122, marked for identification.)
24      Q.   Do you recognize this document?  I
25 am referring to the first page only.

Case 15-01145   Doc 7766-3   Filed 01/23/18   Entered 01/23/18 18:40:30   Desc
Exhibit 3 - Schwab Depo. Tr. (Excerpt)    Page 8 of 8

Page 79

```
1
2                C E R T I F I C A T E
3
4    STATE OF NEW YORK    )
5                         ) ss.:
6    COUNTY OF NASSAU     )
7
8              I, KRISTIN KOCH, a Notary Public
9         within and for the State of New York, do
10        hereby certify:
11             That BRADLY SCHWAB, the witness whose
12        deposition is hereinbefore set forth, was
13        duly sworn by me and that such deposition
14        is a true record of the testimony given by
15        such witness.
16             I further certify that I am not
17        related to any of the parties to this
18        action by blood or marriage; and that I am
19        in no way interested in the outcome of this
20        matter.
21             IN WITNESS WHEREOF, I have hereunto
22        set my hand this 19th day of January, 2018.
23                            --------------------------
24                            KRISTIN KOCH, RPR, RMR, CRR, CLR
25
```