**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

-----------------------------------------------------------------------x
                                 :

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| Caesars Entertainment Operating Company, Inc., *et al.*, | : | Case No. 15-01145 (ABG) |
| | : | |
| Debtors. | : | |
| | : | Jointly Administered |

-----------------------------------------------------------------------x

**WHITEBOX ADVISORS LLC'S REPLY TO EARL OF SANDWICH'S
OBJECTION TO WHITEBOX'S MOTION FOR PROTECTIVE ORDER**

      Whitebox Advisors LLC respectfully submits this reply memorandum in response to Earl of Sandwich (Atlantic City), LLC's Objection to Whitebox's Motion for Protective Order, dated January 12, 2018 (Dkt. 7739) and in further support of Whitebox's Motion for a Protective Order ((Dkt. 7732).[1]

## I.      BACKGROUND

      1.  As further detailed in Whitebox's Motion, dated January 12, 2018 (Dkt. 7732), Whitebox and Earl agreed in December to enter into a stipulated proposed confidentiality agreement and protective order designed to protect both parties' confidential discovery materials. The parties' stipulated protective order was provided to the Court on December 28, 2018. At a hearing on January 3, 2018, the Court asked Earl to submit a protective order consistent with the District Court's model order and motion in support of the request for a protective order. (Tr. 14:24-15:17 (requesting Mr. Frank file a revised protective order and motion).

---

[1] Capitalized terms not defined herein have the same meaning as ascribed to them in Whitebox's Motion for a Protective Order.

2.    Subsequently, Earl advised Whitebox that it would not agree to file a motion seeking approval of the proposed confidentiality agreement and protective order.  (Declaration of Ayanna Lewis-Gruss ¶7.)

3.    Therefore, on January 12, 2018, Whitebox filed its Motion seeking approval of a revised protective order. The proposed revised protective order (the "Protective Order") hews closely to the Court's form protective order.  Whitebox attached a blackline showing all modifications to the form protective order as Exhibit B to Whitebox's Motion.

4.    Earl filed its Objection to Whitebox's Motion on January 12, 2018.  (Dkt. No. 7739). At a hearing on January 17, 2017, the Court invited Whitebox to file a reply brief. (Tr 14:13-17) (ordering reply by January 24 and hearing February 7).  Whitebox now presents its arguments in response to Earl's opposition and in further support of its motion for a protective order.

## II.    ARGUMENT

### A.    Rule 107 Mandates Entry of a Protective Order For Commercial Information

5.    Section 107(b)(1) of the Bankruptcy Code requires that  "On request for a party in interest, the bankruptcy court *shall* … protect an entity with respect to a trade secret or confidential research, development, or commercial information…[.]"  (Emphasis added.)  Fed. R. Bankr. P. 9018 provides, "[T]he court may make any order which justice requires to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information…[.]"

6.    These rules protect confidential commercial information from public disclosure. Because the documents at issue here include Whitebox's confidential commercial information, and because Whitebox seeks a protective order to shield these documents from disclosure, Section

2

107(b)(1) of the Bankruptcy Code and Fed. R. Bankr. P. 9018 require that its motion for a protective order be granted. *See In re Barney's, Inc.*, 201 B.R. 703, 707 (Bankr. S.D.N.Y. 1996) ("Once [a court] determines that [the documents] fit any of the specified categories in the statute, the court is *required* to protect a requesting party and has no discretion to deny the application." (emphasis in original) (internal quotations omitted)).

7.      Commercial information has been defined as "information which would cause an unfair advantage to competitors by providing them information as to the commercial operations of the debtor." *In re Handy Andy Home Imp. Centers, Inc.,* 199 B.R. 376, 381 (Bankr. N.D. Ill. 1996).

8.      The Northern District of Illinois has concluded that "contract negotiations and strategies, contract terms, and pricing information…qualify as confidential commercial information." *F.T.C. v. OSF Healthcare Sys.*, 2012 WL 1144620, at *4 (N.D. Ill. 2012).  Courts have also held that the term "commercial information" includes "information related to the buying and selling of securities on the open market." *In re Lomas Fin. Corp.*, 1991 WL 21231, at *2 (S.D.N.Y. 1991) (holding that "commercial information" has the same meaning in both Fed. R. Civ. P. 26(c)(7) and Section 107(b)(1).)  In *Lomas*, the Court determined that the disclosure of this information would give other entities the "ability to affect the market in which they might sell their claims," and have a chilling effect on future negotiations to the detriment of the disclosing party. *Id*.

9.      Earl argues that *Lomas* is inapposite because here there is "no 'active' market for claims now that the claims register closed. . . ."  Objection at ¶8.  This argument misunderstands the holding in *Lomas,* which stands for the proposition that commercial information includes information related to the purchase and sale of securities on the open market.  Here, Whitebox

continues to purchase and sell claims on the open market – not just claims in this Chapter 11 case. If the information Whitebox seeks to protect is made public, it will provide Whitebox's competitors in all future trades with direct insight into its confidential buying, selling, contract negotiation, and contract formation processes and strategies. This would, in turn, give its competitors a clear, unfair market advantage – and thus would constitute commercial information under the standard established in *Handy Andy* and *F.T.C. v. OSF Healthcare Sys*.

10.    Here, Whitebox seeks to protect approximately 289 pages of documents marked confidential during the discovery process. (Lewis-Gruss Decl. ¶4.) Whitebox seeks to protect internal communications and certain communications it had with Cowen Special Investments LLC, including an agreement it entered into with Cowen. Specifically, Whitebox seeks protection for an Assignment and Release Agreement negotiated and executed between Whitebox and Cowen pursuant to Rule 408 of the Federal Rules of Evidence, communications exchanged between Whitebox and representatives of Cowen in January 2017 concerning the negotiation of a document related to Whitebox's purchase of the Claim from Cowen, communications between Cowen and Whitebox in March 2017 concerning the Claim, a letter sent by representatives of Whitebox to Cowen in April 2017 concerning the Claim, and a brief series of Bloomberg chat messages exchanged internally at Whitebox or between Whitebox and Cowen in January, February, and April of 2017.[2] (Lewis-Gruss Decl. ¶5.) Whitebox has not withheld any documents from production on the basis of a claim of confidentiality. (*Id.* ¶6.)

11.    These documents clearly meet the criteria for commercial information as set forth in *Handy Andy*, *In re Lomas*, and *F.T.C. v. OSF Healthcare*. The information contained in these

---

[2] Whitebox maintained the confidentiality of the information by either only discussing it internally or by exchanging information with a counterparty in the course of negotiations and business dealings

documents would provide an unfair advantage to Whitebox's competitors; a point virtually conceded by Earl.  *See* Objection at p. 10 ("Whitebox is likely correct that disclosure of the documents designated would affect its . . . ability to negotiate future trade claims").  The designated information pertains directly to the buying and selling of securities on the open market, and specifically to Whitebox's contract negotiations and strategies, contract terms, and pricing information.  If disclosed, this information would cause an unfair advantage to Whitebox's competitors by providing them with crucial insight into its commercial operations and strategies, including its negotiation tactics and financial bearings.  This is the information that section 107 of the Bankruptcy Code and Rule 9018 are intended to protect.

12. The authority cited by Earl in its Opposition also supports Whitebox's position.  For example, in *In re Anthracite Capital, Inc*., 492 B.R. 162 (Bankr. S.D.N.Y. 2013), the Court held that "[c]ommercial information need not rise to the level of a trade secret to qualify for protection under section 107(b)," and that "107(b)(1) is meant to prevent business competitors from seeing confidential business-related information and using that information to the detriment of the movant."

### **1.  Rule 26(c) Does Not Establish the Standard for Issuance of a Protective Order**

13. Earl argues that Whitebox must demonstrate "good cause" for the Court to protect the documents at issue and cites to Federal Rule of Civil Procedure 26(c)(1)(G).[3]  (Objection ¶6.)  Given that the documents at issue contain "commercial information" covered by Bankruptcy Code section 107(b) and Federal Rule of Bankruptcy Procedure 9018, good cause is not required.  *Handy Andy,* 199 B.R. 376 at 381.

---

[3] Federal Rule of Bankruptcy Procedure 7026 incorporates F.R.C.P. 26 in full.

14.     As the Court recognized in *Handy Andy*:

> In section 107 the distinction between the Bankruptcy Code and the Fed.R.Civ.P. 26(c) is clear.  If the information for which protection is sought fits into any of the categories specified in § 107(b), the court is required to protect a requesting interested party, and has no discretion to deny the application (for a protective order).  Good cause is not an element of section 107.  When Congress addressed the secrecy problem in § 107(b) of the Bankruptcy Code it imposed no requirement to show "good cause" as a condition to sealing confidential commercial information.

(internal citations and quotations omitted.)  *Id.*  Likewise "Rule 9018 does not require a showing of 'good cause'…"  *Id.* at 381-382.  (Rule 9018's "sole requirement is that the information for which protection is sought falls into on[e] of the required categories.")  Accordingly, Earl's argument that Whitebox has not met its burden under Rule 26 fails.

**B.     <u>The Proposed Order Does Not Prejudice Earl</u>**

15.     The Proposed Order adheres closely to the District Court's model order.  (*See* Blackline attached as Exhibit B to the Motion).  Earl argues that the Proposed Order would "inappropriately shift to Earl the burden of proving documents Whitebox and Cowen designated as Confidential constitute commercial information, should Earl wish to use those documents herein."  (Objection ¶ 9.)  That assertion is not supported by the terms of the Proposed Order.

16.     Under the terms of the Proposed Order, after a party designates information as confidential (consistent with either paragraph 3 or 4 of the Proposed Order), Earl may challenge any designation.  (Proposed Order ¶9.)  To do so it must only meet and confer with Whitebox to identify its concerns. (Proposed Order ¶9(a).)  If Whitebox fails to change any designation, Earl need only file a pleading setting forth the basis for its objection.  At this point "the burden of persuasion on any such challenge proceeding shall be on the designating party [Whitebox in this example]".  (Proposed Order ¶9(b).)  Thus the Proposed Order fails to shift any burden to Earl –

beyond identifying its objections to any contested designation.  This would not prejudice Earl or place any meaningful burden on it.

### III.    <u>CONCLUSION</u>

17.    For the foregoing reasons and for the reasons set forth in Whitebox's Motion for a Protective Order, the motion should be granted and a protective order should be issued.

Date:  January 24, 2018

/s/ Douglas S. Mintz
Douglas S. Mintz, Esq. (admitted *pro hac vice*)
ORRICK, HERRINGTON & SUTCLIFFE, LLP
Columbia Center
1152 15th Street, N.W.
Washington, D.C., 20005-1706
Telephone:  (202) 339-8400
Facsimile:  (202) 339-8500

Ayanna Lewis-Gruss (admitted *pro hac vice*)
Peter J. Amend, Esq. (admitted *pro hac vice*)
ORRICK, HERRINGTON & SUTCLIFFE, LLP
51 West 52nd Street
New York, NY 10019
Telephone:  (212) 506-5000
Facsimile:  (212) 506-5151

-and-

Aaron L. Hammer (IL No. 6243069)
Jack O'Connor (IL No. 6302674)
SUGAR FELSENTHAL GRAIS & HAMMER LLP
30 N. LaSalle Street, Suite 3000
Chicago, IL 60602
Telephone:  312.704.9400
Facsimile:  312. 372.7951
ahammer@SFGH.com
joconnor@SFGH.com

*Co-Counsel for Whitebox Advisors LLC.*

7