**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>CAESARS ENTERTAINMENT OPERATING COMPANY, INC., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 15-01145 (ABG)<br><br>Jointly Administered |

**NOTICE OF EARL OF SANDWICH'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS BY WHITEBOX ADVISORS**

PLEASE TAKE NOTICE that on February 21, 2018 at 10:30 a.m. (Central Time), Earl of Sandwich (Atlantic City), LLC ("Earl") will appear before the Honorable A. Benjamin Goldgar, in Courtroom 642 in the Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, Illinois 60604, and present the annexed motion to compel the production of documents by Whitebox Advisors LLC ("Whitebox") pursuant to Rule 37.

PLEASE TAKE FURTHER NOTICE that any objection to the motion must be filed by February 14, 2018 at 4:00 p.m. (Central Time), and served, so as to be received by such time by Earl's undersigned counsel, counsel for the Debtors, counsel for Whitebox, the Office of the United States Trustee, and all parties entitled to notice pursuant to Rule 2002.

Dated: February 6, 2018

Respectfully submitted,

/s/ Jeffrey Chubak
Jeffrey Chubak (admitted *pro hac vice*)
STORCH AMINI PC
140 East 45th Street, 25th Floor
New York, New York 10017
Tel: (212) 497-8247
Fax: (212) 490-4208
jchubak@storchamini.com
- and -
Joseph D. Frank (IL No. 6216085)
FRANKGECKER LLP
325 North LaSalle Street, Suite 625
Chicago, Illinois 60654
Tel: (312) 276-1400
Fax: (312) 276-0035
jfrank@fgllp.com

*Counsel to Earl of Sandwich (Atlantic City), LLC*

**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>CAESARS ENTERTAINMENT<br>OPERATING COMPANY, INC., *et al.*,<br><br>                    Debtors. | Chapter 11<br><br>Case No. 15-01145 (ABG)<br><br>Jointly Administered |

**EARL OF SANDWICH'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS BY WHITEBOX ADVISORS**

      Earl of Sandwich (Atlantic City), LLC ("Earl") hereby moves for an order, substantially in the form annexed hereto as Ex. 1, to compel the production of documents by Whitebox Advisors LLC ("Whitebox") pursuant to Rule 37 and respectfully states:

**INTRODUCTION**

      1.    The discovery which Earl seeks is quite limited—documents concerning the Assignment and Release Agreement dated June 19, 2017 ("A&R Agreement") between Whitebox and Cowen Special Investments LLC ("Cowen"), including all communications exchanged between them concerning that agreement (including communications through counsel). The temporal scope is just two months—April 18, 2017 to June 19, 2017. The requested discovery is plainly relevant to Cowen's understanding concerning the existence or non-existence of the alleged Earl-Cowen agreement prior to entry into the A&R Agreement.

      2.    Whitebox's responses and objections asserted just boilerplate in response to those requests. Its responses also failed to comply with Rule 34(b)(2)(B)-(C), as amended in 2015. During the meet-and-confer process, Whitebox acknowledged its stated objections are not a valid basis for nondisclosure, but now states that nondisclosure is justified because the integration clause in the A&R Agreement puts prior communications between Cowen and Whitebox outside the scope of discovery.

1

3.     Whitebox waived this argument by failing to timely assert it.  Regardless, it fails as a matter of law for reasons described below and, more significantly, ignores the realities of the underlying contested matter.  It would make no sense to permit Whitebox to avoid disclosure obligations by contracting with a nonparty (Cowen) to resolve litigation threatened against that nonparty by Whitebox.  Disclosure should be compelled.

## BACKGROUND

**I.     EVENTS PRECEDING DISCOVERY IN THE UNDERLYING CONTESTED MATTER**

4.     Whitebox alleged in its Transfer of Claim, filed October 5, 2017 [ECF No. 7471], that Earl agreed to sell Proof of Claim No. 5858 (the "Claim") to Cowen in exchange for $2.15 million by e-mails exchanged on January 11, 2017 at 2:04 p.m. and the next day at 8:34 a.m.  (*Id*. Ex. 1, p.1.)

5.     Whitebox further alleged "Cowen sold the Claim to Whitebox [by] email trade confirmation to Whitebox that confirmed the terms of Whitebox's acquisition of the Claim," which Cowen sent January 12, 2017 at 11:12 a.m. (*Id*. Ex. 1, p.2, referencing Declaration of Bryan Seyfried ("Seyfried Decl.") Ex. B.)

6.     Notwithstanding Whitebox's position that it "acquired" the Claim then—before Cowen so much as sent Earl a draft agreement to review (on January 12 at 1:24 p.m.), and without Cowen or Whitebox having paid anything to Earl for the Claim—Whitebox represented that it later entered into the A&R Agreement, under which "Cowen transferred any and all rights of Cowen with respect to the Claim."  (*Id*. Ex. 1, p.3.)

2

7.  Whitebox has taken the position herein that the A&R Agreement's purpose was to permit Whitebox to "stand in Cowen's shoes" and "sweep up any loose ends" so Whitebox could enforce Cowen's alleged contractual rights against Earl.[1]

8.  On October 18, 2017, Earl objected to the Transfer of Claim [ECF No. 7550].

9.  Whitebox thereafter served its first set of requests for production on Earl.

10. Following a hearing held November 15, 2017, Bankruptcy Judge Cassling entered a scheduling order permitting discovery in the contested matter [ECF No. 7598].

## II.   DISCOVERY IN THE UNDERLYING CONTESTED MATTER

11. Earl served its first set of requests for production on Whitebox on November 17, 2017, a copy of which is annexed hereto as Ex. 2.

12. Whitebox served its responses and objections to Earl's requests for production on December 18, 2017, a copy of which is annexed hereto as Ex.3. Whitebox responded and objected to Request Nos. 4 and 8 as follows:

---

[1] This presents a serious champerty issue. The A&R Agreement provides that it and all matters relating to it are governed by New York law. N.Y. Judiciary Law § 489(1) prohibits the assignment of claims with the intent and for the primary purpose of bringing a lawsuit. *Justinian Capital SPC v. WestLB AG*, 65 N.E.3d 1253, 1254 (N.Y. 2016). A non-statutory limit on the champerty doctrine exists, under which an assignment is not considered champertous if its purpose is to permit the assignee to collect damages for losses suffered on an instrument in which it holds a preexisting proprietary interest. *Trust for the Certificate Holders of Merrill Lynch Mortg. Invs., Inc. v. Love Funding Corp.*, 918 N.E.2d 889, 895 (N.Y. 2009). Whitebox has taken the position it qualifies for this exclusion because on receipt of the trade confirmation annexed to the Seyfried Declaration as Ex. B, Whitebox: (a) booked the purchase of the Earl Claim from Cowen; (b) was confident Cowen had executed a mirror trade confirmation with Earl based on prior dealings with Cowen (and its predecessor); and (c) reserved funds to purchase the Claim from Cowen. Earl disputes that Cowen's e-mailing the trade confirmation to Whitebox conferred any ownership interest in the Claim on Whitebox, as it is undisputed that Cowen had not closed on any transaction with Earl (indeed, Cowen had not even e-mailed Earl a draft agreement to consider) when the trade confirmation was sent, nor had Cowen then or thereafter recorded any trade with Earl on its own books and records. That is, Whitebox may have thought it would acquire a proprietary interest in the Claim when the trade confirmation was sent, but did not then acquire one. This is in contrast to *Love Funding*, where the plaintiff securitization trust actually carried risk of financial loss associated with a defaulted mortgage loan before it was assigned the right to sue on that loan.

3

**REQUEST NO. 4:**
All Documents concerning the A&R Agreement, including an executed version thereof.

**RESPONSE TO REQUEST NO. 4:**
See General Objections and Responses 1-9, which are incorporated by reference as though set forth fully herein. Whitebox further objects to this Request on the ground that it is overly broad and unduly burdensome. Whitebox also objects to this Request to the extent it seeks documents that are protected by any applicable privilege or immunity. Subject to and without waiving the foregoing objections, Whitebox responds that it will produce the A&R Agreement.

**REQUEST NO. 8:**
All Communications exchanged between You and Cowen concerning the A&R Agreement.

**RESPONSE TO REQUEST NO. 8:**
See General Objections and Responses 1-9, which are incorporated by reference as though set forth fully herein. Whitebox further objects to this Request on the ground that it is overly broad and unduly burdensome. Whitebox also objects to this Request to the extent it seeks documents that are protected by any applicable privilege or immunity. Whitebox additionally objects to this Request on the ground that it is duplicative or cumulative of information requested in Request No. 4, and responds that it will produce the responsive, non-privileged documents specified in its response to that Request.

13. Whitebox subsequently made three productions totaling 362 pages, marking the vast majority of its documents Confidential.

14. Its production included a February 28, 2017 e-mail from Cowen to Whitebox, in which Cowen's "Director, Legal" advises Whitebox that it did not believe commencing litigation against Earl made sense. Specifically, Cowen stated:

> Cowen takes the failure of a party to stand up to a trade as a very serious matter and has therefore taken all reasonable actions to attempt to hold the seller to a good faith negotiation to complete the trade. Among other things, Cowen [wrote a letter to Earl, Seyfried Decl. Ex. C]. We have not yet heard back from the principal and believe at this point that a response is unlikely. The party is not a

4

> regular participant in the trade claims business and appears to have walked away from the trade.
>
> Upon review of this matter, we do not believe that any further action would be productive or is practical in this instance.

*See* Ex. 4 hereto, Ex. B.[2]

15.    By letter, dated April 18, 2017 ("Mintz Letter"), Whitebox responded, through counsel, that Cowen's response was "problematic," and demanded that Cowen either "file a notice of the transfer with the Bankruptcy Court" and "review proper remedies [against Earl] under applicable state law including contractual and tort claims," or "alternative[ly], we [Whitebox] request that you [Cowen] permit us to proceed [against Earl] on your behalf."  The Mintz letter further threatened litigation against Cowen "[i]f you are unable or unwilling to pursue these paths." *Id.*, pp.1-3.

16.    Whitebox's production omitted all documents and communications from and after the Mintz Letter, save two pages of Instant Bloomberg messages between Whitebox employees, dated April 26, 2017 (8 days after the Mintz Letter), a 5-line June 9, 2017 e-mail from Whitebox to Cowen urging it to execute the A&R Agreement and threatening litigation if it does not, and an executed A&R Agreement, dated ten days after that e-mail.

17.    Whitebox further confirmed to Earl by e-mail, sent January 2, 2018, that it was not withholding "otherwise responsive documents on the basis of the common interest privilege."

18.    The parties conferred on January 31, 2018 at 4:00 p.m. to discuss Whitebox's objection to production of documents in response to Request Nos. 4 and 8 (quoted above).  Jeffrey Chubak attended on Earl's behalf and Ayanna Lewis-Gruss attended on Whitebox's behalf. Whitebox acknowledged that its general and specific objections to those requests were not a valid

---

[2] Ex. 4 is marked Confidential.  Following its production, Whitebox agreed that it does not qualify as such.

basis for withholding responsive documents. Instead, Whitebox took the position that the requested documents are not relevant under Rule 26(b)(1) by operation of the A&R Agreement's integration clause.[3]

19. That integration clause, in turn, is a boilerplate provision which provides as follows:

> This Agreement constitutes the complete agreement of the Parties with respect to the subject matters referred to herein and supersedes all prior or contemporaneous negotiations, agreements or representations of every nature whatsoever with respect thereto, all of which have become merged and finally integrated herein.

20. Pursuant to Rule 37(a)(1), Earl certifies it conferred in good faith with Whitebox in an effort to obtain the discovery sought herein without court action. Pursuant to Local Bankruptcy Rule 7037-1, Earl states after consultation by telephone, and good faith attempts to resolve differences, Earl and Whitebox were unable to reach an accord.

## ARGUMENT

**I. WHITEBOX HAS NOT MET ITS BURDEN IN OBJECTING TO THE SUBJECT REQUESTS, AND HAS WAIVED ITS INTEGRATION CLAUSE OBJECTION**

21. Pursuant to Rule 34(b)(2)(A), "[t]he party to whom the request [for production] is directed must respond … within 30 days after being served." Pursuant to subdivision (B), "[f]or each [request], the response must either state that inspection and related activities will be permitted

---

[3] Whitebox confirmed as much in an e-mail sent approximately three hours after meet-and-confer, asking Earl to confirm as follows:

> Cowen-Whitebox Communications Concerning the A&R Assignment
> -   It is your position that communications leading up to the A&R Assignment are relevant to Cowen's views on the question of mutual assent.
> -   I stated that it is our position that the integration clause in the A&R Assignment renders anything said during the negotiations of the agreement between Cowen and Whitebox irrelevant, and that the agreement speaks for itself.

Earl reiterated its position on the integration clause objection in a return e-mail sent the following morning.

6

as requested or state with specificity the grounds for objecting to the request, including the reasons." Pursuant to subdivision (C), "[a]n objection must state whether any responsive materials are being withheld on the basis of that objection."

22.   Objections to requests for production that are not timely made are waived. *Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc.*, 236 F.R.D. 396, 398 (N.D. Ill. 2006) (objections to discovery requests waived as a result of failure to timely assert objections that could have been "seasonably asserted"); *Jackson v. Clarkson Eyecare, Inc.*, No. 10-cv-178, 2010 WL 5014315, at *1 (S.D. Ill. 2010) ("it is axiomatic that any objection not specified is waived if not timely lodged," parsing language of Rule 34).

23.   So are objections not made "with specificity" under Rule 34(b)(2)(B). *Fischer v. Forrest*, No. 14-cv-1304, 14-cv-1307, 2017 WL 773694, at *3 (S.D.N.Y. Feb. 28, 2017) ("any discovery response that does not comply with Rule 34's requirement to state objections with specificity … will be deemed a waiver of all objections"); *see also Liguria Foods, Inc. v. Griffith Labs., Inc.*, 320 F.R.D. 168, 184-87 (N.D. Iowa Mar. 13, 2017); *RealPage, Inc. v. Enterps. Risk Control, LLC*, No. 4:16-cv-737, 2017 WL 1165688, at *3 (E.D. Tex. March 29, 2017).

24.   In responding to the subject requests (Request Nos. 4 and 8), Whitebox has the burden of showing they are improper. *Burkybile v. Mitsubishi Motors Corp.*, No. 04-cv-4932, 2006 WL 2325506, at *6 (N.D. Ill. Aug. 2, 2006) ("If the party from whom the documents are requested objects to their production, that party has the burden to show why a discovery request is improper"); *see also Meyer v. S. Pac. Lines*, 199 F.R.D. 610, 612 (N.D. Ill. 2011) (same).

25.   Whitebox has not met its burden. None of the litany of "to the extent" general objections included in its responses and objections apply to the subject requests, putting aside that incorporating general objections into responses and objections is no longer permitted under Rule 34. *Fischer*, 2017 WL 773594, at *3.

7

26. The specific objections are either inapplicable or palpably improper. Whitebox does not dispute that the objection to each of Request Nos. 4 and 8 "to the extent it seeks documents that are protected by any applicable privilege or immunity" does not justify its nondisclosure.

27. That leaves the objection to each of those requests "on the ground that it is overly broad and unduly burdensome." As noted in *Burkbile*, the "burden [of the party resisting document discovery] cannot be met by a reflexive invocation of 'the same baseless, often abused litany' that the requested discovery is 'vague, ambiguous, overly broad, [or] unduly burdensome.'" 2006 WL 2325506, at *6 (quoting *Swift v. First USA Bank*, No. 98-cv-8232, 1999 WL 1212561, at *7 (N.D. Ill. Dec. 15, 1999)). *See also Smith v. Bayer Material Science, LLC*, No. 12-cv-171, 2013 WL 3153467, at *1 (N.D. W. Va. June 19, 2013) ("Generalized, boilerplate objections that regurgitate the language from Rule 26—irrelevant, overly broad, and unduly burdensome—are highly disfavored and will usually result in waiver of the objection"); *Fischer*, 2017 WL 773694, at *3 (citing *Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 358 (D. Md. 2008)) ("The responses … stating that the requests are 'overly broad and unduly burdensome' is meaningless boilerplate. Why is it burdensome? How is it overly broad? This language tells the Court nothing. Indeed, even before the December 1, 2015 rules amendments, judicial decisions criticized such boilerplate objections.").

28. That burden has become even tougher for parties resisting discovery to meet as a result of the 2015 amendments to Rule 34, which now requires that objections be asserted with specificity, and that such parties disclose what documents are being withheld on the basis of an objection (which Whitebox did not do).

29. The subject requests plainly satisfy relevance requirements. "Requests for discovery are relevant if there is any possibility that the information sought may be relevant to the subject matter of the action." *Kodish v. Oakbrook Terrace Fire Protection Dist.*, 235 F.R.D. 447,

Case 15-01145   Doc 7785   Filed 02/06/18   Entered 02/06/18 19:32:08   Desc Main
                            Document      Page 10 of 13

450 (N.D. Ill. 2006). Relevance is interpreted broadly "in order to aid the search for truth." *Id*. The subject requests are relevant to Cowen's view concerning the existence or non-existence of the alleged Earl-Cowen agreement (on which the underlying contested matter is premised), prior to entry into the A&R Agreement. Mintz Letter Ex. B provides some insight into how Cowen viewed the alleged Earl-Cowen agreement, prior to Whitebox's threatening Cowen with litigation. However, there is no reason why disclosure concerning Cowen's view should stop at April 18, 2017, the date of the Mintz Letter. Subsequent, pre-A&R Agreement communications between Whitebox and Cowen may, and likely will, provide additional insight into Cowen's view concerning the existence or non-existence of an Earl-Cowen agreement, before Cowen entered into the A&R Agreement to resolve litigation threatened against it by Whitebox.

30.  Whitebox's objection that the subject requests are overly burdensome also fails, because it can easily produce the requested documents by simply applying search terms to custodians' e-mails during the two-month period between when Cowen and Whitebox commenced negotiating the A&R Agreement which Earl now knows is April 18, 2017 (date of the Mintz Letter) and June 19, 2017 (the agreement date). There can be little doubt the subject requests satisfy proportionality requirements.

31.  In short, Whitebox has not timely asserted a valid objection to the subject requests in its responses and objections, resulting in waiver of all objections except on privilege grounds. Its new objection, asserted for the first time at the parties' meet-and-confer, 42 days after service of Whitebox's responses and objections, that the requests do not satisfy relevance requirements under Rule 26(b)(1) due to the presence of an integration clause in the A&R Agreement has been waived.

**II.     THE INTEGRATION CLAUSE OBJECTION IS MERITLESS**

32. Whitebox's objection to disclosure on the ground "that the integration clause in the A&R [Agreement] renders anything said during the negotiations of the agreement between Cowen and Whitebox irrelevant" (*see* n.3, *supra*) fails.

33. First, parties "cannot contract around statutory obligations," *Wheaton College v. Burwell*, 50 F. Supp. 3d 939, 948 (N.D. Ill. 2014), or in this case disclosure obligations arising under Rules that have the force of law. *See also Wal-Mart Puerto Rico, Inc. v. Zaragoza-Gomez*, No. 15-cv-3018, 2016 WL 9462083, at *2 (D. P.R. Jan. 15, 2016) ("private parties cannot contract around the Federal Rules of Evidence to preclude" discovery). That Whitebox has taken the position that it can is surprising, given its acknowledgment that neither the confidentiality clause in, nor the "FRE 408" stamp on, the A&R Agreement, is a valid basis for nondisclosure of the same.

34. Second, it would make no sense to permit a party to a contested matter (Whitebox) to contract around disclosure obligations to its adversary in that litigation (Earl) by entering into an agreement with someone other than the adversary. Yet Whitebox is doing exactly that by relying on its contract with a nonparty (Cowen) as a basis for nondisclosure. That is inappropriate not just because Cowen is a nonparty, but also because Whitebox and Cowen entered into the A&R Agreement to permit Whitebox to "stand in Cowen's shoes" to resolve litigation threatened by Whitebox against Cowen.

35. Third, Whitebox's argument, if accepted, would preclude discovery of contract negotiations in any action for breach of the same, where the contract features an integration clause. That makes no sense because parol evidence, including evidence of prior negotiations, may be used to interpret an ambiguous contract term even where the contract features an integration clause. *Canada Dry Corp. v. Nehi Beverage Co., Inc.*, 723 F.2d 512, 519 (7th Cir. 1983) ("When a contract

10

term is ambiguous, parol evidence is admissible for the purpose of interpreting the instrument but not to expand upon its terms … Such permissible parol evidence includes statements made during pre-contract negotiations"); *see also Rybicki v. Anesthesia & Analgesia Assocs., Ltd.*, 615 N.E.2d 1236, 1242-43 (Ill. 1993) (same); *In re Consol. Med. Trans., Inc.*, 300 B.R. 435, 446 (Bankr. N.D. Ill. 2003) ("Where ambiguity exists, parol evidence may be used to allow extrinsic evidence to explain the terms of the contract," subject to the limitation "evidence of prior … negotiations may not be introduced to contradict the terms of a[n] integrated contract").

### III. DISCLOSURE SHOULD BE COMPELLED PURSUANT TO RULE 37

36. Pursuant to Rule 37(a)(1), "[o]n notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery." Pursuant to subdivision (a)(3)(B), "[a] party seeking discovery may move for an order compelling … production, or inspection … if … (iv) a party fails to produce documents or fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34." Pursuant to subdivision (a)(4), "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond."

37. Whitebox has plainly failed to make the requested disclosures. Moreover, its Rule 34 noncompliance renders its discovery responses and objections evasive and incomplete.

38. The parties have attempted to resolve their differences in good faith, as described above, and this motion includes the certification and statement required by Rule 37(a)(1) and Local Rule 7037-1.

### **NOTICE**

39. Notice of this motion has been provided to Whitebox, the Debtors, the Office of the United States Trustee, and all parties entitled to notice pursuant to Rule 2002.

WHEREFORE, Earl requests that the Court enter the proposed order annexed hereto compelling disclosure and grant Earl such other and further relief as this Court deems just and proper.

Dated: February 6, 2018

Respectfully submitted,

/s/ Jeffrey Chubak
Jeffrey Chubak (admitted *pro hac vice*)
STORCH AMINI PC
140 East 45th Street, 25th Floor
New York, New York 10017
Tel: (212) 497-8247
Fax: (212) 490-4208
jchubak@storchamini.com

- and -

Joseph D. Frank (IL No. 6216085)
FRANKGECKER LLP
325 North LaSalle Street, Suite 625
Chicago, Illinois 60654
Tel: (312) 276-1400
Fax: (312) 276-0035
jfrank@fgllp.com

*Counsel to Earl of Sandwich (Atlantic City), LLC*