# EXHIBIT H

**Lewis-Gruss, Ayanna**

| | |
|---|---|
| **From:** | Jeffrey Chubak <jchubak@storchamini.com> |
| **Sent:** | Thursday, February 01, 2018 1:23 PM |
| **To:** | Lewis-Gruss, Ayanna |
| **Cc:** | Jsirolly@earlenterprise.com; Mintz, Douglas S.; Aaron L. Hammer; JFrank@fgllp.com; Delano, Cindy Chen |
| **Subject:** | RE: In re Caesars: Meet and Confer Summary |

Please see responses below in red.

Jeffrey Chubak

# STORCH AMINI PC
2 GRAND CENTRAL TOWER
140 EAST 45TH STREET, 25TH FLOOR
NEW YORK, NY 10017
212.490.4100 - OFFICE
212.497.8247 - DIRECT
212.490.4208 - FAX
JCHUBAK@STORCHAMINI.COM - EMAIL

www.storchamini.com

CONFIDENTIALITY NOTICE: The information contained in this e-mail and any attachments may be legally privileged and confidential. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this e-mail and any attachments is strictly prohibited. If you have received this e-mail in error, please notify the sender and permanently delete the e-mail and any attachments immediately. You should not retain, copy or use this e-mail or any attachment for any purpose, nor disclose all or any part of the contents to any other person. Thank you.

**From:** Lewis-Gruss, Ayanna [mailto:alewisgruss@orrick.com]
**Sent:** Wednesday, January 31, 2018 6:49 PM
**To:** Jeffrey Chubak <jchubak@storchamini.com>
**Cc:** Delano, Cindy Chen <CDelano@whiteboxadvisors.com>; Mintz, Douglas S. <dmintz@orrick.com>; Aaron L. Hammer <ahammer@sfgh.com>; Jsirolly@earlenterprise.com; JFrank@fgllp.com
**Subject:** In re Caesars: Meet and Confer Summary

Dear Jeff:

Thank you for speaking with me today. Below is my understanding of our discussion and the conclusions we reached. Please let me know if you have a different understanding of our conversation.

Mr. Avallone's Authority/Organizational Charts
-You stated that the document Bates-stamped Earl000031 was created for the purposes of this action.  Correct.
-You stated that Earl will not produce the organizational charts identified in Mr. Avallone's testimony. Earl is withholding the documents from production on the grounds of relevance and proportionality.  Incorrect.  We did not discuss any organizational charts identified in Mr. Avallone's testimony, only Request for Production No. 14, which asks for "any organization charts in which he [Mr. Avallone] is included."  Documents responsive to Request No. 14 are being withheld on grounds set forth in Earl's response and objection to that request.
-You did not assert that production of the organizational charts would be burdensome.  We did not discuss relative burden, but for the avoidance of doubt, it would not be burdensome to produce a master organizational

1

chart of entities included in the broader enterprise; however, that chart does not identify officers, just entities. Producing documents sufficient to identify Thomas's status as an Officer at each entity in which he serves in that capacity would be a major undertaking.

-You stated that Earl has not changed its position and will continue to assert that Mr. Avallone would not sell the Claim without Mr. Earl's approval. Correct.

Litigation Hold

-You stated that Earl will not agree to a 30(b)(6) deposition. Incorrect. You already took a 30(b)(6) deposition of Earl. We will not consent to a second deposition.
-You stated that Mr. Avallone is the sole employee of Earl of Sandwich (Atlantic City) LLC and has already been deposed in a corporate capacity. Technically, Earl has no employees; Mr. Avallone is Manager and serves as an Officer as well. There are no other Officers, and nobody else is employed by or at Earl of Sandwich (Atlantic City), LLC.
-You stated that Mr. Avallone already testified about Earl's collection of documents. Correct.
-I stated that Mr. Avallone was unprepared to answer questions about the litigation hold, and testified that he did not know whether a hold had been issued. I further stated that Mr. Earl testified that he believed a hold had been issued. This mischaracterizes the testimony, which speaks for itself. You did not ask me in advance whether a hold had been issued, and it was not one of the examination topics in the 30(b)(6) notice.
-Given that Mr. Avallone was unable to answer questions about the litigation hold and Mr. Earl's testimony was incorrect, I was unable to test Earl's collection of documents responsive to Whitebox's requests and Earl's compliance with its document retention policy. Disagree.
-I explained that the topics set out in the draft notice were not addressed at Earl's 30(b)(6) deposition. Disagree. You had the opportunity to ask about these topics, and covered some of them at Mr. Avallone's deposition (Tr. 135-37), before ending the deposition (Tr. 137-38).
-I also explained that in light of Mr. Avallone's inability to answer whether a litigation hold had been issued, Whitebox is entitled to continue the 30(b)(6) deposition. You did state that at our meet-and-confer; I disagree.
-I stated that Whitebox intends to move to compel a further 30(b)(6) deposition. That was made very clear.
-You did not address your and Mr. Sirolly's failure to correct the record during Mr. Earl's deposition. We did not discuss this at our conference. However, for the record neither I nor Mr. Sirolly knew if a hold was issued at the time of the deposition. We also have yet to receive Whitebox's litigation hold.

Collection of Documents from Ms. Simmerman, Ms. Collins and Mr. Hawkins

-You stated that Ms. Simmerman and Ms. Collins were asked whether they had responsive documents, and that they both said that they did not.
-It was on the basis of Ms. Simmerman's and Ms. Collins' statement that you decided not to collect their documents, or even run search terms across their electronic files.
-I explained that the fact that Ms. Collins had responsive documents that you produced on Friday, January 26, indicated that Ms. Collins should have been identified as a custodian and her file should be searched.
-I stated that it is possible that Ms. Simmerman inadvertently sent emails under her own email address, when directed by Mr. Earl to send emails in his name.
-I stated that Mr. Hawkins was a sender or recipient of responsive documents as reflected in Earl's production. Accordingly, he should have been identified as a custodian and his files should have been searched.
-You asked me what responsive documents Ms. Simmerman, Ms. Collins or Mr. Hawkins could possibly have that would not be identified by searching Mr. Avallone's files. I responded that I did not know because their emails had not been searched and I have not spoken to the three individuals.

-I asked you why you chose not to run search terms across electronic files of anyone other than Mr. Earl and Mr. Avallone. You did not state that it would have been burdensome to do so.
-You agreed to ask Ms. Simmerman whether she ever inadvertently sends emails from her email address that should have been sent under Mr. Earl's email address.
-You also agreed to give further consideration to searching the electronic files of Ms. Simmerman, Ms. Collins and Mr. Hawkins.
We are going to search each of their e-mails, and produce any responsive documents not already included in our production, which already includes Ms. Collins' hard copy phone logs.

Lupoff Report
-I asked you to identify the specific language that you and your client believe constitutes a legal opinion.
-You stated that Mr. Lupoff opines on mutual assent and, therefore, offers a legal opinion.
-You declined to identify specific language, other than to say "legal opinion" appears in the Executive Summary and the language block quoted in the motion to exclude Mr. Lupoff's testimony. You did not ask me to identify any specific portions opining on mutual assent in advance of our call. But yes, he opines on mutual assent in the Executive Summary. He also opines in the block quote, and portions of Paragraphs 13-28 omitted from the block quote, as well as the Conclusion. The "Failure of a Trade to Close" section (Paragraphs 29-33), and discussions of good/bad faith elsewhere, also opine on mutual assent as they presume a binding commitment exists once oral agreement on a price term has been reached.
-As I stated to you on the phone, if you identify specific quotes that concern you, we will consider amending Mr. Lupoff's report. We remain willing to consider amendments if you identify specific quotes. We are basically talking the whole report, save Paragraphs 1-12.
-You also stated that amending Mr. Lupoff's report does not cure your claim that Mr. Lupoff is not qualified. Correct.
-You stated that your "client in chief" had lunch with Mr. Lupoff at some point in the past, and informed you that Mr. Lupoff had no experience trading bankruptcy claims. Please detail all prior meetings between your client and Mr. Lupoff. That is not what I said, nor did I use the quoted term. Thomas Braziel (B.E. Capital) (whom I represent as Receiver of Fund.com Inc.) met Peter at a Manual of Ideas Dinner held June 21, 2016. During their conversation, Peter stated he invested in distressed bonds, bank loans, and also had shorted MBS, and held himself out as a macro guy with a distressed background. Thomas told Peter that Thomas's fund focuses on buying bankruptcy claims. Peter made no mention of ever having been in the bankruptcy claim business, and instead said other guys did that work when he was at Millenium.
-I stated that Whitebox disagrees with the assertion that Mr. Lupoff is not qualified. I'm surprised this is a point of contention. You went to the General Counsel for the LSTA for expert recommendations, and got an expert with lots of distressed loan experience but not so much bankruptcy trade claim experience. That should not come as a surprise, given that the LSTA is responsible for establishing standards in the secondary loan market, but has not established any standards in the bankruptcy trade claim market.
-Even if we cannot resolve all of your issues with Mr. Lupoff's report, we believe it to be in the parties' and court's interest to work to limit the dispute. We remain willing to do so.

Cowen-Whitebox Communications Concerning the A&R Assignment
-It is your position that the communications leading up to the A&R Assignment are relevant to Cowen's views on the question of mutual assent. Correct.
-I stated that it is our position that the integration clause in the A&R Assignment renders anything said during the negotiations of the agreement between Cowen and Whitebox irrelevant, and that the agreement speaks for itself. Whitebox cannot agree with Cowen as to what falls within the scope of disclosure in a litigation between

3

<span style="color:red">Whitebox and Earl. That would make no sense in any context, but especially as Cowen committed to cooperate with Whitebox's prosecution of this litigation under the A&R Agreement, in exchange for $1 and a release.</span>

-I stated that the agreement was produced as further evidence of the legal relationship between Cowen and Whitebox with regard to the claim.

-I stated that as Mr. Patel testified, Whitebox acquired rights to the claim from Cowen on January 12, 2017 and the Assignment and Release Agreement was intended to further clarify/sweep up any loose ends regarding Whitebox's right to stand in Cowen's shoes.

-Additionally, it is unclear why you need the documents given that three Cowen witnesses have testified that they understood that Cowen acquired the claim from Earl. <span style="color:red">The documents are relevant to the question of mutual assent, as indicated above and in our prior correspondence. Pre-A&R Agreement exchanges (such as those between Danny and Cindy/Doug) have far more probative value concerning what Cowen actually thought about the existence or non-existence of the alleged Earl-Cowen agreement than prepped deposition testimony, given after Cowen committed to cooperate with Whitebox in this litigation in exchange for $1 and a release.</span>

-You stated that Earl intends to move to compel the production of these communications, and will do so in advance of the 2/21/18 omnibus hearing date. <span style="color:red">Correct.</span>

<span style="color:red">So long as we're discussing limiting disputes Judge Goldgar needs to decide, would like to discuss the protective order motion. Can we agree that all of the information you are seeking to preserve confidentiality of can be found in the following documents:</span>

- WBA-353-62 (Bloomberg messages) (10 pages)
- WBA-145-57 (A&R Agreement) (13 pages)
- WBA-340-45 (March e-mails) (6 pages)
- WBA-352 (June e-mail) (1 page)
- WBA-10-13 (January e-mails) (4 pages)
- WBA-34-58 (January e-mail, annexing clean/blackline of draft Assignment of Claim Agreement) (2 page of e-mails, with the draft and blackline comprising the balance)

Let me know if you think I'm missing anything. The volume is quite minimal, especially if you lop off the AOC Agreement. Given that Judge Goldgar said he can't imagine we'd need a trial, meaning Earl would need to move for relief if a protective order were entered so dispositive motions can be briefed, why would we not just give him these documents to review in camera and decide himself. Would save everyone a lot of time and eliminate the need for guesswork on Judge Goldgar's part.

Regards,
Ayanna

**Ayanna Lewis-Gruss**
Of Counsel

Orrick

New York
T +1-212-506-3719
alewisgruss@orrick.com



4

---

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

For more information about Orrick, please visit *http://www.orrick.com*.