**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>CAESARS ENTERTAINMENT<br>OPERATING COMPANY, INC., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 15-01145 (ABG)<br><br>Jointly Administered<br><br>Re: ECF No. 7787 |

**EARL OF SANDWICH'S OBJECTION TO WHITEBOX'S MOTION
FOR LEAVE TO TAKE SECOND RULE 30(b)(6) DEPOSITION**

Earl of Sandwich (Atlantic City), LLC ("Earl") objects to the motion of Whitebox Advisors LLC ("Whitebox") "to compel a second 30(b)(6) deposition," really a motion to take a second deposition otherwise prohibited by Rule 30(a)(2)(A)(ii), a Rule nowhere referenced in the motion, and states:

**INTRODUCTION**

1. By its motion, Whitebox seeks an order "require[ing] Earl[1] to give testimony on how it collected and preserved documents." (Motion ¶20.)

2. The relief should be denied. The motion is based on the false premise that Earl did not disclose the absence of a litigation hold until after its Rule 30(b)(6) deposition was completed. As described below, at its Rule 30(b)(6) deposition, Thomas Avallone, Earl's Sole Manager and Officer, and Earl's corporate designee, told Whitebox that he did not recall having received a litigation hold. Whitebox nevertheless did not bother asking follow up questions of the type it now seeks discovery on and ended the deposition six minutes later.

---

[1] Whitebox is actually asking this Court for leave to depose Earl concerning how "any of its corporate affiliates … parent corporations … agents, legal representatives, consultants, its present and former officers, directors, servants and employees and any other representatives and persons purporting to act on its behalf" preserve documents (Motion Ex. G, p.15 of 18, ¶1), even though the underlying contested matter is a contract dispute between Whitebox and Earl (not affiliates).

3.     Significantly, Whitebox has no reason to believe any responsive documents have been spoliated. Earl's production commenced just three months after Whitebox's Transfer of Claim was filed on October 5, 2017 [ECF No. 7471], and less than a year after Earl and Cowen first exchanged communications. Its document retention policy, which Earl produced, does not contemplate destruction of documents during that period. At all relevant times, Earl had just one Manager and Officer (and no employees) (the sole restaurant owned by Earl was closed during these chapter 11 cases), whose documents were collected and who was deposed, both in his individual capacity and as corporate representative, on a variety of topics including Earl's document retention practices. Nowhere in Whitebox's motion, nor its pre-motion communications, has Whitebox articulated what responsive documents it thinks may be missing, putting aside the questionable relevance of Earl's documents given that Whitebox is seeking to enforce a fully integrated agreement that Whitebox asserts is papered by Earl's January 11-12, 2017 communications with Cowen Special Investments LLC ("Cowen") and the draft agreement Cowen sent Earl. Under these circumstances, Whitebox has not established an entitlement to extraordinary discovery under Rule 30(a)(2)(A).

## BACKGROUND

4.     The underlying contested matter concerns whether communications exchanged between Thomas Avallone (Earl's Sole Manager, President, CEO, and Secretary), on the one hand, and Bradly Schwab (Head of Cowen), on the other, during the afternoon of January 11, 2017 and the following morning, gave rise to mutual assent.[2]

---

[2] Whitebox stated in its Transfer of Claim that Earl's January 11, 2017, 2:04 p.m. e-mail response ("YES") to the e-mail of five minutes prior from Mr. Schwab (asking "please confirm, but it sounds like you are offering the paper [$3.6 million claim ("Claim")] for sale at $2.15 million") constituted a legally binding offer, which Mr. Schwab accepted the next day at 8:34 a.m.

5. By e-mail sent January 12, 2017 at 11:12 a.m., less than 1.5 hours after Mr. Avallone invited Cowen to send him a draft agreement, and before Cowen even sent him said agreement, Cowen confirmed a sale of the Claim to Whitebox.

6. By letter, dated April 18, 2017, Whitebox threatened to sue Cowen for failure to deliver the Claim as contemplated by the confirmation, and demanded Cowen either commence litigation against Earl or "permit us [Whitebox] to proceed [against Earl] on your [Cowen's] behalf" [ECF No. 7785-4] ("Mintz Letter").

7. Cowen selected the latter option, as it "review[ed] the matter," and concluded "we do not believe that any further action [against Earl] would be productive or is practical in this instance." (Mintz Letter Ex. B.) Accordingly, Cowen entered into an Assignment and Release Agreement with Whitebox, dated June 19, 2017 ("A&R Agreement") and annexed hereto as Ex. 1 (without exhibits), that Whitebox states was "intended to [give Whitebox the] right to stand in Cowen's shoes" in contemplated future litigation against Earl. (Motion Ex. H.)

8. In exchange for the right to sue on the alleged Earl-Cowen agreement and Cowen's commitment to cooperate with Whitebox in the contemplated future litigation, Whitebox paid Cowen $1 and gave Cowen a full release. (A&R Agreement §§ 1, 2, 8.b, 10, 15.)

9. Whitebox commenced the contested matter on October 5, 2017 by filing a Transfer of Claim [ECF No. 7471].

10. Earl objected to the Transfer of Claim on October 18, 2017 [ECF No. 7550].

11. The next day Whitebox served its first set of requests for production on Earl, seeking the production of sixteen categories of documents. The final request sought the production of Earl's record retention policy.

12. Whitebox also served deposition notices for Mr. Avallone and Robert Earl with its requests for production.

13.     Earl served its responses and objections to Whitebox's requests for production on November 20, 2017.  Earl agreed to produce non-privileged, documents responsive to all requests, save three.  Whitebox has moved to compel production with respect to two of those three requests.

14.     On December 4, 2018, Whitebox served a Rule 30(b)(6) deposition notice on Earl identifying ten examination topics.  (Motion Ex. B.)  None of those topics concerned record retention.

15.     Earl designated Mr. Avallone as its representative for all examination topics.  Earl has no managers or officers other than him, or employees.

16.     On December 8, 2017, Earl made its initial production, which included its record retention policy, a copy of which is annexed hereto as Ex. 2.  Earl later made three supplemental productions.

17.     Whitebox deposed Mr. Earl on January 9, 2018.  At his deposition, Mr. Earl answered "I don't recall" in response to a series of questions asking about a litigation hold.  He also stated he did not even know if Earl had a record retention policy.  (Earl Tr. 171-72, annexed hereto as Ex. 3.)

18.     Whitebox deposed Mr. Avallone on January 10, 2018, both in in his individual capacity and as corporate representative.  Whitebox asked him if he received a litigation hold in connection with this litigation.  He testified that he did not recall having received one, and did not review one prior to his deposition.  (Avallone Tr. 134-35, 137, annexed hereto as Ex. 4.)  Whitebox thereafter asked him about his document retention habits, and then concluded the deposition.  (*Id*. 135-37).

19.     Notwithstanding that Mr. Avallone testified he did not recall receiving a litigation hold and had not reviewed one prior to his deposition, Whitebox asked Earl for the same document two weeks later.  Earl confirmed the next day no hold was issued, and further noted the record

retention policy produced does not permit or provide for the destruction of documents from the relevant period. (Motion Ex. F, p.2.)

20. The parties conferred January 31, 2018 concerning Whitebox's threat to "compel a further 30(b)(6) deposition." (Motion Ex. H, p.2.) During the conference, Whitebox was asked what documents it thought it was missing concerning the subject matter of this litigation. Whitebox was unable to articulate a substantive response, and instead stated Earl should have searched more custodians' documents in making its production.[3]

## ARGUMENT

### I. LEGAL STANDARD FOR LEAVE TO TAKE SECOND DEPOSITION

21. Whitebox needs leave of this Court to take a second Rule 30(b)(6) deposition. *Sulfuric Acid Antitrust Litig.*, No. 03-cv-4576 (MDL No. 1536), 2005 WL 1994105 (N.D. Ill. Aug. 19, 2005). Rule 30(a)(2) provides leave should be granted "to the extent consistent with Rule 26(b)(1) and (2)." Subdivision (b)(1) permits discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Subdivision (b)(2)(C) limits discovery where "(ii) the party seeking discovery has had ample opportunity to

---

[3] Specifically, Whitebox stated Earl should have searched documents of Messrs. Avallone's and Earl's secretaries, and Bruce Hawkins, EarlEnterprises' CFO. (EarlEnterprises is a trademark used to refer to a group of businesses that include Planet Hollywood and Earl of Sandwich, but not a separate legal entity; Mr. Avallone's e-mail signature identifies him as Vice Chairman of that group.) Mr. Hawkins received solicitations with respect to the Claim from Seaport Global, a bankruptcy claim purchaser, which Mr. Avallone testified Mr. Hawkins forwarded him on receipt and which Earl agreed to produce notwithstanding their questionable relevance. And Earl's initial production included over a dozen pages of e-mails from Seaport to Mr. Hawkins, which Mr. Hawkins then forwarded to Mr. Avallone. Whitebox, however, is dissatisfied that Mr. Hawkins' documents were not separately searched, even though it is undisputed Mr. Hawkins had no communications with Cowen and none of his communications with Seaport are relevant to the question of mutual assent. With respect to the secretaries, a search of Mr. Avallone's secretary's hard copy documents yielded 14-pages of handwritten notes identifying missed telephone calls regarding the Claim. Those logs were previously produced to Whitebox. Earl had not undertaken a separate search of Messrs. Avallone's and Earl's secretaries' e-mails prior to the parties' conference, given their professional functions, but agreed to do so the next day and produce any responsive documents not already produced. Those are the "three additional custodians" referenced in Motion n.1.

obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1). Both factors weigh against granting leave, as set forth below.

## II.   WHITEBOX HAD AMPLE OPPORTUNITY TO TAKE DISCOVERY ON ITS PROPOSED EXAMINATION TOPICS

22.   Whitebox asked for Earl's record retention policy in its first set of requests for production, and Earl agreed to produce the same on November 20, 2017, and did so on December 8, 2017. Despite this, Whitebox elected not to include record retention as an exam topic in its Rule 30(b)(6) notice, served December 4, 2017. (Motion Ex. B.)  Whitebox nevertheless asked Mr. Avallone, Earl's Sole Manager and Officer, questions pertaining to record retention at his deposition, held January 10, 2018, and he answered those questions in a manner that made clear he did not know of any litigation hold issued to him. (Ex. 4 hereto.) Whitebox then continued to ask Mr. Avallone about his record retention habits, and ended the deposition six minutes after starting to ask him about the litigation hold. In short, Whitebox's assertion that it "has not had any other opportunity to seek the requested information" (Motion ¶22) is false, as Whitebox was free to depose him on those topics at his deposition but failed to do so. Accordingly, Whitebox should not be permitted to depose Earl again on the examination topics set forth in its draft deposition notice.

## III.   THE REQUESTED DISCOVERY IS OUTSIDE THE SCOPE OF RULE 26(b)(1)

### A.   The Requested Discovery Does Not Satisfy Relevance Requirements

23.   At its core this is a simple breach of contract action. Whitebox's interrogatory responses (annexed hereto as Ex. 5) state all terms of the alleged Earl-Cowen agreement are set forth in the January 11-12 e-mails (Transfer of Claim Ex. 2, Ex. A), and the draft agreement Cowen sent Mr. Avallone on January 12 at 1:24 p.m. (annexed hereto as Ex. 6), which agreement includes a merger clause in Section 14 thereof. (Response to Interrogatory Nos. 1-2.)  Those documents

6

were in Whitebox's possession when it filed the Transfer of Claim. Under both Illinois and New York law, the latter of which Whitebox states governs the alleged Earl-Cowen agreement (Transfer of Claim Ex. 1, n.2), parol evidence may not be used to interpret those documents, or even establish an ambiguity therein. *See*, *e.g.*, *Davis v. G.N. Mortgage Corp.,* 396 F.3d 869, 879 (7th Cir. 2005); *Intercontinental Planning v. Daystrom, Inc.*, 248 N.E.2d 576, 580 (N.Y. 1969). Given Whitebox's position herein, it is unclear why any further discovery concerning documents is even appropriate.

24. Notwithstanding this, Earl agreed to produce non-privileged documents responsive to the vast majority of Whitebox's requests. Its production included all e-mails that Cowen shared with Whitebox prior to the start of this litigation (Transfer of Claim Ex. 2, Ex. A) and much more. Whitebox has no reason to believe, based on that production, or its subsequent depositions of Messrs. Earl and Avallone, that any documents responsive to Whitebox's requests have been spoliated.[4] Nor was Whitebox able to identify a single area of concern at the parties' Local Rule 7037-1 conference, in Whitebox's post-conference e-mail (Motion Ex. H), or in the motion itself.

25. Whitebox is seeking this discovery in the hope (without basis) of threatening sanctions under Rule 37(e). That, however, is not permitted as fishing expeditions such as this fall outside the scope of disclosure, and indeed were not permitted even before the 2015 amendments to Rule 26(b)(1). *Davis*, 396 F.3d at 885 (Seventh Circuit affirmed District Court decision denying additional discovery where the request was "based on nothing more than mere speculation and would amount to a fishing expedition," and noting that "[t]he only reason to believe that additional, relevant evidence would materialize from deposing the defendants' employees is the [plaintiff's]

---

[4] Earl omitted from its production Cowen's letter to Mr. Avallone, dated February 22, 2017, annexed as an exhibit to the Transfer of Claim. Mr. Avallone testified that he "look[ed] for the document and I couldn't find it," and that he believed the document was received by mail (not e-mail).

apparent hope of finding a proverbial 'smoking gun'"); *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 193 (1st Cir. 2001) (denying additional discovery, stating that it would "not allow [respondent] to go on a 'fishing expedition' with the mere 'hope' that it will obtain [relevant] information").

26. Whitebox cites two decisions for the proposition it is nevertheless entitled to a second Rule 30(b)(6) deposition, *Peerless Indus., Inc. v. Crimson AV, LLC*, No. 11-cv-1768, 2013 WL 85378 (N.D. Ill. Jan. 8, 2013) and *Sloan Valve Co. v. Zurn Indus., Inc.*, No. 10-cv-204, 2012 WL 1886353, (N.D. Ill. May 23, 2012). Neither decision, however, actually permitted a second Rule 30(b)(6) deposition. *Peerless* is totally inapposite, and concerned whether a person determined to be the defendant's principal could be compelled to sit for a deposition. In *Sloan Valve*, the defendant was directed to "provide additional information regarding its document preservation efforts" as its witnesses (including its Rule 30(b)(6) corporate representatives) gave testimony that "raise[d] concerns about the reasonableness of" the same. *Id*. at *3-4, 12-14. Whitebox, however, points to nothing save the absence of a litigation hold as the basis for its proposed second deposition, notwithstanding that it had the opportunity to and did depose Mr. Avallone on the subjects which it now seeks additional testimony.

### B. The Requested Discovery Does Not Satisfy Proportionality Requirements

27. To fall within the scope of disclosure, discovery must also be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Consideration of these factors weighs against discovery on the examination topics in Whitebox's draft deposition notice.

8

28. <u>Importance of Issues at Stake in the Action</u>. Earl's document retention practices are not important to the issues at stake herein, given the nature of this action, and the absence of any basis for any belief that documents from the relevant time period have been spoliated.

29. <u>Amount in Controversy</u>. This factor is inapplicable.

30. <u>Parties' Relative Access to Relevant Information</u>. Earl produced its record retention policy to Whitebox. Whitebox asked Mr. Avallone about record retention, and he answered Whitebox's questions, even though Whitebox did not identify record retention as an examination topic in its Rule 30(b)(6) deposition notice. Whitebox also has access to relevant information from Cowen, which committed to cooperate with Whitebox in this litigation in the A&R Agreement, as noted above.

31. <u>Parties' Resources</u>. Earl is a defunct sandwich shop that closed because of these chapter 11 cases and Whitebox is a hedge fund with billions of dollars under management.

32. <u>Importance of Discovery in Resolving the Issues</u>. The discovery sought has no bearing on the underlying issues in the subject contested matter. Whitebox is unable to articulate a single document it thinks it may be missing that could conceivably affect the ultimate result of the underlying contested matter, and instead seeks discovery for discovery's sake.

33. <u>Whether the Burden or Expense of the Proposed Discovery Outweighs its Likely Benefit</u>. Whitebox states any burden of its proposed deposition will be modest, and is outweighed by its likely benefit, which is "providing clarity on a topic with respect to which Earl's answers and explanations have shifted during the discovery process." (Motion ¶24.) Earl's answers did not shift during the discovery process. As noted above, Mr. Avallone stated he was not aware of a litigation hold and Earl thereafter confirmed no hold was issued. In any event, Whitebox's stated justification is not a sufficient basis for the requested discovery as no basis exists for Whitebox to believe it is missing any responsive documents due to spoliation, and already deposed Mr.

9

Avallone on the subject of document retention. In addition, Whitebox's statement that a deposition of "an additional few hours" (his January 10 deposition lasted five hours) will impose just a modest burden is false. A deposition in Orlando would require a days' worth of travel time by Earl's counsel, and a deposition in New York (or Chicago) would likewise require travel time by Earl's corporate representative, on top of the required preparation time.

WHEREFORE, Earl requests that the Court deny the motion and grant it such other and further relief as this Court deems just and proper.

Dated: February 22, 2018                    Respectfully submitted,

/s/ Jeffrey Chubak
Jeffrey Chubak (admitted *pro hac vice*)
STORCH AMINI PC
140 East 45th Street, 25th Floor
New York, New York 10017
Tel: (212) 497-8247
Fax: (212) 490-4208
jchubak@storchamini.com

- and -

Joseph D. Frank (IL No. 6216085)
FRANKGECKER LLP
325 North LaSalle Street, Suite 625
Chicago, Illinois 60654
Tel: (312) 276-1400
Fax: (312) 276-0035
jfrank@fgllp.com

*Counsel to Earl of Sandwich (Atlantic City), LLC*