**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>CAESARS ENTERTAINMENT<br>OPERATING COMPANY, INC., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 15-01145 (ABG)<br><br>Jointly Administered<br><br>**Re: ECF No. 7788** |

**EARL OF SANDWICH'S OBJECTION TO WHITEBOX'S
MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

Earl of Sandwich (Atlantic City), LLC ("Earl") objects to the motion of Whitebox Advisors LLC ("Whitebox") to compel Earl to produce documents, pursuant to Rule 37, and respectfully states:

**INTRODUCTION**

1. The subject discovery requests seek the production of "[a]ll documents concerning Mr. Avallone's job responsibilities as Vice Chairman of EarlEnterprises, including his resume, his employment file and his employment agreement if such an agreement exists" (Request No. 13) and "documents sufficient to identify the scope of Mr. Avallone's authority at Earl, including any organization charts on which he is included" (Request No. 14). Earl objected to the former request as overbroad, but nevertheless agreed to produce documents sufficient to identify Mr. Avallone's corporate authority to transact on Earl's behalf in response to the same. Earl objected to the latter request only insofar as it seeks "any organization charts on which [Mr. Avallone] is included" (a request broader than "documents sufficient to identify the scope of Mr. Avallone's authority at Earl).

2. The motion to compel production of documents responsive to Request No. 13 should be denied in its entirety. That request was not discussed at the parties' meet-and-confer,

which concerned only the inclusory proviso in Request No. 14. Nor was that request specifically discussed in the parties' pre- or post-conference correspondence. Indeed, the motion seeks relief with respect to Request No. 13 as a virtual afterthought, as discussed below.

3. The motion should also be denied as to Request No. 14. Earl already produced an organizational chart identifying Earl's direct and indirect parents, and has given Whitebox the legal name of the trust that is Earl's ultimate parent. Earl also already produced Resolutions appointing Mr. Avallone as Sole Manager, President, CEO, and Secretary of Earl, and Earl's Operating Agreement, which defines the corporate authority of its Sole Manager, and officers appointed by him/her, including its President and Secretary. Organizational charts that go beyond Earl and its ownership are outside the scope of disclosure under Rule 26(b)(1). Whether Mr. Avallone is or is not an Officer at Planet Hollywood (Orlando), Inc., for example, or the over 100 other companies owned by Robert Earl and his family trusts, is not relevant to parties' claims or defenses in this contested matter.

4. Further, Earl cannot be compelled to produce documents responsive to the inclusory proviso in Request No. 14 under Rule 34(a)(1)(A). Although an organizational chart identifying all entities across the broader enterprise exists (which Earl lacks legal ownership of), that chart does not identify Mr. Avallone anywhere, as it only describes ownership and Mr. Avallone does not own any entities listed thereon.

5. Whitebox states Earl should nevertheless be required to produce that information, because Mr. Avallone answered "yes" to a question asking if "Planet Hollywood International maintain[s] a document listing all directors, officers and managers of any company that it owns." But Mr. Avallone also testified that "that document" is maintained by the legal department, and Earl advised Whitebox there is no such single document prior to its filing its motion.

6.  Further, Whitebox's request for this information presents serious proportionality issues given how unimportant it is to the key issues in this litigation. The motion should be denied.

## BACKGROUND

7.  Whitebox commenced the contested matter on October 5, 2017 by filing a Transfer of Claim [ECF No. 7471] with respect to Earl's bankruptcy claim ("Claim").

8.  Earl objected to the Transfer of Claim on October 18, 2017 [ECF No. 7550].

9.  The next day Whitebox served its first set of requests for production on Earl, seeking the production of sixteen categories of documents.

10. Earl served its responses and objections to Whitebox's requests for production on November 20, 2017. Earl agreed to produce non-privileged, documents responsive to all requests, save three. Whitebox's motion concerns two of those three requests.

11. Request No. 13 seeks production of "[a]ll documents concerning Mr. Avallone's job responsibilities as Vice Chairman of EarlEnterprises, including his resume, his employment file and his employment agreement if such an agreement exists," with EarlEnterprises defined as follows:

> [T]he conglomerate that owns Earl, and includes any of its corporate affiliates, divisions, subgroups, subsidiaries, parent corporations, predecessors-in-interest, successors, assignees, agents, legal representatives, trustees, consultants, its present and former officers, directors, servants and employees and any other representatives and persons purporting to act on its behalf.

12. Earl objected to the scope of this request insofar as it seeks documents concerning EarlEnterprises (as opposed to Earl), but nevertheless agreed to produce the following in response:

    (a)  An organizational chart describing Earl's direct and indirect parents;[1]

---

[1] The legal name of Earl's ultimate parent was disclosed to Whitebox in Earl's interrogatory responses, and Whitebox was advised as much long before the filing of its motion. (Motion Ex. 12, n.2.)

      (b)      Earl's Operating Agreement, dated May 4, 2011, which defines the corporate authority of its Sole Manager, and officers appointed by him/her, including its President and Secretary.

      (c)      Resolutions, dated December 10, 2014, and signed by Earl's sole parent and Mr. Avallone, appointing Mr. Avallone to serve as the new Sole Manager, President, CEO, and Secretary.

13.      Those documents were included in its initial production, made December 8, 2017, and are annexed hereto as <u>Ex. 1</u>. Earl subsequently produced its Articles of Incorporation at Whitebox's request, a copy of which can also be viewed at http://search.sunbiz.gov.[2]

14.      Request No. 14 seeks "documents sufficient to identify the scope of Mr. Avallone's authority at Earl, including any organization charts on which he is included."

15.      Earl objected to this request "insofar as it seeks the production of 'any organization charts on which [Mr. Avallone] is included," but nevertheless agreed to produce documents responsive to the balance (*i.e.*, the Operating Agreement and Resolutions).

## ARGUMENT

**I.**      **THE MOTION SHOULD BE DENIED AS TO REQUEST NO. 13**

16.      Rule 37(a)(1) provides a motion to compel "must include a certification that the movant has in good faith conferred … with the … party failing to make disclosure … in an attempt to obtain it without court action."

---

[2] The Articles of Incorporation do not convey any corporate authority on Mr. Avallone, but rather simply identify his title.

17. Local Rule 7037-1 provides that a discovery motion must include a statement disclosing additional information. This Court's Procedures provide "Strict compliance with Local Rule 7037-1 is required for all discovery motions."

18. The motion should be denied as it concerns Request No. 13, as that request was not discussed at the parties' meet-and-confer, which concerned only the inclusory proviso in Request No. 14.

19. Indeed, none of the pre-conference correspondence exchanged since November and annexed to the motion so much as references the specific documents sought in Request No. 13, let alone an explanation as to why Whitebox thought those documents fall within the scope of disclosure.[3]

---

[3] Ayanna Lewis-Gruss's November 22, 2017 letter demands "all of the materials requested in Requests 13-15" as anything short of that would be "likely insufficient to identify the scope of his [Mr. Avallone's] authority, an issue that has been disputed by Earl" (Motion Ex. 4, ¶4); her December 27, 2017 e-mail states Earl's production in response to those requests is insufficient because "nowhere in Earl's production are Mr. Avallone's titles or roles and responsibilities with Earl of Sandwich (Atlantic City), LLC or any other Planet Hollywood or Earl entity identified" (included in Motion Ex. 6); her January 3, 2018 letter states Earl's production in response to those requests is inadequate because "the organizational chart is not complete. Further, it lists corporate entities, but does not identify whether Mr. Avallone is an officer, director, manager or employee of any of the listed entities … The production does not contain any documents sufficient to identify Mr. Avallone's authority at Earl (as that term is defined in the Requests) during the time period" (Motion Ex. 7); her January 24, 2018 letter again demanded "that Earl produce a document listing the corporate officers, directors and managers of Planet Hollywood International, its subsidiaries, and affiliates" (Motion Ex. 11); and her January 31, 2018 letter complains that Earl's production in response to Request Nos. 13-15 omits necessary "discovery concerning Mr. Avallone's authority to trade the Claim and alleged practice of obtaining Mr. Earl's approval prior to entering into any transaction on behalf of EarlEnterprises" (Motion Ex. 6). As noted above, Earl disclosed Mr. Avallone's titles and roles at Earl by producing the Resolutions and Operating Agreement, and as a result, quoted language from the December 27 and January 3 letters is false.

5

20. Whitebox's post-conference e-mail traffic confirms Request No. 13 was not discussed at the meet-and-confer by summarizing the parties' positions on document discovery by referring only to organizational charts and the contents thereof.[4]

21. The motion itself seeks relief with respect to Request No. 13 as an afterthought, focusing almost entirely on Mr. Avallone's description in organizational charts for EarlEnterprises. The sole paragraph concerning Request No. 13 (¶32) does not articulate how specific documents sought therein relate to Whitebox's stated purpose in moving to compel, namely understanding Mr. Avallone's authority to transact on Earl's behalf. Nor do they so relate. EarlEnterprises is just a trademark used to describe a group of businesses owned by Mr. Earl or his family trusts; Mr. Avallone's resume is not relevant to questions of corporate authority; nor is his employment file and employment agreement, the latter of which Whitebox would have learned do not exist had it bothered to ask. They have nothing to do with the parties' claims or defenses in this contested matter, which concerns whether Mr. Avallone intended to enter into an agreement with respect to the Claim during his January 11-12, 2017 communications with Cowen Special Investments LLC. Nor does Request No. 13 satisfy proportionality requirements.

---

[4] Ms. Lewis-Gruss's January 31, 2018 e-mail (Motion Ex. 6, Ex. A) states:

> Thank you for speaking with me today. Below is my understanding of our discussion and the conclusions we reached. Please let me know if you have a different understanding of our conversation.
> Mr. Avallone's Authority/Organizational Charts
> - You stated that the document Bates-stamped Earl000031 was created for the purposes of this action.
> - You stated that Earl will not produce the organizational charts identified in Mr. Avallone's testimony. Earl is withholding the documents from production on the grounds of relevance and proportionality.
> - You did not assert that production of the organizational charts would be burdensome.

Her February 5, 2018 letter responding to Earl's February 1, 2018 response (Motion Ex. 6) refers only to organizational charts identifying officers, managers, etc.

6

## II. THE MOTION SHOULD BE DENIED AS TO REQUEST NO. 14

22. Whitebox argues that "it is reasonable for Whitebox to request production of organizational charts for Earl and its affiliates, including those that detail the management of each entity" because "Earl has repeatedly raised the scope of Mr. Avallone's authority to enter into the transaction at issue as a defense to Whitebox's claim that Mr. Avallone agreed to sell the claim at issue." (Motion ¶¶24-25.)

23. This argument does not justify the requested discovery. It is undisputed Mr. Avallone—Earl's Sole Manager, President, CEO, and Secretary, under the Resolutions and Operating Agreement—had corporate authority to transact on Earl's behalf at all relevant times, including January 11-12, 2017, and Earl has offered to stipulate as much.

24. Whether Mr. Avallone intended to exercise that authority is another story.[5] However, discovery of who is and is not a manager, director, or officer of entities <u>other than Earl</u> within the EarlEnterprises umbrella will not answer that fact question. Its disclosure would do nothing to rebut the testimony (included in Motion Ex. 6) of Mr. Avallone that he runs virtually all business decisions by Mr. Earl prior to exercising corporate authority conferred upon him (Avallone Tr. 128), or the testimony of Mr. Earl that he is a "control freak" and would expect Mr. Avallone to bring a decision concerning any sale of the Claim to him for approval prior to transacting with respect to the same (Earl Tr. 38, 113). Whitebox is simply wrong when it states that "the positions held by Mr. Avallone and others within the EarlEnterprises organization is

---

[5] Mr. Avallone testified that he did not, and that he told Bradly Schwab (Head of Cowen) that any transaction would be subject to Robert Earl's ultimate approval. An excerpt of his deposition testimony is annexed hereto as <u>Ex. 2</u>. That testimony was not controverted by Cowen, whose current and former employees testified they do not recall the substance of their discussions with Mr. Avallone, referenced in the e-mail traffic annexed to the Transfer of Claim, and which also testified it did not record the subject telephone calls.

7

relevant to understanding Mr. Avallone's apparent authority and alleged practice of obtaining Mr. Earl's approval." (Motion ¶27.) Accordingly, Request No. 14 does not satisfy basic relevance requirements.[6]

25. Even if the subject discovery were somehow considered relevant, Earl should not be compelled to produce the same. While Earl advised Whitebox that an organizational chart for the broader enterprise existed (which chart Earl lacks legal ownership of, as noted above), Earl specifically advised Whitebox that no organizational charts are maintained that identify managers or officers of individual entities within the EarlEnterprises umbrella, and compiling that information would be a significant undertaking given the number of entities involved. (Motion Ex. 6, Ex. A, pp.1-2.)[7] For the avoidance of doubt, annexed hereto as Ex. 3 is Declaration of Jeffrey Sirolly attesting as much. Given that Earl lacks custody of "organization charts on which [Mr. Avallone] is included" (Request No. 14), Earl has no obligation to produce the same under Rule 34(a)(1)(A) and should not be compelled to prepare that information for Whitebox. *Ahad v. Bd. of Trustees of So. Ill. Univ.*, No. 15-cv-3308, 2018 WL 534158, at *5 (C.D. Ill. Jan. 24, 2018) ("Defendants did not have a duty to create a spreadsheet or database … when one did not exist");

---

[6] Whitebox knows this, which is why it served a second set of requests for production two weeks after Mr. Avallone's deposition seeking documents concerning Mr. Avallone's and Mr. Earl's course of conduct on a day-to-day basis. Further, that Mr. Earl answered, in response to a question concerning whether he is CEO, "You have to look at the company tree. I'm not sure of my titles. I'm definitely the founder, and myself and my family … are the only beneficiary" (Motion Ex. 6) does not make the information it seeks herein relevant.

[7] Whitebox states Earl should be compelled to compile this information because "Earl's corporate designee testified that either Earl Enterprises or Planet Hollywood maintains charts that (1) lists all of the companies [it] owns, operates or otherwise has an interest in and (2) lists all directors, officer[s] and managers of any company that it owns, controls, or otherwise operates." (Motion ¶16.) He also testified that the referenced "document" is maintained by "the legal department" (Motion Ex. 10, Avallone Tr. 21) which in turn has confirmed that the information is not located in a single document but would need to be compiled specially for Whitebox. As noted above, Earl advised Whitebox as much prior to its filing this motion. (Motion Ex. 6, Ex. A, pp.1-2.)

*see also Alexander v. FBI*, 194 F.R.D. 305, 310 (D.C. Cir. 2000) ("Rule 34 only requires a party to produce documents that are already in existence … A party is not required 'to prepare, or cause to be prepared,' new documents solely for their production").

26. Alternatively, the information sought by Whitebox—a listing of every manager, director, and officer at each entity within the EarlEnterprises umbrella—does not satisfy proportionality requirements. As noted above, the information is of practically no import to the question of mutual assent, and compiling the same would be a significant undertaking. Perhaps most importantly, that information is unnecessary given Mr. Avallone's testimony that he is an officer of "99 percent of all entities of Planet Hollywood, Earl of Sandwich, Rawhide Holdings, mostly—all the entities, 99 percent of them." (Motion Ex. 10.) It is unclear how that leaves Whitebox unable to "understand Mr. Avallone's role within the umbrella of EarlEnterprises." (Motion ¶26.)

WHEREFORE, Earl requests that the Court deny the motion and grant it such other and further relief as this Court deems just and proper.

Dated: February 22, 2018

Respectfully submitted,

/s/ Jeffrey Chubak
Jeffrey Chubak (admitted *pro hac vice*)
STORCH AMINI PC
140 East 45th Street, 25th Floor
New York, New York 10017
Tel: (212) 497-8247
Fax: (212) 490-4208
jchubak@storchamini.com

- and -

Joseph D. Frank (IL No. 6216085)
FRANKGECKER LLP
325 North LaSalle Street, Suite 625
Chicago, Illinois 60654
Tel: (312) 276-1400
Fax: (312) 276-0035
jfrank@fgllp.com

*Counsel to Earl of Sandwich (Atlantic City), LLC*