# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

---

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| Caesars Entertainment Operating Company, Inc., *et al.*, | : | Case No. 15-01145 (ABG) |
| Debtors. | : | |
| | : | Jointly Administered |

---

## WHITEBOX ADVISORS LLC'S OPPOSITION
## TO EARL OF SANDWICH (ATLANTIC CITY), LLC'S
## MOTION TO COMPEL PRODUCTION OF DOCUMENTS

Whitebox Advisors LLC ("Whitebox"), on behalf of funds it manages, respectfully submits this opposition to Earl of Sandwich, LLC's ("Earl") Motion to Compel Production of Documents by Whitebox Advisors ("Motion") (Dkt. No. 7785).

### BACKGROUND

On April 18, 2015, Earl filed proof of claim No. 5497 against Showboat Atlantic City Operating Company, LLC (claim No. 5497, as amended by claim No. 5858, is referred to herein as the "Claim"). Dkt. No. 5325. The Claim is a general unsecured claim in the amount of $3,600,000 and is eligible for payment as a Class I claim.

On October 5, 2017, Whitebox filed a Transfer of Claim Notice Pursuant to Federal Rule of Bankruptcy Procedure 3001(e) (the "Notice") that gives notice that the Claim was transferred from Earl to Cowen Special Investments LLC ("Cowen") (for whom Whitebox has been authorized to stand in). Dkt. No. 7471. On October 18, 2017, Earl filed an Objection. Dkt. No. 7550.

1

On November 15, 2017, Bankruptcy Judge Donald Cassling stated that the Notice created a contested matter and entered a scheduling order permitting discovery in the contested matter. Relevant excerpts of the November 15, 2017 Transcript are attached as Exhibit 1 to the February 22, 2018 Declaration of Ayanna Lewis-Gruss ("Lewis-Gruss Decl.").

On November 17, 2017, Earl served its First Set of Requests for Production. Lewis-Gruss Decl. ¶5, Ex. 2. The Requests included, *inter alia*, a request for "[a]ll Documents concerning the A&R Agreement" and "[a]ll Communications exchanged between [Whitebox] and Cowen concerning the A&R Agreement." *Id.*, Requests Nos. 4 and 8, respectively.

Whitebox timely served its responses and objections to Earl's requests for production on December 18, 2017. Lewis-Gruss Decl. ¶6, Ex. 3. In its Responses and Objections to Requests Nos. 4 and 8, Whitebox stated that it would produce the Assignment and Release Agreement between Cowen and Whitebox ("A&R Agreement"), but objected to the requests because they were overbroad, unduly burdensome and sought documents protected by privilege. *Id*. ¶6, Ex. 3, p. 6. Whitebox further objected to Request No. 8 on the grounds that it was duplicative or cumulative of information requested in Request No. 4. *Id.* ¶6, Ex. 3, p. 8. Whitebox produced 362 pages of responsive materials, including the requested A&R Agreement. Lewis-Gruss Decl. ¶7.

While the parties have met and conferred on discovery issues at least four times since November 2017, Earl did not raise the issue of Whitebox's response to its Requests Nos. 4 and 8 until January 25, 2018—more than a month after Whitebox produced written discovery responses. Lewis-Gruss Decl. ¶¶8-10, Ex. 4-5. In a January 25, 2018 letter, Earl's counsel stated that the documents were "relevant to Cowen's view concerning the existence or non-existence of the alleged Earl-Cowen agreement, prior to this litigation." *Id.* ¶10, Ex. 5, p. 2.

The parties last conferred on January 31, 2018. Lewis-Gruss Decl. ¶11. With respect to the documents at issue in this motion—communications between Cowen and Whitebox concerning the A&R Agreement—Whitebox has stated repeatedly that the documents are irrelevant to the parties' dispute, that the A&R Agreement speaks for itself, and that the integration clause in the agreement renders the negotiation communications irrelevant. *Id.* ¶12, Ex. 6, p. 3. Earl's position during the January 31, 2018 meet and confer was that the communications are relevant to the question of mutual assent and have "more probative value concerning what Cowen actually thought about the existence or non-existence of the alleged Earl-Cowen agreement than prepped deposition testimony…" *Id.* ¶12, Ex. 6, p. 4.

On February 6, 2018, Earl filed the Motion requesting production of all documents related to the A&R Agreement.[1] Dkt. No. 7785. By its motion, Earl seeks documents that have no relevance to this case, including many documents that are protected by privilege. For at least four reasons—the documents lack relevance, the Requests called for documents protected by privilege, Whitebox's objections are proper, and Earl's champerty claim is irrelevant and improper—the Court should deny Earl's Motion to Compel.

---

[1] To the extent that facts relevant to this opposition are not available on the docket, they are set forth in the declaration of Ayanna Lewis-Gruss ("Lewis-Gruss Decl."). Whitebox notes that Earl's Motion contains a number of asserted facts regarding the parties' meet and confer process for which it does not offer proper support. For example: Earl claims without any support that "Whitebox acknowledged its stated objections are not a valid basis for nondisclosure…." Motion ¶2. Whitebox said no such thing. Lewis-Gruss Decl. ¶11. Earl's unsupported and inaccurate claims should be disregarded. *See Pearson v. United Debt Holdings, LLC*, 123 F. Supp. 3d 1070, 1074 (N.D. Ill. 2015) ("As they are unsupported by affidavits or other evidence, UDH's assertions in its brief that the document attached is the agreement into which Pearson entered are insufficient to authenticate the document. Unsworn statements by attorneys in briefs are not evidence on which the Court can rely."); *Weeks v. Samsung Heavy Indus. Co.*, 909 F. Supp. 582, 583 (N.D. Ill. 1996) (Movant's "bald assertion…unsupported by either an affidavit or evidence, is insufficient to carry his burden to show facts" necessary for the motion.).

**ARGUMENT**

I. **The Court Should Deny Earl's Motion to Compel Because Documents Related to The A&R Agreement Are Not Relevant to This Proceeding**

Earl requests a series of communications that post-date the subject of this contested matter—the transfer of the Claim from Earl to Cowen (and ultimately to Whitebox)—by months. Specifically, Earl seeks documents created during the period from April 18, 2017 through June 19, 2017. Motion ¶1. Those documents were created more than three months after Earl traded its Claim to Cowen and have no relevance to the Notice in dispute here under Rule 3001(e). The Court should deny the Motion.

A successful motion to compel requires that Earl demonstrate its "entitlement to the discovery it claims and unjustified conduct" by the opposing party. *Chapman v. Gen. Bd. of Pension & Health Benefits of the United Methodist Church, Inc.*, No. 09-C 3474, 2010 WL 2679961 at *4 (N.D. Ill. July 6, 2010) (denying a motion for sanctions under Rule 37 because the movant had not proved she was entitled to the information she sought or that a delay in production amounted to unjustified conduct). Earl "bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence." *RealPage, Inc. v. Enter. Risk Control, LLC*, No. 4:16-CV-00737, 2017 WL 1165688 at *1 (E.D. Tex. Mar. 29, 2017) (though finding objections waived, the court denied the motion in part after making individual determinations on the relevance of the production to the movant's case). Only after this has been proven does the burden shift to the opposing party to show "why the discovery is irrelevant…and thus should not be permitted." *Id.*

Here, Earl cannot meet this burden. Earl seeks "all documents concerning the A&R Agreement, including an executed version thereof." Motion ¶12. Whitebox has consented to

4

produce the A&R Agreement itself.[2] All the other documents sought by Earl are irrelevant to the issues before the Court because they have no bearing on the transfer of the Claim.

Earl argues that the documents concerning the A&R Agreement are relevant to "Cowen's view concerning the existence or non-existence of the alleged Earl-Cowen agreement…" Motion ¶29. All of the documents sought by Earl, however, post-date the events related to the Earl-Cowen agreement by several months. Earl seeks documents created during the period from April 18, 2017 through June 19, 2017. *See* Motion ¶1. Thomas Avallone, Vice Chairman of Earl Enterprises and President of Earl, testified during his deposition in this matter that Earl's negotiations with Cowen concluded three months prior on January 18, 2017. Lewis-Gruss Decl. ¶15, Ex. 8. at 76:10-15. Thus, by definition, whatever communications and negotiations took place between Cowen and Whitebox, those events cannot be relevant to Cowen's state of mind or the parties' intent at the time of the transaction. Therefore, the requested communications lack relevance and should not be compelled.

      **a. There is no ambiguity in the A&R Agreement and no need for parol evidence.**

Earl misguidedly points to the parol evidence rule to assert the relevance of the Requests.[3] Motion ¶35. However, the parol evidence rule does not apply here as the A&R Agreement is unambiguous, and no one has asserted otherwise. Thus, the related documents are not relevant.

When there is ambiguity in a final contract, the parol evidence exception allows external evidence that may explain or clarify the contract's terms. *Canada Dry Corp. v. Nehi Beverage Co. of Indianapolis*, 723 F.2d 512, 519 (7th Cir. 1983) (affirming that the contractual term at issue

---

[2] Whitebox does not concede the relevance of the A&R Agreement but has produced it in the interest of transparency and cooperation.

[3] Earl has taken a contrary position with respect to requests that it produce documents. In a January 25, 2018 letter, Earl's counsel stated that "the alleged Earl-Cowen agreement is set forth in the January 11-12 emails annexed to the Transfer of Claim and the draft agreement Cowen sent to Earl on January 12. Those documents are clear on their face and, under New York's parol evidence rule…extrinsic evidence cannot be used to establish an ambiguity." Lewis-Gruss Decl. ¶10, Ex. 5 at p. 2, n. 3.

5

was ambiguous and that parol evidence was allowed for the "purpose of interpreting" but "not to expand upon" the contract's term). The same evidence is inadmissible when used to "vary or contradict the terms of a valid, and plain and unambiguous, written contract." *Rybicki v. Anesthesia & Analgesia Assoc., Ltd.*, 246 Ill. App. 3d 290, 299, 615 N.E.2d 1236, 1243 (1993) (citing 17A Am.Jur.2d Contracts § 402 at 428–29 (1991)) (relying on the clarity of CONTRACTS IN AMERICAN JURISPRUDENCE rather than previous opinions).

In fact, "no preliminary negotiations, and no parol agreement prior to, or contemporaneous with, a written contract, which tends to vary or contradict either its express provisions or its legal import, can be considered in construing" an unambiguous contract. *Rybicki*, 615 N.E.2d at 1243. *See also Royce v. Michael R. Needle, P.C.*, 158 F. Supp. 3d 708, 720 (N.D. Ill. 2016) ("Only if the language of a contract is ambiguous on its face (that is, when looking solely to the four corners of the agreement) will an Illinois court turn to extrinsic evidence as an aid to interpretation."); *R/S Assocs. v. New York Job Dev. Auth.*, 98 N.Y.2d 29, 33, 771 N.E.2d 240, 242 (2002) (holding, pursuant to New York law, that extrinsic evidence is inadmissible to vary the terms of an unambiguous contract).

In this case, neither party has alleged that the A&R Agreement is ambiguous. The parol evidence rule has no bearing here, and documents reflecting the negotiations between Cowen and Whitebox are not relevant.

### b. The Integration Clause renders negotiations irrelevant.

Further, the A&R Agreement at issue here is a final contract with a standard integration clause.[4] Because of the Agreement's integration clause, Earl faces "an even steeper mountain"

---

[4] Earl alleges that Whitebox relies on the integration clause in an effort to contract around its disclosure obligations. Motion ¶¶33, 34. Whitebox has not and does not take the position that the integration clause allows it to avoid disclosure. Rather, it is Whitebox's position that the integration clause renders negotiation documents irrelevant. Lewis-Gruss Decl. ¶12, Ex. 6, p.3.

6

because "where parties formally include an integration clause in their contract, they are explicitly manifesting their intention to protect themselves against misinterpretations which might arise from extrinsic evidence. In such a case extrinsic evidence of prior negotiations cannot be considered to create an extrinsic ambiguity." *Royce*, 158 F. Supp. 3d. at 720 (internal citations and quotations omitted).

Here, the A&R Agreement specifically states that the Agreement constitutes the entire agreement and understanding between Cowen and Whitebox, and disclaims all prior agreements, understandings or representations pertaining to the subject matter of the agreement. Lewis-Gruss Decl. ¶16. Therefore, documents concerning the A&R Agreement have no relevance.

## II.     Many of The Documents Called For in Request No. 4 Are Privileged

By its Motion, Earl limits its request to non-privileged documents. Dkt. No. 7785-1, ¶3. However, Request No. 4 sought "all documents" concerning the A&R Agreement and did not include any limitation that would protect privileged documents from production. Lewis-Gruss Decl. ¶5, Ex. 2, p. 2. The use of the term "all" rendered the request overbroad for several reasons, including that there is no limitation that would shield documents protected by either the attorney-client or work-product privilege from disclosure.[5]  The overbroad requests call for communications between Whitebox and its counsel that comprise requests for or provision of legal advice concerning the negotiation of the A&R Agreement with Cowen. Many of these documents are also protected by the work product privilege as they were prepared in anticipation of litigation, as evidenced by the fact that the A&R Agreement is a settlement agreement. *See, generally, Jackson v. Parker*, No. 08 C1958, 2008 WL 4844747 at *1 (N.D. Ill. Nov. 7, 2008) (Request is

---

[5] Earl asserts that producing these documents would not be burdensome because it would only involve running a search. Motion ¶30. However, that assertion fails to account for the privileged documents encompassed in the request, and the time and resources it would take to accurately review documents for privilege.

7

"overbroad as drafted since it calls for documents within the attorney/client privilege."); *see also Towne Place Condo. Ass'n v. Philadelphia Indem. Ins. Co.*, No. 17 C 1561, 2018 WL 360540 at *5 (N.D. Ill. Jan. 11, 2018) ("The attorney work product privilege establishes a zone of privacy in which lawyers can analyze and prepare their client's case free from scrutiny or interference by an adversary. It protects documents prepared by attorneys in anticipation of litigation for the purpose of analyzing and preparing a client's case."). As these documents are not relevant to the matter currently before the Court, Whitebox has not done a thorough review of all potentially relevant documents. However, it estimates that approximately 33% of the documents "related to the A&R Agreement are privileged communications between Whitebox and its counsel. Lewis-Gruss Decl. ¶14. Given the overbreadth of Request No. 4, Whitebox properly withheld documents from production. Whitebox properly objected and withheld documents from production based on that objection.

## III.    Whitebox Properly Objected to Production.

Whitebox's objections were proper and sufficient. In accordance with Rule 34, Whitebox's objections needed to "alert other parties to the fact that documents have been withheld and thereby facilitate an informed discussion of the objection." *Fischer v. Forrest*, 2017 WL 773694 at *2 (S.D.N.Y. Feb. 28, 2017) (describing the new standards of Rule 34); *see also* Fed. R. Civ. P. 34 Committee Notes on Rules—2015 Amendment ("The producing party does not need to provide a detailed description or log of all documents withheld…"). Furthermore, "An objection that states the limits that have controlled the search for responsive and relevant materials qualifies as a statement that the materials have been 'withheld.'" *Id.* ("[T]he statement of what has been withheld can properly identify as matters "withheld" anything beyond the scope of the search specified in the objection.").

8

Through its responses and meet-and-confers, Whitebox did just that. Whitebox was clear that it would produce the A&R Agreement in response to Requests Nos. 4 and 8, and viewed the remainder of those Requests to be improper for the stated reasons. Lewis-Gruss Decl. ¶6, Ex. 3, p. 6, 8. Specifically, in response to Request No. 4, Whitebox set forth its objections and responded "that it will produce the A&R Agreement." *Id.* In response to Request No. 8, Whitebox stated its objections, including that the request was "duplicative or cumulative of information requested in Request No. 4, and respond[ed] that it [would] produce the responsive, non-privileged documents specified in its response to [Request No. 4.]" *Id.* ¶6, Ex. 3, p. 8.

The purpose of discovery responses and meet and confer conferences are to resolve the parties' discovery differences without unnecessary intervention from the court. *See* U.S. Bankr. Ct. N.D. Ill., Rule 7037-1 (requiring moving party to state that the parties' met and conferred in a good faith effort to resolve their differences). Here, the parties engaged in a lengthy meet and confer process concerning a range of issues, through which they resolved a number of issues. Lewis-Gruss Decl. ¶8. To the extent possible, perceived deficiencies in discovery responses were discussed and ironed out. *Id.*

Earl did not raise its concerns regarding Requests Nos. 4 and 8 until the end of the meet and confer process and did not ask for formal amendment to the written responses. *Id.* ¶10, Ex. 5. Earl first requested that Whitebox meet and confer on this specific issue on January 25, 2018, which Whitebox did on January 31, 2018. Whitebox's counsel then followed up with a detailed summary of the meeting. *Id.* ¶12, Ex. 6. Less than two weeks later, without further discussion, Earl filed the Motion. Dkt. No. 7785. Whitebox acted in good faith throughout the discovery process and attempted to address Earl's questions and provide clarity regarding its discovery

9

responses. Lewis-Gruss Decl. ¶8. Should the court require amended responses, Whitebox can provide further clarity.

Earl states that Whitebox's objections were improper pursuant to Rule 34 and asserts that Whitebox, therefore, waived all of its objections except on privilege grounds. Motion ¶¶21-31. However, waiver is not appropriate where, as here, a party acts in good faith to respond to discovery requests and meet and confer: "[F]inding a waiver of a privilege for procedural violations is a harsh sanction. It may only be imposed where a party displays willfulness, bad faith, or fault. Good-faith efforts to comply generally weigh against finding waiver…." *Young v. City of Chicago*, No. 13 C 5651, 2017 WL 25170 at *7 (N.D. Ill. Jan. 3, 2017) (internal citations and quotations omitted)) (finding waiver where city officials in wrongful death suit delayed discovery for six months through unexplained "bad faith foot dragging"). Here, Whitebox acted in good faith and explicitly raised its objections. Lewis-Gruss Decl. ¶¶6, 8 and Ex. 3.

Though Earl may be unsatisfied with the outcome of the discovery process, there have been no attempts by Whitebox to evade discovery. Thus, the Court should find that Whitebox has not waived its objections to Requests Nos. 4 and 8.

**IV.     Champerty Claims Are Not Relevant to The Notice of Transfer**

Finally, Earl asserts that Whitebox's position regarding the A&R Agreement "presents a serious champerty issue" and implies that it seeks documents to supplement a champerty claim. Motion ¶7, n.1. Champerty is not an issue pending before this court—nor would it be a defense to the present contested issue. Therefore, champerty is not a basis on which the court should grant this motion.

First, champerty is not a proper defense under Federal Rule of Bankruptcy Procedure 3001(e)(2). The issues before the court concern the validity of transfer from Earl to Cowen, and ultimately, to Whitebox. The transfer is not affected by whether the acquisition was champertous.[6]

Second, to date, Earl has not raised champerty as a defense to the Notice of Transfer. Therefore, the argument related to champerty does not render the documents at issue relevant. *See, generally, BankDirect Capital Fin., LLC., v. Capital Premium Fin., Inc.*, No. 15 C 10340, 2018 WL 946396 at *4 (N.D. Ill. Feb. 20, 2018) ("Unless the requestor can demonstrate that the materials sought are relevant, judges should not hesitate to exercise appropriate control over the discovery process. Phrased differently, fishing expeditions in discovery are prohibited because the information being sought is ultimately not relevant" (internal quotations omitted).).

Third, a discovery motion is not the proper place to raise a potential litigation defense. *See, generally, Marshall v. Milwaukee Transformer Co., Inc.*, No. 77-C-54, 1978 WL 1765 at *2 (E.D. Wis. Dec. 8, 1978) ("[B]oth parties have raised serious issues that are not properly raised on a motion to compel the production of documents… to raise such problems in the course of briefing a discovery motion can certainly muddy the water and burden the Court needlessly…").

Finally, Earl's substantive assertions are not supported by the authority it cites. A champerty claim requires that the *sole purpose* of the acquired claim be litigation. *Justinian Capital SPC v. WestLB AG*, 28 N.Y.3d 160, 167, 65 N.E.3d 1253, 1256 (2016) ("[T]he foundational intent to sue on that claim must at least have been the primary purpose for, if not the sole motivation behind, entering into the transaction."). Even if enforcement requires litigation, courts have held that there is a "difference between one who acquires a right in order to make money from litigating it and one who acquires a right in order to enforce it." *Tr. For the Certificate*

---

[6] A point Whitebox does not concede.

11

*Holders of Merrill Lynch Mortg. Inv'rs, Inc. v. Love Funding Corp.*, 13 N.Y.3d 190, 200, 918 N.E.2d 889, 894-96 (2009) (finding that a claim acquired as settlement in litigation was not champertous, even if litigation was the only way to vindicate those rights) (collecting cases). "[I]f a party acquires a debt instrument for the purpose of enforcing it, that is not champerty simply because the party intends to do so by litigation." *Id.* Therefore, the Court should deny the Motion to Compel.

## CONCLUSION

For reasons set forth above, Whitebox respectfully requests that the Court deny Earl's Motion.

| | |
|---|---|
| Date: February 22, 2018 | /s/Douglas S. Mintz |
| | Douglas S. Mintz, Esq. (admitted *pro hac vice*) |
| | ORRICK, HERRINGTON & SUTCLIFFE, LLP |
| | Columbia Center |
| | 1152 15th Street, N.W. |
| | Washington, D.C., 20005-1706 |
| | Telephone: (202) 339-8400 |
| | Facsimile: (202) 339-8500 |
| | |
| | Ayanna Lewis-Gruss (admitted *pro hac vice*) |
| | Peter J. Amend, Esq. (admitted *pro hac vice*) |
| | ORRICK, HERRINGTON & SUTCLIFFE, LLP |
| | 51 West 52nd Street |
| | New York, NY 10019 |
| | Telephone: (212) 506-5000 |
| | Facsimile: (212) 506-5151 |
| | |
| | -and- |
| | |
| | Elizabeth B. Vandesteeg (IL No. 6291426) |
| | Jack O'Connor (IL No. 6302674) |
| | SUGAR FELSENTHAL GRAIS & HELSINGER LLP |
| | 30 N. LaSalle Street, Suite 3000 |
| | Chicago, IL 60602 |
| | Telephone: 312.704.9400 |
| | Facsimile: 312. 372.7951 |
| | evandesteeg@SFGH.com |
| | joconnor@SFGH.com |
| | *Co-Counsel for Whitebox Advisors LLC* |