## IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| CAESARS ENTERTAINMENT OPERATING COMPANY, INC., *et al.*, | Case No. 15-01145 (ABG) |
| Debtors. | Jointly Administered |
| | **Re: ECF No. 7785** |

### REPLY IN SUPPORT OF EARL OF SANDWICH'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY WHITEBOX ADVISORS

Earl of Sandwich (Atlantic City), LLC submits this reply in support of its motion to compel the production of documents by Whitebox Advisors LLC, pursuant to Rule 37, and respectfully states:[1]

## I.  DOCUMENTS CONCERNING THE A&R AGREEMENT ARE RELEVANT TO THE UNDERLYING BREACH OF CONTRACT CLAIM

1.      In its motion, Earl stated the subject requests are relevant to Cowen's view on the existence or non-existence of the alleged Earl-Cowen agreement on which the underlying contested matter is premised, prior to Cowen's and Whitebox's entry into the A&R Agreement [ECF No. 7827-1], which agreement requires Cowen to cooperate with Whitebox in the underlying contested matter with Earl.  (A&R Agreement §§ 8.b, 15.)  Earl further noted that Danny Phillips' e-mail (Mintz Letter Ex. B) provides some insight into what Cowen thought about that alleged agreement in February 2017, but that Earl should also be given access to Cowen-Whitebox correspondence concerning the A&R Agreement from April 26, 2017 to June 19, 2017 to get further disclosure on that issue.  (Motion ¶¶14, 29.)

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to them in Earl's motion.

2.      Whitebox argues documents responsive to the requests at issue are not relevant because they were created/exchanged three to six months after the communications on which its claim is premised. (Obj. pp.4-5.) Specifically, Whitebox states that because Earl testified that its negotiations with Cowen concluded in January 2017, communications between Cowen and Whitebox that followed "cannot be relevant to Cowen's state of mind … at the time of the transaction." (*Id*. p.5.)

3.      That is false, and Mr. Phillips' e-mail is a good example why.  That e-mail states that Cowen has "taken all reasonable actions" to move the matter forward but that "upon review of this matter, we do not believe that any further action would be productive or is practical in this instance." (Mintz Letter Ex. B.)   In other words, on review of the matter, Cowen's internal counsel did not think it made sense to seek to enforce an alleged Earl-Cowen agreement.  Negotiations concerning, *inter alia*, the scope of the release in the A&R Agreement or representations therein may likewise provide further information as to what Cowen believed concerning the existence or non-existence of an Earl-Cowen agreement documented by the January 11-12, 2017 e-mails.

4.      Significantly, notwithstanding Whitebox's representation that "discovery should be pretty limited in scope" (Nov. 15, 2017 Hr'g Tr. p.11, annexed hereto as Ex. 1), Whitebox insisted that the relevant time period cover nearly a full year (Ex. 2 hereto), and Earl agreed to produce documents from that period.  Whitebox's attempt to limit the temporal scope of its own production to a much shorter period is inappropriate.

5.      Whitebox also argues the A&R Agreement's integration clause precludes discovery into pre-agreement communications, under the so-called four corners rule.  (Obj. pp.5-7.)  That argument, however, ignores that Earl is not seeking discovery in an attempt to vary the A&R Agreement's terms.  Rather, Earl seeks discovery on Cowen's position on the alleged Earl-Cowen agreement, and believes communications concerning the A&R Agreement are likely to include

evidence on that issue.  Whitebox cites no authority for its position that an integration clause in a contract is a valid basis for precluding discovery into matters unrelated to its interpretation.

## II.     DOCUMENTS CONCERNING THE A&R AGREEMENT ARE RELEVANT TO EARL'S CHAMPERTY DEFENSE

6.     Whitebox states Earl is not entitled to documents relevant to its champerty defense because "champerty is not an issue pending before this court—nor would it be a defense to the present contested issue."  (Obj. p.10.)  Whitebox offers several arguments in support, all of which fail.  (*Id*. pp.11-12.)

7.     Whitebox argues "champerty is not a proper defense" under Rule 3001(e)(2).  That argument fails because this entire contested matter is premised on the assignment of the bankruptcy claim from Cowen to Whitebox being valid under New York law, which governs the A&R Agreement, as the trade confirmation (Seyfried Decl. Ex. B) does not confer standing on Whitebox to take action against Earl (which is why Whitebox entered into the A&R Agreement).  If the assignment under the A&R Agreement is void on the ground of champerty, Whitebox lacks standing to enforce any conceivable contractual right belonging to Cowen.

8.     Whitebox next argues Earl is not entitled to documents relevant to its champerty defense because "Earl has not raised champerty as a defense to the Notice of Transfer" and "a discovery motion is not the proper place to raise a potential litigation defense."  Earl concedes champerty was not raised in its preliminary objection, filed October 18, 2017 [ECF No. 7550] (although standing was, *see* ¶6).  However, that is because the A&R Agreement was not produced until December 28, 2017, and hence Earl had no way of knowing it "and all matters arising out of or relating to it" (A&R Agreement § 14) are governed by New York law.  Earl e-mailed Whitebox the next day advising it of this champerty issue.  *See* <u>Ex. 3</u> hereto ("let me know when you are available to discuss: … Your good faith basis for maintaining this litigation in light of New York's

champerty statute").  In any event, this is not an adversary proceeding, where defenses are waived

if not raised in an answer, and Earl otherwise lacked the opportunity to assert this defense herein.

9.       Whitebox further argues Earl is not entitled to discovery on its champerty defense

because Earl's substantive position lacks merit.  Specifically, Whitebox states Earl's assertion that

N.Y. Judiciary Law § 489(1) prohibits the assignment of claims "with the intent and for the primary

purpose of bringing a lawsuit" (Motion n.1, second sentence) is wrong because "a champerty claim

requires that the *sole purpose* of the acquired claim be litigation."  (Obj. p.11.)  That is wrong.

The language used in Earl's footnote is a direct quote from *Justinian Capital SPC v. WestLB AG*,

28 N.Y.3d 160 (2016) (first paragraph of decision).  Indeed, the language quoted in Whitebox's

objection reiterates as much.  *Id*. at 167 (quoting *Bluebird Partners v. First Fid. Bank*, 94 N.Y.2d

726, 736 (2000)) ("the foundational intent to sue on that claim must at least have been the primary

purpose for … entering into the transaction"); *see also id*. (citing *Trust for the Certificate Holders

of Merrill Lynch Mortg. Invs., Inc. v. Love Funding Corp.*, 13 N.Y.3d 190, 198-99 (2009))

("The primary purpose test … has been echoed in our courts for well over a century").

10.      Whitebox goes on to quote language from *Love Funding* suggesting assignment of

a claim is not *per se* champertous for its position.  (Obj. pp.11-12.)  However, *Love Funding* dealt

with the limited question of whether "a party commit[s] champerty when it 'buys a lawsuit' that it

could not otherwise have pursued if its purpose is thereby <u>to collect damages for losses on a debt

instrument in which it holds a pre-existing proprietary interest</u>." 13 N.Y.3d at 198 (listing questions

certified by Second Circuit, emphasis added).  *Love Funding* did not eliminate the statutory

champerty defense, and the New York Court of Appeals made clear in *Justinian Capital* that the

defense is alive and well when it held the assignment there champertous, notwithstanding its

having held seven years prior in *Love Funding* that assignment of a claim to a securitization trust

that carried risk of financial loss associated with a defaulted mortgage loan was not champertous.

4

In short, Earl has a potentially meritorious champerty defense for reasons set forth in Motion n.1—Whitebox did not acquire a proprietary interest in Earl's claim or take on risk of financial loss on receipt of the trade confirmation (Seyfried Declaration Ex. B)—and is therefore entitled to discovery concerning the A&R Agreement.

### III.    WHITEBOX WAIVED ITS RELEVANCE OBJECTION

11.    In its motion, Earl argued Whitebox waived its relevance objection by failing to assert it in its responses and objections, pursuant to Rule 34(b)(2)(A), let alone with specificity, pursuant to Rule 34(b)(2)(B).  (Motion ¶¶21-23.)  Whitebox does not dispute as much, but instead states it should be excused because "Earl did not raise its concerns … until the end of the meet and confer process and did not ask for formal amendment to the written responses" and Whitebox further "act[ed] in good faith to respond to discovery requests and meet and confer."  (Obj. pp.9-10.)

12.    That argument fails. As noted in *Jackson v. Clarkson Eyecare, Inc.*, No. 10-cv-178, 2010 WL 5014315, at *1 (S.D. Ill. Dec. 3, 2010), "it is axiomatic that any objection not specified [in responses and objections] is waived if not timely lodged."  This flows from the plain language of Rule 34, which requires that responses and objections be served within 30 days (subdivision (A)), that each request be responded to and that the response "must" either state production will be allowed or an objection (with specificity as of 2015, subdivision (B)), and that any production be made responsive to any request not objected to (subdivision (C)). *Id.*  No exception exists where a party subsequently confers in good faith, and supplements its objections during that process; Rule 37(a)(1) and Local Rule 7037-1 independently require that parties confer in good faith. The sole authority cited by Whitebox (Obj. p.10) is inapposite, as it dealt with waiver of claims of privilege, as opposed to waiver of objections required to be timely asserted pursuant to Rule 34.

## IV.    THAT RESPONSIVE DOCUMENTS INCLUDE PRIVILEGED DOCUMENTS IS NOT A VALID BASIS FOR DENYING DISCLOSURE

13.    Whitebox argues the motion should be denied because one-third of documents responsive to the subject requests are protected from disclosure by privilege. (Obj. pp.7-8.)  Earl understands some subset of responsive documents may be privileged, but made clear in its moving papers that it is not seeking those documents.  (Motion Ex. 1, ¶3.)   Rule 26(b)(5)(A) protects privileged documents from disclosure in any event, obviating the need for Earl to specify it is seeking only non-privileged documents in its requests for production. There is no reason why Whitebox cannot prepare responsive documents for production, and produce all non-privileged documents together with a privilege log.

WHEREFORE, Earl requests that the Court enter an order compelling disclosure and grant Earl such other and further relief as this Court deems just and proper.

Dated: March 8, 2018                                        Respectfully submitted,

/s/ Jeffrey Chubak
Jeffrey Chubak (admitted *pro hac vice*)
STORCH AMINI PC
140 East 45th Street, 25th Floor
New York, New York 10017
Tel: (212) 497-8247
Fax: (212) 490-4208
jchubak@storchamini.com

- and -

Joseph D. Frank (IL No. 6216085)
FRANKGECKER LLP
325 North LaSalle Street, Suite 625
Chicago, Illinois 60654
Tel: (312) 276-1400
Fax: (312) 276-0035
jfrank@fgllp.com

*Counsel to Earl of Sandwich (Atlantic City), LLC*