# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CAESARS ENTERTAINMENT | ) | No. 15 B 1145 |
| OPERATING CO., INC., *et al.*, | ) | (Jointly administered) |
| | ) | |
| Debtors. | ) | Judge Goldgar |

## MEMORANDUM OPINION

This contested matter in the Caesars bankruptcies is a dispute over a purported claim transfer. Before the court for ruling are three discovery motions: (1) a motion from Earl of Sandwich (Atlantic City), LLC ("Earl") to compel Whitebox Advisors, LLC ("Whitebox") to produce documents, (2) a motion from Whitebox to compel Earl to produce documents, and (3) a motion from Whitebox to "compel" a second Rule 30(b)(6) deposition of Earl.

For the reasons discussed below, Earl's motion to compel production will be granted in part and continued in part. Whitebox's motion to compel production will be granted in part and denied in part. Whitebox's motion to compel a second Rule 30(b)(6) deposition of Earl will be construed as a motion for leave to take one and will be granted.

## 1. Background

In September 2016, Earl filed proof of claim No. 5858 in the bankruptcy case of Showboat Atlantic City Operating Co., LLC, one of the Caesars debtors. Earl asserted a $3.6 million unsecured nonpriority claim arising from a lease termination. Thomas Avallone, manager of Earl of Sandwich (USA) LLC, signed the proof of claim on Earl's behalf.[1] On

---

[1]     The parties' papers suggest that Earl and Earl of Sandwich (USA) LLC are part of a group of restaurant businesses calling itself "EarlEnterprises." The group consists of more than

January 17, 2017, the debtors' third amended joint chapter 11 plan of reorganization was confirmed. In general, the plan provides for cash distributions to holders of allowed claims in various percentages depending on the claims' classifications.

Whitebox asserts that Earl sold its claim shortly before confirmation. According to Whitebox, Earl entered into an agreement with Cowen Special Investments LLC ("Cowen") to sell the $3.6 million claim to Cowen for $2.15 million. Whitebox says the sale was negotiated in a series of emails between Avallone and Gail Rosenblum, vice president of Cowen, on January 11 and 12, 2017. The sale was complete as of 8:34 a.m. (EST) on January 12. By noon that day, Cowen had turned around and sold the claim to Whitebox. Whitebox says the terms of the Cowen-Whitebox sale were confirmed with an "email trade confirmation" describing the "trade details" of the sale. For reasons that have yet to be explained, in June 2017 Cowen and Whitebox entered into an "Assignment and Release Agreement" (the "A&R Agreement") in which Cowen agreed to sell to Whitebox "any and all rights [Whitebox] may have to purchase" the claim.[2]

To notify the debtors that the Earl claim had been sold, on October 5, 2017, Whitebox filed with the court a transfer of claim form in accordance with Bankruptcy Rule 3001(e)(2), Fed. R. Bankr. P. 3001(e)(2). The form listed Whitebox as the transferee and Earl as the transferor. Earl timely objected to the transfer, arguing that the claim had not in fact been sold. Earl insists

---

100 companies, including the well-known Planet Hollywood and Buca di Beppo chains. Robert I. Earl appears to own all of the companies directly or indirectly. (*See* Whitebox Mot., Ex. 6, Ex. C and Ex. 12; Earl Obj. to Whitebox Mot. at 2 and Ex. 3; Whitebox Reply, Ex. 10).

[2]    The facts surrounding the transfer are contested. The background section of this opinion primarily employs Whitebox's version of events – not because that version is necessarily correct but because some context is necessary.

that it is the true holder of the claim, not Cowen or Whitebox, and so is entitled to the distribution on account of the claim under the confirmed plan.

When a party objects, Rule 3001(e)(2) requires a hearing to determine if the claim has indeed been transferred. The dispute over the purported transfer here is a contested matter under Bankruptcy Rule 9014. Rule 9014(c) makes applicable in contested matters certain bankruptcy rules that govern adversary proceedings, including Rules 7026, 7030, 7034, and 7037. Those rules incorporate Rules 26, 30, 34, and 37 of the Federal Rules of Civil Procedure, respectively. Rule 26 contains general provisions on discovery. Rule 30 concerns depositions. Rule 30(b)(1) covers depositions of a person; Rule 30(b)(6) covers depositions of an organization and allows the organization to designate someone to testify on its behalf. Rule 34 concerns requests for production of documents. Rule 37 addresses failures to comply with discovery and provides remedies when a party ignores or wrongly resists a discovery request.

Since Earl's objection, the parties have been conducting discovery. Earl and Whitebox have served requests for production of documents on each other. Whitebox has also taken at least two depositions: the deposition of Robert Earl and the Rule 30(b)(6) deposition of Earl through its designated representative, Avallone.

Not all has gone smoothly. The parties remain at odds over certain aspects of the document requests and the Rule 30(b)(6) deposition. Whitebox and Earl have each refused to produce certain documents to the other, prompting the two motions to compel. Whitebox wants to take another Rule 30(b)(6) deposition of Earl. Earl will not consent to a second deposition, and Whitebox has filed what it calls a motion "to compel" the deposition.

## 2. Discussion

Earl's motion will be granted in part and continued in part.  Whitebox must produce all documents withheld in response to Requests Nos. 4 and 8, except those withheld on privilege grounds.  As to those, Whitebox must produce a privilege log, and Earl's motion will be continued to ensure a log is produced.  Whitebox's motion will be granted in part and denied in part.  Earl must produce all documents withheld in response to Whitebox's Request No. 14, except for organizational charts.  As to the organizational charts, Whitebox's motion will be denied and will also be denied as to Request No. 13.  Whitebox's motion to "compel" a second Rule 30(b)(6) deposition of Earl, construed as a motion for leave to take the deposition, will be granted.

### a. Earl Motion to Compel Production of Documents

Earl served its First Set of Requests for Production of Documents on Whitebox on November 17, 2017.  The Request sought twenty-two categories of documents.

Whitebox served its Response on December 18, 2017.  As a prefatory matter, the Response interposed ten "general objections" to production.  (Earl Mot. Ex. 3).  These included objections that the requests were "overbroad and unduly burdensome" and sought documents subject to the attorney-client privilege.  To each specific request, Whitebox incorporated the general objections and asserted "further objections."  Whitebox then declared that it would produce certain documents, "subject to and without waiving the . . . objections."

The only two requests at issue are Nos. 4 and 8.  Request No. 4 seeks "[a]ll [d]ocuments concerning the A&R Agreement, including an executed version thereof."  To this request, Whitebox asserted the following objection (after incorporating its "general objections"):

-4-

> Whitebox . . . objects to this Request on the ground that it is overly
> broad and unduly burdensome. Whitebox also objects to this
> Request to the extent it seeks documents that are protected by any
> applicable privilege or immunity. Subject to and without waiving
> the foregoing objections, Whitebox responds that it will produce
> the A&R Agreement.

Request No. 8 seeks "[a]ll [c]ommunications exchanged between You and Cowen concerning the

A&R Agreement." To this request, Whitebox asserted the following objection (again after

incorporating its "general objections"):

> Whitebox . . . objects to this Request on the ground that it is overly
> broad and unduly burdensome. Whitebox also objects to this
> Request to the extent it seeks documents that are protected by any
> applicable privilege or immunity. Whitebox additionally objects to
> this Request on the ground that it is duplicative or cumulative of
> information requested in Request No. 4.

On receiving the Response, Earl complained to Whitebox that except for the assertion of

privilege, the objections to Requests Nos. 4 and 8 were improper. (*See* Reply at 6) ("Earl

understands some subsection of responsive documents may be privileged, but makes clear . . .

that is not seeking those documents," provided Whitebox supplies a "privilege log"). Earl also

complained that producing the A&R Agreement alone was insufficient. Earl reiterated that it

expected production of documents concerning the negotiations that resulted in the Agreement.

Counsel met in January 2018 to discuss the impasse, as Rule 37(a)(1) and Local Rule

7037-1 required. What happened at the meeting is disputed to some extent. According to Earl,

Whitebox conceded that its "general and specific objections" were not valid reasons to withhold

the documents. Whitebox denies any such concession. Whitebox did contend the documents

sought were irrelevant (and so did not have to be produced) because an integration clause would

prevent Earl from introducing evidence of the negotiations that led to the A&R Agreement.[2/]

Earl rejoined that the relevance objection had been waived because it had not been raised in

Whitebox's Response. Whitebox admitted its Response contained no relevance objection but

disagreed there had been a waiver, insisting it "ha[d] stated repeatedly that the documents [were]

irrelevant to the parties' dispute." (Whitebox Resp. at 3).

With the impasse unresolved, Earl moved to compel production of documents responsive

to Requests Nos. 4 and 8.

Earl's motion will be granted in part and continued in part. Whitebox has waived its

objections to the Requests – with the sole exception of the privilege objection. Although that

objection has arguably been waived as well, Earl has not claimed a waiver. Whitebox will be

given an opportunity to produce a privilege log that asserts the objection.

For starters, Whitebox has waived its objections that the requests are "overbroad and

unduly burdensome." Rule 34(a)(2)(A) requires a party to whom a document request is directed

to respond in writing within 30 days of service. Fed. R. Civ. P. 34(a)(2)(A). Rule 34(a)(2)(B)

describes what the response must say. The response must either state that inspection of the

documents will be permitted as requested or must assert an objection to the request. Fed. R. Civ.

P. 34(a)(2)(B). If an objection is asserted, the grounds of the objection must be set forth "with

specificity" and "reasons" given. *Id.* Failure to do so will waive the objection unless good cause

is shown. *See In re Peregrine Fin. Grp. Customer Litig.*, No. 12 C 5546, 2015 WL 1344466, at

---

[2/]     The integration clause provides: "This Agreement constitutes the complete
agreement of the Parties with respect to the subject matters referred to herein and supersedes all
prior or contemporaneous negotiations, agreements or representations of every nature whatsoever
with respect thereto, all of which have become merged and finally integrated herein." (Earl Mot.
at 6).

*3 (N.D. Ill. Mar. 20, 2015); *Martinez v. Cook Cty.*, No. 11 C 1794, 2012 WL 6186601, at *3

(N.D. Ill. Dec. 12, 2012); *Magalis v. Adams*, No. 08-CV-3135, 2009 WL 3756446, at *3 (C.D.

Ill. Nov. 5, 2009).

General, rote, or "boilerplate objections" are not enough. *Duracell U.S. Operations, Inc.*

*v. JRS Ventures, Inc.*, No. 17 C 3166, 2018 WL 704686, at *6 (N.D. Ill. Feb. 5, 2018);

*BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, No. 15 C 10340, 2017 WL

5890923, at *2 (N.D. Ill. Nov. 29, 2017). Objections of that kind "are not 'objections' at all –

and will not be considered." *Novelty, Inc. v. Mountain View Mktg., Inc.*, 265 F.R.D. 370, 375

(S.D. Ind. 2009); *see also Duracell*, 2018 WL 704686, at *6 ("They are tantamount to not

making any objection at all." (internal quotation omitted)); *DirectCapital*, 2017 WL 5890923, at

*2 (same); *Peregrine*, 2015 WL 1344466, at *3 ("It is well-established that . . . generalized

boilerplate objections have no effect"); *Hach Co. v. Hakuto Co., Ltd.*, 784 F. Supp.2d 977, 983

(N.D. Ill. 2011) (notifying parties that "unamplified boilerplate objections" will be

"unacceptable").

Here, Whitebox's objections to Earl's requests as "overbroad" and "unduly burdensome"

are simply boilerplate. Whitebox does not explain what justifies these conclusions – that is, what

makes the requests overly broad or unduly burdensome. The objections are therefore

unacceptable. *See Peterson v. Wright Med. Tech., Inc.*, No. 11-1330, 2013 WL 655527, at *2

(C.D. Ill. Feb. 21, 2013) (describing as impermissible "boilerplate" objections "such as

overbroad [and] burdensome"); *Hach*, 784 F. Supp. 2d at 983 (calling "unacceptable" objections

"like 'unduly burdensome' or 'overly broad'"); *Novelty*, 265 F.R.D. at 375 (same). And because

Whitebox has not shown good cause for its failure to assert these objections properly, the

objections have been waived. *See Executive Mgmt. Servs., Inc., v. Fifth Third Bank*, 1:13-cv-

00582-WTL-MJD, 2014 WL 4680900, at *3 (S.D. Ind. Sept. 22, 2014) (finding waived a party's

unexplained objection that discovery requests were "overbroad"); *E.E.O.C. v. Southlake Tri-City

RBA Corp.*, No. 2:10 cv 444, 2012 WL 839169, at *3 (N.D. Ind. Mar. 12, 2012) (same).[4/]

    Whitebox's relevance objection has been waived as well. The problem with the

relevance objection is not specificity. Whitebox has not asserted its relevance objection in

boilerplate fashion, though doing so would likewise have been unacceptable. *See, e.g.,*

*Peregrine*, 2015 WL 1344466, at *3 (finding general relevance objection had "no effect" and was

waived). The problem with the objection is that there is none: in its Response, Whitebox makes

no relevance objection at all. And that was where the objection had to be made. It was not

enough, as Whitebox seems to believe, to raise it in conversations with Earl or in opposition to

the motion to compel. Because Whitebox has not suggested good cause for its failure to raise

relevance in the fashion Rule 34 required, the relevance objection is waived. *See, e.g,. Holcombe*

*v. Helena Chem. Co.*, No. 2:15-cv-2852-PMD, 2017 WL 713920, at *3 (D.S.C. Feb. 23, 2017)

(finding waived a party's relevance objection argued in opposition to a motion to compel but not

asserted in the party's response to the document request).

---

[4/]    It may be that in calling the requests "overbroad," Whitebox is referring to its argument that the requests sought documents "created more than three months after Earl traded its Claim to Cowen" and so "post-dated the subject of this contested matter." (Whitebox Resp. at 4, 5). According to Whitebox, the trade was completed on January 12, 2017, and the documents Earl wants were created between April 18, 2017, and June 19, 2017. (*Id.*). There are several difficulties with Whitebox's position. First, this explanation of its objection appeared for the first time in its response to Earl's motion to compel; it was not made in the Response to the document request, as it had to be. Second, Whitebox argues the point as one of relevance, not overbreadth (and, as discussed next, Whitebox's relevance objection has also been waived). Third, and most important, Whitebox said in its Response that it "[would] produce documents prepared *from January 1, 2017 through July 10, 2017*." (Earl Mot. Ex. 3 (emphasis added)). Having made that commitment, Whitebox cannot object to producing documents from April 18, 2017, through June 19, 2017, a considerably shorter period.

The objection would have been overruled in any event. Whitebox argues that documents concerning the negotiation of the A&R Agreement are irrelevant (1) because the Agreement is unambiguous, making parol evidence inadmissible at trial; and (2) ambiguity aside, the Agreement has an integration clause that makes the negotiations out of bounds. These arguments conflate admissibility at trial with the scope of discovery. It may well be that parol evidence would be inadmissible for the reasons Whitebox gives, but that does not push the documents Earl requests beyond the scope of discovery. Rule 26(b)(1) expressly provides that information "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1); *see Donald v. Wexford Health Sources, Inc.*, 266 F. Supp. 3d 1097, 1102 (C.D. Ill. 2017).[5]

Because admissibility is not a prerequisite to discovery, Whitebox's contentions about the nature of the A&R Agreement are not properly raised now. *See, e.g., Southern Ins. Co. of Va. v. Travelers Indem. Co.*, No. 4:16-cv-00860-SGC, 2017 WL 7736190, at *3-4 (N.D. Ala. Jan. 26, 2017) (refusing to prohibit discovery based on the contention that the relevant contract was unambiguous); *Certain Underwriters at Lloyd's v. National R.R. Passenger Corp.*, No. 14-CV-4717 (FB), 2016 WL 2858815, at *10 (E.D.N.Y. May16, 2016) (finding that an objection to discovery based on a contract's lack of ambiguity went "to admissibility, as opposed to discoverability" and so was premature); *Machinery Movers, Riggers & Mach. Erectors, Local 136 Defined Contribution Pension Plan v. Fidelity & Deposit Co. of Md.*, No. 06 C 2539, 2007 WL 3120029, at *3 (N.D. Ill. Oct. 19, 2007) (declining to decide contract ambiguity in the context of a motion to compel).

---

[5]    In its motion, Earl asserts parenthetically that the Cowen-Whitebox transfer "presents a serious champerty issue." (Earl Mot. at 3 n.1). The champerty issue (if there is one) is another that need not be addressed now.

That leaves Whitebox's objection on the basis of attorney-client privilege. Privilege is no different from any other discovery objection: the objection must be asserted, *see* Fed. R. Civ. P. 26(b)(5)(A)(i), and asserted with specificity, *see* Fed. R. Civ. P. 26(b)(5)(A)(ii), or it is waived, *see, e.g., Southlake*, 2012 WL 839169, at \*3-4 (finding privilege objections waived). A party asserts a privilege objection by serving his opponent with a privilege log that supplies the information Rule 26(b)(5)(A)(ii) requires on a document-by-document basis. *RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 218 (N.D. Ill. 2013); *Miller v. City of Plymouth*, No. 2:09-CV-205-JVB-PRC, 2011 WL 1740154, at \*4 (N.D. Ind. May 5, 2011). Failing to serve a privilege log, or serving one that fails to address privilege document by document, amounts to a non-assertion of the privilege (since privilege can no more be asserted as a boilerplate objection than any other objection), and can constitute a waiver. *Miller*, 2011 WL 1740154, at \*4; *see, e.g., The Manitowoc Co. v. Kachmer*, No. 14 C 9271, 2016 WL 2644857, at \*4 n.4 (N.D. Ill. May 10, 2016); *Southlake*, 2012 WL 839169, at \*3-4.

Whitebox asserts the attorney-client privilege in its Response, but it does so with yet another general, boilerplate objection. Whitebox has not served Earl with the privilege log necessary to assert (and so preserve) the objection – although Earl said it would not press for the production of arguably privileged documents if a privilege log were produced. Whitebox's failure to produce the log is a waiver. Some courts consider waiver a sanction and refuse to find one unless the responding party is guilty of "willfulness, bad faith, or fault." *See, e.g., In re Fluidmaster, Inc. Water Connector Components Prods. Liab. Litig.*, No. 1:14-cv-05696, 2016 WL 6599947, at \*5 (N.D. Ill. Nov. 8, 2016). The failure of Whitebox to provide any sort of privilege log – in the face of case law plainly requiring one, and even after Earl pointed out one was necessary – can fairly be termed "fault."

That said, Earl has declined to press for a finding of waiver. (*See* Earl Mot. at 9). Its

motion asks only for an order compelling Whitebox to produce non-privileged documents and

the missing privilege log. Whitebox will accordingly be given a chance to provide the log, and

that part of Earl's motion will be continued. The balance of the motion will be granted.

### b. Whitebox Motion to Compel Production of Documents

Whitebox served its Document Requests on Earl on October 19, 2017. There were 16

requests in all. Earl served its Response on November 20, 2017.

Only two of Whitebox's requests are at issue here. Request No. 13 seeks "[a]ll

documents concerning Mr. Avallone's job responsibilities as Vice Chairman of EarlEnterprises,

including his resume, his employment file[,] and his employment agreement if such an agreement

exists." (Mot. Ex. 1 at 8).[6] Earl objected to this request as "overbroad[ ] and not proportionate

to the needs of this contested matter." (*Id.* Ex. 3 at 6). Earl elaborated that the request for "all

documents concerning Mr. Avallone's job responsibilities, his resume, his employment file,

etc.," included "many documents unrelated to corporate authority to transact on behalf of Earl."

(*Id.*).

Request No. 14 seeks "[d]ocuments sufficient to identify the scope of Mr. Avallone's

authority at Earl, including any organization charts in which he is included." (Mot. Ex. 1 at 8).[7]

---

[6]      Whitebox defined "EarlEnterprises" defined as "the conglomerate that owns Earl,
and includes any of its corporate affiliates, divisions, subgroups, subsidiaries, parent
corporations, predecessors-in-interest, successors, assignees, agents, legal representatives,
trustees consultants, its present and former officers, directors, servants and employees and any
other representatives and persons purporting to act on its behalf." (*Id.* at 3).

[7]      Whitebox defined "Earl" in a way that overlaps – unhelpfully – with the definition
of EarlEnterprises: "Earl of Sandwich (Atlantic City) LLC, including any of its corporate
affiliates, divisions, subgroups, subsidiaries, parent corporations, predecessors-in-interest,

Earl objected to this request, too, as "overbroad[ ] and not proportionate to the needs of this

contested matter" – but only to the extent it sought "the production of any organization charts on

which [Mr. Avallone] is included." (*Id.* Ex. 3 at 7).

Notwithstanding its objections, Earl agreed to produce documents responsive to both

requests "sufficient to describe Mr. Avallone's positions at Earl," along with "an organization

chart listing Earl's ownership structure." (*Id.* at 6-7). The production Earl ultimately made

consisted of three documents that Earl's counsel described as "a partial org [*sic*] chart showing

that Earl is an indirect wholly-owned subsidiary of the Robert Earl Family Trust . . . , an

Operating Agreement . . . , and a Sole Member Written Consent appointing [Avallone] as Sole

Manager." (*Id.* Ex. 6, Ex. C). A few days later, Earl produced a fourth document, its Articles of

Incorporation. Earl acknowledged that it had other documents responsive to the requests but said

they were being withheld.

Much of the parties' ensuing discussions focused on Whitebox's request for

organizational charts. It was eventually revealed that the "partial" chart Earl produced had not

only been created for purposes of the litigation but was inaccurate. It also came out during

Avallone's deposition that Planet Hollywood International maintains a chart listing all of the

companies it owns, along with their directors, officers, and managers. (Mot. Ex. 10). Earl

refused to produce the Planet Hollywood chart.

Counsel met to discuss this impasse. At the meeting, Earl's counsel disclosed that Earl

does in fact have a "master organizational chart" showing all the EarlEnterprises businesses, but

---

successors, assignees, agents, legal representatives, trustees, consultants, its present and former
officers, directors, servants and employees and any other representatives and persons supporting
to act on its behalf." (*Id.* at 3).

the chart does not show the directors, officers, or managers of those businesses. (Mot. Ex. 6, Ex. A). He added (or at least implied) that Earl has documents identifying Avallone's status at each EarlEnterprises business but said that producing those documents would be "a major undertaking." (*Id.*).

Counsel's discussions were not limited to organizational charts. Counsel also debated whether Avallone's authority to trade Earl's claim was at issue in the litigation. Earl's counsel insisted there was no such issue, that Avallone "had corporate authority under the governing legal documents to transact with Cowen on Earl's behalf," and offered to stipulate as much. (Mot. Ex. 6, Ex. C). Whitebox's counsel rejected the proposed stipulation because tacked on to it was "the understanding that whether [Avallone] exercised that authority is a fact question, and [Earl's] position is that [he] did not exercise that authority and would not have exercised [it] without Robert Earl's prior authorization." *Id.*

With this impasse, too, unresolved, Whitebox moved to compel production of documents responsive to Requests Nos. 13 and 14.

Whitebox's motion will be granted in part and denied in part. As to Request No. 13, the motion will be denied. The request is plainly overbroad. Even if it were not, the request is not proportional to the needs of the parties' dispute. As to Request No. 14, the motion will be granted to the extent it seeks documents other than organizational charts but denied as to the charts themselves.

To understand this treatment of Whitebox's motion, it is necessary to explore the issue – and it is an issue – of Avallone's authority to act on behalf of Earl. There is no dispute that Avallone was directly involved in the purported trade of Earl's claim to Cowen. If there was a trade, he made it, and he did so as Earl's agent. An "agent," of course, is someone who acts on

behalf of another (called the "principal"), subject to the principal's control and with the assent of

both the principal and the agent, and can bind the principal by his actions. *See* Restatement

(Third) of Agency § 1.01 (2006) (defining "agency"). Whether the agent's actions are binding

depends on the agent's authority. *See id.* at ch. 2 Intro. Note.

Earl maintains that Avallone's authority is not an issue because he unquestionably had

actual authority to make the trade; he simply did not exercise it. In agency law, actual authority

means the authority "created by direct manifestations from the principal to the agent." *New York*

*Cmty. Bank v. Woodhaven Assocs.*, 137 A.D.3d 1231, 1233, 29 N.Y.S.3d 377, 379 (N.Y. App.

Div. 2016) (internal quotation omitted).[8] "[T]he extent of the agent's actual authority is

interpreted in light of all the circumstances attending these manifestations, including the customs

of business, the subject matter, any formal agreement between the parties, and the facts of which

both parties are aware." *Id.* (internal quotation omitted). If Avallone had actual authority to

make the trade, that would indeed remove the issue, including any issue of apparent authority.

*See Breda v. Wolf Camera & Video*, 222 F.3d 886, 889 (11th Cir. 2000) (noting that where an

agent has actual authority, other sources of authority, such as apparent authority, are irrelevant).

Avallone's actual authority is not as simple a matter as Earl believes. According to Earl,

his authority is not in play because the positions he occupied with Earl meant he "had corporate

authority to transact on Earl's behalf at all relevant times." (Resp. at 7). "Corporate authority" is

all well and good; the complication is Robert Earl's role. Earl asserts that Avallone "*would not*

*have* exercised his authority" without first obtaining Robert Earl's approval. (*See* Mot. Ex. 6, Ex.

C (emphasis added)). "Would not" is not the same as "could not." "Would not" does not mean

---

[8]    The parties do not discuss which state's underlying substantive law applies here.
The court assumes (without deciding) that New York law applies.

that a sale Avallone made without Robert Earl's approval would have no legally binding effect.

Whether Robert Earl's approval was a requirement (something that circumscribed Avallone's

actual authority) or merely a preference (something desirable but not truly necessary) remains an

open question. Avallone's deposition did not answer it.[9]  Neither did Robert Earl's deposition.[10]

Because Avallone's actual authority to trade Earl's claim is an issue, his apparent

authority is, too. Apparent authority means "words or conduct of the principal, communicated to

a third party, that give rise to the appearance and belief that the agent possesses authority to enter

into a transaction." *Hallock v. State*, 64 N.Y.2d 224, 231, 485 N.Y.S.2d 510, 513 (1984). The

third party's reliance on the appearance of authority is essential, *Greene v. Hellman*, 51 N.Y.2d

197, 204, 433 N.Y.S.2d 75, 80 (1980), and that reliance must be reasonable, *Hallock*, 64 N.Y.2d

at 231, 485 N.Y.S.2d at 513. Even if Avallone lacked actual authority to trade the claim (perhaps

because he needed Robert Earl's approval and did not receive it), Earl may nonetheless have

made it appear that Avallone had the necessary authority, and Cowen may have relied reasonably

on that appearance. If so, Earl would be bound, the absence of actual authority notwithstanding.

---

[9]     Avallone testified that although he had "permission to sign papers . . . we just don't operate that way. I *wouldn't* do anything unless I had Mr. Earl's approval if . . . there's something that was contentious or . . . any major decision." (Mot. Ex. 10 (emphasis added)). But he also testified that he told Cowen he *"needed* to get the approval from the owner . . . ." (Resp. Ex. 2 (emphasis added)).

[10]     Asked whether Avallone "makes no decisions without first obtaining your approval," Robert Earl answered: "To my knowledge yes." (Mot. Ex. 6, Ex. C). He continued: "I'm known as a control freak, and it *would be better* to ask me everything than not." (*Id.* (emphasis added)). But asked whether it was within Avallone's authority to negotiate a sale of Earl's claim in the Caesars bankruptcy, he testified: "As long as you're comfortable with my definition that it *had to come to me* for my approval." (*Id.* (emphasis added)). Then asked whether Avallone would have exceeded his authority had he "never brought the deal to you at all," he dodged the question, stating: "[T]here would be no reason in the world . . . that he *wouldn't* bring it to me for my approval." (*Id.* (emphasis added)).

-15-

*See Greene*, 51 N.Y.2d at 204, 433 N.Y.S.2d at 80 ("Apparent authority may exist in the absence of authority in fact . . . .")

But although Avallone's authority (actual or apparent) to act for Earl is an issue, and although Whitebox is entitled to discovery on that issue, the documents Whitebox seeks in Request No. 13 go well beyond what is either relevant or proportional.[11/] Whitebox asks for "[a]ll documents concerning Mr. Avallone's job responsibilities as Vice Chairman of Earl Enterprises . . . ." Documents describing Avallone's responsibilities at Earl are certainly relevant, and it appears those documents have been produced. Documents outside of those, on the other hand, are not relevant. The issue here is Avallone's actual authority to trade the claim *for Earl*. No other EarlEnterprises business is involved. Documents that describe his authority to act for other businesses (other principals, that is) do not bear on his actual authority to act for Earl. Nor would those documents tend to show Avallone's apparent authority to act for Earl – even in the unlikely event they had been brought to Cowen's attention. Earl's objection to Request No. 13 was therefore proper: the request is overbroad.

Request No. 13 would not be proportional to the needs of the case even if the documents sought were relevant. Whitebox does not ask for documents "describing" Avallone's responsibilities at other EarlEnterprises businesses; Whitebox asks for documents "concerning"

---

[11/]    Earl objected to the request as overbroad, an objection that raises relevance, *see Doan v. Bergeron*, No. 15-cv-11725-IT, 2016 WL 5346936, at *3 (D. Mass. Sept. 23, 2016) (noting that a request seeking "both relevant and irrelevant" documents is overbroad), and as disproportionate. In response to Whitebox's motion, Earl argues only that Request No. 13 was not discussed at counsel's parties' meeting. Whether lawyers discussed a particular subject at a Rule 37(a)(1) "meet-and-confer" is something courts are in a poor position to determine. It may be worth noting, though, that counsel's correspondence after the meeting discusses Whitebox's efforts to obtain organizational charts, and organizational charts are mentioned not only in Request No. 13 but also in Earl's response to Request No. 14.

his responsibilities. The difference is important. Documents "concerning" Avallone's responsibilities includes any document that illustrates or bears on his exercise of those responsibilities. (*See* Mot. Ex. 1 at 2). In effect, Whitebox requests every document related in any way to any decision that Avallone has ever made for any part of EarlEnterprises. Even if his authority to act for other EarlEnterprises businesses were an issue here (and it is not), production of all documents relating to every action he has ever taken for those businesses is inconsistent with the needs of the case and so is beyond the scope of discovery. Fed. R. Civ. P. 26(b)(1).

To support its theory that documents from other EarlEnterprises are relevant and their production therefore proportional, Whitebox relies on *Spitz v. Proven Winners N. Am., LLC*, 759 F.3d 724 (7th Cir. 2014), and *Podolsky v. Alma Energy Corp.*, 143 F.3d 364 (7th Cir. 1998). These decisions are no help to Whitebox. In *Spitz* and in *Podolsky*, the court of appeals addressed whether employees of one company had apparent (not actual) authority to act for and bind a second company. *Spitz* acknowledged that a "casual overlap between companies" might "permit a reasonable person to assume an employee of one has the authority to contract on behalf of the other." *Spitz*, 759 F.3d at 732. Here, by contrast, the issue is whether Avallone, manager of *Earl*, had actual authority (or in its absence apparent authority) to act for *Earl*, the same company. Unlike *Spitz* and *Podolsky*, no other company is involved. If there is one, Whitebox has not identified it.

Request No. 14 is objectionable for essentially the same reasons. Whitebox wants documents "sufficient to identify the scope of Mr. Avallone's authority at Earl, including any organization charts in which he is included." Because "Earl" is defined to include not only Earl but also its "corporate affiliates," the request asks for documents related to other EarlEnterprises businesses, just as Request No. 14 does. But Avallone's authority to act for other EarlEnterprises

businesses (again, other principals) is beside the point. The request is therefore overbroad. And because documents "sufficient to identify" the scope of Avallone's authority include documents that illustrate as well as describe the scope of Avallone's authority, Whitebox again asks for every document related in any way to any decision that Avallone has ever made for any part of the EarlEnterprises group. Production of those documents would not be proportional even if the documents were relevant – and they are not.

The difference with Request No. 14 is Earl's objection. Earl objected on the grounds that the request was overbroad and not proportional – but only "insofar as it seeks the production of any organization charts on which [Avallone] is included." No objection was interposed to the rest of the request. As discussed earlier, any objection not raised to a document request under Rule 34 is waived unless good cause is shown. *Peregrine*, 2015 WL 1344466, at *3; *Martinez*, 2012 WL 6186601, at *3; *Magalis*, 2009 WL 3756446, at *3. Because Earl failed to object to Request No. 14 except for the request to produce organizational charts, and because no good cause has been shown (or even suggested) for that failure, Earl must produce the documents it has withheld, except for the organizational charts.[12]

Whitebox's motion to compel is denied as to Request No. 13 and the request for organizational charts in Request No. 14. As to all other documents responsive to Request No. 14, the motion is granted. Earl must produce the documents it has withheld in response to that

---

[12]    This result is correct under Rule 34, and since Whitebox's motion will be granted in large part with respect to Request No. 14 it is in some sense a victory for Whitebox. But the result is hardly desirable for either side. Earl will have to produce what is undoubtedly a massive quantity of documents, and Whitebox will end up receiving and reviewing that same massive quantity of documents, when most if not all of the documents have little or nothing to do with the parties' dispute. Rather than waste time and spend money, counsel would be wise to meet (in person – no more flurries of email) and discuss sensible limits on the production in light of the discussion of agency issues here.

request.

### c. Whitebox "Motion to Compel" Rule 30(b)(6) Deposition

In December 2017, Whitebox served a Rule 30(b)(6) notice of deposition on Earl seeking to take Earl's deposition through its designated representative. The notice listed topics on which the representative would be examined. Whether Earl had preserved relevant evidence once it knew of its dispute with Whitebox was not one of them.

In January 2018, Whitebox took the deposition of Robert Earl, presumably under Rule 30(b)(1). During the deposition, he was asked whether he had received a "litigation hold" – that is, a memo directing the preservation of documents relevant to the Whitebox-Earl dispute. He answered: "I believe so." (Mot. Ex. C at 171). Whitebox's counsel asked Earl's counsel to provide "the date and recipients of that memo." (Mot. at 2).

The next day, Whitebox took the Rule 30(b)(6) deposition of Earl in accordance with the notice issued in December. Earl designated Avallone as its representative for purposes of the deposition.[13] During the deposition, Avallone was asked whether he was familiar with the term "litigation hold." Avallone said: "Yes." (Mot. Ex. D at 134.) Avallone then was asked: "And did you receive a litigation hold with regard to the present action?" He answered: "I don't recall."

A few days later, Earl's counsel sent Whitebox's counsel a letter stating: "No litigation hold was issued." (Mot. Ex. F at 2). He assured her, however, that there were "two custodians with responsive, relevant documents, and their documents were not destroyed or misplaced, save

---

[13]     According to Earl, Avallone was the only person who could be designated. Earl "has no managers or officers other than him, or employees." (Resp. at 4).

Cowen's February 22, 2017 letter which Whitebox annexed to its initial motion." (*Id.*). He added that because Earl's document retention policy did not "provide for destruction of documents from the relevant period[,]" Whitebox had "no reason to believe it [was] any missing documents."[14] (*Id.*).

Unpersuaded that the testimony in the first Rule 30(b)(6) deposition was either "accurate or sufficient," Whitebox asked Earl to consent to a second one to address whether Earl's "document preservation and collection efforts were reasonable." (Mot. at 4-5). Earl refused. Whitebox has therefore moved "to compel" a second Rule 30(b)(6) deposition, attaching a proposed notice to the motion. (Mot. Ex. G, Ex. H).

Whitebox's motion will be considered a motion for leave to take a second Rule 30(b)(6) deposition of Earl and will be granted.

Rule 30(a)(1) generally permits a party to depose anyone without leave of court. Fed. R. Civ. P. 30(a)(1). When "the deponent has already been deposed in the case," though, a party "must obtain leave of court" to depose the person again unless the opponent agrees to the new deposition. Fed. R. Civ. P. 30(a)(2)(A)(ii). If the parties do not agree and leave is sought, the court "must grant leave to the extent consistent with Rule 26(b)(1) and (2)." Fed. R. Civ. P. 30(a)(2). Leave to conduct a second deposition should "ordinarily be granted," and an objecting party has the burden to show that the deposition would be inconsistent with Rules 26(b)(1) or (2). *Judicial Watch v. U.S. Dept. of Commerce*, 34 F. Supp. 2d 47, 54 (D.D.C. 1998).

---

[14]    Earl produced a copy of its record retention policy in response to Whitebox's document request. The policy lists the periods for which different kinds of documents must be retained. (Resp. Ex. 2). It says nothing about what must be done when litigation is anticipated or pending.

To meet that burden, the objecting party must show either (a) that the topics on which testimony is sought are beyond the scope of discovery, either because they are irrelevant or because the discovery would not be proportional to the needs of the case, Fed. R. Civ. P. 26(b)(1); (b) that the discovery sought is unreasonably cumulative or duplicative or can be obtained from some other source that is more convenient, less burdensome, or less expensive, Fed. R. Civ. P. 26(b)(2)(C)(i); or (c) that the party seeking discovery has had ample opportunity to obtain the information, Fed. R. Civ. P. 26(b)(2)(C)(ii).[15/]

The circumstances here warrant a second Rule 30(b)(6) deposition – limited to the litigation hold, Earl's document retention policies and practices, and the steps Earl took to respond to Whitebox's document request.

Whitebox's attempts to find out whether Earl imposed a "litigation hold" generated three different answers from three different sources. Robert Earl testified: "I believe so." Avallone testified: "I do not recall." And Earl's counsel said in his letter: "No litigation hold was imposed." In other words, Earl answered the same question "yes," "no," and "I don't remember." These inconsistent answers, especially when the supposedly authoritative answer

---

[15/]        These requirements apply equally to Rule 30(b)(6) depositions. One school of thought maintains that where Rule 30(b)(6) depositions are concerned, "rigid insistence on adhering to the one-deposition rule . . . would not make much sense." 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice & Procedure* § 2104 at 495-96 (3d ed. 2010). If the topics for examination differ, so the theory goes, the second deposition should not be considered "the same deposition." *Id.* § 2104 at 496. Adopting this theory, some courts have found leave of court unnecessary to take a second Rule 30(b)(6) deposition of the same organization. *See, e.g., Mobile Telecomm. Techs., LLC v. Blackberry Corp.*, No. 3:12-CV-1652-M-BK, 2015 WL 12698062, at *4 (N.D. Tex. July 15, 2015); *Quality Aero Tech.. Inc. v. Telemetrie Elektronik GmbH*, 212 F.R.D. 313, 319 (E.D.N.C. 2002). Most courts, though, disagree and hold leave must first be granted. *See, e.g., State Farm Mut. Auto. Ins. Co. v. New Horizon*, 254 F.R.D. 227, 234 (E.D. Pa. 2008); *Booker v. ConocoPhillips Co.*, No. C 07-384-CW, 2008 WL 11408436, at *2 (N.D. Cal. Apr. 25, 2008); *In re Sulfuric Acid Antitrust Litig.*, No. 03 C 4576, 2005 WL 1994105, at *1-6 (N.D. Ill. Aug. 19, 2005).

came only after the first Rule 30(b)(6) deposition (and as an unsworn assertion of a lawyer), are more than enough reason to authorize a second deposition. *See Thai Le v. Diligence, Inc.*, 312 F.R.D. 245, 246 (D. Mass. 2015) (noting that a second deposition is usually allowed when "new information is unearthed only after the initial deposition"); *Peerless Indus., Inc. v. Crimson AV, LLC*, No. 11 C 1768, 2013 WL 85378, at *3-4 (N.D. Ill. Jan. 8, 2013) (allowing a second Rule 30(b)(6) deposition when the first deponent had been unable to say "whether a document hold had been implemented"), *aff'd*, 2013 WL 1195829 (N.D. Ill. Mar. 22, 2013).

Because no litigation hold appears to have been imposed, Whitebox also has reason for concern about the completeness of Earl's response to the document request – perhaps reason to suspect spoliation has occurred. *See Haynes v. Dart*, No. 08 C 4834, 2010 WL 140387, at *4 (N.D. Ill. Jan. 11, 2010) (observing that the absence of a litigation hold, though not "per se evidence of sanctionable conduct," is "relevant to the court's consideration" in determining whether there was spoliation); *see also Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 162 (2d Cir. 2012) (same). Even if there has been no spoliation, as Earl asserts, "discovery of document retention and disposition policies" is proper and "is not contingent upon a claim of spoliation or proof of discovery abuses." *Burd v. Ford Motor Co.*, No. 3:13-cv-20976, 2015 WL 4137915, at *9 (S.D. W. Va. July 8, 2015). The litigation hold problem alone warrants additional inquiry into Earl's document retention policies and practices and the actions Earl took to comply with the document request.

In opposing Whitebox's request, Earl argues that the subject of the proposed deposition is irrelevant. *See* Fed. R. Civ. P. 26(b)(1). Not so. A party always has a duty to preserve evidence once that party anticipates, or reasonably should anticipate, litigation. *Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008); *Yahnke v. Kane Cty.*, No. 12 C 5151,

-22-

2013 WL 4537865, at *6 (N.D. Ill. Aug. 27, 2013); *Weitzman v. Maywood, Melrose Park,*
*Broadview Sch. Dist. 89*, No. 13 C 1228, 2014 WL 4269074, at *2 (N.D. Ill. Aug. 29, 2014).
When litigation is reasonably foreseeable, the party "must suspend its ordinary policies
governing how information is retained or destroyed and put into place a litigation hold to
preserve relevant information." *Weitzman*, 2014 WL 4269074, at *2; *see also Yahnke*, 2013 WL
4537865, at *6. Discovery "about the existence and timing of litigation holds" is "routine[ ]."
*King v. Akima Glob. Servs., LLC*, 323 F.R.D. 403, 408 (S.D. Fla. 2017).

Earl does not actually contest the general relevance of document retention or litigation
holds, but Earl maintains the subject is irrelevant here. That is so, Earl argues, because the parol
evidence rule will prevent the admission at trial of any documents Whitebox uncovers that might
vary the terms of "the alleged Earl-Cowen agreement." Whitebox made a similar argument
about the A&R Agreement in opposition to Earl's motion to compel. The argument was
unsuccessful there (*see* discussion, *supra*, at 9) and is no more successful here.

Earl then tries to bolster its relevance argument, asserting that Whitebox is engaged in the
proverbial "fishing expedition[ ]" and only wants to explore the document retention question "in
the hope . . . of threatening sanctions." (Resp. at 7). But Whitebox's discovery can hardly be
called a fishing expedition when the contradictory statements of Earl's own witnesses – and its
counsel – are what brought the document retention question to the fore.

Earl next asserts that relevance aside, Whitebox has had an ample opportunity to take
discovery about Earl's records retention and litigation hold. *See* Fed. R. Civ. P. 26(b)(2)(C)(ii).
Earl notes that Whitebox failed to include the topic in its first deposition notice but nevertheless
asked Avallone about it. According to Earl, Avallone "made clear that he did not know of any

litigation hold issued to him." (Resp. at 6). That mischaracterizes Avallone's testimony.[16]

Asked whether he had received a litigation hold, Avallone did not say he knew of none. He said:

"I don't recall." Earl then faults Whitebox for not posing "follow up questions" to Avallone.

(Resp. at 1). But only one follow-up question is possible when a witness says "I don't recall":

"Is there anything that would refresh your recollection?" Whitebox will not be faulted for failing

to ask that question and will be given the chance to pursue the topic at greater length.

Finally, Earl argues that a second Rule 30(b)(6) deposition is not proportional to the

needs of the case. *See* Fed. R. Civ. P. 26(b)(1). In making this argument, Earl misunderstands

one of the relevant criteria in determining proportionality, provides no support for its factual

assertions, and once again mischaracterizes Avallone's testimony.

• *Importance of the Issues at Stake.* Earl asserts that its document retention practices are

unimportant to the issues here. (Resp. at 9). But this criterion considers the general "importance

of the issues at stake in the action," Fed. R. Civ. P. 26(b)(1); *see* 8 Charles Alan Wright, Arthur

R. Miller & Richard L. Marcus, *Federal Practice & Procedure* § 2008.1 at 153 (3d ed. 2010);

*see, e.g., Silcox v. AN/PF Acquisitions Corp.*, No. C17-1131 (RSM), 2018 WL 1532779, at *4

(W.D. Wash. Mar. 29, 2018), not the importance of the discovery *to* those issues. Whether

Earl's document retention practices are important to the issues in the parties' dispute is

considered in connection with another criterion. (*See* discussion, *infra*, at 25-26).

• *Amount in Controversy.* Earl asserts that the amount in controversy is an "inapplicable"

criterion. (Resp. at 9). Earl offers no explanation for this assertion. The amount in controversy

---

[16]    To say that Avallone did not "know of any" litigation hold is to suggest he said he
did *not* receive one, when in fact he said only that he did not *remember* whether he had received
one or not.

is the amount the holder of the $3.6 million claim will receive under the plan. Even if that amount is only 30 percent of the claim itself, that amount is not trivial and is enough for an additional Rule 30(b)(6) deposition to make financial sense.

• *The Parties' Resources.* Earl asserts that Whitebox can bear the cost of another deposition because Whitebox is "a hedge fund with billions of dollars under management," and Earl cannot because it "is a defunct sandwich shop." (*Id.*).

These assertions are devoid of support. No information has ever been supplied about the nature of Whitebox's business. *See In re Caesars Entm't Operating Co.*, ___ B.R. ___, 2018 WL 2077858, at *4 (Bankr. N.D. Ill. Feb. 12, 2018) (denying Whitebox motion for protective order in part because Whitebox had not "identified the business it is in"). By its own admission, moreover, Earl is more than just a "defunct sandwich shop." Earl is part of "EarlEnterprises," a group of more than 100 restaurant and hotel businesses that includes the Planet Hollywood and Buca di Beppo chains. (*See* discussion, *supra*, at 1 n.1).

• *Importance of the Discovery in Resolving the Issues.* Earl asserts that discovery on the document retention question has nothing to do with the issues in the underlying dispute.

Although not phrased as such, Earl's objection appears to be that a second Rule 30(b)(6) deposition on document retention constitutes "discovery about discovery" (sometimes called "collateral" or "meta" discovery) and is impermissible. Some courts do prohibit "discovery about discovery," *see, e.g., Fish v. Air & Liquid Sys. Corp.*, No. GLR-16-496, 2017 WL 697663, at *6 (D. Md. Feb. 21, 2017), sometimes for the reasons Earl raises, *see, e.g., Bombardier Recreational Prods., Inc. v. Arctic Cat, Inc.*, No. 12-cv-2706 (MJD/LIB), 2014 WL 10714011, at *15 (D. Minn. Dec. 5, 2014) (rejecting request for "discovery on discovery" because it was "not designed to elicit information relevant to any claim and/or defense at issue").

Most courts, though, acknowledge that "discovery about discovery" can be appropriate under certain circumstances. Discovery of that kind is permitted when one party's discovery compliance has "reasonably [been] drawn into question," *Crocs, Inc. v. Effervescent, Inc.*, No. 06-cv-00605-PAB-KMT, 2017 WL 1325344, at *8 (D. Colo. Jan. 3, 2017), so that there is "an adequate factual basis" for an inquiry, *Mortgage Resolution Servicing, LLC v. JPMorgan Chase Bank, N.A.*, No. 15 Civ. 0293 (LTS) (JCF), 2016 WL 3906712, at *7 (S.D.N.Y. July 14, 2016) (internal quotation omitted); *see also Korbel v. Extendicare Health Servs., Inc.*, No. 13-cv-2640 (SRN/SER), 2015 WL 13651194, at *15-16 (D. Minn. Jan. 22, 2015); *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prods. Liab. Litig.*, No. 2:14-mn-02502-RMG, 2014 WL 12621613, at *1 (D.S.C. Nov. 13, 2014); *see generally* Hon. Craig B. Shaffer, *Deconstructing "Discovery about Discovery,"* 19 Sedona Conf. J. 215, 220 (2018).

Earl's inconsistent answers to questions about a litigation hold, and its eventual admission that it never imposed one, call into question its compliance with Whitebox's discovery and provide a factual basis for permitting limited "discovery about discovery." That discovery is important enough to the issues to support an additional deposition.

• *Burden or Expense of the Proposed Discovery vs. its Likely Benefit.* Earl denies that the documents retention question is one that needs clarification, insisting that its "answers did not shift during the discovery process." (Resp. at 9).

To reach this conclusion, Earl mischaracterizes Avallone's testimony yet again and in doing so makes Earl's position appear to have been essentially consistent when it was not. According to Earl, Avallone "stated he was not aware of a litigation hold[,] and Earl thereafter confirmed no hold was issued." (*Id.*). But Avallone said only that he did not "recall" receiving a litigation hold. He did not say he was "not aware of" one. Shortly thereafter, Earl's counsel

declared no litigation hold had been imposed – and even that declaration contradicted Robert

Earl's testimony that one had been. Answers most certainly did shift. Clarification is in order.

*Cf. Judicial Watch*, 34 F. Supp. 2d at 55 (ordering additional Rule 30(b)(6) depositions in part

because of "the deponents' own behavior").

   In short, Earl has not met its burden of demonstrating that a second Rule 30(b)(6)

deposition would be inconsistent with either Rules 26(b)(1) or (2). Whitebox's motion will

therefore be granted. Whitebox has leave to take a second Rule 30(b)(6) deposition of Earl

limited to the following topics: (1) Earl's litigation hold, (2) Earl's document retention policies

and practices, and (3) the steps Earl took to respond to Whitebox's document request.

### 3. Conclusion

   Earl's motion to compel is granted in part and continued in part. Whitebox must produce

all documents withheld in response to Requests Nos. 4 and 8 except those withheld on privilege

grounds. As to those, Whitebox must produce a privilege log. Earl's motion will be continued

to ensure a log is produced. Whitebox's motion to compel is granted in part and denied in part.

Earl must produce all documents withheld in response to Whitebox's Request No. 14, except for

organizational charts. As to the organizational charts, Whitebox's motion is denied and is also

denied as to Request No. 13. Whitebox's motion to "compel" a second Rule 30(b)(6) deposition

of Earl, construed as a motion for leave to take the deposition, is granted. A separate order will

be entered consisted with this opinion. That order will contain dates for the parties' compliance.

Dated: May 29, 2018

A. Benjamin Goldgar
United States Bankruptcy Judge

-27-