## IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| CAESARS ENTERTAINMENT OPERATING COMPANY, INC., *et al.*, | Case No. 15-01145 (ABG) |
| Debtors. | Jointly Administered |

## MEMORANDUM OF LAW IN SUPPORT OF EARL
## OF SANDWICH'S SUMMARY JUDGMENT MOTION

Dated: July 31, 2018

<div style="margin-left:40%">

Joseph D. Frank (No. 6216085)
FRANKGECKER LLP
325 North LaSalle Street, Suite 625
Chicago, Illinois 60654
Tel: (312) 276-1400
Fax: (312) 276-0035
jfrank@fgllp.com

- and -

Jeffrey Chubak (admitted pro hac vice)
STORCH AMINI PC
140 East 45th Street, 25th Floor
New York, New York 10017
Tel: (212) 497-8247
Fax: (212) 490-4208
jchubak@storchamini.com

Counsel to Earl of Sandwich (Atlantic City), LLC

</div>

# **TABLE OF CONTENTS**

<div align="right">**Page**</div>

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ......................................................................................................................... 3

I.      LEGAL STANDARD ................................................................................................. 3

      A.      Rule 3001(e)(2) ............................................................................................... 3

      B.      Summary Judgment ........................................................................................ 3

II.     EARL NEVER TRANSFERRED ITS CLAIM ........................................................ 4

III.    EARL NEVER AGREED TO TRANSFER ITS CLAIM .......................................... 5

      A.      Illinois Law Applies to the Question of Contract Formation ................................. 5

      B.      No Earl-Cowen Agreement was Ever Formed under Illinois Law ......................... 6

            1.      Legal Standard ........................................................................................... 6

            2.      The Chicago Investment Corp. Factors Support a Determination that
                Cowen and Earl Intended a Signed Writing to be a Condition Precedent
                to Contract Formation ............................................................................... 7

                (i)      Whether the Contract is One Usually Put in Writing .................... 7

                (ii)     Whether the Amount Involved is Large or Small .......................... 7

                (iii)    Whether it Requires a Formal Writing for a Full Expression of
                        the Covenants and Promises .......................................................... 8

                (iv)    Whether the Negotiations Indicate that a Written Draft is
                        Contemplated as the Final Conclusion of the Negotiations ............ 8

            3.      The Earl-Cowen Communications Did Not Give Rise to Mutual Assent
                for Additional Reasons ............................................................................. 13

                (i)      Schwab Rejected any Conceivable Offer Before his Purported
                        Acceptance .................................................................................... 13

                (ii)     Later Communications Show Cowen and Whitebox Understood
                        Earl was Not Bound Due to the Absence of a Signed Writing ..... 14

C.      No Earl-Cowen Agreement was Ever Formed under New York Law ................. 15

      1.      The Winston Factors Weigh in Earl's Favor ............................................ 16

      2.      New York General Obligations Law § 5-701(b)(3) Does Not Support
Whitebox's Contract Formation Theory .................................................... 16

IV.    EARL HAD NO DUTY TO NEGOTIATE WITH COWEN .......................................... 17

V.     WHITEBOX LACKS STANDING.................................................................................. 18

CONCLUSION .................................................................................................................................. 19

ADDENDUM ...............................................................................................................................

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)..................................................................................................... 3

*A/S Apothekernes Laboratorium for Specialpreparater v. I.M.C. Chem. Group, Inc.*,
873 F.2d 155 (7th Cir. 1989) ...................................................................................... 18

*Bercoon, Weiner, Glick and Brook v. Manufacturers Hanover Trust Co.*,
818 F. Supp. 1152 (N.D. Ill. 1993) ...................................................................... 17, 18

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)..................................................................................................... 3

*Ceres Ill., Inc. v. Ill. Scrap Processing, Inc.*,
500 N.E.2d 1 (Ill. 1986) ......................................................................................... 7, 14

*Chicago Inv. Corp. v. Dolins*,
481 N.E.2d 712 (Ill. 1985) ..................................................................................... 7, 16

*Ciaramella v. Readers Digest Ass'n, Inc.*,
131 F.3d 320 (2d Cir. 1997)........................................................................................ 9

*ECHO, Inc. v. Whitson Co.*,
52 F.3d 702 (7th Cir. 1995) ........................................................................................ 6

*Gramercy Mills, Inc. v. Wolens*,
63 F.3d 569 (7th Cir. 1995) ........................................................................................ 5

*Heritage Commons Partners v. Village of Summit*,
935 F.2d 1489 (7th Cir. 1991).   .................................................................................. 6

*Highland Capital Mgmt., L.P. v. Bank of Am., N.A.*,
No. 10-cv-1632, 2013 WL 4502789 (N.D. Tex. Aug. 23, 2013) ............................... 5

*Kaplan v. Shure Bros., Inc.*,
266 F.3d 598 (7th Cir. 2001) .................................................................................... 19

*Kaufman v. Am. Express Travel Related Services Co.*,
No. 07-cv-1707, 2008 WL 687224 (N.D. Ill. Mar. 7, 2008) ..................................... 5

*Laserage Tech. Corp. v. Laserage Labs., Inc.*,
972 F.2d 799 (7th Cir. 1992) ...................................................................................... 6

*McIntosh v. Magna Sys., Inc.*,
   539 F. Supp. 1185 (N.D. Ill. 1982) ...................................................................... 5

*In re Motors Liquidation Co.*,
   580 B.R. 319 (Bankr. S.D.N.Y. 2018) ............................................................. 9, 16

*Omnicare, Inc. v. United Health Group, Inc.*,
   629 F.3d 697 (7th Cir. 2011) ............................................................................... 4

*Roger v. Yellow Freight Sys., Inc.*,
   21 F.3d 146 (7th Cir. 1994) ................................................................................. 3

*Luxor Capital Group, L.P. v. Seaport Group LLC*,
   148 A.D.3d 590 (1st Dep't 2017) ......................................................................... 2

*Semi-Tech Litig., L.L.C. v. Bankers Trust Co.*,
   272 F. Supp. 2d 319 (S.D.N.Y. 2003) ................................................................ 18

*Sgouros v. TransUnion Corp.*,
   817 F.3d 1029 (7th Cir. 2016) ............................................................................. 6

*Skycom Corp. v. Telstar Corp.*,
   813 F.2d 810 (7th Cir. 1987) ............................................................................... 6

*Solaia Tech. LLC v. ArvinMeritor, Inc.*,
   No. 02-cv-4704, 2006 WL 695699 (N.D. Ill. Mar. 16, 2006) ................................ 7

*Solus Alternative Asset Mgm't LP v. Perry Corp.*,
   No. 652341/2012, 2015 WL 4240999 (Sup. Ct. N.Y. Co. July 13, 2015) ............ 18

*Stonehill Capital Mgm't LLC v. Bank of the West*,
   28 N.Y.3d 439 (2016) ........................................................................................ 16

*Trust for the Certificate Holders of Merrill Lynch Mortg. Invs., Inc. v. Love Funding Corp.*,
   13 N.Y.3d 190 (2009) ........................................................................................ 19

*Williams v. Toshiba Am. Med. Sys., Inc.*,
   No. 93-cv-3448, 1994 WL 162784 (N.D. Ill. April 25, 1994) ............................... 13

*Winston v. Mediafare Entm't Corp.*,
   777 F.2d 78 (2d Cir. 1985) .......................................................................... 15, 16

*Woods v. Wickes Furniture, Inc.*,
   No. 09-cv-300, 2011 WL 1337089 (N.D. Ill. Apr. 7, 2011) ................................... 9

**Statutes and Rules**

Fed. R. Bankr. P. 3001 .................................................................................. passim

Fed. R. Bankr. P. 7056 ............................................................................................................. 3

Fed. R. Civ. P. 56 .................................................................................................................... 3

N.Y. Gen. Oblig. Law § 5-701 .......................................................................................... 16, 17

**Other Authorities**

Adrian Vermeule, Judicial History,
    108 Yale L.J. 1311 (1999) ............................................................................................... 8

Aaron Hammer, Claims Trading: The Wild West of Chapter 11s,
    XXIX Am. Bankr. J. No. 6 (July/Aug. 2010) ........................................................... 17

Chaim Fortgang and Thomas Moers Mayer, Trading Claims and Taking Control of
    Corporations in Chapter 11, 12 Cardozo L. Rev. 1 (Oct. 1990) ............................ 17

Qualified or Conditional Acceptances at Common Law,
    2 Williston on Contracts § 6:13 (4th ed.) ............................................................... 13

Earl of Sandwich (Atlantic City), LLC submits this memorandum of law in support of its summary judgment motion.[1]

## PRELIMINARY STATEMENT

Following the commencement of this contested matter, initiated by Whitebox's filing a Transfer of Claim, Whitebox commenced a parallel contested matter in the Westinghouse Electric Company, LLC chapter 11 cases pending before Bankruptcy Judge Michael E. Wiles in the Southern District of New York.  The underlying transfers of claim filed by Whitebox herein and in Westinghouse are similar, insofar as they annex, as evidence of the transfer required under Rule 3001(e)(2), an explanation as to why Whitebox thought a creditor should be forced to transfer its proof of claim to Whitebox, notwithstanding the absence of a signed agreement or the payment of funds, followed by a series of e-mail communications, as opposed to a document signed by the creditor confirming that it transferred its claim in consideration for the payment of funds.

A trial in Westinghouse was held July 18, 2018, and a bench decision issued two days later, a copy of which is annexed hereto as an Addendum ("Bench Dec.").  In his decision, Judge Wiles rejected virtually every argument on which Whitebox's cause of action herein is premised. Specifically, Judge Wiles concluded that the subject communications between Whitebox's broker (Seaport) and the creditor (Landstar) did not result in contract formation, notwithstanding their having agreed to pricing, because, inter alia, they agreed that any transaction would be subject to documentation.  (Bench Dec. 38, 49.)  He also concluded that the imposition of additional terms and conditions by Seaport after the parties reached agreement on price resulted in a counteroffer that Landstar never accepted.  (*Id*. 38-44, 47-48.)

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to them in the accompanying Statement of Material Facts, pursuant to Local Rule 7056-1 ("SMF").

Judge Wiles further rejected Whitebox's position, proffered by its expert herein, Peter Lupoff, that it is industry custom that agreement on price gives rise to an enforceable agreement to negotiate on other terms in good faith.  Judge Wiles found Mr. Lupoff's "vague testimony at trial did not support the existence of any such custom," and "in any event … the alleged customs are not sufficient to override the plain meaning and effect of the communications that the parties actually had."  (*Id*. 44-47.)  Judge Wiles also observed that Mr. Lupoff's position is inconsistent with that taken by Seaport in a separate action, *Luxor Capital Group, L.P. v. Seaport Group LLC*, 148 A.D.3d 590 (1st Dep't 2017), in which it "successfully argued in New York State Court that a stock trade had no binding effect because the trade communications said that the deal was 'subject to' the execution of written documents."  (Bench Dec. 45.)

Judge Wiles explained that "Contracts are supposed to be matters of voluntary agreement; they are not supposed to be traps for the innocent and unwary." (Bench Dec. 46.)  To that end, Judge Wiles was extremely critical of the double standard Whitebox asserts should apply in the bankruptcy claim trade business:

> What seems to be happening … is that the participants in this industry use language that reassures sellers that nothing is binding until the whole deal is done, and that permits the people in the industry to take different positions in different cases as to what the language means and what the customs allegedly are, depending upon the participants' self-interest in those individual cases.
>
> To see this disparity, one need only contrast the positions taken by Whitebox here with the positions taken by Seaport in the New York State Court.  No court should endorse such a practice.
>
> [M]uch of what Whitebox argues, in terms of custom, is not so much a request that there was an actual preliminary agreement here; rather it asks me, due to the needs of the industry, to impose one upon Landstar … That is not the proper role of a court.

(*Id*. 61.)

This Court should likewise rule against Whitebox. As described below, the underlying communications herein weigh even more heavily against a finding that a contract was formed, than

those at issue in Westinghouse, putting aside that relief under Rule 3001(e) requires that a trade claim agreement have closed, and not just mutual assent.

## ARGUMENT

## I.    LEGAL STANDARD

### A.    Rule 3001(e)(2)

Rule 3001(e)(2) requires the transferee of a proof of claim to file "evidence of the transfer" together with the notice required by the Rule in order to affect the transfer of the claim on the claims register, with the quoted term interpreted by the Advisory Committee Notes as meaning "a statement of the transferor acknowledging the transfer and the consideration for the transfer." Under the Rule, "if a timely objection is not filed by the alleged transferor, the transferee shall be substituted for the transferor." If, however, an objection is timely filed, then the Court is required to determine if "the claim has been transferred." Notably, the relevant inquiry is not whether the transferor entered into an agreement to sell the claim, but rather, whether the claim "has been transferred" (*i.e.*, any such agreement closed). This is evident from the fact that the Rule requires the transferee file a "statement of the transferor" "acknowledging [receipt of] consideration for the transfer" of the claim, which would not be possible prior to closing.

### B.    Summary Judgment

Rule 56(a), made applicable by Rule 7056, provides "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact." *Roger v. Yellow Freight Sys., Inc.*, 21 F.3d 146, 148 (7th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Once that burden is met, the party opposing summary judgment "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In considering a summary judgment motion, a court may not weigh conflicting evidence or make credibility determinations. *Omnicare, Inc. v. United Health Group, Inc.*, 629 F.3d 697, 704 (7th Cir. 2011).

## II.    EARL NEVER TRANSFERRED ITS CLAIM

The record evidence does not support Whitebox's allegation that "Earl sold the Claim to Cowen … in January 2017." (Transfer of Claim Ex. 1, p.1.)  In support of that allegation, Whitebox points to e-mails annexed as Ex. A to the Seyfried Decl., which e-mails are also attached as an exhibit to the A&R Agreement (included in Chubak Decl. Ex. 5).  However, those e-mails do not establish that "Earl sold the Claim to Cowen," as alleged.  All they show is Avallone and Schwab preliminarily agreed to the price term for a potential trade, and Avallone believed the Claim was allowed.  The communications ended with Rosenblum sending Avallone a Draft AoC Agreement without receiving a response.  (SMF ¶¶31-44), whereupon Rosenblum and Schwab—the only two persons with direct knowledge at Cowen—concluded "that seller has disappeared and that there is most likely no transaction," and to "kill it and move on" (*id.* ¶¶40-42). The transaction described in the Draft AoC Agreement never closed, as it was never signed and the conditions precedent to its effectiveness (*id.* ¶32) never occurred.  Other allegations in the Transfer of Claim confirm that not even Whitebox believes the Claim was transferred.  In the very next paragraph, it states "Earl committed to sell the Claim to Cowen under applicable law." Rule 3001(e)(2) requires more than a "commitment to sell the Claim;" rather, it requires a determination "that the claim has been transferred."[2]

---

[2] Significantly, Cowen never paid the person responsible for introducing Earl to it (Barrett Mikelberg), which it would have been contractually required to do had the transaction closed.  (SMF ¶5 n.1; *id.* ¶24 n.2; *id.* ¶47.)

## III.    EARL NEVER AGREED TO TRANSFER ITS CLAIM

Even if Rule 3001(e)(2) permitted an alleged transferee to enforce an unconsummated claim transfer agreement by filing a transfer of claim under Rule 3001(e)(2), as opposed to suing for breach of contract, Earl would still be entitled to summary judgment as the record evidence establishes no enforceable Earl-Cowen agreement was ever formed.

### A.    Illinois Law Applies to the Question of Contract Formation

Whitebox states New York law governs the question of contract formation, because the unexecuted Draft AoC agreement includes a New York choice of law clause.  (Transfer of Claim Ex. 1, n.2, citing Draft AoC Agreement § 10.)  While the outcome remains the same regardless of what law applies, that argument fails.  *Kaufman v. Am. Express Travel Related Services Co.*, No. 07-cv-1707, 2008 WL 687224, at *3 (N.D. Ill. Mar. 7, 2008) ("The law is clear that, *where a valid contract has been formed*, a court should enforce the choice of law provision … However, the threshold question is whether the parties entered into a valid contract containing a choice of law provision").[3]

Illinois choice of law rules apply to the question of contract formation.  *Id*. at *4 (citing *Gramercy Mills, Inc. v. Wolens*, 63 F.3d 569, 572 (7th Cir. 1995)).  "Illinois follows the 'most significant relationship test' for deciding among conflicting laws. *Id*.  That test "requires examination of … five factors" (listed below), *McIntosh v. Magna Sys., Inc.*, 539 F. Supp. 1185, 1188 (N.D. Ill. 1982), none of which support application of New York law.  To the extent that the factors apply, they are a wash between Illinois, Florida, and New York.

---

[3] Whitebox cites *Highland Capital Mgmt., L.P. v. Bank of Am., N.A.*, No. 10-cv-1632, 2013 WL 4502789, at *10-11 (N.D. Tex. Aug. 23, 2013) for the proposition that "New York law properly governs."  However, the *Highland Capital* court concluded that New York law applied by operation of standard terms published by the LSTA, which the parties previously agreed would apply to subsequent transactions between them and which include a New York choice of law clause.  *Id.* at *11.  Here, there is no prior agreement between Earl and Cowen, let alone one that provides its terms shall apply to subsequent transactions between them.

(1) <u>Place of Contracting</u>.  To the extent this factor applies, the January 11-12, 2017 e-mails and Draft AoC Agreement which Whitebox states collectively form the terms of the alleged Earl-Cowen agreement (SMF ¶22) were exchanged between Avallone, who was located in Florida, and Schwab and Rosenblum, who were located in New York.

(2) <u>Place of Negotiation</u>.  To the extent this factor applies, it is likewise a wash between Florida and New York.

(3) <u>Place of Performance</u>. This factor is inapplicable. There is no dispute that any alleged contract was not performed.

(4) <u>Location of Subject Matter of Contract</u>.  The Claim is on file with the Debtors' claims agent, which operates as an agent of the Court by operation of 28 U.S.C. § 156(c) and its retention order [ECF No. 51, ¶10].

(5) <u>Parties' Domicile, Residence, Place of Incorporation, and Place of Business</u>. Earl is a Florida corporation with no place of business, having closed its Atlantic City, New Jersey store location.  Cowen is a Delaware LLC headquartered in New York.

Thus, Illinois rules apply by default.  *ECHO, Inc. v. Whitson Co.*, 52 F.3d 702, 707 (7th Cir. 1995).

**B.    No Earl-Cowen Agreement was Ever Formed under Illinois Law**

1.    <u>Legal Standard</u>

Whitebox has the burden of proving all elements of a breach of contract claim by a preponderance of the evidence. *Heritage Commons Partners v. Village of Summit*, 935 F.2d 1489, 1493 (7th Cir. 1991).  Mutual assent is "determined by reference to what the parties expressed to each other in their writings, not by their actual mental processes." *Laserage Tech. Corp. v. Laserage Labs., Inc.*, 972 F.2d 799, 802 (7th Cir. 1992) (citing *Skycom Corp. v. Telstar Corp.*, 813 F.2d 810, 814-15 (7th Cir. 1987)).  This has become known as the "objective theory of intent." *Id.* *See also Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1034 (7th Cir. 2016).

"If the parties have made the execution of a formal written agreement a condition precedent to the formation of a contract, there can be no contract, even if all material terms have been agreed upon." *Solaia Tech. LLC v. ArvinMeritor, Inc.*, No. 02-cv-4704, 2006 WL 695699, at *4 (N.D. Ill. Mar. 16, 2006) (collecting cases). The Illinois Supreme Court described the following factors as relevant to determining if parties intended a writing to be a condition precedent to contract formation:

> [w]hether the contract is one usually put in writing; whether there are few or many details; whether the amount involved is large or small; whether it requires a formal writing for a full expression of the covenants and promises; and whether the negotiations themselves indicate that a written draft is contemplated as the final conclusion of the negotiations.

*Id.* at *7 (quoting *Chicago Inv. Corp. v. Dolins*, 481 N.E.2d 712, 714 (Ill. 1985)).

"Also, where the anticipated document is never executed … conduct and statements subsequent to the oral agreement may be decisive of the question whether a contract had been made." *Ceres Ill., Inc. v. Ill. Scrap Processing, Inc.*, 500 N.E.2d 1, 5 (Ill. 1986).

2.  The Chicago Investment Corp. Factors Support a Determination that Cowen and Earl Intended a Signed Writing to be a Condition Precedent to Contract Formation

(i)     *Whether the Contract is One Usually Put in Writing*

Whitebox's former counsel herein, Douglas Mintz, stated it is "market practice" for parties to paper bankruptcy claim transfer agreements with a "brief document confirming the trade, signed by both parties." (SMF ¶61.) Indeed, in the Westinghouse matter, Judge Wiles found "based on the record that it is customary for parties in this industry to execute written documentation in connection with the trading of claims." (Bench Dec. 60) No document was ever executed here.

(ii)    *Whether the Amount Involved is Large or Small*

Each of the Claim amount ($3.6 million), the purchase price under discussion in January 2017 ($2.15 million), and the delta between those amounts are large, and support a determination

that execution of a written instrument was intended to be a condition precedent to contract formation.

> (iii)    *Whether it Requires a Formal Writing for a Full Expression of the Covenants and Promises*

That none of the terms in the 10-page Draft AoC Agreement, save price and the representation and warranty as to allowance, were included in the January 11-12, 2017 e-mail exchange between Schwab and Avallone, demonstrates that "a formal writing" was needed "for a full expression of the covenants and premises."  In addition, contrary to Mintz's assertion (SMF ¶61), Rule 3001(e)(2) requires a formal writing to affect a transfer.  The Advisory Committee Notes are clear that the "evidence of transfer" required by the Rule must be "a statement of the transferor acknowledging the transfer and the consideration for the transfer."  These notes are accorded significant weight in interpreting the Rule.  *See*, *e.g.*, Adrian Vermeule, Judicial History, 108 Yale L.J. 1311, 1329 (1999) ("the [Supreme] Court frequently draws upon the advisory committee notes as both persuasive scholarly commentary and an authoritative interpretive source").  Whitebox's position that e-mails between Schwab and Rosenblum, on the one hand, and Avallone, on the other, suffice, notwithstanding that they neither acknowledge a prior transfer nor payment of consideration to Earl for the Claim, is wrong.

> (iv)    *Whether the Negotiations Indicate that a Written Draft is Contemplated as the Final Conclusion of the Negotiations*

>> (a)    The Draft Assignment of Claim Agreement Makes Clear a Signed Writing was Contemplated as the Final Conclusion of Negotiations

That a written draft was contemplated as the final conclusion of negotiations is clear from the Draft AoC Agreement Cowen transmitted to Earl, which agreement Whitebox states formed a part of the alleged Earl-Cowen agreement. (SMF ¶22.)

That Draft AoC Agreement includes a merger clause (*id.* ¶32) that provides it "supersedes all prior agreements, understandings or representations pertaining to the subject matter hereof, whether oral or written."  "Courts … routinely hold that a merger clause in the written draft of a[n] agreement 'is persuasive evidence that the parties did not intend to be bound prior to the execution of a written agreement.'" *In re Motors Liquidation Co.*, 580 B.R. 319, 345 (Bankr. S.D.N.Y. 2018) (quoting *Ciaramella v. Readers Digest Ass'n, Inc.*, 131 F.3d 320, 324 (2d Cir. 1997)) (additional citations omitted).

The Draft AoC Agreement also states in its Introduction (second paragraph) that it would not become effective, and Cowen would have no obligation to pay Earl thereunder, unless and until Earl and Cowen "have executed and delivered to each other this Agreement and the Notice of Transfer."  (SMF ¶32.)  Courts have interpreted similar provisions as meaning the parties did not intend to be bound absent a signed writing.  *Woods v. Wickes Furniture, Inc.*, No. 09-cv-300, 2011 WL 1337089, at *4 (N.D. Ill. Apr. 7, 2011) ("language clearly identif[ying] Woods's signature as the event triggering the Agreement's effectiveness … convey[s] the parties' intention for Woods's signature to serve as a precondition to the … agreement's enforceability") (additional citations omitted); *see also Motors Liquidation*, 580 B.R. at 345 ("Language stating [that a draft] agreement is only effective upon signature of the parties has repeatedly been found to indicate parties did not intend to be bound" absent a signature).

    (b)    Earl-Cowen Communications Make Clear a Signed Writing was Contemplated as the Final Conclusion of Negotiations

Communications between Earl and Cowen demonstrate they intended their negotiations to conclude with a signed writing.  On January 11, 2017, at 2:38 p.m., in response to an inquiry from Schwab asking for evidence the Claim is allowed, Avallone stated "I can easily get a letter from the Debtor/ Restructuring Officer confirming [the Claim is] allowed <u>if we decide to move</u>

forward." (SMF ¶12, emphasis added.)  The underlined portion made clear Avallone did not view his 2:04 p.m. e-mail (quoted in *id.* ¶10) as an offer that could bind Earl.

Schwab's response, sent January 11, 2017 at 3:47 p.m., confirms he did not wish to bind Cowen absent a signed writing.  Schwab stated "I would be a buyer of your $3.6mm allowed CZR claim at $2.15 million … subject to" several conditions, including "(c) documentation," and also asked Avallone to "[p]lease confirm that you are good with the above terms and I will forward you a purchase and sale agreement for review."  (*Id.* ¶13.)  It would make no sense for Schwab to ask Avallone to "confirm" that the potential trade under discussion would be "subject to … documentation" and for Schwab to offer to send Avallone a draft agreement had Schwab nevertheless wished to bind Cowen by a separate e-mail.

Schwab's next e-mail, his supposed acceptance of Avallone's alleged offer, sent January 12, 2017, at 8:34 a.m., stated "If this is a transaction Planet Hollywood [Earl's affiliate] would like to pursue then we need to move quickly.  As mentioned I can forward a draft document for your review."  (*Id.* ¶14.)  There would be no need to move further, or forward a draft document, had Schwab intended to bind Cowen by that same e-mail.   Schwab also states in that e-mail "Please let me know ASAP so I can plan accordingly and accommodate you.  So you are aware, it's a bank holiday on Monday which accelerates the need to move quickly."   Again, there would be no need for Avallone to let Schwab know anything if Schwab understood that he and Avallone had an agreement papered by that e-mail and Avallone's e-mail of January 11, 2017, at 2:04 p.m. (*Id.*)  The 8:34 a.m. e-mail also referenced a "quick conversation" with Avallone.  (*Id.*)  Avallone testified that he recalled having spoken with Schwab, and telling him any agreement to sell the Claim would require prior approval from Robert Earl, whose family trust is Earl's ultimate owner,

and that Avallone also first needed to understand "how it affected me as a member of the unsecured creditors committee"[4] before the Claim could be sold. (*Id.* ¶16.) That testimony is uncontroverted.

Avallone responded to Schwab at 9:47 a.m. that day. In his response Avallone did not "let [Schwab] know" "[i]f this is a transaction [Earl] would like to pursue," as Schwab had requested, but instead simply asked Schwab to "[p]lease forward draft document," presumably in response to Schwab's offer to send such document in his last two e-mails. (*Id.* ¶19.)

Before sending Avallone the Draft AoC Agreement, Rosenblum e-mailed Whitebox a Trade Confirm at 11:12 a.m. that day, which according to Whitebox "confirmed the terms of Whitebox's acquisition of the Claim from Cowen," subject to the following conditions: "Cowen executing an Assignment of Claim agreement with original holder of claim. Execution of a mutually acceptable Assignment of Claim customary for the sale and purchase of distressed trade claims." (*Id.* ¶¶23-25.) Cowen understood the conditions to mean any Cowen-Whitebox trade concerning the Claim was subject to execution of the written agreement Cowen contemplated entering into with Earl. (*Id.* ¶¶51, 55, 65.)

By the Trade Confirm, Rosenblum asked Whitebox to comment on her draft of the so-called "upstream" agreement she intended to subsequently send Avallone, which Whitebox did. (*Id.* ¶¶24, 30.) Naturally, there would be no need for Earl and Cowen to enter into that written agreement had Cowen believed that it already had an agreement papered by e-mails with Avallone.

On January 12, 2017, at 1:24 p.m., after receipt of the marked "upstream" agreement from Whitebox's counsel, Rosenblum sent the Draft AoC Agreement to Avallone. Her transmittal e-mail stated: "we are … forwarding this draft document for your review, prior to diligence review, completion to include language confirming the claim is allowed, and further review and comment

---

[4] That is because if Earl were dropped from the committee upon the Claim's sale, it would not be entitled to compensation payable to committee members under Section XII.G of the confirmed plan. (SMF ¶17.)

by our counsel" (*Id*. ¶31), making clear Cowen was not yet prepared to be bound by the Draft AoC Agreement (or any prior e-mails).

Rosenblum sent follow-up e-mails on January 12, 2017, at 5:37 p.m., and the next morning, at 9:10 a.m., asking if Avallone had questions or comments on the draft agreement, and inviting him to reach out to her or Schwab to discuss "the process" and "next steps." (*Id*. ¶34.) Rosenblum sent a follow-up e-mail to Avallone on January 17, 2017, at 4:26 p.m., stating "We are available to address any questions or concerns you may have about the document or process, and are accustomed to working with our counterparties to negotiate a mutually acceptable agreement." (*Id*. ¶38.) Naturally, it would have made no sense to ask for Avallone's comments so Cowen and Earl could "negotiate a mutually acceptable agreement" had Cowen understood mutual assent had already been achieved.[5]

Rosenblum advised Schwab, by e-mail sent on January 18, 2017, at 7:13 a.m., "it seems obvious" from Avallone's non-responsiveness that Avallone "does not intend to proceed," to which Schwab responded "I would assume its gone and he is not interested in doing anything. I would send one last email and tell him that after today it will be a much more difficult transaction to complete. I would also tell Jillian [Bottge, of Cowen] that seller has disappeared and there is likely no transaction." (*Id*. ¶¶39-40.) Rosenblum "agree[d] with all you [Schwab] wrote" in that e-mail. (*Id*. ¶41.) Schwab further advised Rosenblum "If you have no response by noon your time just kill it and move on," to which Rosenblum responded "Okay, really made every effort but although he considered it, doubt he was ever a serious seller." (*Id*. ¶42.) Cowen clearly understood

---

[5] Avallone also testified that he spoke with Rosenblum in the interim, on or about January 13, 2017, and told her what he told Schwab—that any agreement to sell the Claim would require Robert Earl's prior approval and that he first needed to understand how a sale would affect his ability to remain on the creditors' committee. (SMF ¶¶35-37.) That testimony is uncontroverted.

that any transaction with Earl would be documented by the Draft AoC Agreement, and believed there was no agreement absent an executed version of the same.

Rosenblum's "one last email" to Avallone, sent that day at 9:33 a.m., asked "Would you kindly advise by noon … if you plan to move ahead with the transaction or we will assume you are no longer interested." (*Id.* ¶43.) Cowen clearly did not believe it already had an agreement with Earl. Avallone naturally understood from this e-mail that negotiations self-terminated by his not responding. (*Id.* ¶44.)

Notwithstanding the e-mail traffic, Whitebox has taken the position herein that Earl and Cowen had an enforceable agreement, on the ground that Schwab and Rosenblum testified that they thought they had a deal with Avallone based on their having agreed to the price term for a potential trade. Their subjective beliefs are irrelevant, given that Illinois ascribes to the objective theory of contract formation, as does New York, putting aside that Cowen committed to cooperate with Whitebox in this litigation, pursuant to the A&R Agreement. (*Id.* ¶66, 79.)

3.   The Earl-Cowen Communications Did Not Give Rise to Mutual Assent for Additional Reasons

(i)   *Schwab Rejected any Conceivable Offer Before his Purported Acceptance*

Even if Avallone's e-mail to Schwab of January 11, 2017, at 2:04 p.m., could somehow be construed as an offer that could have bound Earl (which Earl disputes), each of Schwab's 2:17 and 3:47 p.m. e-mails of that day, both of which had conditions attached,[6] constituted a counteroffer which had the effect of rejecting Avallone's alleged prior offer. *See* 2 Williston on Contracts § 6:13 (4th ed.) ("A conditional acceptance is, in effect, a statement that the offeree is willing to

---

[6] The former e-mail stated "I would have interest at 59.72% [the price] subject to confirming" that the Claim is allowed. The latter e-mail included four conditions: "(a) written confirmation from the debtor that the claim is a Class I and allowed (b) additional due diligence (c) documentation and (d) closing before close of business Tuesday January 17th." (SMF ¶¶11, 13.)

enter into a bargain differing in some respect from that proposed in the original offer. The conditional acceptance is, therefore, itself a counteroffer and operates to reject the original offer, so that thereafter even a purportedly unqualified acceptance of that offer will not form a contract"); *Williams v. Toshiba Am. Med. Sys., Inc.*, No. 93-cv-3448, 1994 WL 162784, at *8 (N.D. Ill. April 25, 1994). That is likewise the case under New York law. (Bench Dec. 16-17 (collecting cases.)) As a result, Schwab could not have later accepted the alleged offer by Schwab's e-mail sent at 8:34 a.m. the next day.[7] The Draft AoC Agreement, which added numerous additional terms, likewise would have constituted a counteroffer.

### (ii)   Later Communications Show Cowen and Whitebox Understood Earl was Not Bound Due to the Absence of a Signed Writing

Statements subsequent to the alleged agreement may be decisive as to the question of whether a contract had in fact been made, as noted above. *Ceres*, 500 N.E.2d at 5. Patel testified that on receipt of the Trade Confirm from Rosenblum, "we [Whitebox] were confident that Cowen had executed a similar confirm with Earl of Sandwich," based on Whitebox's prior dealings with Cowen and its predecessors, which had "facilitated the purchase by Whitebox of 80 percent of the Class I claims in the case." (*Id*. ¶28; *see also id.* ¶24 n.2, discussing Whitebox's expectation that it would enter into "downstream" agreement with Cowen the terms of which would "mirror" that of a prior "upstream" Earl-Cowen agreement.)

Patel therefore asked Bottge if "we have a confirm in place" on January 19, 2017. (*Id*. ¶49.) Bottge declined to answer, and instead stated "im hoping the guy [Avallone] has a bad case of gout and his internal counsel is working through the language" in the Draft AoC Agreement. (*Id*.)

---

[7] Both Cowen and Whitebox testified these and other conditions were not previously waived. (SMF ¶21.) Whitebox's response is that it could waive these conditions after-the-fact, because the conditions exist for its sole benefit. That argument fails. Whitebox threatened to sue Cowen for failure to deliver the Claim on multiple occasions (*id*. ¶¶64, 68 n.5), and Cowen pointed to unsatisfied conditions in the Trade Confirm to explain why it had no liability (*id*. ¶¶51, 55, 66).

Again, Cowen clearly did not believe that Earl was bound by prior e-mails with it, or the unexecuted Draft AoC Agreement.

Stukas asked Bottge about the status of Whitebox's trade on February 2, 2017, to which she responded "In the confirm, trade is sub to us executing an assignment of claim agreement with the original holder and due diligence .. I have neither from the seller." (*Id*. ¶51.) Five days later, Bottge confessed to Patel that there was no confirm, when he asked her to send him a copy of the same because "we want to look at the language." (*Id*. ¶¶53-56.) Patel expressed astonishment that Cowen had not secured an "upstream" confirm from Earl before confirming a trade with Whitebox (*id*. ¶53, "didn't you guys get a confirm from them to match the downstream"), making clear Whitebox expected Cowen to have locked Earl into a trade by an "upstream" confirm prior to confirming a trade with Whitebox.

After Whitebox threatened legal action against Cowen for failure to deliver the Claim, pursuant to the Trade Confirm (*id*. ¶¶ 64, 68, n.5), Cowen advised Whitebox that it would defend such action by arguing that performance was impossible (*i.e.*, Cowen had no legal rights to enforce against Earl), and agreed in principle to assign to Whitebox any cause of action that Cowen may have against Earl. (*Id*. ¶65.) Patel was not excited about this proposal because he "fear[ed] Cowen is actually the party that screwed up" (*id*. ¶67) presumably by confirming a trade with Whitebox prior to Cowen's entry into an "upstream" confirm with Earl. Still, Whitebox apparently agreed to move forward with the proposed assignment.

During negotiations, Cowen advised Whitebox that it would not make any representations or warranties with respect to rights it may have against Earl. (*Id*. ¶70.) Cowen further refused to represent and warrant taking legal action against Earl would not violate Rule 11, despite repeated requests by Whitebox that it do so. (*Id*. ¶¶71-75.)

### C.     No Earl-Cowen Agreement was Ever Formed under New York Law

1.     The Winston Factors Weigh in Earl's Favor

New York courts consider four factors in determining "whether the parties intended to be bound in the absence of a document executed by both sides." *Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80 (2d Cir. 1985).  "No one *Winston* factor is decisive, and the analysis ultimately hinges on the parties' intent demonstrated through their objective communications and conduct." *Motors Liquidation*, 580 B.R. at 344.  Two *Winston* factors are covered by the *Chicago Inv. Corp.* factors, "(1) whether there has been an express reservation of the right not to be bound in the absence of a writing"[8] and "(4) whether the agreement at issue is the type of contract that is usually committed to writing," 777 F.2d at 80, both of which weigh in Earl's favor.  The remaining factors also weigh in Earl's favor.  The second is "whether there has been partial performance of the contract." *Id.*  Whitebox has taken the position that all terms of the alleged Earl-Cowen agreement are in the January 11-12, 2017 communications and the Draft AoC Agreement.  (SMF ¶22.)  It is undisputed that no portion of that alleged agreement has been performed.  The third is "whether all of the terms of the alleged contract have been agreed upon."  It is undisputed that the only terms expressly agreed on was price, and Claim allowance.  No agreement was reached on the litany of additional terms in the 10-page Draft AoC Agreement, which Avallone viewed as unsatisfactory and overly complex.  (*Id.* ¶33.)

2.     New York General Obligations Law § 5-701(b)(3) Does Not Support
       Whitebox's Contract Formation Theory

Whitebox argues the alleged Earl-Cowen agreement "need not be evidenced by a signed writing" because it is a "qualified financial contract" under N.Y. Gen. Oblig. Law § 5-701(b)(2)(i) (Transfer of Claim Ex. 1, p.2), which establishes an exception to the statute of frauds, as it applies

---

[8] Whitebox has taken the position this factor weighs in its favor, under New York law, citing *Stonehill Capital Mgm't LLC v. Bank of the West*, 28 N.Y.3d 439 (2016) [ECF No. 7120, ¶¶33, 35].  That decision is inapposite, for reasons articulated by Judge Wiles.  (Bench Dec. 50-57.)

to agreements that cannot be performed within one year from the making thereof under subdivision

(a)(1). That argument fails.  At the outset, subdivision (b) is inapplicable because it is a statutory

exception to subdivision (a)(1), which itself is inapplicable.  Even if subdivision (b) were relevant,

the argument would still fail, as under subdivision (b)(1)(a) for a qualified financial contract to be

enforceable there must still be "sufficient evidence to indicate that a contract has been made."

Subdivision (b)(3) specifies circumstances under which there is such evidence.  However, none of

the circumstances specified apply.  Subdivision (b)(3)(a) is inapplicable because the e-mails

exchanged between Cowen and Avallone are not "electronic communication[s] sufficient to

indicate that in such communication a contract was made between the parties."  The remaining

subdivisions are plainly inapplicable.

## IV.    EARL HAD NO DUTY TO NEGOTIATE WITH COWEN

Whitebox has taken the position that once the parties agreed on price, Cowen had a one-

sided option contract whereby Earl had a duty to negotiate and close on a trade, whereas Cowen

could elect not to close depending on the results of its diligence.  Putting aside that Rule 3001(e)(2)

does not permit the filing of a claim transfer where one party has breached a duty to negotiate, the

sole support for Whitebox's theory is the expert report of Peter Lupoff, opining on industry custom

based on his supposed industry experience.

That position should be rejected.  The report is inadmissible hearsay [ECF No. 7796, n.2].

In addition, in Westinghouse, Mr. Lupoff's testimony was rejected as vague, self-serving, and

inconsistent with positions taken by industry participants (Seaport) in separate litigations.

(Bench Dec. 44-46.)  Further, his position is inconsistent with the view of recognized bankruptcy

experts. *See*, *e.g.*, Chaim Fortgang and Thomas Moers Mayer, Trading Claims and Taking Control

of Corporations in Chapter 11, 12 Cardozo L. Rev. 1, 19 (Oct. 1990) ("Failure to agree on these

provisions [representations, warranties, indemnities, etc.] has destroyed a surprisingly large

number of deals after claims buyers and claims sellers agreed on economic terms"). It is also inconsistent with the views of Whitebox's own former counsel herein. Aaron Hammer, Claims Trading: The Wild West of Chapter 11s, XXIX Am. Bankr. J. No. 6 (July/Aug. 2010). Finally, it is well established, under both Illinois and New York law, no duty to negotiate exists absent a prior agreement to do so. *Bercoon, Weiner, Glick and Brook v. Manufacturers Hanover Trust Co.*, 818 F. Supp. 1152, 1157 (N.D. Ill. 1993) (citing *A/S Apothekernes Laboratorium for Specialpreparater v. I.M.C. Chem. Group, Inc.*, 873 F.2d 155 (7th Cir. 1989)); *Solus Alternative Asset Mgm't LP v. Perry Corp.*, No. 652341/2012, 2015 WL 4240999, at *10 (Sup. Ct. N.Y. Co. July 13, 2015). No such prior agreement exists here.

As noted by Judge Wiles, had Cowen "intended that there be a binding Type II contract [*i.e.*, an agreement giving rise to a duty to negotiate], it could and should have clearly and explicitly asked [the creditor] to confirm that the parties had an enforceable agreement as to price and that the parties were entering into a binding and enforceable agreement to negotiate other terms in good faith." (Bench Dec. 46; *see also id.* 60-61.)

## V.    WHITEBOX LACKS STANDING

Whitebox lacks standing to enforce any alleged Earl-Cowen agreement, as the A&R Agreement, the instrument on which standing is premised (in Transfer of Claim Ex. 1, p.3), is champertous under N.Y. Judiciary Law § 489(1) and therefore void. *Semi-Tech Litig., L.L.C. v. Bankers Trust Co.*, 272 F. Supp. 2d 319, 331 (S.D.N.Y. 2003).

Section 489(1) prohibits claim assignments made "with the intent and for the primary purpose of bringing a lawsuit." The A&R Agreement states that its purpose was to permit Whitebox to sue Earl. The last recital states it was entered into because Whitebox "desire[d] to purchase, acquire and receive, the Transferred Rights," defined as "any and all actions, claims … and/or causes of action [Cowen] has against [Earl] arising out of or in connection with the Seller

Transaction," a term defined as Cowen's attempt to buy the Claim from Earl. (SMF ¶76.) Whitebox bought those rights and released Cowen in exchange for $1 and a covenant to cooperate. (*Id.* ¶¶76-79.)  Whitebox also proposed that Cowen assign it the right to sue Earl, long before entering into the A&R Agreement, to satisfy claims threatened against Cowen for failing to deliver the Claim.  (*Id.* ¶64.)

Whitebox has taken the position that champerty is inapplicable because it had a preexisting proprietary interest in the Claim, under the Trade Confirm.  *Cf. Trust for the Certificate Holders of Merrill Lynch Mortg. Invs., Inc. v. Love Funding Corp.*, 13 N.Y.3d 190, 198-99, 202 (2009) (assignment of cause of action to securitization trust that held and carried risk of financial loss associated with defaulted mortgage loan not champertous).  That argument fails.  Whitebox did not acquire a proprietary interest in the Claim, or carry risk of financial loss associated with it, under the Trade Confirm.  That Whitebox may have suffered losses from "hedging this claim that we thought we were done on" under a separate transaction (SMF ¶52) is irrelevant.  Nor was Whitebox assigned any right to sue Earl under the Trade Confirm. *Kaplan v. Shure Bros., Inc.*, 266 F.3d 598, 602 (7th Cir. 2001) (assignment of entire beneficial interest in land trust that was party to real estate contract with real property seller insufficient to confer standing to sue seller on assignee; assignor's right to sue for breach had to have been "expressly and validly transferred to assignee by some instrument" to confer standing on assignee).

## CONCLUSION

An order should be entered declining to substitute Whitebox for Earl as the owner and holder of the Claim, pursuant to Rule 3001(e)(2), and directing the Debtors to promptly distribute, or cause to be distributed, to Earl, all cash, securities, and other property payable on account of the Claim under their plan, together with all interest and dividends paid or accrued on account of said distributions since the plan effective date.

Dated: July 31, 2018                                  Respectfully submitted,


                                                       /s/ Joseph D. Frank
                                                       Joseph D. Frank (No. 6216085)
                                                       FRANKGECKER LLP
                                                       325 North LaSalle Street, Suite 625
                                                       Chicago, Illinois 60654
                                                       Tel: (312) 276-1400
                                                       Fax: (312) 276-0035
                                                       jfrank@fgllp.com

                                                       - and -

                                                       Jeffrey Chubak (admitted pro hac vice)
                                                       STORCH AMINI PC
                                                       140 East 45th Street, 25th Floor
                                                       New York, New York 10017
                                                       Tel: (212) 497-8247
                                                       Fax: (212) 490-4208
                                                       jchubak@storchamini.com

                                                       Counsel to Earl of Sandwich (Atlantic City),
                                                       LLC

## CERTIFICATE OF SERVICE

I, Joseph D. Frank, an attorney, hereby certify that on **July 31, 2018**, a true and correct copy of the foregoing **Memorandum of Law in Support of Earl of Sandwich's Summary Judgment Motion** was filed electronically.  Notice of the filing will be sent to all parties who are currently on the Court's Electronic Mail Notice List, a copy of which is attached hereto, by operation of the Court's Electronic Filing System.

                                                                      */s/ Joseph D. Frank*

**Mailing Information for Case 15-01145**

**Electronic Mail Notice List**

The following is the list of **parties** who are currently on the list to receive email notice/service for this case.

- **David S Adduce**   dadduce@komdr.com
- **David A Agay**   dagay@mcdonaldhopkins.com, mbrady@mcdonaldhopkins.com;bkfilings@mcdonaldhopkins.com
- **Charles G Albert**   calbert@awpc-law.com, ecrouch@awpc-law.com
- **Stephanie Albrecht-Pedrick**   spedrick@youngbloodlegal.com
- **Angela M Allen**   aallen@jenner.com
- **R Scott Alsterda**   rsalsterda@nixonpeabody.com
- **Jeffrey E Altshul**   jaltshul@altshullaw.com
- **Rick Amos**   amoslaw@cableone.net
- **Margaret M Anderson**   panderson@foxswibel.com, cjelks@foxswibel.com;bkdocket@foxswibel.com
- **George P Apostolides**   george.apostolides@saul.com, leanne.solomon@saul.com
- **Edmund Aronowitz**   earonowitz@gelaw.com, alebdjiri@gelaw.com;tschuster@gelaw.com;gnovod@gelaw.com
- **Amy A Aronson**   amyaronson@comcast.net, amyaronson@comcast.net
- **Reuel D Ash**   rash@ulmer.com
- **Brian A. Audette**   baudette@perkinscoie.com, nbagatti@perkinscoie.com;docketchi@perkinscoie.com;brian-audette-perkins-coie-8180@ecf.pacerpro.com;russ-allen-6413@ecf.pacerpro.com;rdallen@perkinscoie.com
- **Jason Bach**   jbach@bachlawfirm.com, aloraditch@bachlawfirm.com,sandra.herbstreit@bachlawfirm.com
- **Joseph A Baldi**   jabaldi@baldiberg.com, jmanola@baldiberg.com;r51351@notify.bestcase.com
- **Ronald Barliant**   ronald.barliant@goldbergkohn.com, kristina.bunker@goldbergkohn.com
- **Paige E Barr**   paige.barr@kattenlaw.com

- **William J. Barrett**    william.barrett@bfkn.com,
  mark.mackowiak@bfkn.com;gregory.demo@bfkn.com;ecf-
  6ec602372536@ecf.pacerpro.com;william-barrett-bfkn-3622@ecf.pacerpro.com
- **Leslie Allen Bayles**    leslie.bayles@bryancave.com
- **Richard M Bendix**    rbendix@dykema.com
- **Robert R Benjamin**    rrbenjamin@gct.law,
  mperez@gct.law;myproductionss@gmail.com;tstephenson@gct.law;aleon@gct.law;r61390@not
  ify.bestcase.com
- **Bruce Bennett**    bbennett@jonesday.com, slevinson@jonesday.com;dciarlo@jonesday.com
- **Michael T. Benz**    benz@chapman.com, eickmann@chapman.com
- **Peter L Berk**    plberk@orb-legal.com, hmilman@orb-
  legal.com;milmanhr42820@notify.bestcase.com;hmbonesteel@gmail.com
- **Mark A Berkoff**    mberkoff@ngelaw.com,
  cdennis@ngelaw.com,ecfdocket@ngelaw.com,mmirkovic@ngelaw.com
- **Florence Bonaccorso-Saenz**    florence.saenz@la.gov
- **Ross T Brand**    rbrand@klueverplatt.com, bknotice@klueverplatt.com
- **Adam G. Brief**    Adam.Brief@usdoj.gov
- **Erich S Buck**    ebuck@ag-ltd.com, aweir@ag-ltd.com
- **Christopher M Cahill**    ccahill@lowis-gellen.com, abockman@lowis-gellen.com
- **Edwin H Caldie**    ed.caldie@stinson.com, laura.schumm@stinson.com
- **Matthew Callister**    mqc@call-law.com
- **Andrew D. Campbell**    acampbell@novackmacey.com
- **Christine M Capitolo**    cmc@tbpc.net
- **John P Carlin**    jcarlin@suburbanlegalgroup.com, suburbanlegalgroup@iamthewolf.com
- **Kurt M. Carlson**    kcarlson@carlsondash.com,
  knoonan@carlsondash.com;bmurzanski@carlsondash.com
- **Frederick L Carpenter**    fcarpenter@dfreeland.com
- **Timothy R Casey**    timothy.casey@dbr.com, andrew.groesch@dbr.com
- **Steven B Chaiken**    schaiken@ag-ltd.com, aweir@ag-ltd.com
- **Hugo L Chanez**    hchanez@cochranfirm.com
- **Thomas A Christensen**    tchristensen@huckbouma.com, mheneghan@huckbouma.com
- **Jeffrey Chubak**    jchubak@storchamini.com
- **Scott R Clar**    sclar@craneheyman.com,
  mjoberhausen@craneheyman.com;asimon@craneheyman.com
- **Joseph E Cohen**    jcohen@cohenandkrol.com,
  jcohenattorney@gmail.com;gkrol@cohenandkrol.com;jneiman@cohenandkrol.com;acartwright
  @cohenandkrol.com
- **Christopher Combest**    christopher.combest@quarles.com, Faye.Feinstein@quarles.com
- **William J Connelly**    wconnelly@hinshawlaw.com, ihernandez@hinshawlaw.com
- **Daniel Czamanske**    dan@chapman-lewis-swan.com, debbie@chapman-lewis-swan.com
- **Ryan Dahl**    ryan.dahl@kirkland.com,
  david.eaton@kirkland.com;joe.graham@kirkland.com;josh.altman@kirkland.com;alyssa.bachma
  n@kirkland.com;nicole.stringfellow@kirkland.com
- **Ryan A Danahey**    rad@doherty-progar.com
- **Debra Dandeneau**    Debra.Dandeneau@bakermckenzie.com,
  dana.kaufman@weil.com,lori.seavey@weil.com
- **Alex Darcy**    adarcy@askounisdarcy.com
- **Aaron Davis**    aaron.davis@bclplaw.com,
  CHDocketing@bclplaw.com;kathryn.farris@bclplaw.com
- **Jason J DeJonker**    jason.dejonker@bclplaw.com,
  carol.duracka@bclplaw.com;chdocketing@bclplaw.com

- **Denise A Delaurent**   USTPRegion11.es.ecf@usdoj.gov, Denise.DeLaurent@usdoj.gov;maria.r.kaplan@usdoj.gov
- **Maria A Diakoumakis**   mdiakoumakis@dykema.com, DocketCH@dykema.com,bmederich@dykema.com
- **Edward Dial**   edial@schreiblaw.com
- **Chris L. Dickerson**   chris.dickerson@dlapiper.com, jeremy.hall@dlapiper.com;jonathan.pfleeger@dlapiper.com
- **Ira S Dizengoff**   idizengoff@akingump.com, srochester@akingump.com;jrubin@akingump.com;apreis@akingump.com;tyhong@akingump.com
- **Kevin W Doherty**   kwd@doherty-progar.com
- **Dino J Domina**   djd@ddominalaw.com
- **Robert L Doty**   robert.doty@ohioattorneygeneral.gov
- **David R Doyle**   ddoyle@foxrothschild.com, kjanecki@foxrothschild.com
- **Devon J Eggert**   deggert@freeborn.com, bkdocketing@freeborn.com
- **Robert E Eggmann**   ree@carmodymacdonald.com, pjf@carmodymacdonald.com;reggmann@ecf.inforuptcy.com;ala@carmodymacdonald.com
- **William J Factor**   wfactor@wfactorlaw.com, wfactorlaw@gmail.com;bharlow@wfactorlaw.com;wfactor@ecf.inforuptcy.com;wfactormyecfmail@gmail.com;factorwr43923@notify.bestcase.com
- **Thomas R. Fawkes**   tomf@goldmclaw.com
- **Laura M. Finnegan**   lmfinnegan@baumsigman.com
- **Daniel A Fliman**   courtnotices@kasowitz.com
- **Erik Fox**   efox@cogburnlaw.com
- **Joseph D Frank**   jfrank@fgllp.com, ccarpenter@fgllp.com;jkleinman@fgllp.com;mmatlock@fgllp.com
- **Jamie S Franklin**   jsf@thefranklinlawfirm.com
- **Jonathan P Friedland**   jfriedland@sfgh.com, bkdocket@sfgh.com
- **Adam Friedman**   afriedman@olshanlaw.com
- **Thomas B Fullerton**   thomas.fullerton@akerman.com
- **Matthew Gartner**   matthew.gartner@huschblackwell.com, legalsupportteam-10flnorth-slc@huschblackwell.com
- **Eugene J Geekie**   Eugene.geekie@saul.com, cynthia.enright@saul.com
- **Mary Anne Gerstner**   gerstlaw2@sbcglobal.net
- **Sara T Ghadiri**   ghadiri@chapman.com
- **Steven A Ginther**   ndilecf@dor.mo.gov
- **Gabriel Glazer**   gglazer@pszjlaw.com
- **David L Going**   dgoing@armstrongteasdale.com, crupp@armstrongteasdale.com
- **Craig T Goldblatt**   craig.goldblatt@wilmerhale.com
- **Gordon E. Gouveia**   ggouveia@foxrothschild.com, kjanecki@foxrothschild.com
- **Lorraine M Greenberg**   lgreenberg@greenberglaw.net, r41893@notify.bestcase.com
- **Joshua Greenblatt**   josh.greenblatt@kirkland.com, kenymanagingclerk@kirkland.com
- **Nicole Greenblatt**   nicole.greenblatt@kirkland.com, bfriedman@kirkland.com;patrick.evans@kirkland.com;melissa.koss@kirkland.com;alex.cross@kirkland.com
- **Lisa S Gretchko**   lgretchko@howardandhoward.com
- **Steven B Gross**   sbg224@gmail.com
- **Cameron M Gulden**   USTPRegion11.es.ecf@usdoj.gov
- **Stephen C Hackney**   stephen.hackney@kirkland.com
- **William S Hackney**   whackney@salawus.com, jadams@salawus.com,mcockream@salawus.com,dkreide@salawus.com

- **Oren B Haker**    oren.haker@stoel.com, docketclerk@stoel.com;jennifer.lowes@stoel.com
- **Kristopher Hansen**    mmagzamen@stroock.com;dmohamed@stroock.com;jcanfield@stroock.com;fmerola@stroock.com;jlau@stroock.com;mlaskowski@stroock.com
- **Carrie Hardman**    chardman@winston.com, dcunsolo@winston.com;carrie-hardman-4684@ecf.pacerpro.com
- **B Lane Hasler**    lanehasler@blhpc.com
- **Teri L Havron**    teri@ghalaw.com, tracee@ghalaw.com
- **Mark F Hebbeln**    mhebbeln@foley.com
- **Ashley Hendricks**    ahendricks@cglawms.com
- **Bernard A Henry**    bhenry@rieckcrotty.com
- **Daniel O Herrera**    dherrera@caffertyclobes.com
- **David R Herzog**    drhlaw@mindspring.com, herzogschwartz@gmail.com
- **Timothy W Hoffmann**    thoffmann@jonesday.com, kdenton@jonesday.com
- **John M Holowach**    jholowach@jmhlegalgroup.com, bankruptcy@rjlegalgroup.com
- **Patrick L Huffstickler**    phuffstickler@dykema.com, aseifert@dykema.com
- **Paula K. Jacobi**    pjacobi@btlaw.com, jsantana@btlaw.com
- **Steve Jakubowski**    sjakubowski@rsplaw.com
- **Elizabeth L Janczak**    ejanczak@freeborn.com, bkdocketing@freeborn.com
- **Bridgette E Jenkins**    bjenkins@walinskilaw.com
- **Julie A. Johnston-Ahlen**    jjohnston-ahlen@novackandmacey.com, mbianchi@novackmacey.com
- **Gary M. Kaplan**    gkaplan@fbm.com
- **Harold L. Kaplan**    hkaplan@foley.com
- **Brett A Kaufman**    brett@kaufmanlegal.net
- **Dennis J Kellogg**    dennisk@denniskellogglaw.com
- **Benjamin Kelly**    benkellysr@comcast.net
- **Michael Kelly**    michael.kelly@usdoj.gov, MRavelo@usa.doj.gov
- **Claire G Kenny**    cgkenny@mgklaw.com
- **Brittany E Kirk**    brittany.kirk@dinsmore.com, alison.kidney@dinsmore.com
- **John Klamo**    gillt222@gmail.com
- **Gregg Kleiner**    gkleiner@mckennalong.com, wowen@mckennalong.com
- **Jeremy C Kleinman**    jkleinman@fgllp.com, ccarpenter@fgllp.com;mmatlock@fgllp.com
- **Richard S Lauter**    Richard.Lauter@lewisbrisbois.com, lbbscaesars@gmail.com
- **Ryan O. Lawlor**    Ryan.Lawlor@bryancave.com
- **Patrick S Layng**    USTPRegion11.ES.ECF@usdoj.gov
- **Vincent E. Lazar**    vlazar@jenner.com, docketing@jenner.com;thooker@jenner.com
- **Alan M Lebensfeld**    alan.lebensfeld@lsandspc.com
- **Caren A Lederer**    calederer@gct.law, mperez@gct.law,stasciotti@gct.law,tstephenson@gct.law,aleon@gct.law
- **Steven H Leech**    s.leech@gozdel.com
- **Mark E Leipold**    mleipold@gouldratner.com, gferguson@gouldratner.com;lgray@gouldratner.com;mhannon@gouldratner.com;gould-ecfs_notice@juralaw.com
- **John P. Leon**    jleon@subranni.com, desk@subranni.com
- **Theodore S Leonas**    tl@leonaslawoffices.com
- **Brandon Levitan**    blevitan@proskauer.com, npetrov@proskauer.com;mbienenstock@proskauer.com;jliu@proskauer.com;pabelson@proskauer.com;GRAICHT@proskauer.com;vindelicato@proskauer.com;ebarak@proskauer.com;mzerjal@proskauer.com;ctheodoridis@proskauer.com
- **Michael Joseph Linneman**    linnemanm@jbltd.com

- **Jordan M Litwin**   jordan@litwinlawfirm.com
- **Sara E Lorber**   slorber@wfactorlaw.com,
  slorber@ecf.inforuptcy.com;nbouchard@wfactorlaw.com;bharlow@wfactorlaw.com
- **David M Madden**   dmadden@sfgh.com
- **Haig M. Maghakian**   ,
  paronzon@milbank.com;tkreller@milbank.com;rbaggs@milbank.com;dmuhrez@milbank.com;s
  vora@milbank.com;rwindom@milbank.com
- **John Malevitis**   jhnymal@comcast.net
- **Jeff J Marwil**   jmarwil@proskauer.com,
  mzerjal@proskauer.com;ctheodoridis@proskauer.com;sma@proskauer.com
- **Richard McCord**   rmccord@certilmanbalin.com
- **William F McCormick**   bill.mccormick@ag.tn.gov
- **Daniel J McGuire**   dmcguire@winston.com, ECF_BANK@winston.com;dan-mcguire-
  2746@ecf.pacerpro.com
- **Regina McIlvaine**   regina@lowenthalabrams.com, antoinette@lowenthalabrams.com
- **Joshua M. Mester**   jmester@jonesday.com,
  gmarinelli@jonesday.com;vcrawford@jonesday.com;ekswanholt@jonesday.com;aldufault@jone
  sday.com
- **James H. Millar**   james.millar@dbr.com
- **Nicholas M Miller**   nmiller@ngelaw.com,
  ecfdocket@ngelaw.com;cdennis@ngelaw.com;mmirkovic@ngelaw.com
- **Bryan E. Minier**   bminier@lathropgage.com,
  mvargas@lathropgage.com;krodriguez@lathropgage.com
- **Michael L Molinaro**   michael.molinaro@akerman.com, kelley.evans@akerman.com
- **James E. Morgan**   jem@h2law.com, smckinney@howardandhoward.com
- **Margreta Morgulas**   mmorgulas@okinhollander.com
- **Kevin H Morse**   kevin.morse@saul.com
- **Daniel R Murray**   dmurray@jenner.com
- **Christopher J. Nadeau**   cnadeau@traublieberman.com
- **Roger J Naus**   rjnaus@wwmlaw.com, gbrown@wwmlaw.com
- **David M Neff**   dneff@perkinscoie.com, nbagatti@perkinscoie.com,david-neff-perkins-coie-
  2051@ecf.pacerpro.com
- **David Neier**   dneier@winston.com, dcunsolo@winston.com;chardman@winston.com
- **John R O'Connor**   joconnor@sfgh.com, bkdocket@sfgh.com
- **Michael V Ohlman**   mvohlman@ohlmanlaw.com, admin@ohlmanlaw.com
- **Mark Page**   mpage@kelleydrye.com,
  KDWBankruptcyDepartment@kelleydrye.com;BankruptcyDepartment@Kelleydrye.com
- **Robert L. Pattullo Jr**   pattullo@pattullolaw.com
- **Aaron Paushter**   aaron.paushter@dlapiper.com
- **Jeffrey Pawlitz**   jpawlitz@kirkland.com
- **Lars A Peterson**   lapeterson@foley.com
- **Lanora Pettit**   lpettit@robbinsrussell.com
- **Paul V Possinger**   ppossinger@proskauer.com,
  mthomas@proskauer.com;mlespinasselee@proskauer.com;nwilliams@proskauer.com;erodriguez
  @proskauer.com;npetrov@proskauer.com;ddesatnik@proskauer.com
- **Jody B Pravecek**   jody@pcfcash.com
- **Megan Preusker**   mpreusker@mwe.com
- **Eric S. Prezant**   eric.prezant@bclplaw.com, dortiz@bclplaw.com
- **Scott A Pyle**   spyle@rubinoruman.com, amanuel@rubinoruman.com;ttoso@rubinoruman.com
- **Robert Radasevich**   rradasevich@ngelaw.com, ewilson@nge.com;ecfdocket@ngelaw.com
- **Amy Rapoport**   agibson@agdglaw.com, wserritella@agdglaw.com;jcole@agdglaw.com

- **N. Neville Reid**    nreid@foxswibel.com, bkdocket@foxswibel.com
- **Richard Reinthaler**    rreinthaler@winston.com
- **Benjamin Rhode**    benjamin.rhode@kirkland.com,
  dzott@kirkland.com;jzeiger@kirkland.com;judson.brown@kirkland.com;christopher.greco@kirkland.com;tlambert@caesars.com;gabriel.king@kirkland.com;aaron.david@kirkland.com
- **Schonfeld Richard**    rreyes@cslawoffice.net
- **Trent L Richards**    trichards@blgwins.com, hdaniels@blgwins.com
- **Michael J Ripes**    mripes@rnbk.com
- **Zachary A Risk**    riskz1@michigan.gov
- **Peter J Roberts**    proberts@foxrothschild.com, cknez@foxrothschild.com
- **Daniel P Roeser**    droeser@goodwinlaw.com
- **David Rosner**    drosner@kasowitz.com, courtnotices@kasowitz.com
- **Craig Rothenberg**    crothenberg@rrbslawnj.com
- **Nathan Q. Rugg**    Nathan.Rugg@bfkn.com, jean.montgomery@bfkn.com
- **Christina Sanfelippo**    csanfelippo@foxrothschild.com, orafalovsky@foxrothschild.com
- **Brandy A Sargent**    basargent@stoel.com,
  erheaston@stoel.com;docketclerk@stoel.com;obhaker@stoel.com;cejordan@stoel.com;eleliasen@stoel.com;jason.abrams@stoel.com
- **Ryan T Schultz**    rschultz@foxswibel.com, bkdocket@fslc.com
- **Leslee Schwartz**    lschwartzatty@gmail.com
- **Samuel Schwartz**    ecf@schwartzlawyers.com, schwartzecf@gmail.com
- **John Sciaccotta**    jsci@agdglaw.com, molson@agdglaw.com
- **Susan H Seabury**    susan.seabury@bakertilly.com
- **David R Seligman**    dseligman@kirkland.com
- **David R Seligman**    dseligman@kirkland.com
- **David R Seligman**    dseligman@kirkland.com
- **David R Seligman**    dseligman@kirkland.com
- **David R Seligman**    dseligman@kirkland.com,
  gregory.pesce@kirkland.com;gerardo.mijaresshafai@kirkland.com;anthony.abate@kirkland.com;kyle.arendsen@kirkland.com
- **Jack M Shapiro**    jack@danielgoodmanlaw.com
- **Brian L Shaw**    bshaw@foxrothschild.com, cknez@foxrothschild.com
- **Patrick Sibley**    psibley@pryorcashman.com,
  SLieberman@PRYORCASHMAN.com;msilverman@pryorcashman.com
- **Peter A Siddiqui**    peter.siddiqui@kattenlaw.com
- **Stephen J Siegel**    ssiegel@novackandmacey.com, cziganto@novackandmacey.com
- **Andrew I Silfen**    andrew.silfen@arentfox.com,
  Mark.Joachim@arentfox.com;Jackson.Toof@arentfox.com;Beth.Brownstein@arentfox.com;Manuel.Arreaza@arentfox.com;Lisa.Indelicato@arentfox.com
- **Kevin C Smith**    ksmith@smithsersic.com, dgreen@smithsersic.com
- **Wesley J Smith**    wes@cjmlv.com
- **Jeffrey I Snyder**    jsnyder@bilzin.com, eservice@bilzin.com
- **Jean Soh**    jsoh@polsinelli.com, chicagodocketing@polsinelli.com
- **Michael T Sprengnether**    mts@doherty-progar.com
- **Catherine L Steege**    csteege@jenner.com, docketing@jenner.com
- **Richard A Stieglitz**    rstieglitz@cahill.com
- **Richard M Strassberg**    rstrassberg@goodwinlaw.com
- **Roman Sukley**    USTPRegion11.es.ecf@usdoj.gov,
  roman.l.sukley@usdoj.gov;cameron.g.gulden@usdoj.gov
- **Benjamin Swetland**    bswetland@cherry-law.com
- **John E Tangren**    jtangren@gelaw.com, gnovod@gelaw.com

- **Mark K Thomas**    mthomas@proskauer.com
- **Joseph M Tiller**    jtiller@jonesday.com
- **L. Judson Todhunter**    JTodhunter@howardandhoward.com
- **Jennifer A Trofa**    jtrofa@subranni.com, desk@subranni.com
- **John D. VanDeventer**    jvandeventer@jenner.com
- **Elizabeth B Vandesteeg**    evandesteeg@sfgh.com, bkdocket@sfgh.com
- **Michael D Warner**    mwarner@coleschotz.com, klabrada@coleschotz.com
- **Matthew Warren**    matthew.warren@lw.com, chefiling@lw.com;beth.arnold@lw.com
- **Martin J Wasserman**    mwasserman@carlsondash.com, knoonan@carlsondash.com
- **Louis H Watson**    louis@watsonnorris.com
- **Daniel I Waxman**    lexbankruptcy@wyattfirm.com
- **Jeramy D Webb**    jwebb@proskauer.com
- **Brian P Welch**    bwelch@burkelaw.com, gbalderas@burkelaw.com
- **Paul Michael Weltlich**    pweltlich@lksu.com
- **Latonia Williams**    lwilliams@goodwin.com,
  bankruptcy@goodwin.com;bankruptcyparalegal@goodwin.com
- **Sean P. Williams**    sean.williams@saul.com
- **Jolene M Wise**    wisej@sec.gov
- **Samuel C. Wisotzkey**    swisotzkey@kmksc.com, kmksc@kmksc.com
- **Scott A Wolfson**    swolfson@wolfsonbolton.com, stravis@wolfsonbolton.com
- **Xiaoming Wu**    notice@billbusters.com,
  billbusters@iamthewolf.com;billbusters@ecf.inforuptcy.com;wuxr80263@notify.bestcase.com
- **Amanda S Yarusso**    amanda.yarusso@gmail.com
- **Barbara L Yong**    blyong@gct.law,
  mperez@gct.law,myproductionss@gmail.com,tstephenson@gct.law,aleon@gct.law;r61390@notify.bestcase.com
- **Artur Zadrozny**    artur@bzlaw-firm.com
- **David I Zalman**    dzalman@kelleydrye.com
- **Scott M. Zauber**    szauber@subranni.com, desk@subranni.com
- **Jeffrey Zeiger**    jzeiger@kirkland.com
- **David J Zott**    dzott@kirkland.com,
  joe.graham@kirkland.com;james.sprayregen@kirkland.com;anthony.abate@kirkland.com;jeffrey.zeiger@kirkland.com