# <u>EXHIBIT 5</u>

**Documents Produced by Whitebox**

**To:** Delano, Cindy Chen[CDelano@whiteboxadvisors.com]
**Cc:** Pasacreta, Amy[apasacreta@orrick.com]; Patel, Amit[APatel@whiteboxadvisors.com]; Mori, John[John.Mori@cowen.com];
Bottge, Jillian[Jillian.Bottge@cowen.com]; Fechik, Matthew[mfechik@orrick.com]; Mintz, Douglas S.[dmintz@orrick.com]
**From:** Rosenblum, Gail
**Sent:** Wed 1/18/2017 9:00:34 PM
**Subject:** Re: Caesars Trade - Cowen Special Investments

Hello,

We are waiting to hear from the Seller and will be in touch tomorrow, hopefully in the morning.

Regards,
Gail

On Jan 18, 2017, at 3:55 PM, Delano, Cindy Chen <CDelano@whiteboxadvisors.com> wrote:

Hi,

Any updates on the supporting documents?  In addition, any updates on the new language to account for the confirmation occurrence?  Thanks.

**From:** Rosenblum, Gail [mailto:Gail.Rosenblum@cowen.com]
**Sent:** Thursday, January 12, 2017 12:25 PM
**To:** Pasacreta, Amy
**Cc:** Patel, Amit; Delano, Cindy Chen; Mori, John; Bottge, Jillian; Fechik, Matthew; Mintz, Douglas S.
**Subject:** RE: Caesars Trade - Cowen Special Investments

Hi Amy,

Thank you for the quick turnaround.

We will forward the supporting documents as soon as they are received.

Regards,
Gail

Gail Rosenblum
Vice President
Cowen Special Investments
830 Third Avenue, 4th Floor
New York, NY 10022
(O): 646-616-3082
Gail.Rosenblum@cowen.com

**From:** Pasacreta, Amy [mailto:apasacreta@orrick.com]
**Sent:** Thursday, January 12, 2017 12:57 PM
**To:** Rosenblum, Gail <Gail.Rosenblum@cowen.com>
**Cc:** Patel, Amit <APatel@whiteboxadvisors.com>; Delano, Cindy Chen <CDelano@whiteboxadvisors.com>; Mori, John
<John.Mori@cowen.com>; Bottge, Jillian <Jillian.Bottge@cowen.com>; Fechik, Matthew <mfechik@orrick.com>;
Mintz, Douglas S. <dmintz@orrick.com>
**Subject:** RE: Caesars Trade - Cowen Special Investments

Gail—

As discussed, attached are initial comments to the draft (clean and marked to show changes).  In the interest of time, I am forwarding prior to: (i) diligence review, (ii) final internal review and (iii) review by Whitebox, as

such, the attached remains subject to further review and comment.  The attached also assumes the claim is an allowed general unsecured Class I claim.

Please let me know if you have any questions on the attached.


Thank you!


**Amy G. Pasacreta**

Attorney At Law


Orrick

New York    <image001.jpg>

T +1-212-506-5159
apasacreta@orrick.com

<image002.png>


Distressed Download Blog

---

<image004.png>


**From:** Rosenblum, Gail [mailto:Gail.Rosenblum@cowen.com]
**Sent:** Thursday, January 12, 2017 11:12 AM
**To:** Pasacreta, Amy <apasacreta@orrick.com>
**Cc:** Patel, Amit <APatel@whiteboxadvisors.com>; Delano, Cindy Chen <CDelano@whiteboxadvisors.com>; Mori, John <John.Mori@cowen.com>; Bottge, Jillian <Jillian.Bottge@cowen.com>
**Subject:** Caesars Trade - Cowen Special Investments

Amy,

I am following up to our conversation (with John Mori) earlier this morning. Below you will find the trade details for the sale of the Earl of Sandwich (Atlantic City) LLC claim to Whitebox.

Attached is a draft the upstream, and as will be stated to the Seller, the trade is subject to the completion of due diligence and confirmation the claim is allowed in the amount of $3,600,000.00. Two claims have been filed, and we believe one will be expunged, but both have been included in the agreement. In addition, space has been left in the draft to include the Order.

Please let us know if you have comments to the draft.


Cowen Special Investments LLC (Cowen) confirms the following transaction with Whitebox Advisors.

**Debtor(s):**                    Caesars Entertainment Operating Company, Inc.
                         US Bankruptcy Court, Northern District of Illinois
                    CASE No. 15-01145

**Claim:**                    Valid, undisputed, liquidated, non-contingent, allowed, general unsecured claim in the amount of $3,600,000.00

CONFIDENTIAL                                                                      WBA-0000011

**Original Creditor:**              Earl of Sandwich (Atlantic City) LLC

**Purchase Rate:**                 62.00%

**Purchase Price:**                $2,232,000.00 - Product of the Purchase Rate and the total amount of the Claim

**Form of Purchase:**              Assignment of Claim Agreement to be prepared by Cowen.

**Conditions:**    Trade subject to satisfactory completion of due diligence. Cowen executing an Assignment of Claim Agreement with original holder of Claim.  Execution of a mutually acceptable Assignment of Claim customary for the sale and purchase of distressed trade claims.


Thank you,
Gail

Gail Rosenblum
Vice President
Cowen Special Investments
830 Third Avenue, 4th Floor
New York, NY 10022
(O): 646-616-3082
Gail.Rosenblum@cowen.com


This message and any attachments are confidential. If you are not the intended recipient, please notify the sender immediately and destroy this email. Any unauthorized use or dissemination is prohibited. All email sent to or from our system is subject to review and retention. Nothing contained in this email shall be considered an offer or solicitation with respect to the purchase or sale of any security in any jurisdiction where such an offer or solicitation would be illegal. Neither Cowen Group, Inc. nor any of its affiliates ("Cowen") represent that any of the information contained herein is accurate, complete or up to date, nor shall Cowen have any responsibility to update any opinions or other information contained herein.

---

NOTICE TO RECIPIENT | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

For more information about Orrick, please visit http://www.orrick.com.

This message and any attachments are confidential. If you are not the intended recipient, please notify the sender immediately and destroy this email. Any unauthorized use or dissemination is prohibited. All email sent to or from our system is subject to review and retention. Nothing contained in this email shall be considered an offer or solicitation with respect to the purchase or sale of any security in any jurisdiction where such an offer or solicitation would be illegal. Neither Cowen Group, Inc. nor any of its affiliates ("Cowen") represent that any of the information contained herein is accurate, complete or up to date, nor shall Cowen have any responsibility to update any opinions or other information contained herein.

---

Confidentiality Notice and Disclaimer: This email and the information contained herein is confidential and is intended solely for the recipient. This email may contain information that is privileged or otherwise protected from disclosure. Delivery of this email or any of the information contained herein to anyone other than the recipient or his or her designated representative is unauthorized and any other use, reproduction, distribution or copying of this email or the information contained herein, in whole or in part, without the prior written consent of Whitebox Advisors LLC or its affiliates is prohibited. This email is not to be construed as investment advice. If you have received this message in error, please notify the sender immediately and delete this message and any related attachments.

This email and the information contained herein shall not constitute an offer to sell or the solicitation of an offer to purchase an interest in a fund. Any such offer or solicitation will be made to qualified investors only by means of an offering memorandum and related subscription agreement. Any performance information contained herein may be unaudited and estimated. Past performance is not necessarily indicative of future results. There can be no assurance that any fund's investment objective will be achieved or that an investor will not lose a portion or all of its investment.

This message and any attachments are confidential. If you are not the intended recipient, please notify the sender immediately and destroy this email. Any unauthorized use or dissemination is prohibited. All email sent to or from our system is subject to review and retention. Nothing contained in this email shall be considered an offer or solicitation with respect to the purchase or sale of any security in any jurisdiction where such an offer or solicitation would be illegal. Neither Cowen Group, Inc. nor any of its affiliates ("Cowen") represent that any of the information contained herein is accurate, complete or up to date, nor shall Cowen have any responsibility to update any opinions or other information contained herein.

**To:**      danny.phillips@cowen.com[danny.phillips@cowen.com]
**Cc:**      Amit Patel (apatel@whiteboxadvisors.com)[apatel@whiteboxadvisors.com]; Delano, Cindy
Chen[CDelano@whiteboxadvisors.com]
**From:**    Mintz, Douglas S.
**Sent:**    Tue 4/18/2017 10:47:35 PM
**Subject:** Caesars -- Earl of Sandwich Claim
Caesars -- Letter to Cowen.pdf

Please see the attached letter.

Doug Mintz

**Douglas S. Mintz**

Partner


Orrick
Washington, DC  ⓥ

T +1-202-339-8518
dmintz@orrick.com



Distressed Download Blog



April 18, 2017

**Orrick, Herrington & Sutcliffe LLP**
Columbia Center
1152 15th Street, N.W.
Washington, DC 20005-1706

+1 202 339 8400

orrick.com

**Douglas S. Mintz**

E dmintz@orrick.com
D +1 202 339 8518
F +1 202 339 8500

Dear Danny,

I'm writing regarding Whitebox's purchase of claims in the Caesars Entertainment Operating Company, Inc. Chapter 11 case (Case No. 15-01145). It is our understanding that Whitebox agreed to purchase from Cowen Special Investments on January 12, 2017, two claims (Claim Nos. 5858 and 5497) worth $3,600,000 in total for a purchase price of $2,232,000.

The parties confirmed this transaction in an email dated January 12, 2017 at 10:12 AM (attached as Exhibit A). In that email Gail Rosenblum of Cowen stated that "as will be stated to Seller, the trade is subject to the completion of due diligence and confirmation the claim is allowed in the amount of $3,600,000.00." Despite this confirmation of the trade, Cowen Special Investments has not yet produced the claim or completed the trade. It is our understanding that this is because the seller (Earl of Sandwich) has failed to complete its end of the trade. In an email dated February 28, 2017 (attached as Exhibit B), you advised that despite reaching "an agreement on the terms of the trade subject to due diligence and documentation" the principal at the Seller "ceased communications regarding the trade."

This is problematic. In addition to not receiving the value for which it bargained in the agreed trade, Whitebox considered the completion of this trade in developing a strategy around the Caesars bankruptcy case that included purchasing other, larger claims from you. Thus there is potential for significant damages.

Subsequently Whitebox has asked Cowen to work in its role as broker to ensure completion of the trade – to no avail. In your email of February 28, 2017, you stated the Cowen does "not believe that any further action would be productive or is practical in this instance." We disagree.

While we understand that you are as disappointed as Whitebox in the Seller's failure to execute this trade, we believe further action is necessary to compel this trade. We request that you file a notice of the transfer with the Bankruptcy Court. As Whitebox previously detailed in an email dated March 24, 2017, under bankruptcy Rule 3001(e)(2), if a claim has been transferred after the proof of claim has been filed, the transferee shall file evidence of the transfer with the Bankruptcy Court. This gives the transferor 21 days to object to the transfer or the transferee shall be substituted for the transferor. Or if the transferor objects, the Court will hold a hearing to determine if the transfer should be made.

WBA-0000060



April 18, 2017
Page 2

Additionally, we believe you should review proper remedies under applicable state law including contractual and tort claims. Or in the alternative, we request that you permit us to proceed on your behalf.

We ask you to take these steps as it is important to consummate a trade and would be bad market precedent to permit otherwise under our facts. We ask that you advise us of your planned steps to rectify this situation by April 21, 2017. If you are unable or unwilling to pursue these paths, we will consider what if any options Whitebox itself has to effectuate the trade against Cowen or the Seller directly. Among other things, we would consider reaching out to the Seller directly.

We hope we can bring this matter to a consensual resolution with the Seller as we and Whitebox both appreciate and value our relationship with Cowen. Please let us know of any questions.

Very truly yours,

Douglas S. Mintz

Cc: Amit Patel
    Cindy Chen Delano

CONFIDENTIAL

# Exhibit A

CONFIDENTIAL

WBA-0000062

**From:** Rosenblum, Gail [mailto:Gail.Rosenblum@cowen.com]
**Sent:** Thursday, January 12, 2017 10:12 AM
**To:** Pasacreta, Amy
**Cc:** Patel, Amit; Delano, Cindy Chen; Mori, John; Bottge, Jillian
**Subject:** Caesars Trade - Cowen Special Investments

Amy,

I am following up to our conversation (with John Mori) earlier this morning. Below you will find the trade details for the sale of the Earl of Sandwich (Atlantic City) LLC claim to Whitebox.

Attached is a draft the upstream, and as will be stated to the Seller, the trade is subject to the completion of due diligence and confirmation the claim is allowed in the amount of $3,600,000.00. Two claims have been filed, and we believe one will be expunged, but both have been included in the agreement. In addition, space has been left in the draft to include the Order.

Please let us know if you have comments to the draft.

Cowen Special Investments LLC (Cowen) confirms the following transaction with Whitebox Advisors.

| | |
|---|---|
| **Debtor(s):** | Caesars Entertainment Operating Company, Inc. |
| | US Bankruptcy Court, Northern District of Illinois |
| | CASE No. 15-01145 |

**Claim:**                    Valid, undisputed, liquidated, non-contingent, allowed, general unsecured claim in the amount of $3,600,000.00

| | |
|---|---|
| **Original Creditor:** | Earl of Sandwich (Atlantic City) LLC |
| **Purchase Rate:** | 62.00% |
| **Purchase Price:** | $2,232,000.00 - Product of the Purchase Rate and the total amount of |

the Claim

| | |
|---|---|
| **Form of Purchase:** | Assignment of Claim Agreement to be prepared by Cowen. |

**Conditions:**    Trade subject to satisfactory completion of due diligence. Cowen executing an Assignment of Claim Agreement with original holder of Claim.  Execution of a mutually acceptable Assignment of Claim customary for the sale and purchase of distressed trade claims.

Thank you,
Gail

Gail Rosenblum

CONFIDENTIAL                                                    WBA-0000063

Vice President
Cowen Special Investments
830 Third Avenue, 4th Floor
New York, NY 10022
(O): 646-616-3082
Gail.Rosenblum@cowen.com

This message and any attachments are confidential. If you are not the intended recipient, please notify the sender immediately and destroy this email. Any unauthorized use or dissemination is prohibited. All email sent to or from our system is subject to review and retention. Nothing contained in this email shall be considered an offer or solicitation with respect to the purchase or sale of any security in any jurisdiction where such an offer or solicitation would be illegal. Neither Cowen Group, Inc. nor any of its affiliates ("Cowen") represent that any of the information contained herein is accurate, complete or up to date, nor shall Cowen have any responsibility to update any opinions or other information contained herein.

Confidentiality Notice and Disclaimer: This email and the information contained herein is confidential and is intended solely for the recipient. This email may contain information that is privileged or otherwise protected from disclosure. Delivery of this email or any of the information contained herein to anyone other than the recipient or his or her designated representative is unauthorized and any other use, reproduction, distribution or copying of this email or the information contained herein, in whole or in part, without the prior written consent of Whitebox Advisors LLC or its affiliates is prohibited. This email is not to be construed as investment advice. If you have received this message in error, please notify the sender immediately and delete this message and any related attachments.

This email and the information contained herein shall not constitute an offer to sell or the solicitation of an offer to purchase an interest in a fund. Any such offer or solicitation will be made to qualified investors only by means of an offering memorandum and related subscription agreement. Any performance information contained herein may be unaudited and estimated. Past performance is not necessarily indicative of future results. There can be no assurance that any fund's investment objective will be achieved or that an investor will not lose a portion or all of its investment.

# Exhibit B

CONFIDENTIAL

**From:** Phillips, Danny [mailto:Danny.Phillips@cowen.com]
**Sent:** Tuesday, February 28, 2017 12:17 PM
**To:** Delano, Cindy Chen
**Cc:** Bottge, Jillian
**Subject:** Earl of Sandwich Trade

Dear Cindy,

Further to our conversation yesterday, please find herein a summary of the status of the Earl of Sandwich transaction and steps that Cowen has taken in regards thereto.

In January, our trade claims trading desk had conversations and communications with a principal at Earl of Sandwich, which resulted in an agreement on the terms of the trade subject to due diligence and · documentation. We provided draft documentation to the principal. Subsequently, the principal ceased communications regarding the trade. After numerous attempts to follow up with the principal, the sales and trading desk reached out to Cowen's legal department to explore its options. I raised the issue as well with the Head of Credit Sales and Trading, who supervises the Trade Claims business.

Cowen takes the failure of a party to stand up to a trade as a very serious matter and has therefore taken all reasonable actions to attempt to hold the seller to a good faith negotiation to complete the trade. Among other things, Cowen's legal department drafted a more formal and forceful letter to our contact at the Earl of Sandwich, which was signed by the Head of Credit Sales and Trading and delivered to the principal. The letter reminded the principal of the previous conversations and correspondence as well as his company's obligation to negotiate documentation in good faith and move forward with the trade. We have not yet heard back from the principal and believe at this point that a response is unlikely. The party is not a regular participant in the trade claims business and appears to have walked away from the trade.

Upon review of the matter, we do not believe that any further action would be productive or is practical in this instance.

Kind regards,
Danny Phillips

**Danny E. Phillips** | Director, Legal
Cowen Credit Research and Trading
262 Harbor Dr., 2nd Floor
Stamford, CT 06902
Tel: (646) 616-3094
Cell: (202) 549-0984

danny.phillips@cowen.com



WBA-0000066

This message and any attachments are confidential. If you are not the intended recipient, please notify the sender immediately and destroy this email. Any unauthorized use or dissemination is prohibited. All email sent to or from our system is subject to review and retention. Nothing contained in this email shall be considered an offer or solicitation with respect to the purchase or sale of any security in any jurisdiction where such an offer or solicitation would be illegal. Neither Cowen Group, Inc. nor any of its affiliates ("Cowen") represent that any of the information contained herein is accurate, complete or up to date, nor shall Cowen have any responsibility to update any opinions or other information contained herein.

Confidentiality Notice and Disclaimer: This email and the information contained herein is confidential and is intended solely for the recipient. This email may contain information that is privileged or otherwise protected from disclosure. Delivery of this email or any of the information contained herein to anyone other than the recipient or his or her designated representative is unauthorized and any other use, reproduction, distribution or copying of this email or the information contained herein, in whole or in part, without the prior written consent of Whitebox Advisors LLC or its affiliates is prohibited. This email is not to be construed as investment advice. If you have received this message in error, please notify the sender immediately and delete this message and any related attachments.

This email and the information contained herein shall not constitute an offer to sell or the solicitation of an offer to purchase an interest in a fund. Any such offer or solicitation will be made to qualified investors only by means of an offering memorandum and related subscription agreement. Any performance information contained herein may be unaudited and estimated. Past performance is not necessarily indicative of future results. There can be no assurance that any fund's investment objective will be achieved or that an investor will not lose a portion or all of its investment.

This message and any attachments are confidential. If you are not the intended recipient, please notify the sender immediately and destroy this email. Any unauthorized use or dissemination is prohibited. All email sent to or from our system is subject to review and retention. Nothing contained in this email shall be considered an offer or solicitation with respect to the purchase or sale of any security in any jurisdiction where such an offer or solicitation would be illegal. Neither Cowen Group, Inc. nor any of its affiliates ("Cowen") represent that any of the information contained herein is accurate, complete or up to date, nor shall Cowen have any responsibility to update any opinions or other information contained herein.

WBA-0000067

Caesars -- Letter to Cowen.pdf

clean-nothing

CONFIDENTIAL

DocuSign Envelope ID: 26353A3B-2545-4C10-8CC9-FE5DB62FE284

**FRE 408 CONFIDENTIAL COMMUNICATION**

**ASSIGNMENT AND RELEASE AGREEMENT**

SELLER:       Cowen Special Investments LLC
Address:      830 Third Avenue, 4th Floor,
              New York, NY 10022
Attention:    Bradly D. Schwab
Phone:        646-616-3081
Email:        Bradly.schwab@cowen.com

BUYER:        Whitebox Advisors, LLC on behalf of certain funds in the amounts listed on
              Schedule II
Address:      3033 Excelsior Blvd, Ste 300 Minneapolis, MN 55416
Attention:    Scott Specken
Email:        sspecken@whiteboxadvisors.com
Phone:        612-253-6061


AGREEMENT DATE:    June 19, 2017

DEBTOR:            Caesars Entertainment Operating Company, Inc., et. al.

PROCEEDINGS:       Case No. 15-01145 jointly administered (the "Chapter 11 Cases") and
                   currently pending in the United States Bankruptcy Court for the
                   Northern District of Illinois Eastern Division (the "Bankruptcy
                   Court").

PETITION DATE:     January 14, 2015

CLAIM:             general unsecured claim asserted by Earl of Sandwich (Atlantic City)
                   LLC (the "Claimholder") against the Debtor in a principal amount of
                   not less than $3,600,000.00


WHEREAS, on April 18, 2015, the Claimholder filed with the Bankruptcy Court a proof of claim with respect to a lease termination, which was assigned claim number 5497 (the "Original Proof of Claim").

WHEREAS, on September 1, 2016, Claimholder filed an amended proof of claim which was assigned claim number 5858 and amended and superseded the Original Proof of Claim which was expunged pursuant to the Order Sustaining Debtors' Twentieth Omnibus Objection to Certain Proofs of Claim (Amended and Replaced Claims) (Non-Substantive) (the "Proof of Claim").

WHEREAS, on October 20, 2016, the Debtors filed their Third Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code (as amended or modified, the "Plan"), which was confirmed by the Bankruptcy Court pursuant to that certain order dated January 17, 2017.

WHEREAS, on or about January 12, 2017, Seller sought to purchase the following from Claimholder (the "Seller Transaction"): (i) the Claim, together with any and all right to receive principal, interest, fees, damages, penalties and other amounts in respect of the Claim (in each case whether accruing prior to, on, or after the date of this Agreement), (ii) the Proof of Claim and any other proofs of claim filed (regardless of filing date) with respect to the Claim; (iii) any actions, claims, rights, lawsuits and/or causes of action against the Debtor arising out of or in connection with any of the foregoing; and (iv) all proceeds of any kind of the foregoing, including, without limitation, all cash, securities or other property distributed or payable on account thereof, or exchanged in return therefor for ((i)-(iv) collectively, the "Rights").

WHEREAS, Seller corresponded with Claimholder regarding the Rights and the Proceedings.

WHEREAS, the Claimholder has not executed any assignment agreement or other documentation or filed a notice of transfer with respect to the Proof of Claim.

WHEREAS, on May 17, 2017, Seller allowed Buyer's counsel to view copies of the Due Diligence (defined below); and

WHEREAS, upon the terms and subject to the conditions set forth in this Agreement, Seller desires to sell, transfer, assign, grant and convey to Buyer, and Buyer desires to purchase, acquire and receive, the Transferred Rights (as defined hereinafter).

NOW THEREFORE, Buyer and Seller (each a "Party" and collectively, the "Parties") agree as follows:

1.      Seller, for good and valuable consideration, does hereby irrevocably sell, convey, transfer and assign unto Buyer (a) any and all rights Seller may have to purchase the Rights directly from Claimholder and (b) any and all actions, claims, rights, remedies, lawsuits and/or causes of action Seller has against the Claimholder arising out of or in connection with the Seller Transaction (the "Transferred Rights"). This assignment shall be deemed an absolute and unconditional assignment of the Transferred Rights for the purpose of collection and satisfaction and shall not be deemed to create a security interest and shall be evidenced for purposes of any Bankruptcy Court filings by the attached notice of assignment attached hereto as Exhibit A (the "Notice").

2.      Seller's obligation to sell, transfer, assign, grant and convey the Transferred Rights to Buyer is subject to all of the following: (a) Buyer's representations and warranties being true and correct, (b) Buyer having complied with all covenants required by this Agreement to be complied with by it, (c) Buyer having received (i) copies of the Due Diligence and (ii) fully executed Notice, (d) Seller having received this Agreement fully executed by Buyer and (e) Seller having received the one dollar (the "Purchase Price") by wire transfer of immediately available funds in accordance with written wire instructions specified by Seller.

OHSUSA:766869828.5

CONFIDENTIAL                                                                 WBA-0000146

3.      Seller represents, warrants and covenants to Buyer and Buyer's successors and assigns as of the date hereof (the "Effective Date") that:

(a) Seller is duly organized and validly existing under the laws of its jurisdiction of organization, is in good standing under such laws, and is authorized and empowered to execute, deliver and perform this Agreement, and this Agreement constitutes the valid, legal and binding agreement of Seller, enforceable against Seller in accordance with its terms;

(b) Except for filings that are expressly contemplated by this Agreement, no consent, approval, filing or corporate, partnership or other action is required as a condition to or in connection with execution, delivery and performance of this Agreement and the transactions contemplated herein;

(c) To the best of Seller's knowledge, the Claimholder has timely and properly filed the Proof of Claim and Buyer shall assume no obligations or liabilities in respect of the Rights, including but not limited to the obligation to file any proof of claim with respect to the Claim;

(d) To the best of Seller's knowledge, neither the execution, delivery or performance of this Agreement, nor consummation of the transactions contemplated hereby, will violate or contravene any law, rule, regulation, order or agreement affecting Seller;

(e) Seller is the sole legal and beneficial owner of, and has good title to, the Transferred Rights, free and clear of (i) any legal, regulatory or contractual restriction on transfer or (ii) any pledge, lien, claim, security interest, participation, factoring agreement or other encumbrance of any type or kind (collectively, the "Liens") and will transfer to Buyer such good title free and clear of Liens;

(f) To the best of Seller's knowledge, the Claim is a valid, liquidated, non-contingent, enforceable, "Class I" general unsecured claim against the Debtor;

(g) Seller has not previously sold, transferred, assigned, participated or otherwise conveyed the Transferred Rights, nor has Seller agreed to do any of the foregoing (whether in whole or in part);

(h) No payment or distribution has been received by or on behalf of Seller, in full or partial satisfaction of the Rights;

(i) To the best of Seller's knowledge, Seller has not engaged, and shall not engage, in any act, conduct or omission, or had any relationship with the Debtor or any of its affiliates that would result in Buyer receiving in respect of the Rights proportionately less in payments or distributions, or less favorable treatment (including the timing of payments or distributions) for the Rights than will be received on behalf of other general unsecured claims and administrative expense claims, as applicable;

(j) Seller is not an "insider" of the Debtor or its affiliates within the meaning of Section 101(31) of the Bankruptcy Code, and is not a member of any official or unofficial committee in the Proceedings;

OHSUSA:766869828.5

CONFIDENTIAL

(k) Seller has not received any written notice (except as otherwise publicly available in the Proceedings (if any)), that the Rights or any portion thereof is void, voidable, or unenforceable;

(l) Upon execution of this Agreement, Seller shall provide to Buyer true and complete copies of all written communications between Seller and Claimholder related to the Chapter 11 Cases, the Claim, the Proof of Claim, and any rights of Seller or Claimholder with respect to the Chapter 11 Cases, the Claim or the Proof of Claim (collectively, the "Due Diligence") (a watermarked copy of which is attached hereto as Exhibit B);

(m) Seller is not aware of any written communication which conflicts with Seller's assertion that it has the right to purchase the Claim;

(n) In addition to the Due Diligence, there were telephone and voicemail communications (the "Oral Communications") between Seller and the Claimholder.  Seller is not aware of any Oral Communications that conflicts with Seller's assertion that it has the right to purchase the Claim.

(o) Seller is not "insolvent" within the meaning of Section 1-201(23) of the Uniform Commercial Code or Section 101(32) of the Bankruptcy Code, has adequate capital to conduct its business and has not filed a petition seeking protection under the Bankruptcy Code or similar statute; and

(p) either (i) no interest in the Transferred Rights is being sold by or on behalf of one or more Benefit Plans (as defined below) or (ii) the transaction exemption set forth in one or more prohibited transaction class exemption issued by the U.S. Department of Labor ("PTE"), such as PTE 84-14 (a class exemption for certain transactions determined by independent qualified professional asset managers), PTE 95-60 (a class exemption for certain transactions involving insurance company general accounts), PTE 90-1 (a class exemption for certain transactions involving insurance company pooled separate accounts), PTE 91-38 (a class exemption for certain transactions involving bank collective investment funds), and PTE 96-23 (a class exemption for certain transactions determined by in-house asset managers) is applicable with respect to the sale of the Transferred Rights.  "Benefit Plan" means an "employee benefit plan" (as defined in ERISA) that is subject to Title I of the Employee Retirement Income Security Act of 1974, as amended, and the rules and regulations promulgated under it ("ERISA"), a "plan" as defined in Section 4975 of the Code or any Entity whose assets include (for purposes of ERISA Section 3(42) or otherwise for purposes of Title I of ERISA or Section 4975 of the Code) the assets of any such "employee benefit plan" or "plan".

4.    Buyer represents and warrants to Seller as of the Effective Date that:

(a) Buyer is duly organized and validly existing under the laws of its jurisdiction of organization, is in good standing under such laws, and is authorized and empowered to execute, deliver and perform this Agreement, and this Agreement constitutes the valid, legal and binding agreement of Buyer, enforceable against Buyer in accordance with its terms;

(b) except for filings that are expressly contemplated by this Agreement, no consent, approval, filing or corporate, partnership or other action is required as a condition to or in connection with execution, delivery and performance of this Agreement and the transactions contemplated herein;

OHSUSA:766869828.5

CONFIDENTIAL

WBA-0000148

(c) neither the execution, delivery or performance of this Agreement, nor consummation of the transactions contemplated hereby, will violate or contravene any law, rule, regulation, order or agreement affecting Buyer;

(d) Buyer has (i) reviewed the terms and provisions of this Agreement, and has evaluated the restrictions and obligations contained herein and therein; (ii) agreed to the Release based on its own independent investigation and credit determination; and (iii) not relied on any representation or warranty made by Seller, except as expressly set forth herein; and

(e) either (i) no interest in the Transferred Rights is being acquired by or on behalf of an entity that is, or at any time while the Transferred Rights are held thereby will be, one or more Benefit Plans or (ii) the transaction exemption set forth in one or more PTEs, such as PTE 84-14 (a class exemption for certain transactions determined by independent qualified professional asset managers), PTE 95-60 (a class exemption for certain transactions involving insurance company general accounts), PTE 90-1 (a class exemption for certain transactions involving insurance company pooled separate accounts), PTE 91-38 (a class exemption for certain transactions involving bank collective investment funds), and PTE 96-23 (a class exemption for certain transactions determined by in-house asset managers) is applicable with respect to the purchase and holding of the Transferred Rights and the exercise of Buyer's rights thereunder.

5.    Each Party represents and warrants that it is a sophisticated entity and has adequate information concerning the financial condition of Debtor and the Proceedings to make an informed decision regarding the purchase/sale of the Transferred Rights and that it has independently and without reliance on the other Party, and based on such information as it has deemed appropriate, made its own decision to enter into this Agreement, except that it has relied on the other Party's express representations, warranties, covenants, agreements and indemnities as contained herein. Each Party is aware that information which may be pertinent to the decision to transfer the Transferred Rights is available to it and can be obtained from the files of the Proceedings or other publicly available sources. Each Party is aware that the consideration received/paid herein for the purchase/sale of the Transferred Rights may differ both in kind and amount from any distributions made pursuant to any plan of reorganization confirmed in the Proceedings. Each Party acknowledges that the other may possess, and may come into possession of, material non-public information concerning the Transferred Rights, Debtor and/or the Proceedings ("Excluded Information"). Each Party further acknowledges that it has not requested to receive such Excluded Information from the other Party and has nevertheless determined to proceed with the transaction contemplated herein, and neither shall have any liability to the other Party, and each waives and releases any claims that it might have against the other, arising out of the non-disclosure of such Excluded Information; provided, however, that the Excluded Information shall not limit, contradict or render untrue any representation or warranty made by Seller or Buyer herein.

6.    Each Party acknowledges and agrees that the Purchase Price and the Release set forth in section 10 below are intended to represent "fair consideration" (as such term is used in Article 10 of the New York Debtor and Creditor Law, N.Y. Debt. & Cred. §§ 270 et seq.) and "reasonably equivalent value" (as such term is used in 11 U.S.C. § 548), or as analogously provided under similar statute or applicable law, for the transfer of such assets.

OHSUSA:766869828.5

7.      Seller agrees that in the event Seller actually receives any distributions with respect to the Rights after the date hereof, Seller shall accept the same and shall hold the same in trust for the sole benefit of Buyer and shall promptly deliver the same to Buyer in the same form received (free of any withholding, set-off, claims or deduction of any kind except as required by law) within five Business Days in the case of cash ("Cash Distribution"). If any such amounts are not received by the Buyer within five Business Days, then beginning on the next calendar day, the amount payable shall begin to accrue interest at a rate of LIBOR + 5% per annum, and within seven business days in the case of non-Cash Distributions, with the endorsement of Seller (without recourse, representation or warranty) when necessary or appropriate. In the event Seller receives any notices (not otherwise publicly available) in respect of the Rights, Seller shall promptly deliver the same to Buyer.

(a) As used herein:

"Business Day" means any day that is not a Saturday, a Sunday or any other day on which the Federal Reserve Bank of New York is closed.

"LIBOR" means, for any day, the one-month London Interbank Offered Rate for deposits in U.S. Dollars as set by the British Bankers Association ("BBA") and published by the BBA at approximately 11:00 a.m. London time on such day.  For any day that is not a business day, LIBOR shall be the rate published by the BBA on the immediately preceding business day.

8.      (a) Upon execution of this Agreement, Buyer shall have any and all rights the Seller may have to enforce the terms of the Seller Transaction as against the Claimholder including without limitation filing pleadings, motions or notices of transfer with respect to the transfer of the Rights;

(b) Seller agrees to cooperate with the Buyer to effectuate the intent and purpose of, and to carry out the terms of, this Agreement.

9.      If for any reason, Seller (and not Buyer) is entitled to exercise any rights with respect to the Rights, then Seller agrees that with respect to any request, act, decision or vote to be made by Seller in respect of the Rights (each, an "Action"), Seller shall act in accordance with the written directions (if timely given) of Buyer. Seller may refuse to follow the instructions of Buyer only if such instructions violate any applicable law, regulation or direction of a regulatory or governmental authority.

10.     Buyer hereby releases and forever discharges (the "Release") Seller and/or its respective direct and indirect affiliates, subsidiaries, partners of subsidiaries, its successors and assigns, (and each of such entities' or persons' officers, directors, employees, representatives, attorneys, and agents, collectively, the "Releasees") of and from any and all claims, liabilities, demands, losses, costs, damages, expenses, attorneys' fees and causes of action whatsoever, whether individual, class or derivative in nature, whether at law or in equity, whether based on federal, state or foreign law or right of action, foreseen or unforeseen, matured or unmatured, known or unknown, accrued or not accrued, which Buyer has or had against any Releasee, arising out of or relating to the Seller Transaction or the Claim occurring prior to the Effective Date (collectively,

OHSUSA:766869828.5

the "Released Claims"), and covenants not to institute, maintain, finance or prosecute any action, claim, suit, proceeding or cause of action of any kind to enforce any of the Released Claims. Buyer expressly covenants and agrees that the Release and Waiver shall each be binding in all respects upon its respective successors, assigns and transferees and shall inure to the benefit of the successors and assigns of the Releasees.

11.     The Parties hereby represent and warrant to each other that: the delivery and performance of the Release and the Waiver have been duly authorized by all requisite corporate action and will not violate (a) any provision of applicable law, statute, rule or regulation or its organizational documents, (b) any order of any governmental authority or (c) any provision of any agreement to which the Party is a party or by which they are bound. The foregoing is subject to all of the following: (a) Seller's representations and warranties being true and correct on the Release Effective Date, (b) Seller having complied with all covenants required by this Agreement to be complied with by it on or before the Release Effective Date, and (c) Buyer having received this Agreement fully executed by Seller.

12.     Seller agrees to provide Buyer with the Due Diligence on the Effective Date.  Other than the Due Diligence, Seller is not aware of any written communications between Seller and the Claimholder or their respective representatives, affiliates, counsel, advisors and employees related to the Chapter 11 Cases, the Claim, the Proof of Claim, and any rights of Seller or Claimholder with respect to the Chapter 11 Cases, the Claim or the Proof of Claim.

13.     Seller agrees to indemnify, defend, reimburse and hold Buyer and its affiliates and its and their officers, directors, partners, employees, agents and controlling persons harmless from and against any and all losses, claims, damages, judgments, costs, penalties, expenses and liabilities, including, without limitation, attorneys' fees and expenses, which are incurred by or threatened against, on account of or in any way resulting from or relating to Seller's breach of any of Seller's representations, warranties, covenants or agreements set forth herein. Buyer agrees to indemnify, defend, reimburse and hold Seller and its affiliates and its and their officers, directors, partners, employees, agents and controlling persons harmless from and against any and all losses, claims, damages, judgments, costs, penalties, expenses and liabilities, including, without limitation, attorneys' fees and expenses, which are incurred by or threatened against, on account of or in any way resulting from or relating to Buyer's breach of any of Buyer's representations, warranties, covenants or agreements set forth herein.

**14.     This Agreement and all matters arising out of or relating to it shall be governed by and construed in accordance with the laws of the State of New York without reference to any conflicts of law provisions that would require or permit the application of the laws of any other jurisdiction.  Each Party consents to service of process by certified mail at its address listed on Schedule I.  Each Party irrevocably and unconditionally (a) WAIVES ITS RIGHT TO TRIAL BY JURY and (b) consents to the exclusive jurisdiction of the federal and state courts located in the State of New York, Borough of Manhattan, in any action to enforce, interpret or construe any provision of this Agreement.**

15.     Seller agrees to execute and deliver (or cause to be executed and delivered) all such instruments and documents, and take all such action as Buyer may reasonably request, including cooperation with any litigation regarding the Seller Transaction and/or the Claim, at Buyer's cost

OHSUSA:766869828.5

and expense, in order to effectuate the intent and purpose of, and to carry out the terms of, this Agreement.

16.    Each Party agrees to maintain the confidentiality of this Agreement except to the extent (a) required or advisable to enforce or preserve such Party's rights hereunder or (b) required or requested pursuant to applicable law, regulation, or by the order of any court or governmental authority of competent jurisdiction; provided that either Party may disclose this Agreement and the transactions contemplated hereby to their legal counsel and other professionals and representatives, provided that such parties shall be obligated to maintain the confidentiality provisions contained herein, and provided further that Buyer may disclose the Notice to the Bankruptcy Court or any other third parties selected by Buyer.

17.    This Agreement may be executed in multiple counterparts and all of such counterparts when taken together shall be deemed to constitute one and the same instrument.  Delivery of an executed counterpart by facsimile or PDF transmission shall be as effective as delivery of a manually executed counterpart.  No amendment of any provision of this Agreement shall be effective unless it is in writing and signed by the Parties and no waiver of any provision of this Agreement, nor consent to any departure by either Party from it, shall be effective unless it is in writing and signed by the affected Party, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

18.    The Parties have participated jointly in the negotiation and drafting of this Agreement and, in the event of ambiguity or question of intent or interpretation arises, this Agreement shall be construed as jointly drafted by the Parties and no presumption or burden of proof shall arise favoring or disfavoring either Party by virtue of the authorship of any provision of this Agreement.  This Agreement constitutes the complete agreement of the Parties with respect to the subject matters referred to herein and supersedes all prior or contemporaneous negotiations, agreements or representations of every nature whatsoever with respect thereto, all of which have become merged and finally integrated herein.

19.    If any provision of this Agreement or any other agreement or document delivered in connection with this Agreement, if any, is partially or completely invalid or unenforceable in any jurisdiction, then that provision shall be ineffective in that jurisdiction to the extent of its invalidity or unenforceability, but the invalidity or unenforceability of that provision shall not affect the validity or enforceability of any other provision of this Agreement, all of which shall be construed and enforced as if that invalid or unenforceable provision were omitted, nor shall the invalidity or unenforceability of that provision in one jurisdiction affect its validity or enforceability in any other jurisdiction.

20.    No failure on the part of either Party to exercise, and no delay in exercising, any right hereunder or under any related document shall operate as a waiver thereof by such Party, nor shall any single or partial exercise of any right hereunder or under any other related document preclude any other or further exercise thereof or the exercise of any other right.  The rights and remedies of each Party provided herein and in other related documents (a) are cumulative and are in addition to, and not exclusive of, any rights or remedies provided by law and (b) are not conditional or contingent on any attempt by such Party to exercise any of its rights under any other related documents against the other Party or any other entity.

OHSUSA:766869828.5

CONFIDENTIAL

**21.**     Seller hereby acknowledges and consents to all terms set forth in this Agreement and agrees not to litigate or otherwise pursue any of the Rights (including, without limitation, the amount of the Claim and, to the extent related thereto, the Proofs of Claim).

**22.**     All demands, notices, consents, and communications hereunder shall be in writing and shall be deemed to have been duly given when e-mailed with acknowledgment of receipt by recipient, hand-delivered or duly deposited in the mails, by certified or registered mail, postage prepaid-return-receipt requested, to the addresses set forth in Schedule I, or such other address as may be furnished hereafter by notice in writing.   Each payment to be made by either Party shall be made without set-off, counterclaim or deduction of any kind.  All payments made pursuant to this Agreement shall be made in the lawful currency of the United States by wire transfer of immediately available funds, in accordance with the wire instructions specified in Schedule I.

*[signature page follows]*

OHSUSA:766869828.5

CONFIDENTIAL

WBA-0000153

**IN WITNESS WHEREOF**, the undersigned have duly executed this Agreement by their duly authorized representatives as of the Agreement Date written above.

WHITEBOX MULTI-STRATEGY
PARTNERS, LP

By:_____
Name:
Title:

WHITEBOX INSTITUTIONAL PARTNERS,
L.P.

By:_____
Name:
Title:

WHITEBOX ASYMMETRIC PARTNERS,
L.P.

By:_____
Name:
Title:

COWEN SPECIAL INVESTMENTS LLC

By:_____
Name: Bryan Syfried
Title: Authorized Signatory

By:_____
Name: Owen Littman
Title: Authorized Signatory

OHSUSA:768869828.5

CONFIDENTIAL

WBA-0000154

DocuSign Envelope ID: 26353A3B-2545-4C10-8CC9-FE5DB62FE284

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement by their duly authorized representatives as of the Agreement Date written above.

WHITEBOX MULTI-STRATEGY PARTNERS, LP                COWEN SPECIAL INVESTMENTS LLC

6/16/2017 | 08:10 PDT

By:                                                By:
Name: Mark Strefling                               Name:
Title: CEO                                         Title:

WHITEBOX INSTITUTIONAL PARTNERS, L.P.

6/16/2017 | 08:10 PDT
                                                   By:
                                                   Name:
                                                   Title:

By:
Name: Mark Strefling
Title: CEO

WHITEBOX ASYMMETRIC PARTNERS, L.P.

6/16/2017 | 08:10 PDT

By:
Name: Mark Strefling

Title: CEO

OHSUSA:766869828.5

SCHEDULE I: NOTICE AND WIRE INSTRUCTIONS

| Seller's Wire Instructions: | Buyer's Wire Instructions: |
|---|---|
| **Seller Notice Details**:<br>Cowen Special Investments LLC<br>Attention: General Counsel<br>599 Lexington Avenue, 21st Floor<br>New York, NY 10022<br>**owen.littman@cowen.com**<br><br>with a copy to:<br><br>Scott Balber<br>Herbert Smith Freehills New York LLP<br>450 Lexington Avenue, 14th Floor<br>New York, NY 10017<br>**scott.balber@hsf.com** | **Buyer's Notice Details**: |

OHSUSA:766869828.5

WBA-0000156

SCHEDULE II:

| WHITEBOX FUND | AMOUNT |
|---|---|
| Whitebox Asymmetric Partners, L.P., | $1,368,000.00 |
| Whitebox Multi-Strategy Partners, L.P. | $2,088,000.00 |
| Whitebox Institutional Partners, L.P. | $144,000.00 |

OHSUSA:766869828.5

CONFIDENTIAL

WBA-0000157

EXHIBIT A

NOTICE OF ASSIGNMENT

On or about June __, 2017, Cowen Special Investments LLC ("Seller"), for good and valuable consideration, irrevocably sold, conveyed, transferred and assigned unto the Buyers, who are signatories to this notice, any and all rights Seller may have to purchase the general unsecured claim asserted by Earl of Sandwich (Atlantic City) LLC (the "Claimholder") against the Debtor in a principal amount of not less than $3,600,000.00.

WHITEBOX MULTI-STRATEGY PARTNERS, LP

COWEN SPECIAL INVESTMENTS LLC

By:_____
Name:
Title:

By:_____
Name: Bryan Sayfried
Title: Authorized Signatory

WHITEBOX INSTITUTIONAL PARTNERS, L.P.

By:_____
Name: Owen Littman
Title: Authorized Signatory

By:_____
Name:
Title:

WHITEBOX ASYMMETRIC PARTNERS, L.P.

By:_____
Name:
Title:

OHSUSA:766869828.5

EXHIBIT B: DUE DILIGENCE

OHSUSA:766869828.5

CONFIDENTIAL

**From:** Thomas Avallone [mailto:TAvallone@planethollywoodintl.com]
**Sent:** Tuesday, February 28, 2017 4:07 PM
**To:** Rosenblum, Gail <Gail.Rosenblum@cowen.com>
**Cc:** Schwab, Bradly <Bradly.Schwab@cowen.com>; Seyfried, Bryan <Bryan.Seyfried@cowen.com>
**Subject:** RE: Sale of Claim in Caesars - Cowen Special Investments

[External Sender]
Dear Gail
I received a note from Bryan Seyfried alleging that we had deal to sell our claim.  Please note that is not true as
indicated by your email below.  I always stated that any sale would require approval from the owner of the business.
Regards,
Tom

**Thomas Avallone**
**Vice Chairman**
**earlenterprises™**
Planet Hollywood® | Planet Hollywood Hotels® | Buca di Beppo® | Earl of Sandwich® | Planet Dailies® | Mixology101® | CityEye™¡ Dinner
Date®
4700 Millenia Blvd, Suite #400
Orlando, Florida 32839
phone | 407.903.5555   fax | 407.352.7310
email | **tavallone@earlenterprise.com**

**From:** Rosenblum, Gail [mailto:Gail.Rosenblum@cowen.com]
**Sent:** Tuesday, January 24, 2017 4:23 PM
**To:** Thomas Avallone <TAvallone@planethollywoodintl.com>
**Cc:** Schwab, Bradly <Bradly.Schwab@cowen.com>
**Subject:** Sale of Claim in Caesars - Cowen Special Investments

Hello Thomas,

I wanted to take a minute to follow up to the emails and calls last week, and provide a quick update on the case.

We have been in touch with the claims agent and an attorney and although the Plan was confirmed, it is not yet
effective, and the Agent is still transferring Caesars claims. The attorney stated that it typically takes a while for the
Effective Date conditions in the Plan to be satisfied.

Should you wish to speak further regarding the sale of the Earl of Sandwich claim, I hope you will contact Brad or me.

Regards,
Gail

Gail Rosenblum
Vice President
Cowen Special Investments
830 Third Avenue, 4th Floor
New York, NY 10022
(O): 646-616-3082
Gail.Rosenblum@cowen.com

**From:** Rosenblum, Gail
**Sent:** Wednesday, January 18, 2017 9:33 AM

CONFIDENTIAL                                                                                     WBA-0000160

**Cc:** Schwab, Bradly <Bradly.Schwab@cowen.com>; Mori, John <John.Mori@cowen.com>
**Subject:** FW: Sale of Claim in Caesars - Cowen Special Investments

Good morning Thomas,

I was hoping to have the opportunity to speak with you by phone or communicate by email and discuss the proposed transaction. As previously mentioned, we are prepared to proceed, however language in the agreement will need to change slightly as a result of yesterday's hearing and confirmation of the Plan.

Would you kindly advise by noon, eastern time today if you plan to move ahead with the transaction or we will assume you are no longer interested.

Regards,
Gail

Gail Rosenblum
Vice President
Cowen Special Investments
830 Third Avenue, 4th Floor
New York, NY 10022
(O): 646-616-3082
Gail.Rosenblum@cowen.com

**From:** Rosenblum, Gail
**Sent:** Tuesday, January 17, 2017 4:26 PM
**To:** 'tavallone@earlenterprise.com' <tavallone@earlenterprise.com>
**Cc:** Schwab, Bradly <Bradly.Schwab@cowen.com>; Mori, John <John.Mori@cowen.com>
**Subject:** FW: Sale of Claim in Caesars - Cowen Special Investments

Hi Thomas,

I wanted to follow up to the message I left with Laurie this afternoon.

Today's hearing in the Caesars Bankruptcy has concluded and an Order confirming the Plan of Reorganization has been filed with the courts.

We initially anticipated that confirmation of the Plan might prevent us from proceeding, however, we are able to move forward and complete a transaction. As we are no longer under a tight deadline, there is additional time for your review of the document. We are available to address any questions or concerns you may have about the document or process, and are accustomed to working with our counterparties to negotiate a mutually agreeable agreement.

I hope you will let me know how I may assist with this process and look forward to hearing from you.

Kind regards,
Gail

Gail Rosenblum
Vice President
Cowen Special Investments
830 Third Avenue, 4th Floor
New York, NY 10022
(O): 646-616-3082
Gail.Rosenblum@cowen.com

CONFIDENTIAL                                                                              WBA-0000161

**From:** Rosenblum, Gail
**Sent:** Monday, January 16, 2017 4:02 PM
**To:** tavallone@earlenterprise.com
**Cc:** Schwab, Bradly <Bradly.Schwab@cowen.com>; Mori, John <John.Mori@cowen.com>
**Subject:** Fwd: Sale of Claim in Caesars - Cowen Special Investments

Hello Thomas,

I wanted to follow up to our call late Friday. As mentioned, I remain available by email and phone to further discuss the sale of the Caesars claim.

Regards,
Gail

Begin forwarded message:

> **From:** "Rosenblum, Gail" <Gail.Rosenblum@cowen.com>
> **Date:** January 13, 2017 at 9:10:00 AM EST
> **To:** "tavallone@earlenterprise.com" <tavallone@earlenterprise.com>
> **Cc:** "Schwab, Bradly" <Bradly.Schwab@cowen.com>, "Mori, John" <John.Mori@cowen.com>
> **Subject:** FW: Sale of Claim in Caesars - Cowen Special Investments
>
> Good morning Thomas,
>
> It appears I missed a call from you last night. I tried reaching you this morning but was not successful.
>
> I am at my desk and available to speak. I look forward to answering any questions you may have and discussing the next steps.
>
> Regards,
> Gail
> Gail Rosenblum
> Vice President
> Cowen Special Investments
> 830 Third Avenue, 4th Floor
> New York, NY 10022
> (O): 646-616-3082
> Gail.Rosenblum@cowen.com
>
>
>
> **From:** Rosenblum, Gail
> **Sent:** Thursday, January 12, 2017 5:37 PM
> **To:** 'tavallone@earlenterprise.com' <tavallone@earlenterprise.com>
> **Cc:** Schwab, Bradly <Bradly.Schwab@cowen.com>
> **Subject:** FW: Sale of Claim in Caesars - Cowen Special Investments
>
> Hello Thomas,
>
> I wanted to quickly follow up to my earlier email and see if you have had a chance to review the agreement and have initial comments or questions. Brad and I are available by phone and email to discuss the claim and process.

                                                                          WBA-0000162

We look forward to hearing from you.

Regards,
Gail

Gail Rosenblum
Vice President
Cowen Special Investments
830 Third Avenue, 4<sup>th</sup> Floor
New York, NY 10022
(O): 646-616-3082
Gail.Rosenblum@cowen.com

**From:** Rosenblum, Gail
**Sent:** Thursday, January 12, 2017 1:24 PM
**To:** 'tavallone@earlenterprise.com' <tavallone@earlenterprise.com>
**Cc:** Schwab, Bradly <Bradly.Schwab@cowen.com>; Mori, John <John.Mori@cowen.com>
**Subject:** Sale of Claim in Caesars - Cowen Special Investments

Good afternoon Thomas,

I am following up to your recent conversations with Brad Schwab regarding your claim in the Caesars Bankruptcy.

Attached you will find a draft document for review.  This transaction is subject to the satisfactory completion of due diligence, including confirmation that the claim is an allowed claim. Would you kindly forward the documentation you received from the Debtor confirming this fact. In addition, we will need to receive and review any other documentation you may have supporting the claim.

It appears two claims (numbers 5858 and 5497) have been filed for the Earl of Sandwich (Atlantic City). Would you confirm the status of each claim.

As you know we are working on a tight timeframe and thus are forwarding this draft document for your review, prior to diligence review, completion to include language confirming the claim is allowed, and further review and comment by our counsel.

We would be happy to answer any questions you may have.

Kind regards,
Gail

Gail Rosenblum
Vice President
Cowen Special Investments
830 Third Avenue, 4<sup>th</sup> Floor
New York, NY 10022
(O): 646-616-3082
Gail.Rosenblum@cowen.com

This message and any attachments are confidential. If you are not the intended recipient, please notify the sender immediately and destroy this email. Any unauthorized use or dissemination is prohibited. All email

considered an offer or solicitation with respect to the purchase or sale of any security in any jurisdiction where such an offer or solicitation would be illegal. Neither Cowen Group, Inc. nor any of its affiliates ("Cowen") represent that any of the information contained herein is accurate, complete or up to date, nor shall Cowen have any responsibility to update any opinions or other information contained herein.

---------------------------------------------------------------------------------------------------------------------
-------------------------------------------------

Disclaimer: This e-mail, including its contents and attachments, if any, is intended only for the individual(s) or entity(s) named within the message. This e-mail may contain confidential information. No oral or written communication (including this email and any attachments thereto) to or with any recipient hereof shall be deemed to expressly or implicitly create, amend, extend or otherwise affect any oral or written agreement previously entered into between the sender, or any entity whom they represent, and any recipient, or any entity whom they represent unless, if such communication is in writing, such communication expressly states that it is intended to create, amend, extend or otherwise affect such agreement. If you are not the named recipient, please notify the sender and immediately delete it. You may not disseminate, distribute, or forward this e-mail message or disclose its contents to anybody else and to do so might constitute a violation of the Electronic Communications Privacy Act, 18 U.S.C. section 2510-2521. Copyright and any other intellectual property rights contained herein are the sole property of the sender. E-mail transmission cannot be guaranteed to be secure or error-free.

This message and any attachments are confidential. If you are not the intended recipient, please notify the sender immediately and destroy this email. Any unauthorized use or dissemination is prohibited. All email sent to or from our system is subject to review and retention. Nothing contained in this email shall be considered an offer or solicitation with respect to the purchase or sale of any security in any jurisdiction where such an offer or solicitation would be illegal. Neither Cowen Group, Inc. nor any of its affiliates ("Cowen") represent that any of the information contained herein is accurate, complete or up to date, nor shall Cowen have any responsibility to update any opinions or other information contained herein.

WBA-0000164



Earl of Sandwich
4700 Millenia Blvd., Suite 400
Orlando, FL 32839
Attention: Thomas Avallone
Email: Tavallone@earlenterprise.com

February 22, 2017

Re: Caesars General Unsecured Trade Claims

Dear Mr. Avallone,

I am writing to follow up on previous conversations and correspondence that you had with Brad Schwab and Gail Ronsenblum regarding Caesars Bankruptcy General Unsecured Claim No. 5497, asserted in the amount of $4,500,000, and General Unsecured Claim No. 5858, asserted in the amount of $3,600,000. Pursuant to your conversation/email exchanges with Mr. Schwab, we believe that you affirmatively confirmed the details of the trade (subject to diligence and documents) and requested draft documentation, which we provided. Subsequently, you have not responded to our repeated inquiries about moving forward with the transaction.

We believe that we had an agreement in principle on the terms of the trade and expect all parties to make a good faith effort to complete the transaction on such terms, even while retaining rights to negotiate the terms of definitive documents and conduct reasonable due diligence, as applicable. As such, we look forward to receiving your comments on the draft document and moving forward with this trade on the agreed terms.

Sincerely,

Bryan Seyfried
Head of Credit Research and Trading

**Cowen Special Investments LLC**
262 Harbor Drive
Stamford, CT 06902
Tel 1 646 616 3000
www.cowen.com

WBA-0000165

**From:** Schwab, Bradly
**Sent:** Thursday, January 12, 2017 9:52 AM
**To:** Rosenblum, Gail <Gail.Rosenblum@cowen.com>; Mori, John <John.Mori@cowen.com>
**Subject:** FW: RE: Sale of claims in Caesars/54%

Gail – Please forward Thomas a document. Thanks.

**From:** Thomas Avallone [mailto:TAvallone@planethollywoodintl.com]
**Sent:** Thursday, January 12, 2017 9:47 AM
**To:** Schwab, Bradly <Bradly.Schwab@cowen.com>
**Subject:** RE: RE: Sale of claims in Caesars/54%

Please forward draft document.

**Thomas Avallone**
**Vice Chairman**
**earlenterprises™**
Planet Hollywood® | Planet Hollywood Hotels® | Buca di Beppo® | Earl of Sandwich® | Planet Dailies® | Mixology101® | CityEye™| Dinner Date®
4700 Millenia Blvd, Suite #400
Orlando, Florida 32839
phone | 407.903.5555   fax | 407.352.7310
email | **tavallone@earlenterprise.com**

**From:** Schwab, Bradly [mailto:Bradly.Schwab@cowen.com]
**Sent:** Thursday, January 12, 2017 8:34 AM
**To:** Thomas Avallone <TAvallone@planethollywoodintl.com>
**Cc:** Mori, John <John.Mori@cowen.com>
**Subject:** RE: RE: Sale of claims in Caesars/54%

Thomas – as a follow-up to my below email and our quick conversation, my acceptance of your offer is good through 11am eastern time today, January 12th. After which you will need to check back in with me to see if I am still able to transact at your offered level.

As I am sure you can appreciate, there are numerous other parties seeking to close transactions prior to the January 17th deadline rather than hold equity. If this is a transaction Planet Hollywood would like to pursue then we need to move quickly. As mentioned I can forward a draft document for your review.

Please let me know ASAP so I can plan accordingly and accommodate you. So you are aware, it's a bank holiday on Monday which accelerates the need to move quickly.

Feel free to give me a call with any question.

Regards,

Brad

Bradly D. Schwab | Managing Director
Head of Cowen Special Investments
830 Third Avenue, 4th Floor
New York, NY 10022
O: 646.616.3081
Bradly.schwab@cowen.com

CONFIDENTIAL                                                                                                    WBA-0000166

**From:** Schwab, Bradly
**Sent:** Wednesday, January 11, 2017 3:47 PM
**To:** 'Thomas Avallone' <TAvallone@planethollywoodintl.com>
**Cc:** Mori, John <John.Mori@cowen.com>
**Subject:** RE: RE: Sale of claims in Caesars/54%

Thomas  - as a follow-up to the below. I would be a buyer of your $3.6mm allowed CZR claim at $2.15 million or
59.72% of the allowed face amount subject to (a) written confirmation from the debtor that the claim is a Class I and
allowed (b) additional due diligence (c) documentation and (d) closing before close of business Tuesday January 17th.

Please confirm that you are good with the above terms and I will forward you a purchase and sale agreement for
review.

Thank you and I look forward to working together.

Regards,

Brad

Bradly D. Schwab | Managing Director
Head of Cowen Special Investments
830 Third Avenue, 4th Floor
New York, NY 10022
O: 646.616.3081
Bradly.schwab@cowen.com

**From:** Thomas Avallone [mailto:TAvallone@planethollywoodintl.com]
**Sent:** Wednesday, January 11, 2017 2:38 PM
**To:** Schwab, Bradly <Bradly.Schwab@cowen.com>
**Cc:** Mori, John <John.Mori@cowen.com>
**Subject:** RE: RE: Sale of claims in Caesars/54%

I can easily get a letter from the Debtor/Restructuring Officer confirming nature of the claim amount as undisputed
and allowed if we decide to move forward

**Thomas Avallone**
**Vice Chairman**
**earlenterprises™**
Planet Hollywood® | Planet Hollywood Hotels® | Buca di Beppo® | Earl of Sandwich® | Planet Dailies® | Mixology101® | CityEye™| Dinner
Date®
4700 Millenia Blvd, Suite #400
Orlando, Florida 32839
phone | 407.903.5555   fax | 407.352.7310
email | **tavallone@earlenterprise.com**

**From:** Schwab, Bradly [mailto:Bradly.Schwab@cowen.com]
**Sent:** Wednesday, January 11, 2017 2:17 PM
**To:** Thomas Avallone <TAvallone@planethollywoodintl.com>

**Cc:** Mori, John <John.Mori@cowen.com>
**Subject:** RE: RE: Sale of claims in Caesars/54%

Thomas – thank you for the below clarifications.

As for it being allowed, I am on the claims register at Prime Clerk and see the two "asserted claims" but nothing that shows them as being "allowed"

It sounds as if Earl Enterprises settled the claims with the estate – do you happen to have any support documentation confirming this, either a settlement agreement or an allowance letter/correspondence.

I would have interest at 59.72% subject to confirming the above. Please let me know.

Thanks,

Brad

Bradly D. Schwab | Managing Director
Head of Cowen Special Investments
830 Third Avenue, 4th Floor
New York, NY 10022
O: 646.616.3081
Bradly.schwab@cowen.com

**From:** Thomas Avallone [mailto:TAvallone@planethollywoodintl.com]
**Sent:** Wednesday, January 11, 2017 2:04 PM
**To:** Schwab, Bradly <Bradly.Schwab@cowen.com>
**Subject:** RE: RE: Sale of claims in Caesars/54%

SEE BELOW

**Thomas Avallone**
**Vice Chairman**
**earlenterprises™**
Planet Hollywood® | Planet Hollywood Hotels® | Buca di Beppo® | Earl of Sandwich® | Planet Dailies® | Mixology101® | CityEye™| Dinner Date®
4700 Millenia Blvd, Suite #400
Orlando, Florida 32839
phone | 407.903.5555   fax | 407.352.7310
email | **tavallone@earlenterprise.com**

**From:** Schwab, Bradly [mailto:Bradly.Schwab@cowen.com]
**Sent:** Wednesday, January 11, 2017 1:59 PM
**To:** Thomas Avallone <TAvallone@planethollywoodintl.com>
**Cc:** Barrett Mikelberg <barrettmikelberg@yahoo.com>
**Subject:** RE: RE: Sale of claims in Caesars/54%

Thomas – was forwarded your below note to Barrett. Barrett and I have worked together for the past 10 years.

Was wondering if you have support documentation regarding the claim being allowed as you mention below. I do see that it was filed for $3.6 million as well as $4.5 million. Was Disputed at $4.5 – we settled at $3.6 million – Prime Clerk has it as a Class I Undisputed allowed claim

Moreover, please confirm, but it sounds like you are offering the paper for sale at $2.15 million or approximately 59.72% of the face claim amount. Is that correct? YES Would you have any flexibility? NO

Please let us know as I am confident we can make something work.

Regards,

Brad

Bradly D. Schwab | Managing Director
Head of Cowen Special Investments
830 Third Avenue, 4th Floor
New York, NY 10022
O: 646.616.3081
Bradly.schwab@cowen.com


**From:** bmikelberg@triaxadvisors.com [mailto:bmikelberg@triaxadvisors.com]
**Sent:** Wednesday, January 11, 2017 1:50 PM
**To:** barrettmikelberg@yahoo.com
**Subject:** FW: RE: Sale of claims in Caesars/54%


-----Original Message-----
From: "Thomas Avallone" <TAvallone@planethollywoodintl.com>
Sent: Wednesday, January 11, 2017 12:59pm
To: "bmikelberg@triaxadvisors.com" <bmikelberg@triaxadvisors.com>
Subject: RE: Sale of claims in Caesars/54%

May be a seller of my $3.6 million undisputed allowed claim for $2.15 million cash. Interested?

**Thomas Avallone**
**Vice Chairman**
**earlenterprises™**
Planet Hollywood® | Planet Hollywood Hotels® | Buca di Beppo® | Earl of Sandwich® | Planet Dailies® | Mixology101® | CityEye™| Dinner Date®
4700 Millenia Blvd, Suite #400
Orlando, Florida 32839
phone | 407.903.5555   fax | 407.352.7310
email | **tavallone@earlenterprise.com**

**From:** bmikelberg@triaxadvisors.com [mailto:bmikelberg@triaxadvisors.com]
**Sent:** Tuesday, December 13, 2016 4:36 PM
**To:** bmikelberg@triaxadvisors.com
**Cc:** Thomas Avallone <TAvallone@planethollywoodintl.com>
**Subject:** RE: Sale of claims in Caesars/54%

Tom,

CONFIDENTIAL
WBA-0000169

Hope all is well. Just keeping you in the loop as the market for claims is 50+. We would have interest at 54% for a year end transaction. As you know there is a price fluxuation when the stock is issued. Keep us in mind if things change and your group would consider a year- end transaction. (No Recourse)

Barrett

-----Original Message-----
From: "Thomas Avallone" <TAvallone@planethollywoodintl.com>
Sent: Thursday, October 20, 2016 11:52am
To: "bmikelberg@triaxadvisors.com" <bmikelberg@triaxadvisors.com>
Subject: RE: Sale of claims in Caesars/50

Thanks, but I think we will take the settlement instead.

**Thomas Avallone**
**Vice Chairman**
**earl**enterprises™
Planet Hollywood® | Planet Hollywood Hotels® | Buca di Beppo® | Earl of Sandwich® | Planet Dailies® | Mixology101® | CityEye™| Dinner Date®
4700 Millenia Blvd, Suite #400
Orlando, Florida 32839
phone | 407.903.5555   fax | 407.352.7310
email | **tavallone@earlenterprise.com**

**From:** bmikelberg@triaxadvisors.com [mailto:bmikelberg@triaxadvisors.com]
**Sent:** Thursday, October 20, 2016 11:49 AM
**To:** Thomas Avallone <TAvallone@planethollywoodintl.com>
**Cc:** Herzberg, Jarred <jarred.herzberg@cantor.com>; Sarachek, Joseph <joseph.sarachek@cantor.com>
**Subject:** RE: Sale of claims in Caesars/50

Thomas,

My trading desk can push to get a 50 bid for you. Please confirm if your group has interest at that level and we will draft a Trade Confirmation/Term Sheet for your consideration/review. That's the roof as far as where we can buy it. 4th Qtr/EOY is usually a great time to move paper off the books.

Barrett
-----Original Message-----
From: "Thomas Avallone" <TAvallone@planethollywoodintl.com>
Sent: Thursday, October 20, 2016 10:27am
To: "bmikelberg@triaxadvisors.com" <bmikelberg@triaxadvisors.com>
Subject: RE: Sale of claims in Caesars/Upper 40s

Would have to start with a 5 for us to even consider it.

**Thomas Avallone**
**Vice Chairman**
**earl**enterprises™
Planet Hollywood® | Planet Hollywood Hotels® | Buca di Beppo® | Earl of Sandwich® | Planet Dailies® | Mixology101® | CityEye™| Dinner Date®
4700 Millenia Blvd, Suite #400
Orlando, Florida 32839
phone | 407.903.5555   fax | 407.352.7310
email | **tavallone@earlenterprise.com**

**From:** bmikelberg@triaxadvisors.com [mailto:bmikelberg@triaxadvisors.com]
**Sent:** Thursday, October 20, 2016 10:19 AM
**To:** bmikelberg@triaxadvisors.com
**Cc:** Thomas Avallone <TAvallone@planethollywoodintl.com>
**Subject:** RE: Sale of claims in Caesars/Upper 40s

CONFIDENTIAL                                                                                          WBA-0000170

Would an upper 40 bid entice your group to a potential sale of claim? Let me know and we can look to secure a bid/draft term sheet for your groups consideration.

Barrett Mikelberg
Triax Capital/Cantor Special Investments
Bankruptcy and Special Situations
direct: (561)893-6296
cell:(312) 504 -7409
www.cantor.com


-----Original Message-----
From: bmikelberg@triaxadvisors.com
Sent: Friday, October 14, 2016 2:13pm
To: bmikelberg@triaxadvisors.com
Cc: "Thomas Avallone" <tavallone@planethollywoodintl.com>
Subject: RE: Sale of claims in Caesars Entertainment/Earl of Sandwich

Thomas,

Pleasure speaking yesterday. If there is interest in selling, let me know the fair level you are looking for and I will push my trading desk to fill. Plenty of time to get a 4th qtr transaction done.

I would keep you in the loop for activity in the case but you seem to have more knowledge than our analysts.

Barrett Mikelberg
Triax Capital/Cantor Special Investments
Bankruptcy and Special Situations
Direct: (561) 893-6296
www.cantor.com

-----Original Message-----
From: bmikelberg@triaxadvisors.com
Sent: Thursday, October 13, 2016 11:55am
To: bmikelberg@triaxadvisors.com
Cc: "Thomas Avallone" <tavallone@planethollywoodintl.com>
Subject: RE: Sale of claims in Caesars Entertainment/Planet Hollywood (Earl Of Sandwich)

Thomas,

Thanks for your patience. I have been out traveling for work. Anyways, here is the unconfirmed recovery for Caesars unsecured below:

Class I Undisputed Unsecured Claims recovery is equal to 6.24% of the claim in cash and 59.26% of the claim in New CEC (Caesars Entertainment Corporation) Convertible Notes. Notes are convertible up to 0.568% of New CEC Common Equity on a fully diluted basis.

Your claim for Earl of Sandwich was filed under the Showboat Atantic Entity for Caesars. My analyst is looking now to see if recovery applies to this entity. If so, I will give you a clal this afternoon to discuss a market bid.

Barrett Mikelberg
Triax Capital/Cantor Special Investments
Bankruptcy and Special Situations
Direct: (561) 893-6296
www.cantor.com

-----Original Message-----
From: "Thomas Avallone" <TAvallone@planethollywoodintl.com>
Sent: Tuesday, October 4, 2016 1:28pm
To: "bmikelberg@triaxadvisors.com" <bmikelberg@triaxadvisors.com>
Subject: RE: Sale of claims in Caesars Entertainment/Updated Offers (15-01145)

We have an undisputed unsecured claim for $3.5 million. How much will you pay for it?

CONFIDENTIAL

**Vice Chairman**
**earl**enterprises™
Planet Hollywood® | Planet Hollywood Hotels® | Buca dl Beppo® | Earl of Sandwich® | Planet Dailies® | Mixology101® | CityEye™| Dinner Date®
4700 Millenia Blvd, Suite #400
Orlando, Florida 32839
phone | 407.903.5555   fax | 407.352.7310
email | **tavallone@earlenterprise.com**

**From:** bmikelberg@triaxadvisors.com [mailto:bmikelberg@triaxadvisors.com]
**Sent:** Tuesday, October 04, 2016 1:25 PM
**To:** bmikelberg@triaxadvisors.com
**Subject:** Sale of claims in Caesars Entertainment/Updated Offers (15-01145)

Dear Creditor/Counselor,

Hope all is well. We just wanted to touch base to see if you have interest in selling your claims in Caesras Entertainment and all other related entities for immediate recovery. The transaction is quick and is executed by Assignment of claim

Unconfirmed Plan:
"Unsecured creditors will receive an increase in recoveries to approximately 66 cents on the dollar, consisting of a combination of cash, an increase in the amount of fully diluted equity in "New CEC" allocated to unsecured creditors, and an increased allocation of convertible notes in "New CEC".

If you have interest, please confirm the details of the claim and we will firm up a market bid for your consideration. As a leading buyer of claims we can provide a sample form of Assignment if requested.

Keep us in mind with other claims that your group would consider selling at the right price. Feel free to contact me to discuss further.

Barrett Mikelberg
Triax Capital/Cantor Special Investments
Bankruptcy and Special Situations
Direct: (561) 893-6296
www.cantor.com

-----------------------------------------------------------------------------------------------------------------------------------
------------------------------------------
Disclaimer: This e-mail, including its contents and attachments, if any, is intended only for the individual(s) or entity(s) named within the message. This e-mail may contain confidential information. No oral or written communication (including this email and any attachments thereto) to or with any recipient hereof shall be deemed to expressly or implicitly create, amend, extend or otherwise affect any oral or written agreement previously entered into between the sender, or any entity whom they represent, and any recipient, or any entity whom they represent unless, if such communication is in writing, such communication expressly states that it is intended to create, amend, extend or otherwise affect such agreement. If you are not the named recipient, please notify the sender and immediately delete it. You may not disseminate, distribute, or forward this e-mail message or disclose its contents to anybody else and to do so might constitute a violation of the Electronic Communications Privacy Act, 18 U.S.C. section 2510-2521. Copyright and any other intellectual property rights contained herein are the sole property of the sender. E-mail transmission cannot be guaranteed to be secure or error-free.

-----------------------------------------------------------------------------------------------------------------------------------
------------------------------------------
Disclaimer: This e-mail, including its contents and attachments, if any, is intended only for the individual(s) or entity(s) named within the message. This e-mail may contain confidential information. No oral or written communication (including this email and any attachments thereto) to or with any recipient hereof shall be deemed to expressly or implicitly create, amend, extend or otherwise affect any oral or written agreement previously entered into between the sender, or any entity whom they represent, and any recipient, or any entity whom they represent unless, if such communication is in writing, such communication expressly states that it is intended to create, amend, extend or otherwise affect such agreement. If you are not the named recipient, please notify the sender and immediately delete it. You may not disseminate, distribute, or forward this e-mail message or disclose its contents to anybody else and to do so might constitute a violation of the Electronic Communications Privacy Act, 18 U.S.C. section 2510-2521

Copyright and any other intellectual property rights contained herein are the sole property of the sender. E-mail transmission cannot be guaranteed to be secure or error-free.

------------------------------------------------------------------------------------------------------------------------------
------------------------------------------------

Disclaimer: This e-mail, including its contents and attachments, if any, is intended only for the individual(s) or entity(s) named within the message. This e-mail may contain confidential information. No oral or written communication (including this email and any attachments thereto) to or with any recipient hereof shall be deemed to expressly or implicitly create, amend, extend or otherwise affect any oral or written agreement previously entered into between the sender, or any entity whom they represent, and any recipient, or any entity whom they represent unless, if such communication is in writing, such communication expressly states that it is intended to create, amend, extend or otherwise affect such agreement. If you are not the named recipient, please notify the sender and immediately delete it. You may not disseminate, distribute, or forward this e-mail message or disclose its contents to anybody else and to do so might constitute a violation of the Electronic Communications Privacy Act, 18 U.S.C. section 2510-2521. Copyright and any other intellectual property rights contained herein are the sole property of the sender. E-mail transmission cannot be guaranteed to be secure or error-free.

------------------------------------------------------------------------------------------------------------------------------
------------------------------------------------

Disclaimer: This e-mail, including its contents and attachments, if any, is intended only for the individual(s) or entity(s) named within the message. This e-mail may contain confidential information. No oral or written communication (including this email and any attachments thereto) to or with any recipient hereof shall be deemed to expressly or implicitly create, amend, extend or otherwise affect any oral or written agreement previously entered into between the sender, or any entity whom they represent, and any recipient, or any entity whom they represent unless, if such communication is in writing, such communication expressly states that it is intended to create, amend, extend or otherwise affect such agreement. If you are not the named recipient, please notify the sender and immediately delete it. You may not disseminate, distribute, or forward this e-mail message or disclose its contents to anybody else and to do so might constitute a violation of the Electronic Communications Privacy Act, 18 U.S.C. section 2510-2521. Copyright and any other intellectual property rights contained herein are the sole property of the sender. E-mail transmission cannot be guaranteed to be secure or error-free.
This message and any attachments are confidential. If you are not the intended recipient, please notify the sender immediately and destroy this email. Any unauthorized use or dissemination is prohibited. All email sent to or from our system is subject to review and retention. Nothing contained in this email shall be considered an offer or solicitation with respect to the purchase or sale of any security in any jurisdiction where such an offer or solicitation would be illegal. Neither Ramius LLC nor any of its affiliates ("Ramius") represent that any of the information contained herein is accurate, complete or up to date, nor shall Ramius have any responsibility to update any opinions or other information contained herein.

------------------------------------------------------------------------------------------------------------------------------
------------------------------------------------

Disclaimer: This e-mail, including its contents and attachments, if any, is intended only for the individual(s) or entity(s) named within the message. This e-mail may contain confidential information. No oral or written communication (including this email and any attachments thereto) to or with any recipient hereof shall be deemed to expressly or implicitly create, amend, extend or otherwise affect any oral or written agreement previously entered into between the sender, or any entity whom they represent, and any recipient, or any entity whom they represent unless, if such communication is in writing, such communication expressly states that it is intended to create, amend, extend or otherwise affect such agreement. If you are not the named recipient, please notify the sender and immediately delete it. You may not disseminate, distribute, or forward this e-mail message or disclose its contents to anybody else and to do so might constitute a violation of the Electronic Communications Privacy Act, 18 U.S.C. section 2510-2521. Copyright and any other intellectual property rights contained herein are the sole property of the sender. E-mail transmission cannot be guaranteed to be secure or error-free.
This message and any attachments are confidential. If you are not the intended recipient, please notify the sender immediately and destroy this email. Any unauthorized use or dissemination is prohibited. All email sent to or from our system is subject to review and retention. Nothing contained in this email shall be considered an offer or solicitation with respect to the purchase or sale of any security in any jurisdiction where such an offer or solicitation would be illegal. Neither Ramius LLC nor any of its affiliates ("Ramius") represent that any of the information contained herein is accurate, complete or up to date, nor shall Ramius have any responsibility to update any opinions or other information contained herein.

------------------------------------------------------------------------------------------------------------------------------
------------------------------------------------

Disclaimer: This e-mail, including its contents and attachments, if any, is intended only for the individual(s)

or entity(s) named within the message. This e-mail may contain confidential information. No oral or written communication (including this email and any attachments thereto) to or with any recipient hereof shall be deemed to expressly or implicitly create, amend, extend or otherwise affect any oral or written agreement previously entered into between the sender, or any entity whom they represent, and any recipient, or any entity whom they represent unless, if such communication is in writing, such communication expressly states that it is intended to create, amend, extend or otherwise affect such agreement. If you are not the named recipient, please notify the sender and immediately delete it. You may not disseminate, distribute, or forward this e-mail message or disclose its contents to anybody else and to do so might constitute a violation of the Electronic Communications Privacy Act, 18 U.S.C. section 2510-2521. Copyright and any other intellectual property rights contained herein are the sole property of the sender. E-mail transmission cannot be guaranteed to be secure or error-free.

This message and any attachments are confidential. If you are not the intended recipient, please notify the sender immediately and destroy this email. Any unauthorized use or dissemination is prohibited. All email sent to or from our system is subject to review and retention. Nothing contained in this email shall be considered an offer or solicitation with respect to the purchase or sale of any security in any jurisdiction where such an offer or solicitation would be illegal. Neither Ramius LLC nor any of its affiliates ("Ramius") represent that any of the information contained herein is accurate, complete or up to date, nor shall Ramius have any responsibility to update any opinions or other information contained herein.

------------------------------------------------------------------------------------------------------------------------------------------------------------------------

Disclaimer: This e-mail, including its contents and attachments, if any, is intended only for the individual(s) or entity(s) named within the message. This e-mail may contain confidential information. No oral or written communication (including this email and any attachments thereto) to or with any recipient hereof shall be deemed to expressly or implicitly create, amend, extend or otherwise affect any oral or written agreement previously entered into between the sender, or any entity whom they represent, and any recipient, or any entity whom they represent unless, if such communication is in writing, such communication expressly states that it is intended to create, amend, extend or otherwise affect such agreement. If you are not the named recipient, please notify the sender and immediately delete it. You may not disseminate, distribute, or forward this e-mail message or disclose its contents to anybody else and to do so might constitute a violation of the Electronic Communications Privacy Act, 18 U.S.C. section 2510-2521. Copyright and any other intellectual property rights contained herein are the sole property of the sender. E-mail transmission cannot be guaranteed to be secure or error-free.

This message and any attachments are confidential. If you are not the intended recipient, please notify the sender immediately and destroy this email. Any unauthorized use or dissemination is prohibited. All email sent to or from our system is subject to review and retention. Nothing contained in this email shall be considered an offer or solicitation with respect to the purchase or sale of any security in any jurisdiction where such an offer or solicitation would be illegal. Neither Cowen Group, Inc. nor any of its affiliates ("Cowen") represent that any of the information contained herein is accurate, complete or up to date, nor shall Cowen have any responsibility to update any opinions or other information contained herein.

CONFIDENTIAL

**Miller, Diane**

| | |
|---|---|
| **From:** | Rosenblum, Gail <Gail.Rosenblum@cowen.com> |
| **Sent:** | Thursday, January 12, 2017 1:24 PM |
| **To:** | tavallone@earlenterprise.com |
| **Cc:** | Schwab, Bradly; Mori, John |
| **Subject:** | Sale of Claim in Caesars - Cowen Special Investments |
| **Attachments:** | Earl of Sandwich AOC 2017.01.12.docx |

Good afternoon Thomas,

I am following up to your recent conversations with Brad Schwab regarding your claim in the Caesars Bankruptcy.

Attached you will find a draft document for review. This transaction is subject to the satisfactory completion of due diligence, including confirmation that the claim is an allowed claim. Would you kindly forward the documentation you received from the Debtor confirming this fact. In addition, we will need to receive and review any other documentation you may have supporting the claim.

It appears two claims (numbers 5858 and 5497) have been filed for the Earl of Sandwich (Atlantic City). Would you confirm the status of each claim.

As you know we are working on a tight timeframe and thus are forwarding this draft document for your review, prior to diligence review, completion to include language confirming the claim is allowed, and further review and comment by our counsel.

We would be happy to answer any questions you may have.

Kind regards,
Gail

Gail Rosenblum
Vice President
Cowen Special Investments
830 Third Avenue, 4th Floor
New York, NY 10022
(O): 646-616-3082
Gail.Rosenblum@cowen.com

This message and any attachments are confidential. If you are not the intended recipient, please notify the sender immediately and destroy this email. Any unauthorized use or dissemination is prohibited. All email sent to or from our system is subject to review and retention. Nothing contained in this email shall be considered an offer or solicitation with respect to the purchase or sale of any security in any jurisdiction where such an offer or solicitation would be illegal. Neither Cowen Group, Inc. nor any of its affiliates ("Cowen") represent that any of the information contained herein is accurate, complete or up to date, nor shall Cowen have any responsibility to update any opinions or other information contained herein.

1

## ASSIGNMENT OF CLAIM AGREEMENT

Earl of Sandwich ("Assignor"), for good and valuable consideration does hereby irrevocably sell, convey, transfer and assign to Cowen Special Investments LLC ("Assignee"), all of Assignor's right, title and interest in and to the allowed general unsecured Class I claim of Assignor (the "Claim") against Caesars Entertainment Operating Company Inc., debtor in proceedings for reorganization (the "Proceedings") in the United States Bankruptcy Court for the Northern District of Illinois (the "Court"), administered under Case No. 15-01145 (the "Debtor"), in the currently outstanding principal amount of not less than $3,600,000.00 (the "Claim Amount"), and all rights and benefits of the Assignor relating to the Claim, including without limitation, (i) the Proof of Claim (as defined below), against the Debtor, (ii) the Assignor's right to receive interest, penalties and fees, if any, which may be paid with respect to the Claim, (iii) any actions, claims, rights or lawsuits of any nature whatsoever, whether against Debtor or any other party, arising out of or in connection with the Claim, (iv) all cash, securities, instruments and other property which may be paid or issued by the Debtor in satisfaction of the Claim and (v) all proceeds of the foregoing (collectively, the "Transferred Rights"). For the avoidance of doubt, the Transferred Rights shall not include any obligations or liabilities of Assignor or any other party. This assignment shall be deemed an absolute and unconditional assignment of the Claim for the purpose of collection and satisfaction, and shall not be deemed to create a security interest.

The "Effective Date" shall be the date upon which the last of the following shall have occurred: (i) Assignor and Assignee have executed and delivered to each other this Agreement and the Notice of Transfer (as defined below) and (ii) Assignee shall pay the Purchase Price set forth on Schedule 2 (the "Purchase Price") to Assignor pursuant to the instructions set forth on Schedule Assignee agrees that it shall wire the Purchase Price to Assignor in immediately available funds on the date on which the immediately preceding clause (i) has been satisfied.

1.      PROOF OF CLAIM.  Assignor represents and warrants as of the Effective Date that Proof of Claim, Number 5858 and Proof of Claim, Number 5497, (the "POCs") have been duly and timely filed in the Proceedings and a true and complete copy of the POC is attached to and made a part of this Assignment of Claim Agreement (this "Agreement").  If the POC amount is greater than the Claim Amount, Assignee shall nevertheless be deemed the owner of such POC and of the larger Claim, and shall be entitled to identify itself as owner of such POC in the records of the Court.  Assignor represents and warrants that, other than pursuant to the Order ["Order" needs to be defined.], the Proof of Claim has not been revoked, withdrawn, amended or modified and no rights thereunder have been waived and all statements in such Proof of Claim are true and correct.

2.      ASSIGNOR REPRESENTATIONS AND WARRANTIES.  Assignor further represents, warrants and covenants to Assignee as of the Effective Date: (a) that no payment or other distribution has been received by or on behalf of Assignor in full or partial satisfaction of the Transferred Rights; (b) that Assignor has not previously sold, assigned, participated, pledged or otherwise conveyed the Transferred Rights, in whole or in part, to any party; (c) that Assignor owns and has good and marketable title to the Transferred Rights, free and clear of any and all

liens, claims, security interests, participations, or encumbrances of any kind or nature whatsoever ("Liens"), and will transfer to Assignee such good and marketable title free and clear of any Liens; (d) no preference or other avoidance actions have been or may be asserted against Assignor or the Transferred Rights, and no legal or equitable defenses, counterclaims, setoffs or offsets have been or may be asserted by or on behalf of the Debtor to affect the validity or enforceability of, or otherwise adversely affect, the Transferred Rights; (e) Assignor has not engaged in any acts, conduct or omissions, or had any relationship with the Debtor or its affiliates, that will result in Assignee receiving in respect of the Transferred Rights proportionately less payments or distributions or less favorable treatment (including the timing of payments or distributions) for the Transferred Rights than will be received on behalf of other allowed general unsecured claims; (f) Assignor is not a party to any agreements or instruments with respect to the Transferred Rights other than the Settlement Agreement dated as of _____ attached to the Order as Exhibit 1 thereto and the agreements between Assignor and the Debtor that form the basis for the Claim; (g) to Assignor's knowledge, Assignor has no obligation or liability related to or in connection with the Claim or the Proceedings; (h) the Claim is a valid, liquidated, non-contingent, non-disputed, allowed, enforceable, general unsecured claim against the Debtor classified as Class I under the Plan; (i) Assignor has timely and properly filed the Proof of Claim; (j) no objection to the Claim or the Transferred Rights has been made or threatened; (k) Assignor is not a party to, or bound by, any document or agreement that could materially and adversely affect the Transferred Rights or Assignee's rights and remedies under this Agreement; (i) the Settlement Agreement is in full force and effect, and neither Assignor nor any party thereto shall terminate the Settlement Agreement; (m) the Settlement Agreement has not been modified or amended, and Assignor agrees not to modify or amend the Settlement Agreement; (n) Assignor has fully performed and satisfied (and shall continue to fully perform and satisfy) all of its obligations to the Debtor and the other parties under the Settlement Agreement, and Assignee has not breached and shall not breach any terms or provisions of Settlement Agreement; and (o) Assignor voted in respect of the Claim on a Class I ballot in favor of the Debtor's Third Amended Plan of Reorganization on or before the voting deadline.

Assignor is aware that the Purchase Price received herein for the sale of the Transferred Rights may differ both in kind and amount from any distributions ultimately made pursuant to any plan of reorganization confirmed by the Court in the Proceedings. Assignor acknowledges that, except as set forth in this Agreement, neither Assignee nor any agent or representative of Assignee has made any representation whatsoever to Assignor regarding the status of the Proceedings, the condition of the Debtor (financial or otherwise) or any other matter relating to the Proceedings, the Debtor or the Transferred Rights.

3.    "MUTUAL REPRESENTATIONS AND WARRANTIES". Each of party hereby represents and warrants to each other as of the Effective Date that: (a) it has full power and authority and has taken all action necessary to execute and deliver this Agreement and the Notice of Transfer (as defined below) and to fulfill its obligations hereunder and to consummate the transactions contemplated hereby; (b) the making and performance by it of this agreement does not and will not violate any law or regulation of the jurisdiction under which it exists, any other law applicable to it or any other agreement to which it is a party or by which it is bound; (c) this Agreement has been duly and validly authorized, executed and delivered by it and is legal, valid, binding and enforceable against it in accordance with its terms except that the enforceability may

CONFIDENTIAL

WBA-0000177

be limited by bankruptcy, insolvency or laws governing creditors rights; (d) no consent, approval, filing or corporate, partnership or other action is required as a condition to or in connection with execution delivery and performance of this Agreement and the transactions contemplated herein; (e) it is an "accredited investor" as such terms is defined in Regulation D under the Securities Act of 1933, as amended, and (f) it has adequate information concerning the business and financial condition of the Debtor and the status of the Proceedings in order to make an informed decision regarding the sale of the Transferred Rights, and that it has independently and without reliance on the other party, and based on such information as it has deemed appropriate (including information available from the files of the Court of the Proceedings), made its own analysis and decision to enter into this Agreement.

4.     <u>BIG BOY CLAUSE</u>. Each party acknowledges that (i) the other currently may have, and later may come into possession of, information on the Transferred Rights, Debtor, or Debtor's affiliates or the status of the Proceedings that is not known to it and that may be material to a decision to buy or sell the Transferred Rights and all related rights (as appropriate) (the "<u>Excluded Information</u>"), (ii) it has not requested the Excluded Information, and has agreed to proceed with the purchase or sale of the Transferred Rights and all related rights (as appropriate) hereunder without receiving the Excluded Information, and (iii) the other party shall have no liability to it, and each party waives and releases any claims that it might have against the other party or the other party's affiliates, employees, agents, representatives, and their respective successors, assigns or designees whether under applicable securities laws or otherwise, with respect to the nondisclosure of the Excluded Information; <u>provided</u>, <u>however</u>, that each party's Excluded Information shall not and does not affect the truth or accuracy of such party's representations or warranties in this Agreement.

5.     <u>FAILURE OF TRANSFER OF CLAIM</u>. If (i) a Final Order (as defined below) is entered disapproving the transfer of the Claim, or (ii) the Court does not substitute Assignee for Assignor as the holder of the Claim, then, Assignor shall, upon written demand by Assignee, repay to Assignee all amounts of the Purchase Price received by Assignor at or prior to the time of such repayment, and the transfer of the Claim and the Transferred Rights to Assignee shall be null and void *ab initio*.

A "Final Order" means an order of the Court which fully and finally determines the amount and the priority of the Claim and which does not preserve for any party the right to seek to re-determine the amount or priority of such Claim and which has not been reversed, stayed, modified, or amended and as to which (a) any appeal taken, petition for certiorari or motion for rehearing or reconsideration that has been filed, has been finally determined or dismissed in a manner that does not affect the Courts' determination of the allowed amount or treatment of the Claim or (b) the time to appeal, seek certiorari or move for reconsideration or rehearing has expired and no appeal, petition for certiorari or motion for reconsideration or rehearing has been timely filed.

6.     INDEMNITY. Assignor agrees to indemnify, defend, reimburse and hold Assignee and its affiliates and its and their officers, directors, partners, employees, agents and controlling persons harmless from and against any and all losses, claims, damages, judgments, costs, penalties, expenses and liabilities, including, without limitation, attorneys' fees and expenses, which are incurred by or threatened against, on account of or in any way resulting from or

-3-

WBA-0000178

relating to (i) Assignor's breach of any of Assignor's representations, warranties, covenants or agreements set forth herein, and/or (ii) any obligation of Assignor or Assignee to disgorge, in whole or in part, or otherwise reimburse (by setoff or otherwise) Debtor or any other person or entity for any payments, distributions, property, setoffs or recoupments received, applied or effected by or for the account of Assignor under or in connection with the Transferred Rights or otherwise from, against or on account of Debtor or any of its guarantors or affiliates or any person or entity obligated in respect thereof.

Assignee agrees to indemnify, defend, reimburse and hold Assignor and its affiliates and its and their officers, directors, partners, employees, agents and controlling persons harmless from and against any and all losses, claims, damages, judgments, costs, penalties, expenses and liabilities, including, without limitation, attorneys' fees and expenses, which are incurred by or threatened against, on account of or in any way resulting from or relating to Assignee's breach of any of Assignee's representations, warranties, covenants or agreements set forth herein.

7.   ATTORNEY-IN-FACT; SETTLEMENT OF THE CLAIM: FURTHER ACTIONS. Assignor hereby irrevocably appoints Assignee as its true and lawful attorney-in-fact solely with respect to the Transferred Rights, and authorizes Assignee to act in Assignor's name, place and stead, to demand, sue for, compromise and recover all such amounts which are, or may hereafter become due and payable for, or on account of the Transferred Rights herein assigned. Assignor hereby grants unto Assignee full authority to do all things necessary to enforce the Transferred Rights and Assignor's rights there under. Assignor agrees that the powers granted in this paragraph are discretionary in nature and exercisable at the sole option of Assignee. In the event an objection to the Claim is received, Assignor shall immediately notify Assignee in writing and shall take such further action, at its own expense, as may be necessary or desirable to effect the Assignment of Claim and any payments or distributions on account of the Transferred Rights to Assignee including, without limitation, the execution of appropriate transfer powers, corporate resolutions and consents.

Assignor shall not compromise or settle the Transferred Rights or change the Transferred Rights amount without the prior written consent of Assignee. In performing any of its obligations under this section and in otherwise complying with its obligations under this Agreement, Assignor and Assignee hereby covenant and agree to act reasonably at all times and to maximize the amount of the claim and to minimize the amount of time in which all components of the Transferred Rights are quantified and paid.

Assignor agrees to promptly forward to Assignee all notices received from the Debtor, the Court or any third party with respect to the Transferred Rights assigned herein, to vote the Transferred Rights assigned herein in a timely manner and in accordance with Assignee's instructions, and to take such further action with respect to the Transferred Rights in the Proceedings as Assignee may from time to time request.

Assignor further agrees that if Assignor receives any distributions on account of the Transferred Rights, whether in the form of cash, securities, instruments or any other property, the aforementioned shall constitute property of the Assignee to which the Assignee has an absolute right. Assignor shall hold such property in trust and will at its own expense, deliver to Assignee any such property in the same form received, together with any endorsements or documents

CONFIDENTIAL

WBA-0000179

necessary to transfer such property to Assignee within 2 business days of receipt in the case of cash and five business days in the case of securities.

8.   FURTHER ASSIGNMENT.  Assignor hereby acknowledges that Assignee may at any time reassign any or all of the Transferred Rights, together with all right, title and interest of Assignee in and to this Agreement.  All representations, warranties, covenants and agreements contained herein shall survive the execution and delivery of this Agreement and any such reassignment, and shall inure to the benefit of Assignor, Assignee and their respective successors and assigns of any party hereto; provided, however, that the obligations of Assignor and Assignee contained herein shall continue and remain in full force and effect until fully paid, performed and satisfied.

9.   LATE PAYMENT If either party fails to make a payment or distribution to the other party within the time period specified in this Agreement, the party failing to make full payment of any amount when due shall, upon demand by the other party, pay such amount due amount together with interest on it for each day from (and including) the date when due to (but excluding) the date when actually paid at a rate equal to the 8.0%.

10.   JURISDICTION.  The laws of the State of New York shall govern this Agreement.  Each party submits to the jurisdiction of the courts located in the County of New York, State of New York and agrees that any litigation relating to this Agreement shall be brought only in such courts.  Each party hereto consents to service of process by certified mail at its address listed above, and in any action hereunder, Assignor waives any right to demand a trial by jury.  This Agreement may be executed in any number of counterparts (via facsimile is satisfactory), each of which, when so executed and delivered, shall be an original, but all of which, together constitute one and the same instrument.

11.   WAIVER OF JURY TRIAL.  THE PARTIES HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT THAT THEY MAY HAVE TO TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION, OR IN ANY LEGAL PROCEEDING, DIRECTLY OR INDIRECTLY BASED UPON OR ARISING OUT OF THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY).  EACH PARTY (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF THE OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTY HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

12.   CONSENT AND WAIVER.  Assignor hereby acknowledges and consents to all terms set forth in this Agreement and hereby waives its right to raise any objection thereto and its right to receive notice pursuant to Bankruptcy Rule 3001(e), and consents to the substitution of Assignor by Assignee for all purposes in the case, including, without limitation, for voting and distribution purposes with respect to the Transferred Rights.  Assignee agrees to file a Notice of Transfer with the Court pursuant to Federal Rule of Bankruptcy Procedure 3001(e) (the "Notice

-5-

of Transfer") including the Evidence of Transfer of Claim substantially in the form attached hereto as Exhibit A.

13.   **NOTICES; WIRE INSTRUCTIONS.**   All demands, notices, consents, and communications hereunder shall be in writing and shall be deemed to have been duly given when hand-delivered or duly deposited in the mails, by certified or registered mail, postage prepaid-return-receipt requested, to the addresses set forth on Schedule 1, or such other address as may be furnished hereafter by notice in writing.  All payments by Assignor to Assignee and Assignee to Assignor under this Agreement shall be made in the lawful currency of the United States by wire transfer of immediately available funds to Assignor and Assignee, as applicable, in accordance with the wire instructions specified on Schedule 1.

14.   UNDERSTANDING.  This Agreement, together with any exhibits hereto, constitutes the entire agreement and understanding between the parties with respect to the subject matter hereof and supersedes all prior agreements, understandings or representations pertaining to the subject matter hereof, whether oral or written.   There are no warranties, representations or other agreements between the parties in connection with the subject matter hereof except as specifically and expressly set forth herein.  This Agreement may be signed in counterparts, each of which shall be an original and all of which taken together shall constitute one agreement.  No amendment of any provision of this Assignment shall be effective unless it is in writing and signed by the parties and no waiver of any provision of this Assignment, nor consent to any departure by either party from it, shall be effective unless it is in writing and signed by the affected party, and then such waiver or consent shall effective only in the specific instance and for the specific purpose for which given.

15.   CONFIDENTIALITY. Each Party agrees to maintain the confidentiality of this Agreement except to the extent (a) required or advisable to enforce or preserve such Party's rights hereunder or (b) required or requested pursuant to applicable law, regulation, or by the order of any court or governmental authority of competent jurisdiction; provided that either Party may disclose this Agreement and the transactions contemplated hereby to their legal counsel and other professionals and representatives, provided that such parties shall be obligated to maintain the confidentiality provisions contained herein, and provided further that Assignee may disclose this Agreement (but not the purchase rate or the purchase price) to potential purchasers, transferees, assignees or participants ("Transferees") provided that such Transferees have agreed to be bound by confidentiality provisions no less restrictive than contained herein.

*(Signatures on the following page)*

CONFIDENTIAL
WBA-0000181

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement by their duly authorized representatives as of this ___ day of January, 2017.

ASSIGNOR
**EARL OF SANDWICH (ATLANTIC CITY) LLC**

By:_____

ASSIGNEE
**COWEN SPECIAL INVESTMENTS LLC**

By:_____
Name:
Title:

-7-

## Schedule 1

**Assignor Wire Information:**


**Assignor Notice Information**



**Assignee Wire Information:**


**Assignee Notice Information:**

CONFIDENTIAL
WBA-0000183

## **Schedule 2**

### Purchase Price

| | |
|---|---|
| Claim Amount: | <u>$3,600,000.00</u> |
| Purchase Rate: | 59.7222% |
| Purchase Price: | $2,150,000.00 |

CONFIDENTIAL
WBA-0000184

## Exhibit A

### EVIDENCE OF TRANSFER OF CLAIM

TO: THE DEBTOR AND THE BANKRUPTCY COURT

For value received, the adequacy and sufficiency of which are hereby acknowledged, Earl of Sandwich (Atlantic City) LLC ("Assignor") hereby unconditionally and irrevocably sells, transfers and assigns to Cowen Special Investments LLC ("Assignee") 100% of its right, title, interest, claims and causes of action in and to, or arising under or in connection with, its claim (as such term is defined in Section 101(5) of the U.S. Bankruptcy Code), against Caesars Entertainment Operating Company, Inc. (the "Debtor"), the debtor in Case No. 15-01145 ("Case") pending in the United States Bankruptcy Court for the Northern District of Illinois (the "Bankruptcy Court"), and the relevant portion of any and all proofs of claim (No. 5858 and No. 5497) filed by Assignor or its predecessor-in-interest with the Bankruptcy Court in respect of the foregoing claims.

Assignor hereby waives any objection to the transfer of the claim to Assignee on the books and records of the Debtor and the Bankruptcy Court, and hereby waives to the fullest extent permitted by law any notice or right to a hearing as may be imposed by Rule 3001 of the Federal rules of Bankruptcy Procedure, the Bankruptcy Code, applicable local bankruptcy rules or applicable law.  Assignor acknowledges and understands, and hereby stipulates, that an order of the Bankruptcy Court may be entered without further notice to Assignor transferring to Assignee the foregoing claim, recognizing Assignee as the sole owner and holder of the claim, and directing that all payments or distributions of money or property in respect of the claim be delivered or made to the Assignee.

IN WITNESS WHEREOF, this EVIDENCE OF TRANSFER OF CLAIM is executed this ___ day of January 2017.

**EARL OF SANDWICH (ATLANTIC CITY) LLC**

By: _____
Name:
Title:


**COWEN SPECIAL INVESTMENTS LLC**

By: _____
Name:
Title:

-10-

**To:**     'Delano, Cindy Chen'[CDelano@whiteboxadvisors.com]
**From:**   Phillips, Danny
**Sent:**   Fri 3/24/2017 6:23:45 PM
**Subject:**  RE: CEOC -- Earl of Sandwich Claim

Hi Cindy,

Thank you for this email.  I am completing discussions on my side and will give you a call on Monday to discuss.

Have a great weekend.

Kind regards,
Danny

**Danny E. Phillips** | Director, Legal
Cowen Credit Research and Trading
262 Harbor Dr., 2nd Floor
Stamford, CT 06902
Tel:  (646) 616-3094
Cell: (202) 549-0984

danny.phillips@cowen.com



---

**From:** Delano, Cindy Chen [mailto:CDelano@whiteboxadvisors.com]
**Sent:** Friday, March 24, 2017 12:36 PM
**To:** Phillips, Danny <Danny.Phillips@cowen.com>
**Cc:** Patel, Amit <APatel@whiteboxadvisors.com>
**Subject:** FW: CEOC -- Earl of Sandwich Claim

[External Sender]
Danny,

Our external counsel had an idea on the claims transfer issue.  Given that EoS is not a common player in the claims trading space, wanted to share the below strategy with you.  We think it important to consummate a trade as it would be bad market precedent to permit otherwise under our facts.  Let me know if you have further feedback from your team.

Best,
Cindy

---

**From:** Mintz, Douglas S. [mailto:dmintz@orrick.com]
**Sent:** Monday, March 20, 2017 3:53 PM
**To:** Delano, Cindy Chen
**Cc:** Patel, Amit
**Subject:** CEOC -- Earl of Sandwich Claim

Further to our discussion:

Under Bankruptcy Rule 3001(e)(2), if a claim has been transferred after filing of the proof of claim, the transferee shall file "evidence of the transfer."  The transferor then has 21 days to file a timely objection.  "If the alleged transferor files a timely objection and the court finds, after notice and a hearing, that the claim has been transferred other than for security, it shall enter an order substituting the transferee for the transferor.  If a timely objection is not filed . . . the transferee shall be substituted for the transferor."

 WBA-0000343

Ordinarily, parties submit as evidence a brief document confirming the trade, signed by both parties and waiving the transferor's objection.  However, this is not required by the Rule – but rather market practice.  If there is other evidence of the transfer, there is nothing in the rule prohibiting you from filing it and requiring the transferor to object.  This would, at minimum, provide a great deal of leverage and if the evidence is viable, could suffice to ensure the transfer.

Let us know if you'd like to discuss further.

DM

**Douglas S. Mintz**

Partner

Orrick
Washington, DC 

T +1-202-339-8518
dmintz@orrick.com



Distressed Download Blog

---

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

For more information about Orrick, please visit *http://www.orrick.com.*

---

Confidentiality Notice and Disclaimer: This email and the information contained herein is confidential and is intended solely for the recipient. This email may contain information that is privileged or otherwise protected from disclosure. Delivery of this email or any of the information contained herein to anyone other than the recipient or his or her designated representative is unauthorized and any other use, reproduction, distribution or copying of this email or the information contained herein, in whole or in part, without the prior written consent of Whitebox Advisors LLC or its affiliates is prohibited. This email is not to be construed as investment advice. If you have received this message in error, please notify the sender immediately and delete this message and any related attachments.

This email and the information contained herein shall not constitute an offer to sell or the solicitation of an offer to purchase an interest in a fund. Any such offer or solicitation will be made to qualified investors only by means of an offering memorandum and related subscription agreement. Any performance information contained herein may be unaudited and estimated. Past performance is not necessarily indicative of future results. There can be no assurance that any fund's investment objective will be achieved or that an investor will not lose a portion or all of its investment.

This message and any attachments are confidential. If you are not the intended recipient, please notify the sender immediately and destroy this email. Any unauthorized use or dissemination is prohibited. All email sent to or from our system is subject to review and retention. Nothing contained in this email shall be considered an offer or solicitation with respect to the purchase or sale of any security in any jurisdiction where such an offer or solicitation would be illegal.

**To:** Phillips, Danny[Danny.Phillips@cowen.com]
**From:** Delano, Cindy Chen
**Sent:** Fri 6/9/2017 5:19:53 PM
**Subject:** Earl

Danny,

I want to let you know that we were approached by another institution trying to sell us the Earl claim.  We've informed them of our claim.  Tom Avellone from Planet Hollywood has reached out to me on this claim.  We understand from the other institution that there are two interested bidders.  Given this development, our release of Cowen per the assignment agreement is contingent on the agreement being executed promptly because if this claim trades again to a third party, we would be left with primarily a claim against Cowen.  I understand that the draft agreement is with Cowen.  Let me know how you want to proceed.

Best,
Cindy



**Cindy Chen Delano | Senior Legal Analyst**
Whitebox Advisors LLC | 3033 Excelsior Boulevard, Suite 300 | Minneapolis, MN 55416
direct (612) 355-2004 cell (612) 289-4757
Cdelano@whiteboxadvisors.com | whiteboxadvisors.com

Confidentiality Notice and Disclaimer: This email and the information contained herein is confidential and is intended solely for the recipient. This email may contain information that is privileged or otherwise protected from disclosure. Delivery of this email or any of the information contained herein to anyone other than the recipient or his or her designated representative is unauthorized and any other use, reproduction, distribution or copying of this email or the information contained herein, in whole or in part, without the prior written consent of Whitebox Advisors LLC or its affiliates is prohibited. This email is not to be construed as investment advice. If you have received this message in error, please notify the sender immediately and delete this message and any related attachments.

This email and the information contained herein shall not constitute an offer to sell or the solicitation of an offer to purchase an interest in a fund. Any such offer or solicitation will be made to qualified investors only by means of an offering memorandum and related subscription agreement. Any performance information contained herein may be unaudited and estimated. Past performance is not necessarily indicative of future results. There can be no assurance that any fund's investment objective will be achieved or that an investor will not lose a portion or all of its investment.

**To:** CDELANO1[cdelano@whiteboxadvisors.com]; JBOTTGE[JBOTTGE@Bloomberg.net]
**From:** CHAT-fs-587E708C03C8005B
**Sent:** Tue 1/17/2017 7:45:43 PM
**Subject:** IB: 2 Users, 18 Messages, 16 Minutes

[Go to start of conversation]

**Message Summary Table | Instant Bloomberg | Timezone:** Central Standard Time; **Started:** Jan 17 01:29:16 PM CST; **Finished:** Jan 17 01:45:43 PM CST; **Duration:** 16 Minutes

| Company | Participant | Bloomberg ID | Email | Joined | Duration | Messages |
|---|---|---|---|---|---|---|
| WHITEBOX ADVISORS, L | **CDELANO1** | **CDELANO1@Bloomberg.net** | **cdelano@whiteboxadvisors.com** | Jan 17 01:29:16 PM CST | 16 Minutes | 6 |

**(Jan 17 01:29:16 PM CST) CDELANO1** (WHITEBOX ADVISORS, L) **enters the conversation**

(Jan 17 01:29:28 PM CST) **CDELANO1** (WHITEBOX ADVISORS, L) **has invited user JBOTTGE** (COWEN AND COMPANY, L) :
Hi, is there an update on the status of our Czr claim and documentation?

**(Jan 17 01:29:28 PM CST) JBOTTGE** (COWEN AND COMPANY, L) **enters the conversation**

(Jan 17 01:29:32 PM CST) **JBOTTGE** (COWEN AND COMPANY, L) :
*** JILLIAN BOTTGE (COWEN AND COMPANY, LLC) Personal Disclaimer:

(Jan 17 01:29:32 PM CST) **JBOTTGE** (COWEN AND COMPANY, L) :
*** COWEN AND COMPANY, LLC (30285426) Disclaimer:

(Jan 17 01:29:39 PM CST) **CDELANO1** (WHITEBOX ADVISORS, L) :
This is the Earl of Sandwich claim.

(Jan 17 01:29:48 PM CST) **JBOTTGE** (COWEN AND COMPANY, L) :
this is what i just got back from gail..

(Jan 17 01:30:01 PM CST) **JBOTTGE** (COWEN AND COMPANY, L) :
Hi Jillian, We were in touch with the Seller late Friday and waiting to hear from him. We explained the deadline (confirmation hearing is today) and have also contacted the claims administrator regarding transferability should the plan be confirmed today. I will get back to you as soon as I have more info, hopefully within the next few hours.

(Jan 17 01:30:43 PM CST) **CDELANO1** (WHITEBOX ADVISORS, L) :
We will need to address record date in the agreement to account for timing updates. Thank you.

(Jan 17 01:30:49 PM CST) **JBOTTGE** (COWEN AND COMPANY, L) :
i will relay that

(Jan 17 01:32:34 PM CST) **JBOTTGE** (COWEN AND COMPANY, L) :
spoke to amit earlier about any additional claims we find going forward

(Jan 17 01:32:39 PM CST) **JBOTTGE** (COWEN AND COMPANY, L) :
given confirmation hearing today, etc

(Jan 17 01:33:32 PM CST) **CDELANO1** (WHITEBOX ADVISORS, L) :
Yes, I wonder if we need to switch to a proceeds agreement instead for post-confirmation/reorg distributions?

(Jan 17 01:34:07 PM CST) **JBOTTGE** (COWEN AND COMPANY, L) :
two options..

(Jan 17 01:34:32 PM CST) **JBOTTGE** (COWEN AND COMPANY, L) :

WBA-0000353

1. Ask for an exception to transfer as the people we are talking with are in the top 20 trade creditors (they may make the exception because of this) or 2. Run it through a participation.

IB (Jan 17 01:34:43 PM CST) **JBOTTGE** (COWEN AND COMPANY, L) :
ill be a pessimist and say we should just assume the latter

IB (Jan 17 01:35:02 PM CST) **CDELANO1** (WHITEBOX ADVISORS, L) :
yeah, that may be the case then

IB (Jan 17 01:35:21 PM CST) **JBOTTGE** (COWEN AND COMPANY, L) :
only issue with participation is the counterparty risk.. would love if we could get exceptions though for transfer

IB (Jan 17 01:35:40 PM CST) **CDELANO1** (WHITEBOX ADVISORS, L) :
I agree. Would prefer an assignment always

IB (Jan 17 01:36:50 PM CST) **JBOTTGE** (COWEN AND COMPANY, L) :
from Gail -- I just got off the phone with the claims agent and they are checking on transferability (Plan was confirmed) and said they will get back to me today. Revising language in the doc is reasonable and should not be a problem.

IB (Jan 17 01:45:43 PM CST) **CDELANO1** (WHITEBOX ADVISORS, L) :
great; thanks

---

Processed by **Global Relay Message Converter for Bloomberg** | V2.0.0 | File (IB) Message | 2017-01-18 01:18:47 AM CST

CONFIDENTIAL                                                                                              WBA-0000354

**To:** APATEL362[apatel@whiteboxadvisors.com]; JBOTTGE[JBOTTGE@Bloomberg.net]
**From:** CHAT-fs-5899D57301BC006E
**Sent:** Tue 2/7/2017 8:02:38 PM
**Subject:** IB: 2 Users, 19 Messages, 5 Hours 51 Minutes

Go to start of conversation

**Message Summary Table | Instant Bloomberg | Timezone:** Central Standard Time; **Started:** Feb 07 08:10:59 AM CST; **Finished:** Feb 07 02:02:38 PM CST; **Duration:** 5 Hours 51 Minutes

| Company | Participant | Bloomberg ID | Email | Joined | Duration | Messages |
|---|---|---|---|---|---|---|
| WHITEBOX ADVISORS, L | **APATEL362** | **APATEL362@Bloomberg.net** | **apatel@whiteboxadvisors.com** | Feb 07 08:11:05 AM CST | 5 Hours 51 Minutes | 10 |

**(Feb 07 08:10:59 AM CST) JBOTTGE** (COWEN AND COMPANY, L) **enters the conversation**

(Feb 07 08:11:04 AM CST) **JBOTTGE** (COWEN AND COMPANY, L) **has invited user APATEL362** (WHITEBOX ADVISORS, L) :
here is my updated claims focus list:

**(Feb 07 08:11:05 AM CST) APATEL362** (WHITEBOX ADVISORS, L) **enters the conversation**

(Feb 07 08:11:32 AM CST) **JBOTTGE** (COWEN AND COMPANY, L) :
BANKRUPTCY • Republic Airlines –high 30s • Peabody 1st lien claims – upper 90s • Peabody GUC – mid teens/upper teens • Caesars I Claims – 60s (transferability questionable) • Caesars O Claims –low/mid 60s • Caesars M Claims – mid 90s • Ultra Petroleum (GUC) – have yet to trade high 80s/low 90s? INSURANCE LIQUIDATION • The Home Insurance Liquidation – mid 50s gross • Midland Insurance Liquidation – low 20s net FRAUD • Stanford International Bank – mid teens • Madoff Direct – high teens/low 20s net • Petters • Platinum Partners DISTRESSED SECONDARIES • Fairfield Sentry • Fairfield Sigma • Hermes • Lancelot • Palm Beach CLASS ACTION • Interchange (Visa/MasterCard Class Action) – approx. 1.25%

(Feb 07 08:12:28 AM CST) **APATEL362** (WHITEBOX ADVISORS, L) :
*** AMIT PATEL (WHITEBOX ADVISORS, LLC) Personal Disclaimer:

(Feb 07 08:12:28 AM CST) **APATEL362** (WHITEBOX ADVISORS, L) :
*** WHITEBOX ADVISORS, LLC (107547) Disclaimer:

(Feb 07 08:18:34 AM CST) **JBOTTGE** (COWEN AND COMPANY, L) :
let me know if there are others on that list that you guys care on.. besides the ones we talk about

(Feb 07 08:30:50 AM CST) **APATEL362** (WHITEBOX ADVISORS, L) :
ok thx

(Feb 07 08:30:54 AM CST) **APATEL362** (WHITEBOX ADVISORS, L) :
keep us up on hilton

(Feb 07 08:32:20 AM CST) **JBOTTGE** (COWEN AND COMPANY, L) :
yup

(Feb 07 08:43:53 AM CST) **APATEL362** (WHITEBOX ADVISORS, L) :
did you guys notice earl of sandwich?

(Feb 07 08:44:23 AM CST) **JBOTTGE** (COWEN AND COMPANY, L) :
no. is this going to put me in a bad mood

(Feb 07 08:44:35 AM CST) **APATEL362** (WHITEBOX ADVISORS, L) :
why not?

IB (Feb 07 08:44:37 AM CST) **JBOTTGE** (COWEN AND COMPANY, L) :
checked the docket the other day.. didnt see anything

IB (Feb 07 08:46:03 AM CST) **APATEL362** (WHITEBOX ADVISORS, L) :
can you send cindy the upstream confirm?

IB (Feb 07 08:46:08 AM CST) **APATEL362** (WHITEBOX ADVISORS, L) :
we want to look at the language

IB (Feb 07 08:48:00 AM CST) **JBOTTGE** (COWEN AND COMPANY, L) :
ill check.. im not sure we ever got the assignment of claim agreement executed with them

IB (Feb 07 09:01:37 AM CST) **APATEL362** (WHITEBOX ADVISORS, L) :
no not the AOC the confirm

IB (Feb 07 09:01:47 AM CST) **APATEL362** (WHITEBOX ADVISORS, L) :
didnt you guys get a confirm from them to match the downstream?

IB (Feb 07 09:01:53 AM CST) **JBOTTGE** (COWEN AND COMPANY, L) :
checking

IB (Feb 07 09:46:28 AM CST) **JBOTTGE** (COWEN AND COMPANY, L) :
i do not have an upstream confirm

IB (Feb 07 01:35:57 PM CST) **JBOTTGE** (COWEN AND COMPANY, L) :
let me know if you want to chat

**(Feb 07 02:00:08 PM CST)** **JBOTTGE** (COWEN AND COMPANY, L) **leaves the conversation**

**(Feb 07 02:02:38 PM CST)** **JBOTTGE** (COWEN AND COMPANY, L) **enters the conversation**

Processed by **Global Relay Message Converter for Bloomberg** | V2.0.0 | File (IB) Message | 2017-02-08 02:21:55 AM CST

**To:**  CDELANO1[cdelano@whiteboxadvisors.com]; JBOTTGE[JBOTTGE@Bloomberg.net]
**From:**  CHAT-fs-58B43C0E01040007
**Sent:**  Mon 2/27/2017 4:42:41 PM
**Subject:**  IB: 2 Users, 17 Messages, 1 Hour 54 Minutes

Go to start of conversation

**Message Summary Table | Instant Bloomberg | Timezone:** Central Standard Time; **Started:** Feb 27 08:47:42 AM CST; **Finished:** Feb 27 10:42:41 AM CST; **Duration:** 1 Hour 54 Minutes

| Company | Participant | Bloomberg ID | Email | Joined | Duration | Messages |
|---|---|---|---|---|---|---|
| WHITEBOX ADVISORS, L | **CDELANO1** | **CDELANO1@Bloomberg.net** | **cdelano@whiteboxadvisors.com** | Feb 27 08:47:43 AM CST | 1 Hour 54 Minutes | 9 |

**(Feb 27 08:47:42 AM CST) JBOTTGE** (COWEN AND COMPANY, L) **enters the conversation**

(Feb 27 08:47:43 AM CST) **JBOTTGE** (COWEN AND COMPANY, L) **has invited user CDELANO1** (WHITEBOX ADVISORS, L) :
hi cindy

**(Feb 27 08:47:43 AM CST) CDELANO1** (WHITEBOX ADVISORS, L) **enters the conversation**

(Feb 27 08:47:50 AM CST) **JBOTTGE** (COWEN AND COMPANY, L) :
what time works best for you guys this afternoon?

(Feb 27 08:47:57 AM CST) **JBOTTGE** (COWEN AND COMPANY, L) :
to chat re: earl of sandwich

(Feb 27 08:52:25 AM CST) **CDELANO1** (WHITEBOX ADVISORS, L) :
*** CINDY DELANO (WHITEBOX ADVISORS, LLC) Personal Disclaimer:

(Feb 27 08:52:25 AM CST) **CDELANO1** (WHITEBOX ADVISORS, L) :
*** WHITEBOX ADVISORS, LLC (107547) Disclaimer:

(Feb 27 10:40:57 AM CST) **CDELANO1** (WHITEBOX ADVISORS, L) :
hi

(Feb 27 10:41:13 AM CST) **CDELANO1** (WHITEBOX ADVISORS, L) :
sorry, had meetings all morning

(Feb 27 10:41:23 AM CST) **JBOTTGE** (COWEN AND COMPANY, L) :
ha. i just thought i wonder if cindy is avoiding me

(Feb 27 10:41:32 AM CST) **CDELANO1** (WHITEBOX ADVISORS, L) :
never! Just a crazy start

(Feb 27 10:41:37 AM CST) **JBOTTGE** (COWEN AND COMPANY, L) :
i forgot amit was in miami today

(Feb 27 10:41:37 AM CST) **CDELANO1** (WHITEBOX ADVISORS, L) :
How is 4:30 pm

(Feb 27 10:42:07 AM CST) **JBOTTGE** (COWEN AND COMPANY, L) :
any chance you can do 4pm?

(Feb 27 10:42:19 AM CST) **JBOTTGE** (COWEN AND COMPANY, L) :
or 4:05

WBA-0000357

IB (Feb 27 10:42:21 AM CST) **CDELANO1** (WHITEBOX ADVISORS, L) :
I have a meeting that might run over

IB (Feb 27 10:42:26 AM CST) **CDELANO1** (WHITEBOX ADVISORS, L) :
Lets go with 405

IB (Feb 27 10:42:34 AM CST) **CDELANO1** (WHITEBOX ADVISORS, L) :
And hopefully the prior one ends on time

IB (Feb 27 10:42:37 AM CST) **JBOTTGE** (COWEN AND COMPANY, L) :
okay.. perfect

IB (Feb 27 10:42:41 AM CST) **JBOTTGE** (COWEN AND COMPANY, L) :
thank you.. ill call you direct

---

Processed by **Global Relay Message Converter for Bloomberg** | V2.0.0 | File (IB) Message | 2017-02-27 10:59:37 PM CST

**To:** CDELANO1[cdelano@whiteboxadvisors.com]; JBOTTGE[JBOTTGE@Bloomberg.net]
**From:** CHAT-fs-58B5811F01D8001D
**Sent:** Tue 2/28/2017 6:31:56 PM
**Subject:** IB: 2 Users, 15 Messages, 4 Hours 37 Minutes

[Go to start of conversation](#)

---

**Message Summary Table | Instant Bloomberg | Timezone:** Central Standard Time; **Started:** Feb 28 07:54:39 AM CST; **Finished:** Feb 28 12:31:56 PM CST; **Duration:** 4 Hours 37 Minutes

| Company | Participant | Bloomberg ID | Email | Joined | Duration | Messages |
|---------|-------------|--------------|-------|--------|----------|----------|
| WHITEBOX ADVISORS, L | **CDELANO1** | **CDELANO1@Bloomberg.net** | **cdelano@whiteboxadvisors.com** | Feb 28 08:59:34 AM CST | 3 Hours 32 Minutes | 9 |

---

**(Feb 28 07:54:39 AM CST) JBOTTGE** (COWEN AND COMPANY, L) **enters the conversation**

---

(Feb 28 08:59:34 AM CST) **JBOTTGE** (COWEN AND COMPANY, L) **has invited user CDELANO1** (WHITEBOX ADVISORS, L) :
hey

**(Feb 28 08:59:34 AM CST) CDELANO1** (WHITEBOX ADVISORS, L) **enters the conversation**

---

(Feb 28 08:59:36 AM CST) **JBOTTGE** (COWEN AND COMPANY, L) :
q for you

(Feb 28 08:59:37 AM CST) **CDELANO1** (WHITEBOX ADVISORS, L) :
*** CINDY DELANO (WHITEBOX ADVISORS, LLC) Personal Disclaimer:

(Feb 28 08:59:37 AM CST) **CDELANO1** (WHITEBOX ADVISORS, L) :
*** WHITEBOX ADVISORS, LLC (107547) Disclaimer:

(Feb 28 08:59:40 AM CST) **CDELANO1** (WHITEBOX ADVISORS, L) :
hi

(Feb 28 09:00:53 AM CST) **JBOTTGE** (COWEN AND COMPANY, L) :
timing wise.. do you guys think you'll be able to circle back to hilton with comments this morning? i realize amit is traveling

(Feb 28 09:01:09 AM CST) **CDELANO1** (WHITEBOX ADVISORS, L) :
yes

(Feb 28 09:01:24 AM CST) **CDELANO1** (WHITEBOX ADVISORS, L) :
It is really straight forward and I was just sending one last item to Amy

(Feb 28 09:01:29 AM CST) **JBOTTGE** (COWEN AND COMPANY, L) :
oh. GREAT.

(Feb 28 09:03:18 AM CST) **CDELANO1** (WHITEBOX ADVISORS, L) :
anytime

(Feb 28 09:05:24 AM CST) **JBOTTGE** (COWEN AND COMPANY, L) :
are you still waiting on the earl of sandwich recap/letter?

(Feb 28 09:05:47 AM CST) **CDELANO1** (WHITEBOX ADVISORS, L) :
yes, thank you for following up on that

(Feb 28 09:06:05 AM CST) **JBOTTGE** (COWEN AND COMPANY, L) :
k. will follow up with danny

                                                                    WBA-0000359

**IB** (Feb 28 09:06:18 AM CST) **CDELANO1** (WHITEBOX ADVISORS, L) :
Appreciate it!!

**IB** (Feb 28 12:31:33 PM CST) **JBOTTGE** (COWEN AND COMPANY, L) :
earl of sandwich recap to you

**IB** (Feb 28 12:31:56 PM CST) **CDELANO1** (WHITEBOX ADVISORS, L) :
okay; got it. Thank you

---

Processed by **Global Relay Message Converter for Bloomberg** | V2.0.0 | File (IB) Message | 2017-02-28 10:14:45 PM CST

CONFIDENTIAL

**To:**  STUKAS1[nstukas@whiteboxadvisors.com]; APATEL362[apatel@whiteboxadvisors.com]
**From:**  CHAT-fs-5900BF2A192C0002
**Sent:**  Thur 4/27/2017 1:43:46 AM
**Subject:**  IB: 2 Users, 24 Messages, 10 Hours 4 Minutes

Go to start of conversation

**Message Summary Table | Instant Bloomberg | Timezone:** Central Standard Time; **Started:** Apr 26 10:39:24 AM CDT; **Finished:** Apr 26 08:43:46 PM CDT; **Duration:** 10 Hours 4 Minutes

| Company | Participant | Bloomberg ID | Email | Joined | Duration | Messages |
|---|---|---|---|---|---|---|
| WHITEBOX ADVISORS, L | **STUKAS1** | **STUKAS1@Bloomberg. net** | **nstukas@whiteboxadvisors. com** | Apr 26 10:39:24 AM CDT | 10 Hours 4 Minutes | 12 |
| WHITEBOX ADVISORS, L | **APATEL362** | **APATEL362@Bloomberg.net** | **apatel@whiteboxadvisors.com** | Apr 26 12:10:10 PM CDT | 4 Hours 23 Minutes | 12 |

**(Apr 26 10:39:24 AM CDT)** STUKAS1 (WHITEBOX ADVISORS, L) **enters the conversation**

(Apr 26 10:39:35 AM CDT) **STUKAS1** (WHITEBOX ADVISORS, L) :
\*\*\* NICKOLAS STUKAS (WHITEBOX ADVISORS, L) Personal Disclaimer:

(Apr 26 10:39:35 AM CDT) **STUKAS1** (WHITEBOX ADVISORS, L) :
\*\*\* WHITEBOX ADVISORS, L (107547) Disclaimer:

**(Apr 26 12:10:10 PM CDT)** APATEL362 (WHITEBOX ADVISORS, L) **enters the conversation**

(Apr 26 02:42:34 PM CDT) **APATEL362** (WHITEBOX ADVISORS, L) :
Czr en fuego

(Apr 26 02:50:00 PM CDT) **STUKAS1** (WHITEBOX ADVISORS, L) :
yes

(Apr 26 02:50:25 PM CDT) **STUKAS1** (WHITEBOX ADVISORS, L) :
in some sense good because we are bit light

(Apr 26 02:50:55 PM CDT) **APATEL362** (WHITEBOX ADVISORS, L) :
Haha

(Apr 26 02:51:12 PM CDT) **STUKAS1** (WHITEBOX ADVISORS, L) :
in another sense unfortunate because the converts will be less interesting

(Apr 26 02:51:13 PM CDT) **APATEL362** (WHITEBOX ADVISORS, L) :
Relax this one shouldn't keep u up at night

(Apr 26 02:51:42 PM CDT) **APATEL362** (WHITEBOX ADVISORS, L) :
But now Cowen is starting to owe us real money

(Apr 26 02:51:54 PM CDT) **APATEL362** (WHITEBOX ADVISORS, L) :
On that earl of sandwich

(Apr 26 02:51:57 PM CDT) **STUKAS1** (WHITEBOX ADVISORS, L) :
yeah

(Apr 26 02:54:44 PM CDT) **STUKAS1** (WHITEBOX ADVISORS, L) :
there hasn't been another turn from them has there?

🆔 (Apr 26 03:00:13 PM CDT) **APATEL362** (WHITEBOX ADVISORS, L) :
The lawyers are speaking today w each other

🆔 (Apr 26 03:00:35 PM CDT) **APATEL362** (WHITEBOX ADVISORS, L) :
They want to assign their rights to us but I fear Cowen is actually the party that screwed up

🆔 (Apr 26 03:00:55 PM CDT) **APATEL362** (WHITEBOX ADVISORS, L) :
So we are trying to get a detailed account of how it went down w seller

🆔 (Apr 26 03:01:08 PM CDT) **APATEL362** (WHITEBOX ADVISORS, L) :
Which Cowen has been hesitant to give

🆔 (Apr 26 03:01:33 PM CDT) **STUKAS1** (WHITEBOX ADVISORS, L) :
this could be bad

🆔 (Apr 26 03:02:01 PM CDT) **STUKAS1** (WHITEBOX ADVISORS, L) :
it's now almost a million bucks

🆔 (Apr 26 03:05:24 PM CDT) **APATEL362** (WHITEBOX ADVISORS, L) :
We are not booking those gains are we?

🆔 (Apr 26 03:07:13 PM CDT) **STUKAS1** (WHITEBOX ADVISORS, L) :
I guess we need to think about that. currently we are marking the earl of sandwich claim at the same price (currently 68) as the other CZR claims. we will need to mark the other claims up at month-end, and we should probably mark the earl of sandwich claim down to our cost at the purported trade.

🆔 (Apr 26 03:07:45 PM CDT) **STUKAS1** (WHITEBOX ADVISORS, L) :
I am not including it in manging the hedge

🆔 (Apr 26 03:15:15 PM CDT) **APATEL362** (WHITEBOX ADVISORS, L) :
Agree

🆔 (Apr 26 03:16:01 PM CDT) **STUKAS1** (WHITEBOX ADVISORS, L) :
I know you did the quarter-end with the valuation agent. maybe i'll have a word w riepe.

🆔 (Apr 26 03:27:36 PM CDT) **APATEL362** (WHITEBOX ADVISORS, L) :
Ok

**(Apr 26 04:33:32 PM CDT)** **APATEL362** (WHITEBOX ADVISORS, L) **leaves the conversation**

**(Apr 26 08:43:46 PM CDT)** **STUKAS1** (WHITEBOX ADVISORS, L) **leaves the conversation**

CONFIDENTIAL                                                                                    WBA-0000362

**To:**     Phillips, Danny[Danny.Phillips@cowen.com]
**From:**   Delano, Cindy Chen
**Sent:**    Tue 5/9/2017 1:57:28 PM
**Subject:**  FW: Caesars -- Earl Claims

Danny,

I wanted to give you a heads up, but the discussions with your external counsel have been baffling.  We simply asked to do our due diligence before agreeing to a waiver of claims against Cowen for negligence but we are told that the waiver MUST happen before any due diligence.  We would be remissed to not do any due diligence and this would not comport with our compliance and legal standards.

If Scott continues this very uncommercial approach, we would be left with no choice but to file a complaint.  I didn't think that is the ideal resolution for both Cowen and WB at the moment, but we will do what is necessary.

Best,
Cindy

**From:** Balber, Scott [mailto:Scott.Balber@hsf.com]
**Sent:** Tuesday, May 09, 2017 8:23 AM
**To:** Mintz, Douglas S.
**Cc:** Delano, Cindy Chen; Patel, Amit
**Subject:** RE: Caesars -- Earl Claims

Yes, and I returned your call.

**From:** Mintz, Douglas S. [mailto:dmintz@orrick.com]
**Sent:** Tuesday, May 09, 2017 9:22 AM
**To:** Balber, Scott
**Cc:** CDelano@whiteboxadvisors.com; APatel@whiteboxadvisors.com
**Subject:** Re: Caesars -- Earl Claims

I left word with your assistant yesterday but will call you shortly.

Douglas S. Mintz
  Orrick
  Phone: 646-234-6773
  Email: dmintz@orrick.com
       douglasmintz@gmail.com


On May 9, 2017, at 9:14 AM, Balber, Scott <Scott.Balber@hsf.com> wrote:

Doug - I have not heard back from you. Please call me this morning.

Scott Balber
Herbert Smith Freehills NY LLP

**From:** Delano, Cindy Chen [mailto:CDelano@whiteboxadvisors.com]
**Sent:** Monday, May 08, 2017 05:01 PM
**To:** Balber, Scott; Mintz, Douglas S. <dmintz@orrick.com>
**Cc:** Patel, Amit <APatel@whiteboxadvisors.com>
**Subject:** RE: Caesars -- Earl Claims

Okay for lawyers to speak but we also want to speak to the business folks.  Thank you.

&lt;image002.png&gt;      **Cindy Chen Delano | Senior Legal Analyst**
                 Whitebox Advisors LLC | 3033 Excelsior Boulevard, Suite 300 | Minneapolis, MN 55416
                 direct (612) 355-2004 cell (612) 289-4757

                                                  WBA-0000363

**To:**      Balber, Scott[Scott.Balber@hsf.com]
**Cc:**      Mintz, Douglas S.[dmintz@orrick.com]; Fechik, Matthew[mfechik@orrick.com]; Amend, Peter J.[pamend@orrick.com]
**From:**   Pasacreta, Amy
**Sent:**   Mon 6/5/2017 8:00:52 PM
**Subject:**  Caesars EOS Claim

Caesars -- Orrick Comments to Assignment Clean - Caesars -- Orrick Comments to Assignment Clean.pdf
#766915008v5_USA_ - WB_Earl - declaration.docx

Scott-

Attached is a blackline of the assignment and release reflecting many of the changes you requested.  Also attached is the declaration you have been discussing with Doug.  Both the revised assignment and release and declaration are being sent prior to review by Whitebox and as such both remain subject to further review and comments.

Please note, the parties providing the release will be Whitebox Asymmetric Partners, L.P., Whitebox Multi-Strategy Partners, L.P., and Whitebox Institutional Partners, L.P. ; Whitebox Advisors, LLC will not be providing the release. Also note, there will be an assignment and release for each of the Whitebox entities.


**Amy G. Pasacreta**

Attorney At Law

Orrick
New York  

T +1-212-506-5159
apasacreta@orrick.com



Distressed Download Blog



WBA-0000421

**FRE 408 CONFIDENTIAL COMMUNICATION**

**ORRICK COMMENTS 5~~6~~/~~11~~1/17**

**ASSIGNMENT AND RELEASE AGREEMENT**

| | |
|---|---|
| SELLER: | Cowen Special Investments LLC |
| Address: | 830 Third Avenue, 4th Floor, |
| | New York, NY 10022 |
| Attention: | Bradly D. Schwab |
| Phone: | 646-616-3081 |
| Email: | Bradly.schwab@cowen.com |
| | |
| BUYER: | Whitebox Multi-Strategy Partners, LP |
| Address: | 3033 Excelsior Blvd, Ste 300 Minneapolis, MN 55416 |
| Attention: | Scott Specken |
| Email: | sspecken@whiteboxadvisors.com |
| Phone: | 612-253-6061 |

AGREEMENT DATE:       ~~May~~June__ , 2017

DEBTOR:                          Caesars Entertainment Operating Company, Inc., et. al.

PROCEEDINGS:              Case No. 15-01145 jointly administered (the "Chapter 11 Cases")
                                        and currently pending in the United States Bankruptcy Court for
                                        the Northern District of Illinois Eastern Division (the "Bankruptcy
                                        Court").

PETITION DATE:             January 14, 2015

CLAIM:                            general unsecured claim asserted by Earl of Sandwich (Atlantic
                                        City) LLC (the "Claimholder") against the Debtor in a principal
                                        amount of not less than $3,600,000.00

WHEREAS, on April 18, 2015, the Claimholder filed with the Bankruptcy Court a proof
of c laim w ith r espect t o a l ease t ermination, w hich w as a ssigned c laim n umber 5 497 ( the
"Original Proof of Claim").

WHEREAS, on September 1, 2016, Claimholder filed an amended proof of claim which
was a ssigned c laim n umber 5 858 a nd a mended a nd s uperseded t he O riginal P roof o f C laim
which was expunged pursuant to the Order Sustaining Debtors' Twentieth Omnibus Objection to
Certain P roofs o f C laim ( Amended a nd R eplaced C laims) ( Non-Substantive) ( the  "Proof o f
Claim").

CONFIDENTIAL
                                                                                          WBA-0000422

WHEREAS, on October 20, 2016, the Debtors filed their Third Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code (as amended or modified, the "Plan"), which was confirmed by the Bankruptcy Court pursuant to that certain order dated January 17, 2017.

WHEREAS, on or about January 12, 2017, Seller sought to purchase the following from Claimholder (the "Seller Transaction"): (i) the Claim, together with any and all right to receive principal, interest, fees, damages, penalties and other amounts in respect of the Claim (in each case whether accruing prior to, on, or after the date of this Agreement), (ii) the Proof of Claim and any other proofs of claim filed (regardless of filing date) with respect to the Claim; (iii) any actions, claims, rights, lawsuits and/or causes of action against the Debtor arising out of or in connection with any of the foregoing; and (iv) all proceeds of any kind of the foregoing, including, without limitation, all cash, securities or other property distributed or payable on account thereof, or exchanged in return therefor for ((i)-(iv) collectively, the "Rights").

WHEREAS, Seller corresponded with Claimholder regarding the Rights and the Proceedings.

WHEREAS, the Claimholder has not executed ~~the Seller Agreement~~any assignment agreement or other documentation or filed a notice of transfer with respect to the Proof of Claim.

WHEREAS, on May 17, 2017, Seller allowed Buyer's counsel to view copies of the Due Diligence (defined below) ~~with Buyer's counsel~~; and

WHEREAS, upon the terms and subject to the conditions set forth in this Agreement, Seller desires to sell, transfer, assign, grant and convey to Buyer, and Buyer desires to purchase, acquire and receive, the Transferred Rights (as defined hereinafter).

NOW THEREFORE, Buyer and Seller (each a "Party" and collectively, the "Parties") agree as follows:

1.      Seller, for good and valuable consideration, does hereby irrevocably sell, convey, transfer and assign unto Buyer (a) any and all rights Seller may have to purchase the Rights directly from Claimholder and (b) any and all actions, claims, rights, remedies, lawsuits and/or causes of action Seller has against the Claimholder arising out of or in connection with the Seller Transaction (the "Transferred Rights").   This assignment shall be deemed an absolute and unconditional assignment of the Transferred Rights for the purpose of collection and satisfaction and shall not be deemed to create a security interest.

2.      Seller's obligation to sell, transfer, assign, grant and convey the Transferred Rights to Buyer is subject to all of the following: (a) Buyer's representations and warranties being true and correct, (b) Buyer having complied with all covenants required by this Agreement to be complied with by it, (c) Buyer having received (i) copies of the Due Diligence and (ii) fully executed Declaration (attached hereto as Exhibit A ), (d) Seller having received this Agreement fully executed by Buyer and (e) Seller having received the [one dollar (the "Purchase Price") by wire transfer of immediately available funds] in accordance with written wire instructions specified by Seller.

2

OHSUSA:~~766869828.2~~766869828.4

3.      Seller represents, warrants and covenants to Buyer and Buyer's successors and assigns as of the date hereof (the "Effective Date") that:

(a)   Seller is duly organized and validly existing under the laws of its jurisdiction of organization, is in good standing under such laws, and is authorized and empowered to execute, deliver and perform this Agreement, and this Agreement constitutes the valid, legal and binding agreement of Seller, enforceable against Seller in accordance with its terms;

(b) Except for filings that are expressly contemplated by this Agreement, no consent, approval, filing or corporate, partnership or other action is required as a condition to or in connection with execution, delivery and performance of this Agreement and the transactions contemplated herein;

(c)  To the best of Seller's knowledge, the Claimholder has timely and properly filed the Proof of Claim and Buyer shall assume no obligations or liabilities in respect of the Rights, including but not limited to the obligation to file any proof of claim with respect to the Claim;

(d) To the best of Seller's knowledge, neither the execution, delivery or performance of this Agreement, nor consummation of the transactions contemplated hereby, will violate or contravene any law, rule, regulation, order or agreement affecting Seller;

(e)  Seller is the sole legal and beneficial owner of, and has good title to, the Transferred Rights, free and clear of (i) any legal, regulatory or contractual restriction on transfer or (ii) any pledge, lien, claim, security interest, participation, factoring agreement or other encumbrance of any type or kind (collectively, the "Liens") and will transfer to Buyer such good title free and clear of Liens;

(f) Seller believes that it would be able to assert a claim, that would not violate Rule 11 of the Federal Rules of Civil Procedure or Rule 9011 of the Federal Rules of Bankruptcy Procedure, that the Seller Transaction constitutes a valid and binding agreement which remains in full force and effect;

(g)   To the best of Seller's knowledge, the Claim is a valid, liquidated, non-contingent, enforceable, "Class I" general unsecured claim against the Debtor;

(h)   Seller has not previously sold, transferred, assigned, participated or otherwise conveyed the Transferred Rights, nor has Seller agreed to do any of the foregoing (whether in whole or in part);

(i)   No payment or distribution has been received by or on behalf of Seller, in full or partial satisfaction of the Rights;

(j)   To the best Seller's knowledge, Seller has not engaged, and shall not engage, in any act, conduct or omission, or had any relationship with the ~~Claimholder~~Debtor or any of its affiliates that would result in Buyer receiving in respect of the ~~Transferred~~ Rights proportionately less in payments or distributions, or less favorable treatment (including the timing of payments or distributions) for the ~~Transferred~~ Rights than will be received on behalf of other general unsecured claims and administrative expense claims, as applicable;

3

CONFIDENTIAL                                                                      WBA-0000424

(k)       Seller has not engaged, and shall not engage, in any act, conduct or omission, or had any relationship with the Claimholder or any of its affiliates that would result in Buyer receiving in respect of the Transferred Rights proportionately less in payments or distributions, or less favorable treatment (including the timing of payments or distributions) for the Transferred Rights than will be received on behalf of other general unsecured claims and administrative expense claims, as applicable;

(k)(l)   Seller is not an "insider" of the Debtor or its affiliates within the meaning of Section 101(31) of the Bankruptcy Code, and is not a member of any official or unofficial committee in the Proceedings;

(l)(m)   Seller has not received any written notice (except as otherwise publicly available in the Proceedings (if any)), that the Rights or any portion thereof is void, voidable, or unenforceable;

(n)       To the best of Seller's knowledge, no objection to the Proof of Claim or the Rights has been made or threatened and there are no offsets, setoffs or legal or equitable defenses that have been (or may be) asserted by or on behalf of Debtor or any other party to reduce the amount of the Claim or impair the treatment of the Claim as compared to other general unsecured claims and administrative expense claims, as applicable;

(o)       To the best of Seller's knowledge, there are no preference actions against Claimholder, and, no legal or equitable defenses, counterclaims or offsets, reductions, recoupments, impairments, avoidances, disallowances or subordinations exist or, may be asserted by or on behalf of the Debtor to reduce the amount of the Rights or affect their validity or enforceability and no legal or equitable defenses, counterclaims or offsets;

(m)(p)   Upon execution of this Agreement, Seller shall provide to Buyer true and complete copies of allthe Due Diligence (defined belowa watermarked copy of which is attached hereto as Exhibit B);

(n)(q)   The Due Diligence, which Buyer's counsel was allowed to view in its entirety, prior to the Effective Date includes all communication includes all written communications between Seller and Claimholder with respect to Seller's purchase of the Claim from the Claimholderand no other communications exist which conflict with the Seller's assertion that it has the right to purchase the Claim;

(o)(r)   Seller is not "insolvent" within the meaning of Section 1-201(23) of the Uniform Commercial Code or Section 101(32) of the Bankruptcy Code, has adequate capital to conduct its business and has not filed a petition seeking protection under the Bankruptcy Code or similar statute; and

(p)(s)   either (i) no interest in the Transferred Rights is being sold by or on behalf of one or more Benefit Plans (as defined below) or (ii) the transaction exemption set forth in one or more prohibited transaction class exemption issued by the U.S. Department of Labor ("PTE"), such as PTE 84-14 (a class exemption for certain transactions determined by independent qualified professional asset managers), PTE 95-60 (a class exemption for certain transactions involving insurance company general accounts), PTE 90-1 (a class exemption for certain transactions involving insurance company pooled separate accounts), PTE 91-38 (a class exemption for

4

CONFIDENTIAL

WBA-0000425

certain t ransactions i nvolving b ank c ollective i nvestment f unds), a nd P TE 9 6-23 ( a c lass exemption for c ertain t ransactions d etermined b y in-house a sset m anagers) i s a pplicable w ith respect to the sale of the Transferred Rights.  "Benefit Plan" means an "employee benefit plan" (as defined in ERISA) that is subject to Title I of the Employee Retirement Income Security Act of 1974, as amended, and the rules and regulations promulgated under it ("ERISA"), a "plan" as defined in Section 4975 of the Code or any Entity whose assets include (for purposes of ERISA Section 3 (42) or otherwise for purposes of Title I of ERISA or Section 4975 of the Code) the assets of any such "employee benefit plan" or "plan".

4. Buyer represents and warrants to Seller as of the Effective Date that:

(a)  B uyer i s d uly o rganized a nd v alidly e xisting u nder t he l aws o f i ts j urisdiction o f organization, is in good standing under such laws, and is authorized and empowered to execute, deliver and perform this Agreement, and this Agreement constitutes the valid, legal and binding agreement of Buyer, enforceable against Buyer in accordance with its terms;

(b) except for filings that are expressly contemplated by this Agreement, no consent, approval, filing or corporate, partnership or other action is required as a condition to or in connection with execution, d elivery a nd p erformance o f t his A greement a nd t he t ransactions c ontemplated herein;

(c)  neither the execution, delivery or performance of this Agreement, nor consummation of the transactions contemplated hereby, will violate or contravene any law, rule, regulation, order or agreement affecting Buyer;

(d)  Buyer has (i) reviewed the terms and provisions of this Agreement, and has evaluated the restrictions and obligations contained herein and therein; (ii) agreed to the Release based on its own i ndependent i nvestigation a nd c redit d etermination; a nd ( iii)  not r elied o n a ny representation or warranty made by Seller, except as expressly set forth herein; and

(e) either (i) no interest in the Transferred Rights is being acquired by or on behalf of an entity that is, or at any time while the Transferred Rights are held thereby will be, one or more Benefit Plans or (ii) the transaction exemption set forth in one or more PTEs, such as PTE 84-14 (a class exemption f or c ertain t ransactions d etermined b y i ndependent q ualified p rofessional a sset managers), PTE 95-60 (a class exemption for certain transactions involving insurance company general a ccounts), P TE 9 0-1 ( a c lass e xemption f or c ertain t ransactions i nvolving i nsurance company p ooled s eparate a ccounts), P TE 9 1-38 ( a c lass e xemption f or c ertain t ransactions involving b ank c ollective i nvestment f unds), a nd P TE 9 6-23 ( a c lass e xemption f or c ertain transactions determined by in-house asset managers) is applicable with respect to the purchase and holding of the Transferred Rights and the exercise of Buyer's rights thereunder.

5. Each P arty r epresents a nd w arrants t hat i t i s a s ophisticated e ntity a nd h as a dequate information c oncerning t he f inancial c ondition o f D ebtor a nd t he P roceedings t o m ake a n informed d ecision r egarding t he p urchase/sale o f t he T ransferred R ights a nd t hat i t h as independently and without reliance on the other Party, and based on such information as it has deemed appropriate, made its own decision to enter into this Agreement, except that it has relied on the other Party's express representations, warranties, covenants, agreements and indemnities

OHSUSA:766869828.2766869828.4

CONFIDENTIAL

WBA-0000426

as contained herein.  Each Party is aware that information which may be pertinent to the decision to transfer the Transferred Rights is available to it and can be obtained from the files of the Proceedings or other publicly available sources.  Each Party is aware that the consideration received/paid herein for the purchase/sale of the Transferred Rights may differ both in kind and amount from any distributions made pursuant to any plan of reorganization confirmed in the Proceedings.  Each Party acknowledges that the other may possess, and may come into possession of, material non-public information concerning the Transferred Rights, Debtor and/or the Proceedings ("Excluded Information").  Each Party further acknowledges that it has not requested to receive such Excluded Information from the other Party and has nevertheless determined to proceed with the transaction contemplated herein, and neither shall have any liability to the other Party, and each waives and releases any claims that it might have against the other, arising out of the non-disclosure of such Excluded Information; provided, however, that the Excluded Information shall not limit, contradict or render untrue any representation or warranty made by Seller or Buyer herein.

**6.**      Each Party acknowledges and agrees that the Purchase Price and the Release set forth in section 10 below are intended to represent "fair consideration" (as such term is used in Article 10 of the New York Debtor and Creditor Law, N.Y. Debt. & Cred. §§ 270 et seq.) and "reasonably equivalent value" (as such term is used in 11 U.S.C. § 548), or as analogously provided under similar statute or applicable law, for the transfer of such assets.

**7.**      Seller agrees that in the event Seller actually receives any distributions with respect to the Rights after the date hereof, Seller shall accept the same and shall hold the same in trust for the sole benefit of Buyer and shall promptly deliver the same to Buyer in the same form received (free of any withholding, set-off, claims or deduction of any kind except as required by law) within five Business Days in the case of cash ("Cash Distribution"). If any such amounts are not received by the Buyer within five Business Days, then beginning on the next calendar day, the amount payable shall begin to accrue interest at a rate of LIBOR + 5% per annum, and within seven business days in the case of non-Cash Distributions, with the endorsement of Seller (without recourse, representation or warranty) when necessary or appropriate. In the event Seller receives any notices (not otherwise publicly available) in respect of the Rights, Seller shall promptly deliver the same to Buyer.

(a) As used herein:

"Business Day" means any day that is not a Saturday, a Sunday or any other day on which the Federal Reserve Bank of New York is closed.

"LIBOR" means, for any day, the one-month London Interbank Offered Rate for deposits in U.S. Dollars as set by the British Bankers Association ("BBA") and published by the BBA at approximately 11:00 a.m. London time on such day.  For any day that is not a business day, LIBOR shall be the rate published by the BBA on the immediately preceding business day.

**8.**      (a) Upon execution of this Agreement, Buyer shall have any and all rights the Seller may have to enforce the terms of the Seller Transaction as against the Claimholder including without

OHSUSA:766869828.2766869828.4

limitation f iling p leadings, m otions o r n otices o f t ransfer w ith r espect t o t he t ransfer o f t he
Rights;

(b) ~~On the Effective Date, Seller shall promptly deliver to Buyer all Due Diligence (as defined below).~~ Seller a grees t o c ooperate w ith t he B uyer ~~in g ood f aith~~ t o e ffectuate t he i ntent a nd purpose of, and to carry out the terms of, this Agreement. ~~Seller hereby appoints Buyer as its true and lawful attorney-in-fact solely with respect to the Transferred Rights and authorizes Buyer to act in Seller's name, place and stead, to demand, sue for, compromise and recover all such sums of m oney w hich n ow a re, o r m ay h ereafter b ecome d ue a nd p ayable f or o r o n a ccount o f t he Transferred Rights, to vote the Transferred Rights and to do all things necessary to enforce the Transferred Rights and Seller's rights thereunder pursuant to this Agreement. Seller agrees that the powers granted by this paragraph are discretionary in nature and exercisable at the sole option of Buyer.~~

**9.** If for any reason, Seller (and not Buyer) is entitled to exercise any rights with respect to the Rights, then Seller agrees that with respect to any request, act, decision or vote to be made by Seller in respect of the Rights (each, an "<u>Action</u>"), Seller shall act in accordance with the written directions (if timely given) of Buyer. Seller may refuse to follow the instructions of Buyer only if such i nstructions v iolate a ny a pplicable l aw, r egulation o r d irection o f a r egulatory o r governmental authority.

**10.** Buyer hereby releases and forever discharges (the "<u>Release</u>") Seller and/or its respective direct and indirect affiliates, subsidiaries, partners of subsidiaries, its successors and assigns, (and each of s uch e ntities' o r p ersons' o fficers, d irectors, e mployees, r epresentatives, a ttorneys, a nd agents, collectively, the "<u>Releasees</u>") of and from any and all claims, liabilities, demands, losses, costs, d amages, e xpenses, a ttorneys' f ees a nd c auses o f a ction w hatsoever, w hether i ndividual, class o r d erivative i n n ature, w hether a t l aw o r i n e quity, w hether b ased o n f ederal, s tate o r foreign law or right of action, foreseen or unforeseen, matured or unmatured, known or unknown, accrued or not accrued, which Buyer has or had against any Releasee, arising out of or relating to the S eller T ransaction o r t he C laim occurring p rior t o t he E ffective D ate ( collectively, t he "<u>Released C laims</u>"), and c ovenants n ot t o i nstitute, m aintain, f inance o r p rosecute a ny a ction, claim, suit, proceeding o r c ause o f a ction o f a ny k ind t o e nforce a ny o f t he R eleased C laims. Buyer e xpressly c ovenants a nd a grees t hat t he R elease a nd W aiver s hall e ach b e b inding i n a ll respects upon its respective successors, assigns and transferees, and shall inure to the benefit of the successors and assigns of the Releasees.

**11.** The Parties hereby represent and warrant to each other that: the delivery and performance of t he R elease a nd t he W aiver h ave b een d uly a uthorized b y a ll r equisite c orporate a ction a nd will not violate (a) any provision of applicable law, statute, rule or regulation or its organizational documents, (b) any order of any governmental authority or (c) any provision of any agreement to which t he P arty i s a p arty o r b y w hich t hey a re b ound.  The f oregoing i s s ubject t o a ll o f t he following:  ( a) S eller's r epresentations a nd w arranties b eing t rue a nd c orrect o n t he R elease Effective Date, (b) Seller having complied with all covenants required by this Agreement to be complied with by it on or before the Release Effective Date, and (c) Buyer having received this Agreement fully executed by Seller.

OHSUSA:~~766869828.2~~766869828.4

CONFIDENTIAL
WBA-0000428

12.     Seller agrees to provide Buyer with the "Due Diligence" on the Effective Date. "Due Diligence" means all "Correspondence" between Seller and Claimholder or their respective representatives, affiliates, counsel, advisors and employees related to: the Chapter 11 Cases, the Claim, the Proof of Claim, and any rights of Seller or Claimholder with respect to the Chapter 11 Cases, the Claim or the Proof of Claim.   "Correspondence" means any and all written correspondence such as mail, email, instant messenger messages (including those transmitted through a Bloomberg terminal), text messages, notes, documents, details of conversations in person or by phone, and audio recordings of any conversations in Seller's possession related to the Claim, the Chapter 11 Cases, the Proof of Claim and Claimholder's participation in the Chapter 11 Cases, provided; however, no internal correspondence shall be included in this definition.

13.     Seller agrees to indemnify, defend, reimburse and hold Buyer and its affiliates and its and their officers, directors, partners, employees, agents and controlling persons harmless from and against any and all losses, claims, damages, judgments, costs, penalties, expenses and liabilities, including, without limitation, attorneys' fees and expenses, which are incurred by or threatened against, on account of or in any way resulting from or relating to (a) Seller's breach of any of Seller's representations, warranties, covenants or agreements set forth herein, and (b) any obligation of Seller or Buyer to disgorge, in whole or in part, or otherwise reimburse (by setoff or otherwise) Debtor or any other person or entity for any payments, distributions, property, setoffs or recoupments received, applied or effected by or for the account of Seller under or in connection with the Transferred Rights or otherwise from, against or on account of Debtor or any of its guarantors or affiliates or any person or entity obligated in respect thereof. Buyer agrees to indemnify, defend, reimburse and hold Seller and its affiliates and its and their officers, directors, partners, employees, agents and controlling persons harmless from and against any and all losses, claims, damages, judgments, costs, penalties, expenses and liabilities, including, without limitation, attorneys' fees and expenses, which are incurred by or threatened against, on account of or in any way resulting from or relating to Buyer's breach of any of Buyer's representations, warranties, covenants or agreements set forth herein.

**14.     This Agreement and all matters arising out of or relating to it shall be governed by and construed in accordance with the laws of the State of New York without reference to any conflicts of law provisions that would require or permit the application of the laws of any other jurisdiction.  Each Party consents to service of process by certified mail at its address listed on Schedule I.  Each Party irrevocably and unconditionally (a) WAIVES ITS RIGHT TO TRIAL BY JURY and (b) consents to the exclusive jurisdiction of the federal and state courts located in the State of New York, Borough of Manhattan, in any action to enforce, interpret or construe any provision of this Agreement.**

15.     Seller agrees to execute and deliver (or cause to be executed and delivered) all such instruments and documents, and take all such action as Buyer may reasonably request, including cooperation with any litigation regarding the Seller Transaction and/or the Claim, at Buyer's cost and expense, in order to effectuate the intent and purpose of, and to carry out the terms of, this Agreement.

16.     Each Party agrees to maintain the confidentiality of this Agreement except to the extent (a) required or advisable to enforce or preserve such Party's rights hereunder or (b) required or

CONFIDENTIAL                                                                    WBA-0000429

requested pursuant to applicable law, regulation, or by the order of any court or governmental authority of competent jurisdiction; provided that either Party may disclose this Agreement and the t ransactions c ontemplated h ereby t o t heir l egal c ounsel a nd o ther p rofessionals a nd representatives, p rovided t hat s uch p arties s hall b e o bligated t o m aintain t he c onfidentiality provisions contained herein, and provided further that Buyer may disclose this Agreement (but not t he p urchase r ate o r t he p urchase p rice) t o p otential p urchasers, t ransferees, a ssignees o r participants ( "Transferees") p rovided t hat s uch T ransferees h ave a greed t o b e b ound b y confidentiality provisions no less restrictive than contained herein.

17.     This A greement m ay b e e xecuted i n m ultiple c ounterparts a nd a ll o f s uch c ounterparts when taken together shall be deemed to constitute one and the same instrument.  Delivery of an executed c ounterpart b y f acsimile o r P DF t ransmission s hall b e a s e ffective a s d elivery o f a manually e xecuted c ounterpart.  N o a mendment o f a ny p rovision o f t his A greement s hall b e effective unless it is in writing and signed by the Parties and no waiver of any provision of this Agreement, nor consent to any departure by either Party from it, shall be effective unless it is in writing and signed by the affected Party, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

18.     The P arties h ave p articipated j ointly i n t he n egotiation a nd d rafting o f t his A greement and, in the event of ambiguity or question of intent or interpretation arises, this Agreement shall be construed as jointly drafted by the Parties and no presumption or burden of proof shall arise favoring o r d isfavoring e ither P arty b y v irtue o f t he a uthorship o f a ny p rovision o f t his Agreement.  This A greement c onstitutes the c omplete a greement o f t he P arties with respect to the subject matters referred to herein and supersedes all prior or contemporaneous negotiations, agreements or representations of every nature whatsoever with respect thereto, all of which have become merged and finally integrated herein.

19.     If any provision of this Agreement or any other agreement or document delivered in connection with this Agreement, if any, is partially or completely invalid or unenforceable in any jurisdiction, then that provision shall be ineffective in that jurisdiction to the extent of its invalidity or unenforceability, but the invalidity or unenforceability of that provision shall not affect the validity or enforceability of any other provision of this Agreement, all of which shall be construed and enforced as if that invalid or unenforceable provision were omitted, nor shall the invalidity or unenforceability of that provision in one jurisdiction affect its validity or enforceability in any other jurisdiction.

20.     No failure on the part of either Party to exercise, and no delay in exercising, any right hereunder or under any related document shall operate as a waiver thereof by such Party, nor shall any single or partial exercise of any right hereunder or under any other related document preclude any other or further exercise thereof or the exercise of any other right.  The rights and remedies of each Party provided herein and in other related documents (a) are cumulative and are in addition to, and not exclusive of, any rights or remedies provided by law and (b) are not conditional or contingent on any attempt by such Party to exercise any of its rights under any other related documents against the other Party or any other entity.

OHSUSA:766869828.2766869828.4

CONFIDENTIAL

**21.** Seller h ereby a cknowledges a nd c onsents t o a ll t erms s et f orth i n t his A greement a nd agrees n ot t o l itigate o r o therwise p ursue a ny o f t he R ights ( including, w ithout l imitation, t he amount of the Claim and, to the extent related thereto, the Proofs of Claim).

**22.** All demands, notices, consents, and communications hereunder shall be in writing and shall be deemed to have been duly given when e-mailed with acknowledgment of receipt by recipient, hand-delivered or duly deposited in the mails, by certified or registered mail, postage prepaid-return-receipt requested, to the addresses set forth in Schedule I, or such other address as may be furnished hereafter by notice in writing.   Each payment to be made by either Party shall be made without set-off, counterclaim or deduction of any kind.   All payments made pursuant to this Agreement shall be made in the lawful currency of the United States by wire transfer of immediately available funds, in accordance with the wire instructions specified in Schedule I.

*[signature page follows]*

OHSUSA:~~766869828.2~~766869828.4

CONFIDENTIAL                                                                                        WBA-0000431

**IN WITNESS WHEREOF**, the undersigned have duly executed this Agreement by their duly authorized representatives as of the Agreement Date written above.

WHITEBOX MULTI-STRATEGY
PARTNERS, LP


By:_____
Name:
Title:

COWEN SPECIAL INVESTMENTS LLC

By:_____
Name:
Title:


By:_____
Name:
Title:

11

OHSUSA:766869828.2766869828.4

SCHEDULE I: NOTICE AND WIRE INSTRUCTIONS

Seller's Wire Instructions

Seller Notice Address:

Cowen Special Investments LLC
Attention: General Counsel
599 Lexington Avenue, 21st Floor
New York, NY 10022
**owen.littman@cowen.com**

with a copy to:

Scott Balber
Herbert Smith Freehills New York LLP
450 Lexington Avenue, 14th Floor
New York, NY 10017
**scott.balber@hsf.com**

Buyer Notice Address:

OHSUSA:766869828.2766869828.4

EXHIBIT A: DECLARATION

CONFIDENTIAL

WBA-0000434

# EXHIBIT B: DUE DILIGENCE

OHSUSA:766869828.2766869828.4

CONFIDENTIAL

WBA-0000435

Document comparison by Workshare Compare on Monday, June 05, 2017
3:51:40 PM

| Input: | |
|---|---|
| Document 1 ID | interwovenSite://NCUSADMS01/USA/766869828/2 |
| Description | #766869828v2<USA> - Caesars -- Orrick Comments to Assignment Clean |
| Document 2 ID | interwovenSite://NCUSADMS01/USA/766869828/4 |
| Description | #766869828v4<USA> - Caesars -- Orrick Comments to Assignment Clean |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 29 |
| Deletions | 34 |
| Moved from | 1 |
| Moved to | 1 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 65 |

WBA-0000436

**To:**      'Balber, Scott'[Scott.Balber@hsf.com]
**Cc:**      Fechik, Matthew[mfechik@orrick.com]; Mintz, Douglas S.[dmintz@orrick.com]
**From:**    Pasacreta, Amy
**Sent:**     Tue 6/13/2017 3:09:56 AM
**Subject:** RE: Caesars EOS Claim
<u>redline-Caesars -- Orrick Comments to Assignment Clean - Caesars -- Orri....pdf</u>

Scott—

Attached is a revised draft based on your comments.

In the interest of time, I am sending prior to final review by Whitebox and as such the attached remains subject to further review and comment.

Please let me know if we can proceed based on the attached.

Thanks!

**Amy G. Pasacreta**

Attorney At Law

Orrick
<u>New York</u> 

T +1-212-506-5159
apasacreta@orrick.com



Distressed Download Blog



---

**From:** Balber, Scott [mailto:Scott.Balber@hsf.com]
**Sent:** Monday, June 12, 2017 8:02 AM
**To:** Pasacreta, Amy <apasacreta@orrick.com>
**Subject:** RE: Caesars EOS Claim

Revised draft attached.

---

**From:** Pasacreta, Amy [mailto:apasacreta@orrick.com]
**Sent:** Thursday, June 08, 2017 2:32 PM
**To:** Balber, Scott
**Subject:** RE: Caesars EOS Claim

Scott—

Attached…

I think what we discussed yesterday works conceptually but we really need to see how you will (i) revise the

representations on the diligence and (ii) bifurcate the agreement before we finally agree. Please update those sections so we can finalize.

Also we can leave Whitebox Advisors BUT we need to add acting on behalf of the three Whitebox entities...does that work?

Thanks!

**Amy G. Pasacreta**

Attorney At Law

Orrick
New York 

T +1-212-506-5159
apasacreta@orrick.com



Distressed Download Blog

---

**From:** Balber, Scott [mailto:Scott.Balber@hsf.com]
**Sent:** Thursday, June 08, 2017 12:46 PM
**To:** Pasacreta, Amy <apasacreta@orrick.com>
**Subject:** RE: Caesars EOS Claim

Can you send this back to me as a word document?

---

**From:** Pasacreta, Amy [mailto:apasacreta@orrick.com]
**Sent:** Monday, June 05, 2017 4:01 PM
**To:** Balber, Scott
**Cc:** Mintz, Douglas S.; Fechik, Matthew; Amend, Peter J.
**Subject:** Caesars EOS Claim

Scott-

Attached is a blackline of the assignment and release reflecting many of the changes you requested.  Also attached is the declaration you have been discussing with Doug.  Both the revised assignment and release and declaration are being sent prior to review by Whitebox and as such both remain subject to further review and comments.

Please note, the parties providing the release will be Whitebox Asymmetric Partners, L.P., Whitebox Multi-Strategy Partners, L.P., and Whitebox Institutional Partners, L.P. ; Whitebox Advisors, LLC will not be providing the release. Also note, there will be an assignment and release for each of the Whitebox entities.

**Amy G. Pasacreta**

Attorney At Law

CONFIDENTIAL                                                                                   WBA-0000710

**FRE 408 CONFIDENTIAL COMMUNICATION**

**ORRICK COMMENTS 6/~~1~~12/17**

**ASSIGNMENT AND RELEASE AGREEMENT**

SELLER:        Cowen Special Investments LLC
Address:       830 Third Avenue, 4th Floor,
               New York, NY 10022
Attention:     Bradly D. Schwab
Phone:         646-616-3081
Email:         Bradly.schwab@cowen.com

BUYER:         Whitebox ~~Multi-Strategy Partners, LP~~Advisors, LLC on behalf of certain funds in
               the amounts listed on Schedule II
Address:       3033 Excelsior Blvd, Ste 300 Minneapolis, MN 55416
Attention:     Scott Specken
Email:         sspecken@whiteboxadvisors.com
Phone:         612-253-6061

AGREEMENT DATE:        June__, 2017

DEBTOR:                Caesars Entertainment Operating Company, Inc., et. al.

PROCEEDINGS:           Case No. 15-01145 jointly administered (the "Chapter 11 Cases") and
                       currently pending in the United States Bankruptcy Court for the
                       Northern District of Illinois Eastern Division (the "Bankruptcy Court").

PETITION DATE:         January 14, 2015

CLAIM:                 general unsecured claim asserted by Earl of Sandwich (Atlantic City)
                       LLC (the "Claimholder") against the Debtor in a principal amount of
                       not less than $3,600,000.00

WHEREAS, on April 18, 2015, the Claimholder filed with the Bankruptcy Court a proof of claim with respect to a lease termination, which was assigned claim number 5497 (the "Original Proof of Claim").

WHEREAS, on September 1, 2016, Claimholder filed an amended proof of claim which was assigned claim number 5858 and amended and superseded the Original Proof of Claim which was expunged pursuant to the Order Sustaining Debtors' Twentieth Omnibus Objection to Certain Proofs of Claim (Amended and Replaced Claims) (Non-Substantive) (the "Proof of Claim").

WHEREAS, on October 20, 2016, the Debtors filed their Third Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code (as amended or modified, the

OHSUSA:766869828.4

"Plan"), which was confirmed by t he Bankruptcy C ourt pursuant to that certain order dated January 17, 2017.

WHEREAS, on or about January 12, 2017, Seller sought to purchase the following from Claimholder (the "Seller Transaction"): (i) the Claim, together with any and all right to receive principal, interest, fees, damages, penalties and other amounts in respect of the Claim (in each case whether accruing prior to, on, or after the date of this Agreement), (ii) the Proof of Claim and any other proofs of claim filed (regardless of filing date) with respect to the Claim; (iii) any actions, claims, rights, lawsuits and/or causes of action against the Debtor arising out of or in connection with any of the foregoing; and (iv) all proceeds of any kind of the foregoing, including, without limitation, all cash, securities or other property d istributed or payable on account thereof, or exchanged in return therefor for ((i)-(iv) collectively, the "Rights").

WHEREAS, Seller corresponded with Claimholder regarding the Rights and the Proceedings.

WHEREAS, the Claimholder has not executed any assignment agreement or other documentation or filed a notice of transfer with respect to the Proof of Claim.

WHEREAS, on May 17, 2017, Seller allowed Buyer's counsel to view copies of the Due Diligence (defined below); and

WHEREAS, upon the terms and subject to the conditions set forth in this Agreement, Seller desires to sell, transfer, assign, grant and convey to Buyer, and Buyer desires to purchase, acquire and receive, the Transferred Rights (as defined hereinafter).

NOW THEREFORE, Buyer and Seller (each a "Party" and collectively, t he "Parties") agree as follows:

**1.**    Seller, for good and valuable consideration, does hereby irrevocably sell, convey, transfer and assign unto Buyer (a) any and all rights Seller may have to purchase the Rights directly from Claimholder and (b) any and all actions, claims, rights, remedies, lawsuits and/or causes of action Seller has against the Claimholder arising out of or in connection with the Seller Transaction (the "Transferred Rights").    This assignment shall be deemed an absolute and unconditional assignment of the Transferred Rights for the purpose of collection and satisfaction and shall not be deemed to create a security interest and shall be evidenced for purposes of any Bankruptcy Court filings by the attached notice of assignment attached hereto as Exhibit A (the "Notice").

**2.**    Seller's obligation to sell, transfer, assign, grant and convey t he Transferred Rights to Buyer is subject to all of the following: (a) Buy er's representations and warranties being true and correct, (b) Buyer having complied with all covenants required by this Agreement to be complied with by i t, (c) Buyer having received (i) copies of the Due Diligence and (ii) fully e xecuted Declaration (attached hereto as Exhibit A)Notice, (d) Seller having received this Agreement fully executed by Buyer and (e) Seller having received the one dollar (the "Purchase Price") by wire transfer of immediately available funds in accordance with written wire instructions specified by Seller.

2

OHSUSA:766869828.4766869828.5

3.      Seller represents, warrants and covenants to Buyer and Buyer's successors and assigns as of the date hereof (the "Effective Date") that:

(a)  Seller is duly organized and validly existing under the laws of its jurisdiction of organization, is in good standing under such laws, and is authorized and empowered to execute, deliver and perform this Agreement, and this Agreement constitutes the valid, legal and binding agreement of Seller, enforceable against Seller in accordance with its terms;

(b) Except for filings that are expressly contemplated by this Agreement, no consent, approval, filing or corporate, partnership or other action is required as a condition to or in connection with execution, delivery and performance of this Agreement and the transactions contemplated herein;

(c)  To the best of Seller's knowledge, the Claimholder has timely and properly filed the Proof of Claim and Buyer shall assume no obligations or liabilities in respect of the Rights, including but not limited to the obligation to file any proof of claim with respect to the Claim;

(d) To the best of Seller's knowledge, neither the execution, delivery or performance of this Agreement, nor consummation of the transactions contemplated hereby, will violate or contravene any law, rule, regulation, order or agreement affecting Seller;

(e)  Seller is the sole legal and beneficial owner of, and has good title to, the Transferred Rights, free and clear of (i) any legal, regulatory or contractual restriction on transfer or (ii) any pledge, lien, claim, security interest, participation, factoring agreement or other encumbrance of any type or kind (collectively, the "Liens") and will transfer to Buyer such good title free and clear of Liens;

(f)        Seller believes that it would be able to assert a claim, that would not violate Rule 11 of the Federal Rules of Civil Procedure or Rule 9011 of the Federal Rules of Bankruptcy Procedure, that the Seller Transaction constitutes a valid and binding agreement which remains in full force and effect;

(f)(g)   To the best of Seller's knowledge, the Claim is a valid, liquidated, non-contingent, enforceable, "Class I" general unsecured claim against the Debtor;

(g)(h)   Seller has not previously sold, transferred, assigned, participated or otherwise conveyed the Transferred Rights, nor has Seller agreed to do any of the foregoing (whether in whole or in part);

(h)(i)   No payment or distribution has been received by or on behalf of Seller, in full or partial satisfaction of the Rights;

(i)(j)   To the best of Seller's knowledge, Seller has not engaged, and shall not engage, in any act, conduct or omission, or had any relationship with the Debtor or any of its affiliates that would result in Buyer receiving in respect of the Rights proportionately less in payments or distributions, or less favorable treatment (including the timing of payments or distributions) for the Rights than will be received on behalf of other general unsecured claims and administrative expense claims, as applicable;

3

CONFIDENTIAL                                                                                    WBA-0000714

(j)(k)  Seller is not an "insider" of the Debtor or its affiliates within the meaning of Section 101(31) of the Bankruptcy Code, and is not a member of any official or unofficial committee in the Proceedings;

(k)(l)  Seller has not received any written notice (except as otherwise publicly available in the Proceedings (if any)), that the Rights or any portion thereof is void, voidable, or unenforceable;

(l)(m)  Upon execution of this Agreement, Seller shall provide to Buyer true and complete copies of the Due Diligence all written communications between Seller and Claimholder related to the Chapter 11 Cases, the Claim, the Proof of Claim, and any rights of Seller or Claimholder with respect to the Chapter 11 Cases, the Claim or the Proof of Claim (collectively, the "Due Diligence") (a watermarked copy of which is attached hereto as Exhibit B);

(m)(n)  The Due Diligence includes all written communications between Seller and Claimholder with respect to Seller's purchase of the Claim and no other communications exist which conflict with the Seller is not aware of any written communication which conflicts with Seller's assertion that it has the right to purchase the Claim;

(n)(o)  In addition to the Due Diligence, there were telephone and voicemail communications (the "Oral Communications") between Seller and the Claimholder.  Seller is not aware of any Oral Communications that conflicts with Seller's assertion that it has the right to purchase the Claim.

(o) Seller is not "insolvent" within the meaning of Section 1-201(23) of the Uniform Commercial Code or Section 101(32) of the Bankruptcy Code, has adequate capital to conduct its business and has not filed a petition seeking protection under the Bankruptcy Code or similar statute; and

(p) either (i) no interest in the Transferred Rights is being sold by or on behalf of one or more Benefit Plans (as defined below) or (ii) the transaction exemption set forth in one or more prohibited transaction class exemption issued by the U.S. Department of Labor ("PTE"), such as PTE 84-14 (a class exemption for certain transactions determined by independent qualified professional asset managers), PTE 95-60 (a class exemption for certain transactions involving insurance company general accounts), PTE 90-1 (a class exemption for certain transactions involving insurance company pooled separate accounts), PTE 91-38 (a class exemption for certain transactions involving bank collective investment funds), and PTE 96-23 (a class exemption for certain transactions determined by in-house asset managers) is applicable with respect to the sale of the Transferred Rights.  "Benefit Plan" means an "employee benefit plan" (as defined in ERISA) that is subject to Title I of the Employee Retirement Income Security Act of 1974, as amended, and the rules and regulations promulgated under it ("ERISA"), a "plan" as defined in Section 4975 of the Code or any Entity whose assets include (for purposes of ERISA Section 3(42) or otherwise for purposes of Title I of ERISA or Section 4975 of the Code) the assets of any such "employee benefit plan" or "plan".

4.      Buyer represents and warrants to Seller as of the Effective Date that:

(a)  Buyer is duly organized and validly existing under the laws of its jurisdiction of organization, is in good standing under such laws, and is authorized and empowered to execute, deliver and

<div align="center">4</div>

CONFIDENTIAL                                                                              WBA-0000715

perform this Agreement, and this Agreement constitutes the valid, legal and binding agreement of Buyer, enforceable against Buyer in accordance with its terms;

(b) except for filings that are expressly contemplated by this Agreement, no consent, approval, filing or corporate, partnership or other action is required as a condition to or in connection with execution, delivery and performance of this Agreement and the transactions contemplated herein;

(c) neither the execution, delivery or performance of this Agreement, nor consummation of the transactions contemplated hereby, will violate or contravene any law, rule, regulation, order or agreement affecting Buyer;

(d) Buyer has (i) reviewed the terms and provisions of this Agreement, and has evaluated the restrictions and obligations contained herein and therein; (ii) agreed to the Release based on its own independent investigation and credit determination; and (iii) not relied on any representation or warranty made by Seller, except as expressly set forth herein; and

(e) either (i) no interest in the Transferred Rights is being acquired by or on behalf of an entity that is, or at any time while the Transferred Rights are held thereby will be, one or more Benefit Plans or (ii) the transaction exemption set forth in one or more PTEs, such as PTE 84-14 (a class exemption for certain transactions determined by independent qualified professional asset managers), PTE 95-60 (a class exemption for certain transactions involving insurance company general accounts), PTE 90-1 (a class exemption for certain transactions involving insurance company pooled separate accounts), PTE 91-38 (a class exemption for certain transactions involving bank collective investment funds), and PTE 96-23 (a class exemption for certain transactions determined by in-house asset managers) is applicable with respect to the purchase and holding of the Transferred Rights and the exercise of Buyer's rights thereunder.

**5.**    Each Party represents and warrants that it is a sophisticated entity and has adequate information concerning the financial condition of Debtor and the Proceedings to make an informed decision regarding the purchase/sale of the Transferred Rights and that it has independently and without reliance on the other Party, and based on such information as it has deemed appropriate, made its own decision to enter into this Agreement, except that it has relied on the other Party's express representations, warranties, covenants, agreements and indemnities as contained herein. Each Party is aware that information which may be pertinent to the decision to transfer the Transferred Rights is available to it and can be obtained from the files of the Proceedings or other publicly available sources. Each Party is aware that the consideration received/paid herein for the purchase/sale of the Transferred Rights may differ both in kind and amount from any distributions made pursuant to any plan of reorganization confirmed in the Proceedings. Each Party acknowledges that the other may possess, and may come into possession of, material non-public information concerning the Transferred Rights, Debtor and/or the Proceedings ("Excluded Information"). Each Party further acknowledges that it has not requested to receive such Excluded Information from the other Party and has nevertheless determined to proceed with the transaction contemplated herein, and neither shall have any liability to the other Party, and each waives and releases any claims that it might have against the other, arising out of the non-disclosure of such Excluded Information; provided, however, that the Excluded Information shall not limit, contradict or render untrue any representation or warranty made by Seller or Buyer herein.

<div align="center">5</div>

CONFIDENTIAL                                                                                           WBA-0000716

**6.**    Each Party acknowledges and agrees that the Purchase Price and the Release set forth in section 10 below are intended to represent "fair consideration" (as such term is used in Article 10 of the New York Debtor and Creditor Law, N.Y. Debt. & Cred. §§ 270 et seq.) and "reasonably equivalent value" (as such term is used in 11 U.S.C. § 548), or as analogously provided under similar statute or applicable law, for the transfer of such assets.

**7.**    Seller agrees that in the event Seller actually receives any distributions with respect to the Rights after the date hereof, Seller shall accept the same and shall hold the same in trust for the sole benefit of Buyer and shall promptly deliver the same to Buyer in the same form received (free of any withholding, set-off, claims or deduction of any kind except as required by law) within five Business Days in the case of cash ("Cash Distribution"). If any such amounts are not received by the Buyer within five Business Days, then beginning on the next calendar day, the amount payable shall begin to accrue interest at a rate of LIBOR + 5% per annum, and within seven business days in the case of non-Cash Distributions, with the endorsement of Seller (without recourse, representation or warranty) when necessary or appropriate. In the event Seller receives any notices (not otherwise publicly available) in respect of the Rights, Seller shall promptly deliver the same to Buyer.

 (a) As used herein:

  "Business Day" means any day that is not a Saturday, a Sunday or any other day on which the Federal Reserve Bank of New York is closed.

  "LIBOR" means, for any day, the one-month London Interbank Offered Rate for deposits in U.S. Dollars as set by the British Bankers Association ("BBA") and published by the BBA at approximately 11:00 a.m. London time on such day.  For any day that is not a business day, LIBOR shall be the rate published by the BBA on the immediately preceding business day.

**8.**     (a) Upon execution of this Agreement, Buyer shall have any and all rights the Seller may have to enforce the terms of the Seller Transaction as against the Claimholder including without limitation filing pleadings, motions or notices of transfer with respect to the transfer of the Rights;

(b) Seller agrees to cooperate with the Buyer to effectuate the intent and purpose of, and to carry out the terms of, this Agreement.

**9.**    If for any reason, Seller (and not Buyer) is entitled to exercise any rights with respect to the Rights, then Seller agrees that with respect to any request, act, decision or vote to be made by Seller in respect of the Rights (each, an "Action"), Seller shall act in accordance with the written directions (if timely given) of Buyer. Seller may refuse to follow the instructions of Buyer only if such instructions violate any applicable law, regulation or direction of a regulatory or governmental authority.

**10.**    Buyer hereby releases and forever discharges (the "Release") Seller and/or its respective direct and indirect affiliates, subsidiaries, partners of subsidiaries, its successors and assigns, (and each of such entities' or persons' officers, directors, employees, representatives, attorneys, and agents, collectively, the "Releasees") of and from any and all claims, liabilities, demands, losses, costs, damages, expenses, attorneys' fees and causes of action whatsoever, whether individual,

OHSUSA:766869828.4766869828.5

CONFIDENTIAL                                                                                    WBA-0000717

class or derivative in nature, whether at law or in equity, whether based on federal, state or foreign law or right of action, foreseen or unforeseen, matured or unmatured, known or unknown, accrued or not accrued, which Buyer has or had against any Releasee, arising out of or relating to the Seller Transaction or the Claim occurring prior to the Effective Date (collectively, the "Released Claims"), and covenants not to institute, maintain, finance or prosecute any action, claim, suit, proceeding or cause of action of any kind to enforce any of the Released Claims. Buyer expressly covenants and agrees that the Release and Waiver shall each be binding in all respects upon its respective successors, assigns and transferees and shall inure to the benefit of the successors and assigns of the Releasees.

11.     The Parties hereby represent and warrant to each other that: the delivery and performance of the Release and the Waiver have been duly authorized by all requisite corporate action and will not violate (a) any provision of applicable law, statute, rule or regulation or its organizational documents, (b) any order of any governmental authority or (c) any provision of any agreement to which the Party is a party or by which they are bound. The foregoing is subject to all of the following: (a) Seller's representations and warranties being true and correct on the Release Effective Date, (b) Seller having complied with all covenants required by this Agreement to be complied with by it on or before the Release Effective Date, and (c) Buyer having received this Agreement fully executed by Seller.

12.     Seller agrees to provide Buyer with the "Due Diligence" on the Effective Date. "Other than the Due Diligence" means all "Correspondence", Seller is not aware of any written communications between Seller and the Claimholder or their respective representatives, affiliates, counsel, advisors and employees related to: the Chapter 11 Cases, the Claim, the Proof of Claim, and any rights of Seller or Claimholder with respect to the Chapter 11 Cases, the Claim or the Proof of Claim. "Correspondence" means any and all written correspondence such as mail, email, instant messenger messages (including those transmitted through a Bloomberg terminal), text messages, notes, documents, details of conversations in person or by phone, and audio recordings of any conversations in Seller's possession related to the Claim, the Chapter 11 Cases, the Proof of Claim and Claimholder's participation in the Chapter 11 Cases, provided; however, no internal correspondence shall be included in this definition.

13.     Seller agrees to indemnify, defend, reimburse and hold Buyer and its affiliates and its and their officers, directors, partners, employees, agents and controlling persons harmless from and against any and all losses, claims, damages, judgments, costs, penalties, expenses and liabilities, including, without limitation, attorneys' fees and expenses, which are incurred by or threatened against, on account of or in any way resulting from or relating to Seller's breach of any of Seller's representations, warranties, covenants or agreements set forth herein. Buyer agrees to indemnify, defend, reimburse and hold Seller and its affiliates and its and their officers, directors, partners, employees, agents and controlling persons harmless from and against any and all losses, claims, damages, judgments, costs, penalties, expenses and liabilities, including, without limitation, attorneys' fees and expenses, which are incurred by or threatened against, on account of or in any way resulting from or relating to Buyer's breach of any of Buyer's representations, warranties, covenants or agreements set forth herein.

**14.     This Agreement and all matters arising out of or relating to it shall be governed by and construed in accordance with the laws of the State of New York without reference to any**

7

CONFIDENTIAL                                                                      WBA-0000718

conflicts of law provisions that would require or permit the application of the laws of any other jurisdiction.  Each Party consents to service of process by certified mail at its address listed on Schedule I.  Each Party irrevocably and unconditionally (a) WAIVES ITS RIGHT TO TRIAL BY JURY and (b) consents to the exclusive jurisdiction of the federal and state courts located in the State of New York, Borough of Manhattan, in any action to enforce, interpret or construe any provision of this Agreement.

**15.**    Seller agrees to execute and deliver (or cause to be executed and delivered) all such instruments and documents, and take all such action as Buyer may reasonably request, including cooperation with any litigation regarding the Seller Transaction and/or the Claim,  at Buyer's cost and expense, in order to effectuate the intent and purpose of, and to carry out the terms of, this Agreement.

**16.**    Each Party agrees to maintain the confidentiality of this Agreement except to the extent (a) required or advisable to enforce or preserve such Party's rights hereunder or (b) required or requested pursuant to applicable law, regulation, or by the order of any court or governmental authority of competent jurisdiction; provided that either Party may disclose this Agreement and the transactions contemplated hereby to their legal counsel and other professionals and representatives, provided that such parties shall be obligated to maintain the confidentiality provisions contained herein, and provided further that Buyer may disclose ~~this Agreement (but not the purchase rate or the purchase price) to potential purchasers, transferees, assignees or participants ("Transferees") provided that such Transferees have agreed to be bound by confidentiality provisions no less restrictive than contained herein~~the Notice to the Bankruptcy Court or any other third parties selected by Buyer.

**17.**    This Agreement may be executed in multiple counterparts and all of such counterparts when taken together shall be deemed to constitute one and the same instrument.  Delivery of an executed counterpart by facsimile or PDF transmission shall be as effective as delivery of a manually executed counterpart.  No amendment of any provision of this Agreement shall be effective unless it is in writing and signed by the Parties and no waiver of any provision of this Agreement, nor consent to any departure by either Party from it, shall be effective unless it is in writing and signed by the affected Party, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

**18.**    The Parties have participated jointly in the negotiation and drafting of this Agreement and, in the event of ambiguity or question of intent or interpretation arises, this Agreement shall be construed as jointly drafted by the Parties and no presumption or burden of proof shall arise favoring or disfavoring either Party by virtue of the authorship of any provision of this Agreement. This Agreement constitutes the complete agreement of the Parties with respect to the subject matters referred to herein and supersedes all prior or contemporaneous negotiations, agreements or representations of every nature whatsoever with respect thereto, all of which have become merged and finally integrated herein.

**19.**    If any provision of this Agreement or any other agreement or document delivered in connection with this Agreement, if any, is partially or completely invalid or unenforceable in any jurisdiction, then that provision shall be ineffective in that jurisdiction to the extent of its invalidity or unenforceability, but the invalidity or unenforceability of that provision shall not affect the

OHSUSA:~~766869828.4~~766869828.5

validity or enforceability of any other provision of this Agreement, all of which shall be construed and enforced as if that invalid or unenforceable provision were omitted, nor shall the invalidity or unenforceability of that provision in one jurisdiction affect its validity or enforceability in any other jurisdiction.

**20.**    No failure on the part of either Party to exercise, and no delay in exercising, any right hereunder or under any related document shall operate as a waiver thereof by such Party, nor shall any single or partial exercise of any right hereunder or under any other related document preclude any other or further exercise thereof or the exercise of any other right.  The rights and remedies of each Party provided herein and in other related documents (a) are cumulative and are in addition to, and not exclusive of, any rights or remedies provided by law and (b) are not conditional or contingent on any attempt by such Party to exercise any of its rights under any other related documents against the other Party or any other entity.

**21.**    Seller hereby acknowledges and consents to all terms set forth in this Agreement and agrees not to litigate or otherwise pursue any of the Rights (including, without limitation, the amount of the Claim and, to the extent related thereto, the Proofs of Claim).

**22.**    All demands, notices, consents, and communications hereunder shall be in writing and shall be deemed to have been duly given when e-mailed with acknowledgment of receipt by recipient, hand-delivered or duly deposited in the mails, by certified or registered mail, postage prepaid-return-receipt requested, to the addresses set forth in Schedule I, or such other address as may be furnished hereafter by notice in writing.  Each payment to be made by either Party shall be made without set-off, counterclaim or deduction of any kind.  All payments made pursuant to this Agreement shall be made in the lawful currency of the United States by wire transfer of immediately available funds, in accordance with the wire instructions specified in Schedule I.

*[signature page follows]*

OHSUSA:766869828.4766869828.5

**IN WITNESS WHEREOF**, the undersigned have duly executed this Agreement by their duly authorized representatives as of the Agreement Date written above.


WHITEBOX MULTI-STRATEGY PARTNERS, LP

~~WHITEBOX MULTI-STRATEGY PARTNERS, LP~~


By:_____

~~By:_____~~

Name:

~~Name:~~

Title:

~~Title:~~


WHITEBOX INSTITUTIONAL PARTNERS, L.P.

~~COWEN SPECIAL INVESTMENTS LLC~~


By:_____

~~By:_____~~

Name:

~~Name:~~

Title:

~~Title:~~


WHITEBOX ASYMMETRIC PARTNERS, L.P.

~~By:_____~~

~~Name:~~

By:_____

~~Title:~~

Name:

Title:

COWEN SPECIAL INVESTMENTS LLC


By:_____

Name:

Title:


By:_____

Name:

Title:

OHSUSA:~~766869828.4~~766869828.5

CONFIDENTIAL

WBA-0000721

SCHEDULE I: NOTICE AND WIRE INSTRUCTIONS

Seller's Wire Instructions

Seller Notice Address:

Cowen Special Investments LLC
Attention: General Counsel
599 Lexington Avenue, 21st Floor
New York, NY 10022
owen.littman@cowen.com

with a copy to:

Scott Balber
Herbert Smith Freehills New York LLP
450 Lexington Avenue, 14th Floor
New York, NY 10017
scott.balber@hsf.com

| Seller's Wire Instructions: | Buyer's Wire Instructions: |
|---|---|
| Seller Notice Details:<br>Cowen Special Investments LLC<br>Attention: General Counsel<br>599 Lexington Avenue, 21st Floor<br>New York, NY 10022<br>owen.littman@cowen.com<br><br>with a copy to:<br><br>Scott Balber<br>Herbert Smith Freehills New York LLP<br>450 Lexington Avenue, 14th Floor<br>New York, NY 10017<br>scott.balber@hsf.com | Buyer's Notice Details: |

11

OHSUSA:766869828.4766869828.5

Buyer Notice Address:

12

OHSUSA:766869828.4766869828.5

CONFIDENTIAL

SCHEDULE II:

| WHITEBOX FUND | AMOUNT |
|---|---|
| Whitebox Asymmetric Partners, L.P., | |
| Whitebox Multi-Strategy Partners, L.P. | |
| Whitebox Institutional Partners, L.P. | |

13

OHSUSA:766869828.4766869828.5

EXHIBIT A: DECLARATION

NOTICE OF ASSIGNMENT

OHSUSA:766869828.4766869828.5

CONFIDENTIAL

WBA-0000725

EXHIBIT B: DUE DILIGENCE

OHSUSA:766869828.4766869828.5

CONFIDENTIAL

WBA-0000726

Document comparison by Workshare Compare on Monday, June 12, 2017
10:50:28 PM

| Input: | |
|---|---|
| Document 1 ID | interwovenSite://NCUSADMS01/USA/766869828/4 |
| Description | #766869828v4<USA> - Caesars -- Orrick Comments to Assignment Clean |
| Document 2 ID | interwovenSite://NCUSADMS01/USA/766869828/5 |
| Description | #766869828v5<USA> - Caesars -- Orrick Comments to Assignment Clean |
| Rendering set | standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 54 |
| Deletions | 43 |
| Moved from | 2 |
| Moved to | 2 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 101 |

CONFIDENTIAL                                                                                    WBA-0000727

**To:** 'Balber, Scott'[Scott.Balber@hsf.com]; Mintz, Douglas S.[dmintz@orrick.com]
**Cc:** Fechik, Matthew[mfechik@orrick.com]
**From:** Pasacreta, Amy
**Sent:** Tue 5/23/2017 9:19:30 PM
**Subject:** RE: Caesars -- EOS Claim

766869828(2)_Caesars -- Orrick Comments to Assignment Clean (3).docx

Scott—

Per Doug, attached is the updated AA.

**Amy G. Pasacreta**

Attorney At Law

Orrick
New York 

T +1-212-506-5159
apasacreta@orrick.com



Distressed Download Blog



---

**From:** Balber, Scott [mailto:Scott.Balber@hsf.com]
**Sent:** Thursday, May 04, 2017 11:37 AM
**To:** Pasacreta, Amy <apasacreta@orrick.com>; Mintz, Douglas S. <dmintz@orrick.com>
**Cc:** Fechik, Matthew <mfechik@orrick.com>
**Subject:** RE: Caesars -- EOS Claim

Doug –

Good speaking with you earlier.   As discussed Cowen has two principal issues with the draft assignment agreement:

1.    Cowen is not willing to agree to any reps and warranties regarding the underlying claim or any rights it may have against the seller with respect to the claim.   I suspect we will to be amenable to agreeing to ordinary course business term reps and warranties (i.e., that we are duly organized, etc) but nothing beyond that.

2.    Only the potential claims for intentional misconduct should be preserved until after the expiration of the 60 day period. All other claims (i.e., for negligence, gross negligence, breach of contract, etc.) must be released upon execution of the assignment agreement.

Of course, we reserve the right to do a thorough review of the agreement and to give your more specific comments on the draft, but let's see if we can get past these two issues first.   Happy to discuss further.

Best,

Scott

---

**From:** Pasacreta, Amy [mailto:apasacreta@orrick.com]

**FRE 408 CONFIDENTIAL COMMUNICATION**

**ORRICK COMMENTS 5/14/17**

**ASSIGNMENT AND RELEASE AGREEMENT**

SELLER:       Cowen Special Investments LLC
Address:      830 Third Avenue, 4th Floor,
              New York, NY 10022
Attention:    Bradly D. Schwab
Phone:        646-616-3081
Email:        Bradly.schwab@cowen.com

BUYER:        Whitebox Multi-Strategy Partners, LP
Address:      3033 Excelsior Blvd, Ste 300 Minneapolis, MN 55416
Attention:    Scott Specken
Email:        sspecken@whiteboxadvisors.com
Phone:        612-253-6061

AGREEMENT DATE:    May__, 2017

DEBTOR:            Caesars Entertainment Operating Company, Inc., et. al.

PROCEEDINGS:       Case No. 15-01145 jointly administered (the "Chapter 11 Cases") and
                   currently pending in the United States Bankruptcy Court for the
                   Northern District of Illinois Eastern Division (the "Bankruptcy
                   Court").

PETITION DATE:     January 14, 2015

CLAIM:             general unsecured claim asserted by Earl of Sandwich (Atlantic City)
                   LLC (the "Claimholder") against the Debtor in a principal amount of
                   not less than $3,600,000.00

WHEREAS, on April 18, 2015, the Claimholder filed with the Bankruptcy Court a proof of claim with respect to a lease termination, which was assigned claim number 5497 (the "Original Proof of Claim").

WHEREAS, on September 1, 2016, Claimholder filed an amended proof of claim which was assigned claim number 5858 and amended and superseded the Original Proof of Claim which was expunged pursuant to the Order Sustaining Debtors' Twentieth Omnibus Objection to Certain Proofs of Claim (Amended and Replaced Claims) (Non-Substantive) (the "Proof of Claim").

CONFIDENTIAL

WHEREAS, on October 20, 2016, the Debtors filed their Third Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code (as amended or modified, the "Plan"), which was confirmed by the Bankruptcy Court pursuant to that certain order dated January 17, 2017.

WHEREAS, on January 12, 2017, Seller  sought to purchase from Claimholder (the "Seller Transaction"): (i) the Claim, together with any and all right to receive principal, interest, fees, damages, penalties and other amounts in respect of the Claim (in each case whether accruing prior to, on, or after the date of this Agreement), (ii) the Proof of Claim and any other proofs of claim filed (regardless of filing date) with respect to the Claim; (iii) any actions, claims, rights, lawsuits and/or causes of action against the Debtor arising out of or in connection with any of the foregoing; and (iv) all proceeds of any kind of the foregoing, including, without limitation, all cash, securities or other property distributed or payable on account thereof, or exchanged in return therefor for ((i)-(iv) collectively, the "Rights").

WHEREAS, Seller corresponded with Claimholder regarding the Rights and the Proceedings.

WHEREAS, the Claimholder has not executed the Seller Agreement documentation or filed a notice of transfer with respect to the Proof of Claim.

WHEREAS, on May 17, 2017, Seller allowed Buyer's counsel to view copies of the Due Diligence (defined below) with Buyer's counsel; and

WHEREAS, upon the terms and subject to the conditions set forth in this Agreement, Seller desires to sell, transfer, assign, grant and convey to Buyer, and Buyer desires to purchase, acquire and receive, the Transferred Rights (as defined hereinafter).

NOW THEREFORE, Buyer and Seller (each a "Party" and collectively, the "Parties") agree as follows:

**1.** Seller, for good and valuable consideration, does hereby irrevocably sell, convey, transfer and assign unto Buyer (a) any and all rights Seller may have to purchase the Rights directly from Claimholder and (b) any and all actions, claims, rights, remedies, lawsuits and/or causes of action Seller has against the Claimholder arising out of or in connection with the Seller Transaction (the "Transferred Rights").  This assignment shall be deemed an absolute and unconditional assignment of the Transferred Rights for the purpose of collection and satisfaction and shall not be deemed to create a security interest.

**2.** Seller's obligation to sell, transfer, assign, grant and convey the Transferred Rights to Buyer is subject to all of the following: (a) Buyer's representations and warranties being true and correct, (b) Buyer having complied with all covenants required by this Agreement to be complied with by it, (c) Buyer having received (i) copies of the Due Diligence and (ii) fully executed Declaration (attached hereto as Exhibit A), (d) Seller having received this Agreement fully executed by Buyer and (e) Seller having received the [one dollar (the "Purchase Price") by wire transfer of immediately available funds] in accordance with written wire instructions specified by Seller.

2

**3.**      Seller represents, warrants and covenants to Buyer and Buyer's successors and assigns as of the Effective Date that:

(a)    Seller is duly organized and validly existing under the laws of its jurisdiction of organization, is in good standing under such laws, and is authorized and empowered to execute, deliver and perform this Agreement, and this Agreement constitutes the valid, legal and binding agreement of Seller, enforceable against Seller in accordance with its terms;

(b) Except for filings that are expressly contemplated by this Agreement, no consent, approval, filing or corporate, partnership or other action is required as a condition to or in connection with execution, delivery and performance of this Agreement and the transactions contemplated herein;

(c) To the best of Seller's knowledge, the Claimholder has timely and properly filed the Proof of Claim and Buyer shall assume no obligations or liabilities in respect of the Rights, including but not limited to the obligation to file any proof of claim with respect to the Claim;

(d) To the best of Seller's knowledge, neither the execution, delivery or performance of this Agreement, nor consummation of the transactions contemplated hereby, will violate or contravene any law, rule, regulation, order or agreement affecting Seller;

(e) Seller is the sole legal and beneficial owner of, and has good title to, the Transferred Rights, free and clear of (i) any legal, regulatory or contractual restriction on transfer or (ii) any pledge, lien, claim, security interest, participation, factoring agreement or other encumbrance of any type or kind (collectively, the "Liens") and will transfer to Buyer such good title free and clear of Liens;

(f) Seller believes that it would be able to assert a claim, that would not violate Rule 11 of the Federal Rules of Civil Procedure or Rule 9011 of the Federal Rules of Bankruptcy Procedure, that the Seller Transaction constitutes a valid and binding agreement which remains in full force and effect;

(g)  To the best of Seller's knowledge, the Claim is a valid, liquidated, non-contingent, enforceable, "Class I" general unsecured claim against the Debtor;

(h)   Seller has not previously sold, transferred, assigned, participated or otherwise conveyed the Transferred Rights, nor has Seller agreed to do any of the foregoing (whether in whole or in part);

(i)  No payment or distribution has been received by or on behalf of Seller, in full or partial satisfaction of the Rights;

(j)  Seller has not engaged, and shall not engage, in any act, conduct or omission, or had any relationship with the Claimholder or any of its affiliates that would result in Buyer receiving in respect of the Transferred Rights proportionately less in payments or distributions, or less favorable treatment (including the timing of payments or distributions) for the Transferred Rights than will be received on behalf of other  general unsecured claims and administrative expense claims, as applicable;

<div align="center">3</div>

OHSUSA:766869828.2

(k)   Seller has not engaged, and shall not engage, in any act, conduct or omission, or had any relationship with the Claimholder or any of its affiliates that would result in Buyer receiving in respect of the Transferred Rights proportionately less in payments or distributions, or less favorable treatment (including the timing of payments or distributions) for the Transferred Rights than will be received on behalf of other  general unsecured claims and administrative expense claims, as applicable;

(l)   Seller is not an "insider" of the Debtor or its affiliates within the meaning of Section 101(31) of the Bankruptcy Code, and is not a member of any official or unofficial committee in the Proceedings;

(m)   Seller has not received any written notice (except as otherwise publicly available in the Proceedings (if any)), that the Rights or any portion thereof is void, voidable, or unenforceable;

(n) To the best of Seller's knowledge, no objection to the Proof of Claim or the Rights has been made or threatened and there are no offsets, setoffs or legal or equitable defenses that have been (or may be) asserted by or on behalf of Debtor or any other party to reduce the amount of the Claim or impair the treatment of the Claim as compared to other general unsecured claims and administrative expense claims, as applicable;

(o) To the best of Seller's knowledge, there are no preference actions against Claimholder, and, no legal or equitable defenses, counterclaims or offsets, reductions, recoupments, impairments, avoidances, disallowances or subordinations exist or, may be asserted by or on behalf of the Debtor to reduce the amount of the Rights or affect their validity or enforceability and no legal or equitable defenses, counterclaims or offsets;

(p)   Upon execution of this Agreement, Seller shall provide to Buyer true and complete copies of all Due Diligence (defined below);

(q)   The Due Diligence, which Buyer's counsel was allowed to view in its entirety, prior to the Effective Date includes all communication with respect to Seller's purchase of the Claim from the Claimholder;

(r)   Seller is not "insolvent" within the meaning of Section 1-201(23) of the Uniform Commercial Code or Section 101(32) of the Bankruptcy Code, has adequate capital to conduct its business and has not filed a petition seeking protection under the Bankruptcy Code or similar statute; and

(s) either (i) no interest in the Transferred Rights is being sold by or on behalf of one or more Benefit Plans (as defined below) or (ii) the transaction exemption set forth in one or more prohibited transaction class exemption issued by the U.S. Department of Labor ("PTE"), such as PTE 84-14 (a class exemption for certain transactions determined by independent qualified professional asset managers), PTE 95-60 (a class exemption for certain transactions involving insurance company general accounts), PTE 90-1 (a class exemption for certain transactions involving insurance company pooled separate accounts), PTE 91-38 (a class exemption for certain transactions involving bank collective investment funds), and PTE 96-23 (a class exemption for certain transactions determined by in-house asset managers) is applicable with respect to the sale of the Transferred Rights.  "Benefit Plan" means an "employee benefit plan"

4

CONFIDENTIAL

(as defined in ERISA) that is subject to Title I of the Employee Retirement Income Security Act of 1974, as amended, and the rules and regulations promulgated under it ("ERISA"), a "plan" as defined in Section 4975 of the Code or any Entity whose assets include (for purposes of ERISA Section 3(42) or otherwise for purposes of Title I of ERISA or Section 4975 of the Code) the assets of any such "employee benefit plan" or "plan".

**4.** Buyer represents and warrants to Seller as of the Effective Date that:

(a) Buyer is duly organized and validly existing under the laws of its jurisdiction of organization, is in good standing under such laws, and is authorized and empowered to execute, deliver and perform this Agreement, and this Agreement constitutes the valid, legal and binding agreement of Buyer, enforceable against Buyer in accordance with its terms;

(b) except for filings that are expressly contemplated by this Agreement, no consent, approval, filing or corporate, partnership or other action is required as a condition to or in connection with execution, delivery and performance of this Agreement and the transactions contemplated herein;

(c) neither the execution, delivery or performance of this Agreement, nor consummation of the transactions contemplated hereby, will violate or contravene any law, rule, regulation, order or agreement affecting Buyer;

(d) Buyer has (i) reviewed the terms and provisions of this Agreement, and has evaluated the restrictions and obligations contained herein and therein; (ii) agreed to the Release based on its own independent investigation and credit determination; and (iii) not relied on any representation or warranty made by Seller, except as expressly set forth herein; and

(e) either (i) no interest in the Transferred Rights is being acquired by or on behalf of an entity that is, or at any time while the Transferred Rights are held thereby will be, one or more Benefit Plans or (ii) the transaction exemption set forth in one or more PTEs, such as PTE 84-14 (a class exemption for certain transactions determined by independent qualified professional asset managers), PTE 95-60 (a class exemption for certain transactions involving insurance company general accounts), PTE 90-1 (a class exemption for certain transactions involving insurance company pooled separate accounts), PTE 91-38 (a class exemption for certain transactions involving bank collective investment funds), and PTE 96-23 (a class exemption for certain transactions determined by in-house asset managers) is applicable with respect to the purchase and holding of the Transferred Rights and the exercise of Buyer's rights thereunder.

**5.** Each Party represents and warrants that it is a sophisticated entity and has adequate information concerning the financial condition of Debtor and the Proceedings to make an informed decision regarding the purchase/sale of the Transferred Rights and that it has independently and without reliance on the other Party, and based on such information as it has deemed appropriate, made its own decision to enter into this Agreement, except that it has relied on the other Party's express representations, warranties, covenants, agreements and indemnities as contained herein. Each Party is aware that information which may be pertinent to the decision to transfer the Transferred Rights is available to it and can be obtained from the files of the Proceedings or other publicly available sources. Each Party is aware that the consideration

OHSUSA:766869828.2

CONFIDENTIAL                                                                WBA-0000795

Case 15-01145   Doc 8199-5   Filed 07/31/18   Entered 07/31/18 18:13:03   Desc
Exhibit 5   Page 111 of 168

received/paid herein for the purchase/sale of the Transferred Rights may differ both in kind and amount from any distributions made pursuant to any plan of reorganization confirmed in the Proceedings. Each Party acknowledges that the other may possess, and may come into possession of, material non-public information concerning the Transferred Rights, Debtor and/or the Proceedings ("Excluded Information"). Each Party further acknowledges that it has not requested to receive such Excluded Information from the other Party and has nevertheless determined to proceed with the transaction contemplated herein, and neither shall have any liability to the other Party, and each waives and releases any claims that it might have against the other, arising out of the non-disclosure of such Excluded Information; provided, however, that the Excluded Information shall not limit, contradict or render untrue any representation or warranty made by Seller or Buyer herein.

6.      Each Party acknowledges and agrees that the Purchase Price and the Release set forth in section 10 below are intended to represent "fair consideration" (as such term is used in Article 10 of the New York Debtor and Creditor Law, N.Y. Debt. & Cred. §§ 270 et seq.) and "reasonably equivalent value" (as such term is used in 11 U.S.C. § 548), or as analogously provided under similar statute or applicable law, for the transfer of such assets.

7.      Seller agrees that in the event Seller actually receives any distributions with respect to the Rights after the date hereof, Seller shall accept the same and shall hold the same in trust for the sole benefit of Buyer and shall promptly deliver the same to Buyer in the same form received (free of any withholding, set-off, claims or deduction of any kind except as required by law) within five Business Days in the case of cash ("Cash Distribution"). If any such amounts are not received by the Buyer within five Business Days, then beginning on the next calendar day, the amount payable shall begin to accrue interest at a rate of LIBOR + 5% per annum, and within seven business days in the case of non-Cash Distributions, with the endorsement of Seller (without recourse, representation or warranty) when necessary or appropriate. In the event Seller receives any notices (not otherwise publicly available) in respect of the Rights, Seller shall promptly deliver the same to Buyer.

 (a) As used herein:

        "Business Day" means any day that is not a Saturday, a Sunday or any other day on which the Federal Reserve Bank of New York is closed.

        "LIBOR" means, for any day, the one-month London Interbank Offered Rate for deposits in U.S. Dollars as set by the British Bankers Association ("BBA") and published by the BBA at approximately 11:00 a.m. London time on such day. For any day that is not a business day, LIBOR shall be the rate published by the BBA on the immediately preceding business day.

8.      (a) Upon execution of this Agreement Buyer shall have any and all rights the Seller may have to enforce the terms of the Seller Transaction as against the Claimholder including without limitation filing pleadings, motions or notices of transfer with respect to the transfer of the Rights;

OHSUSA:766869828.2

CONFIDENTIAL

WBA-0000796

(b) On the Effective Date, Seller shall promptly deliver to Buyer all Due Diligence (as defined below). Seller agrees to cooperate with the Buyer in good faith to effectuate the intent and purpose of, and to carry out the terms of, this Agreement. Seller hereby appoints Buyer as its true and lawful attorney-in-fact solely with respect to the Transferred Rights and authorizes Buyer to act in Seller's name, place and stead, to demand, sue for, compromise and recover all such sums of money which now are, or may hereafter become due and payable for or on account of the Transferred Rights, to vote the Transferred Rights and to do all things necessary to enforce the Transferred Rights and Seller's rights thereunder pursuant to this Agreement. Seller agrees that the powers granted by this paragraph are discretionary in nature and exercisable at the sole option of Buyer.

9.      If for any reason, Seller (and not Buyer) is entitled to exercise any rights with respect to the Rights, then Seller agrees that with respect to any request, act, decision or vote to be made by Seller in respect of the Rights (each, an "Action"), Seller shall act in accordance with the written directions (if timely given) of Buyer. Seller may refuse to follow the instructions of Buyer only if such instructions violate any applicable law, regulation or direction of a regulatory or governmental authority.

10.     Buyer hereby releases and forever discharges (the "Release") Seller and/or its respective direct and indirect affiliates, subsidiaries, partners of subsidiaries, its successors and assigns, (and each of such entities' or persons' officers, directors, employees, representatives, attorneys, and agents, collectively, the "Releasees") of and from any and all claims, liabilities, demands, losses, costs, damages, expenses, attorneys' fees and causes of action whatsoever, whether individual, class or derivative in nature, whether at law or in equity, whether based on federal, state or foreign law or right of action, foreseen or unforeseen, matured or unmatured, known or unknown, accrued or not accrued, which Buyer has or had against any Releasee, arising out of or relating to the Seller Transaction or the Claim (collectively, the "Released Claims"), and covenants not to institute, maintain, finance or prosecute any action, claim, suit, proceeding or cause of action of any kind to enforce any of the Released Claims.  Buyer expressly covenants and agrees that the Release and Waiver shall each be binding in all respects upon its respective successors, assigns and transferees, and shall inure to the benefit of the successors and assigns of the Releasees.

11.     The Parties hereby represent and warrant to each other that: the delivery and performance of the Release and the Waiver have been duly authorized by all requisite corporate action and will not violate (a) any provision of applicable law, statute, rule or regulation or its organizational documents, (b) any order of any governmental authority or (c) any provision of any agreement to which the Party is a party or by which they are bound.  The foregoing is subject to all of the following:  (a) Seller's representations and warranties being true and correct on the Release Effective Date, (b) Seller having complied with all covenants required by this Agreement to be complied with by it on or before the Release Effective Date, and (c) Buyer having received this Agreement fully executed by Seller.

12.     Seller agrees to provide Buyer with the "Due Diligence" on the Effective Date.  "Due Diligence" means all "Correspondence" between Seller and Claimholder or their respective representatives, affiliates, counsel, advisors and employees related to: the Chapter 11 Cases, the Claim, the Proof of Claim, and any rights of Seller or Claimholder with respect to the Chapter 11

7

OHSUSA:766869828.2

Cases, the Claim or the Proof of Claim.   "Correspondence" means any and all written correspondence such as mail, email, instant messenger messages (including those transmitted through a Bloomberg terminal), text messages, notes, documents, details of conversations in person or by phone, and audio recordings of any conversations in Seller's possession related to the Claim, the Chapter 11 Cases, the Proof of Claim and Claimholder's participation in the Chapter 11 Cases.

13.      Seller agrees to indemnify, defend, reimburse and hold Buyer and its affiliates and its and their officers, directors, partners, employees, agents and controlling persons harmless from and against any and all losses, claims, damages, judgments, costs, penalties, expenses and liabilities, including, without limitation, attorneys' fees and expenses, which are incurred by or threatened against, on account of or in any way resulting from or relating to (a) Seller's breach of any of Seller's representations, warranties, covenants or agreements set forth herein, and (b) any obligation of Seller or Buyer to disgorge, in whole or in part, or otherwise reimburse (by setoff or otherwise) Debtor or any other person or entity for any payments, distributions, property, setoffs or recoupments received, applied or effected by or for the account of Seller under or in connection with the Transferred Rights or otherwise from, against or on account of Debtor or any of its guarantors or affiliates or any person or entity obligated in respect thereof. Buyer agrees to indemnify, defend, reimburse and hold Seller and its affiliates and its and their officers, directors, partners, employees, agents and controlling persons harmless from and against any and all losses, claims, damages, judgments, costs, penalties, expenses and liabilities, including, without limitation, attorneys' fees and expenses, which are incurred by or threatened against, on account of or in any way resulting from or relating to Buyer's breach of any of Buyer's representations, warranties, covenants or agreements set forth herein.

**14.      This Agreement and all matters arising out of or relating to it shall be governed by and construed in accordance with the laws of the State of New York without reference to any conflicts of law provisions that would require or permit the application of the laws of any other jurisdiction.   Each Party consents to service of process by certified mail at its address listed on Schedule I.   Each Party irrevocably and unconditionally (a) WAIVES ITS RIGHT TO TRIAL BY JURY and (b) consents to the exclusive jurisdiction of the federal and state courts located in the State of New York, Borough of Manhattan, in any action to enforce, interpret or construe any provision of this Agreement.**

15.      Seller agrees to execute and deliver (or cause to be executed and delivered) all such instruments and documents, and take all such action as Buyer may reasonably request, including cooperation with any litigation regarding the Seller Transaction and/or the Claim, at Buyer's cost and expense, in order to effectuate the intent and purpose of, and to carry out the terms of, this Agreement.

16.      Each Party agrees to maintain the confidentiality of this Agreement except to the extent (a) required or advisable to enforce or preserve such Party's rights hereunder or (b) required or requested pursuant to applicable law, regulation, or by the order of any court or governmental authority of competent jurisdiction; provided that either Party may disclose this Agreement and the transactions contemplated hereby to their legal counsel and other professionals and representatives, provided that such parties shall be obligated to maintain the confidentiality provisions contained herein, and provided further that Buyer may disclose this Agreement (but

8

CONFIDENTIAL

not the purchase rate or the purchase price) to potential purchasers, transferees, assignees or participants ("Transferees") provided that such Transferees have agreed to be bound by confidentiality provisions no less restrictive than contained herein.

**17.**   This Agreement may be executed in multiple counterparts and all of such counterparts when taken together shall be deemed to constitute one and the same instrument.   Delivery of an executed counterpart by facsimile or PDF transmission shall be as effective as delivery of a manually executed counterpart.   No amendment of any provision of this Agreement shall be effective unless it is in writing and signed by the Parties and no waiver of any provision of this Agreement, nor consent to any departure by either Party from it, shall be effective unless it is in writing and signed by the affected Party, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

**18.**   The Parties have participated jointly in the negotiation and drafting of this Agreement and, in the event of ambiguity or question of intent or interpretation arises, this Agreement shall be construed as jointly drafted by the Parties and no presumption or burden of proof shall arise favoring or disfavoring either Party by virtue of the authorship of any provision of this Agreement.   This Agreement constitutes the complete agreement of the Parties with respect to the subject matters referred to herein and supersedes all prior or contemporaneous negotiations, agreements or representations of every nature whatsoever with respect thereto, all of which have become merged and finally integrated herein.

**19.**   If any provision of this Agreement or any other agreement or document delivered in connection with this Agreement, if any, is partially or completely invalid or unenforceable in any jurisdiction, then that provision shall be ineffective in that jurisdiction to the extent of its invalidity or unenforceability, but the invalidity or unenforceability of that provision shall not affect the validity or enforceability of any other provision of this Agreement, all of which shall be construed and enforced as if that invalid or unenforceable provision were omitted, nor shall the invalidity or unenforceability of that provision in one jurisdiction affect its validity or enforceability in any other jurisdiction.

**20.**   No failure on the part of either Party to exercise, and no delay in exercising, any right hereunder or under any related document shall operate as a waiver thereof by such Party, nor shall any single or partial exercise of any right hereunder or under any other related document preclude any other or further exercise thereof or the exercise of any other right.   The rights and remedies of each Party provided herein and in other related documents (a) are cumulative and are in addition to, and not exclusive of, any rights or remedies provided by law and (b) are not conditional or contingent on any attempt by such Party to exercise any of its rights under any other related documents against the other Party or any other entity.

**21.**   Seller hereby acknowledges and consents to all terms set forth in this Agreement and agrees not to litigate or otherwise pursue any of the Rights (including, without limitation, the amount of the Claim and, to the extent related thereto, the Proofs of Claim).

**22.**   All demands, notices, consents, and communications hereunder shall be in writing and shall be deemed to have been duly given when e-mailed with acknowledgment of receipt by recipient, hand-delivered or duly deposited in the mails, by certified or registered mail, postage

OHSUSA:766869828.2

CONFIDENTIAL

Case 15-01145    Doc 8199-5    Filed 07/31/18    Entered 07/31/18 18:13:03    Desc
Exhibit 5    Page 115 of 168


prepaid-return-receipt requested, to the addresses set forth in Schedule I, or such other address as may be furnished hereafter by notice in writing.  Each payment to be made by either Party shall be made without set-off, counterclaim or deduction of any kind.  All payments made pursuant to this Agreement shall be made in the lawful currency of the United States by wire transfer of immediately available funds, in accordance with the wire instructions specified in Schedule I.

*[signature page follows]*

10

OHSUSA:766869828.2

CONFIDENTIAL

WBA-0000800

**IN WITNESS WHEREOF**, the undersigned have duly executed this Agreement by their duly authorized representatives as of the Agreement Date written above.

WHITEBOX MULTI-STRATEGY
PARTNERS, LP


By:_____
Name:
Title:



COWEN SPECIAL INVESTMENTS
LLC


By:_____
Name:
Title:


By:_____
Name:
Title:

11

OHSUSA:766869828.2

CONFIDENTIAL

SCHEDULE I: NOTICE AND WIRE INSTRUCTIONS

Seller's Wire Instructions

Seller Notice Address:

Cowen Special Investments LLC
Attention: General Counsel
599 Lexington Avenue, 21st Floor
New York, NY 10022
**owen.littman@cowen.com**

with a copy to:

Scott Balber
Herbert Smith Freehills New York LLP
450 Lexington Avenue, 14th Floor
New York, NY 10017
**scott.balber@hsf.com**

Buyer Notice Address:

OHSUSA:766869828.2

EXHIBIT A: DECLARATION

OHSUSA:766869828.2

CONFIDENTIAL

WBA-0000803

**To:**      Balber, Scott[Scott.Balber@hsf.com]
**Cc:**      Pasacreta, Amy[apasacreta@orrick.com]; Fechik, Matthew[mfechik@orrick.com]
**From:**      Mintz, Douglas S.
**Sent:**      Mon 5/15/2017 7:00:43 PM
**Subject:**      Caesars -- Assignment of Earl Claim
766869858(1)_AA Caesars (Cowen to Whitebox)-SB Revisions - Caesars -- Orrick Comments to Assignment Clean.DOC
766869828(1)_Caesars -- Orrick Comments to Assignment Clean.DOCX

FRE 408 CONFIDENTIAL COMMUNICATION (INCLDUING ATTACHMENT)

Scott – Further to our discussions yesterday, here is a revised draft. [NOTE THERE IS A SIDE COMMENT IN THE CLEAN THAT DOESN'T COME THROUGH IN THE BLACKLINE]

In addition to the business terms we discussed, I've tweaked some other drafting points – mostly things you removed that probably should not be removed.  We should discuss these if need be but hopeful we can get this wrapped up quickly.

Please let me know when you would like to discuss.

DM

**Douglas S. Mintz**

Partner

Orrick
Washington, DC 

T +1-202-339-8518
dmintz@orrick.com



Distressed Download Blog

FRE 408 CONFIDENTIAL COMMUNICATION

ORRICK COMMENTS 5/14/17

## ASSIGNMENT AND  RELEASE AGREEMENT

SELLER:         Cowen Special Investments LLC
Address:        830 Third Avenue, 4th Floor,
                New York, NY 10022
Attention:      Bradly D. Schwab
Phone:          646-616-3081
Email:          Bradly.schwab@cowen.com

BUYER:          Whitebox Multi-Strategy Partners, LP
Address:        3033 Excelsior Blvd, Ste 300 Minneapolis, MN 55416
Attention:      Scott Specken
Email:          sspecken@whiteboxadvisors.com
Phone:          612-253-6061

AGREEMENT DATE:     May__, 2017

DEBTOR:             Caesars Entertainment Operating Company, Inc., et. al.

PROCEEDINGS:        Case No. 15-01145 jointly administered (the "Chapter 11 Cases") and
                    currently pending in the United States Bankruptcy Court for the
                    Northern District of Illinois Eastern Division (the "Bankruptcy
                    Court").

PETITION DATE:      January 14, 2015

CLAIM:              general unsecured claim asserted by Earl of Sandwich (Atlantic City)
                    LLC (the "Claimholder") against the Debtor in a principal amount of
                    not less than $3,600,000.00

        WHEREAS, on April 18, 2015, the Claimholder filed with the Bankruptcy Court a proof
of claim with respect to a lease termination, which was assigned claim number 5497 (the
"Original Proof of Claim").

CONFIDENTIAL                                                                    WBA-0000808

WHEREAS, on September 1, 2016, Claimholder filed an amended proof of claim which was assigned claim number 5858 and amended and superseded the Original Proof of Claim which was expunged pursuant to the Order Sustaining Debtors' Twentieth Omnibus Objection to Certain Proofs of Claim (Amended and Replaced Claims) (Non-Substantive) (the "Proof of Claim").

WHEREAS, on October 20, 2016, the Debtors filed their Third Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code (as amended or modified, the "Plan"), which was confirmed by the Bankruptcy Court pursuant to that certain order dated January 17, 2017.

WHEREAS, on January 12, 2017, Seller  sought to purchase from Claimholder (the "Seller Transaction"): (i) the Claim, together with any and all right to receive principal, interest, fees, damages, penalties and other amounts in respect of the Claim (in each case whether accruing prior to, on, or after the date of this Agreement), (ii) the Proof of Claim and any other proofs of claim filed (regardless of filing date) with respect to the Claim; (iii) any actions, claims, rights, lawsuits and/or causes of action against the Debtor arising out of or in connection with any of the foregoing; and (iv) all proceeds of any kind of the foregoing, including, without limitation, all cash, securities or other property distributed or payable on account thereof, or exchanged in return therefor for ((i)-(iv) collectively, the "Rights").

WHEREAS, Seller corresponded with Claimholder regarding the Rights and the Proceedings and requested, among other things, to (i) negotiate definitive documentation for the Seller Transaction ("Definitive Seller Agreement") and (ii) proceed to consummate the Seller Transaction.

WHEREAS, the Claimholder did not negotiate definitive documentation with the Seller and has not executed the Definitive Seller Agreement documentation or filed a notice of transfer with respect to the Proof of Claim.

WHEREAS, upon the terms and subject to the conditions set forth in this Agreement, Seller desires to sell, transfer, assign, grant and convey to Buyer, and Buyer desires to purchase, acquire and receive, the Transferred Rights (as defined hereinafter).

NOW THEREFORE, Buyer and Seller (each a "Party" and collectively, the "Parties") agree as follows:

1.      Seller, for good and valuable consideration, does hereby irrevocably sell, convey, transfer and assign unto Buyer (a) whatever rightany and all rights Seller may have to purchase the Rights directly from Claimholder and (b) any and all actions, claims, rights, remedies, lawsuits and/or causes of action Seller has against the Claimholder arising out of or in connection with the Seller Transaction (the "Transferred Rights.") .  This assignment shall be deemed an absolute and unconditional assignment of the Transferred Rights for the purpose of collection and satisfaction and shall not be deemed to create a security interest.

2.      Seller's obligation to sell, transfer, assign, grant and convey the Transferred Rights to Buyer is subject to all of the following: (a) Buyer's representations and warranties being true and

2

OHSUSA:766794552766869828.1

correct, (b) Buyer having complied with all covenants required by this Agreement to be complied with by it, (c) Seller having received this Agreement fully executed by Buyer and (d) Seller having received the [one dollar (the "Purchase Price") by wire transfer of immediately available funds] in accordance with written wire instructions specified by Seller.

**3.**      Seller represents and warrants to Buyer and Buyer's successors and assigns that:

(a)   Seller is duly organized and validly existing under the laws of its jurisdiction of organization, is in good standing under such laws, and is authorized and empowered to execute, deliver and perform this Agreement, and this Agreement constitutes the valid, legal and binding agreement of Seller, enforceable against Seller in accordance with its terms;

(b) Except for filings that are expressly contemplated by this Agreement, no consent, approval, filing or corporate, partnership or other action is required as a condition to or in connection with execution, delivery and performance of this Agreement and the transactions contemplated herein;

(c)  To the best of Seller's knowledge, the Claimholder has timely and properly filed the Proof of Claim and Buyer shall assume no obligations or liabilities in respect of the Rights, including but not limited to the obligation to file any proof of claim with respect to the Claim;

(d) To the best of Seller's knowledge, neither the execution, delivery or performance of this Agreement, nor consummation of the transactions contemplated hereby, will violate or contravene any law, rule, regulation, order or agreement affecting Seller;

(e)  Seller is the sole legal and beneficial owner of, and has good title to, the Transferred Rights, free and clear of (i) any legal, regulatory or contractual restriction on transfer or (ii) any pledge, lien, claim, security interest, participation, factoring agreement or other encumbrance of any type or kind (collectively, the "Liens") and will transfer to Buyer such good title free and clear of Liens;

(f) Seller believes that it would be able to assert a ~~non-frivolous~~ claim, ~~consistent with~~that would not violate Rule 11 of the Federal Rules of Civil Procedure or Rule 9011 of the Federal Rules of Bankruptcy Procedure, that the Seller Transaction constitutes a valid and binding agreement which remains in full force and effect and that the Due Diligence (as defined herein) includes "evidence" of such transfer sufficient to satisfy Federal Rule of Bankruptcy Procedure 3001(e)(2);

(g)  To the best of Seller's knowledge, Claimholder has not sold the Rights to any other party;

(h)   To the best of Seller's knowledge, the Claim is a valid, liquidated, non-contingent, enforceable, general unsecured claim against the Debtor;

(i)   Seller has not previously sold, transferred, assigned, participated or otherwise conveyed the Transferred Rights, nor has Seller agreed to do any of the foregoing (whether in whole or in part);

OHSUSA:~~76679455~~2766869828.1

CONFIDENTIAL
WBA-0000810

(j)  No payment or distribution has been received by or on behalf of Seller, in full or partial satisfaction of the Rights;

(k)  Seller has not engaged, and shall not engage, in any act, conduct or omission, or had any relationship with the Claimholder or any of its affiliates that would result in Buyer receiving in respect of the Transferred Rights proportionately less in payments or distributions, or less favorable treatment (including the timing of payments or distributions) for the Transferred Rights than will be received on behalf of other  general unsecured claims and administrative expense claims, as applicable;

(l)(k)  Seller is not an "insider" of the Debtor or its affiliates within the meaning of Section 101(31) of the Bankruptcy Code, and is not a member of any official or unofficial committee in the Proceedings;

(m)(l)  Seller has not received any written notice (except as otherwise publicly available in the Proceedings (if any)), that the Rights or any portion thereof is void, voidable, or unenforceable;

(n) To the best of Seller's knowledge, no objection to the Proof of Claim or the Rights has been made or threatened and there are no offsets, setoffs or legal or equitable defenses that have been (or may be) asserted by or on behalf of Debtor or any other party to reduce the amount of the Claim or impair the treatment of the Claim as compared to other general unsecured claims and administrative expense claims, as applicable;

(o) To the best of Seller's knowledge, there are no preference actions against Claimholder, and, no legal or equitable defenses, counterclaims or offsets, reductions, recoupments, impairments, avoidances, disallowances or subordinations exist or, may be asserted by or on behalf of the Debtor to reduce the amount of the Rights or affect their validity or enforceability and no legal or equitable defenses, counterclaims or offsets;

(p)(m)  Upon execution of this Agreement, Seller shall provide to Buyer true and complete copies of all Due Diligence (defined below);

(q)(n)  Seller is not "insolvent" within the meaning of Section 1-201(23) of the Uniform Commercial Code or Section 101(32) of the Bankruptcy Code, has adequate capital to conduct its business and has not filed a petition seeking protection under the Bankruptcy Code or similar statute; and

(r)(o)  either (i) no interest in the Transferred Rights is being sold by or on behalf of one or more Benefit Plans (as defined below) or (ii) the transaction exemption set forth in one or more prohibited transaction class exemption issued by the U.S. Department of Labor ("PTE"), such as PTE 84-14 (a class exemption for certain transactions determined by independent qualified professional asset managers), PTE 95-60 (a class exemption for certain transactions involving insurance company general accounts), PTE 90-1 (a class exemption for certain transactions involving insurance company pooled separate accounts), PTE 91-38 (a class exemption for certain transactions involving bank collective investment funds), and PTE 96-23 (a class exemption for certain transactions determined by in-house asset managers) is applicable with respect to the sale of the Transferred Rights.  "Benefit Plan" means an "employee benefit plan" (as defined in ERISA) that is subject to Title I of the Employee Retirement Income Security Act

4

CONFIDENTIAL

WBA-0000811

of 1974, as amended, and the rules and regulations promulgated under it ("ERISA"), a "plan" as defined in Section 4975 of the Code or any Entity whose assets include (for purposes of ERISA Section 3(42) or otherwise for purposes of Title I of ERISA or Section 4975 of the Code) the assets of any such "employee benefit plan" or "plan".

4.      Buyer represents and warrants to Seller as of the Effective Date that:

(a)    Buyer is duly organized and validly existing under the laws of its jurisdiction of organization, is in good standing under such laws, and is authorized and empowered to execute, deliver and perform this Agreement, and this Agreement constitutes the valid, legal and binding agreement of Buyer, enforceable against Buyer in accordance with its terms;

(b) except for filings that are expressly contemplated by this Agreement, no consent, approval, filing or corporate, partnership or other action is required as a condition to or in connection with execution, delivery and performance of this Agreement and the transactions contemplated herein;

(c)  neither the execution, delivery or performance of this Agreement, nor consummation of the transactions contemplated hereby, will violate or contravene any law, rule, regulation, order or agreement affecting Buyer;

(d)  Buyer has (i) reviewed the terms and provisions of this Agreement, and has evaluated the restrictions and obligations contained herein and therein; (ii) agreed to the Release based on its own independent investigation and credit determination; and (iii) not relied on any representation or warranty made by Seller, except as expressly set forth herein; and

(e) either (i) no interest in the Transferred Rights is being acquired by or on behalf of an entity that is, or at any time while the Transferred Rights are held thereby will be, one or more Benefit Plans or (ii) the transaction exemption set forth in one or more PTEs, such as PTE 84-14 (a class exemption for certain transactions determined by independent qualified professional asset managers), PTE 95-60 (a class exemption for certain transactions involving insurance company general accounts), PTE 90-1 (a class exemption for certain transactions involving insurance company pooled separate accounts), PTE 91-38 (a class exemption for certain transactions involving bank collective investment funds), and PTE 96-23 (a class exemption for certain transactions determined by in-house asset managers) is applicable with respect to the purchase and holding of the Transferred Rights and the exercise of Buyer's rights thereunder.

5.      Each Party represents and warrants that it is a sophisticated entity and has adequate information concerning the financial condition of Debtor and the Proceedings to make an informed decision regarding the purchase/sale of the Transferred Rights and that it has independently and without reliance on the other Party, and based on such information as it has deemed appropriate, made its own decision to enter into this Agreement, except that it has relied on the other Party's express representations, warranties, covenants, agreements and indemnities as contained herein.  Each Party is aware that information which may be pertinent to the decision to transfer the Transferred Rights is available to it and can be obtained from the files of the Proceedings or other publicly available sources.  Each Party is aware that the consideration received/paid herein for the purchase/sale of the Transferred Rights may differ both in kind and

OHSUSA:766794552766869828.1

CONFIDENTIAL                                                                                   WBA-0000812

amount from any distributions made pursuant to any plan of reorganization confirmed in the Proceedings. Each Party acknowledges that the other may possess, and may come into possession of, material non-public information concerning the Transferred Rights, Debtor and/or the Proceedings ("Excluded Information"). Each Party further acknowledges that it has not requested to receive such Excluded Information from the other Party and has nevertheless determined to proceed with the transaction contemplated herein, and neither shall have any liability to the other Party, and each waives and releases any claims that it might have against the other, arising out of the non-disclosure of such Excluded Information; provided, however, that the Excluded Information shall not limit, contradict or render untrue any representation or warranty made by Seller or Buyer herein.

**6.**    Each Party acknowledges and agrees that the Purchase Price and the Release set forth in section 10 below are intended to represent "fair consideration" (as such term is used in Article 10 of the New York Debtor and Creditor Law, N.Y. Debt. & Cred. §§ 270 et seq.) and "reasonably equivalent value" (as such term is used in 11 U.S.C. § 548), or as analogously provided under similar statute or applicable law, for the transfer of such assets.

**7.**    Seller agrees that in the event Seller actually receives any distributions with respect to the Rights after the date hereof, Seller shall accept the same and shall hold the same in trust for the sole benefit of Buyer and shall promptly deliver the same to Buyer in the same form received (free of any withholding, set-off, claims or deduction of any kind except as required by law) within five Business Days in the case of cash ("Cash Distribution"). If any such amounts are not received by the Buyer within five Business Days, then beginning on the next calendar day, the amount payable shall begin to accrue interest at a rate of LIBOR + 5% per annum, and within seven business days in the case of non-Cash Distributions, with the endorsement of Seller (without recourse, representation or warranty) when necessary or appropriate. In the event Seller receives any notices (not otherwise publicly available) ~~pursuant to the Chapter 11 Cases~~ in respect of the Rights, Seller shall promptly deliver the same to Buyer.

(a) As used herein:

"Business Day" means any day that is not a Saturday, a Sunday or any other day on which the Federal Reserve Bank of New York is closed.

"LIBOR" means, for any day, the one-month London Interbank Offered Rate for deposits in U.S. Dollars as set by the British Bankers Association ("BBA") and published by the BBA at approximately 11:00 a.m. London time on such day. For any day that is not a business day, LIBOR shall be the rate published by the BBA on the immediately preceding business day.

**8.**    (a) Upon execution of this Agreement ~~(a)~~ Buyer shall have ~~whatever~~ any and all rights the Seller may have to enforce the terms of the Seller Transaction as against the Claimholder~~, and~~ including without limitation filing pleadings, motions or notices of transfer with respect to the transfer of the Rights;

(b) concurrent with execution of this Agreement, Seller shall promptly deliver to Buyer all Due Diligence (as defined below). Seller agrees to cooperate with the Buyer in good faith to

OHSUSA:~~767794552~~766869828.1

CONFIDENTIAL

WBA-0000813

effectuate the intent and purpose of, and to carry out the terms of, this Agreement. Seller hereby appoints Buyer as its true and lawful attorney-in-fact solely with respect to the Transferred Rights and authorizes Buyer to act in Seller's name, place and stead, to demand, sue for, compromise and recover all such sums of money which now are, or may hereafter become due and payable for or on account of the Transferred Rights, to vote the Transferred Rights and to do all things necessary to enforce the Transferred Rights and Seller's rights thereunder pursuant to this Agreement. Seller agrees that the powers granted by this paragraph are discretionary in nature and exercisable at the sole option of Buyer.

**9.** If for any reason, Seller (and not Buyer) is entitled to exercise ~~in the Chapter 11 Cases~~ any rights with respect to the Rights, then Seller agrees that with respect to any request, act, decision or vote to be made by Seller in ~~the Chapter 11 Cases in~~ respect of the Rights (each, a ~~a~~an "Action"), Seller shall act in accordance with the written directions (if timely given) of Buyer. Seller may refuse to follow the instructions of Buyer only if such instructions violate any applicable law, regulation or direction of a regulatory or governmental authority.

**10.** (a) Buyer hereby releases and forever discharges (the "~~Initial~~ Release") Seller and/or its respective direct and indirect affiliates, subsidiaries, partners of subsidiaries, its successors and assigns, (and each of such entities' or persons' officers, directors, employees, representatives, attorneys, and agents, collectively, the "Releasees") of and from any and all claims, liabilities, demands, losses, costs, damages, expenses, attorneys' fees and causes of action whatsoever, whether individual, class or derivative in nature, whether at law or in equity, whether based on federal, state or foreign law or right of action, foreseen or unforeseen, matured or unmatured, known or unknown, accrued or not accrued, which Buyer has or had against any Releasee, arising out of or relating to Releasee's ~~breach of contract,~~ negligence ~~or gross negligence~~ in connection with the Seller Transaction or the Claim (collectively, the "Released Claims"), and covenants not to institute, maintain, finance or prosecute any action, claim, suit, proceeding or cause of action of any kind to enforce any of the Released Claims. ~~Moreover,~~

(b) Buyer ~~further releases~~agrees that it shall bring any lawsuit for any claim, liability, demand, loss, cost, damage, expense, attorney's fee or cause of action ~~against~~any~~against any~~ Releasee not covered by the ~~Initial~~Release, whether resulting from the alleged bad faith, gross negligence or willful misconduct or other acts of any Releasee ~~that is not asserted by Buyer~~(including breach of contract) through the filing of a complaint in a court of competent jurisdiction within ~~30~~60 days of the date of this Agreement~~.~~ (the "Lawsuit Deadline"). Buyer waives any litigation claims against any Releasees with respect to the Rights not filed prior to the Litigation Deadline (the "Waiver").

(c) Buyer expressly covenants and agrees that the Release and Waiver shall each be binding in all respects upon its respective successors, assigns and transferees, and shall inure to the benefit of the successors and assigns of the Releasees.

**11.** The Parties hereby represent and warrant to each other that: the delivery and performance of ~~this~~the Release ~~has~~and the Waiver have been duly authorized by all requisite corporate action and will not violate (a) any provision of applicable law, statute, rule or regulation or its organizational documents, (b) any order of any governmental authority or (c) any provision of any agreement to which the Party is a party or by which they are bound. The foregoing is

7

CONFIDENTIAL                                                                                       WBA-0000814

subject to all of the following:  (a) Seller's representations and warranties being true and correct on the Release Effective Date, (b) Seller having complied with all covenants required by this Agreement to be complied with by it on or before the Release Effective Date, and (c) Buyer having received this Agreement fully executed by Seller.

**12.**    Seller agrees to provide Buyer with the "Due Diligence" ~~promptly after~~concurrent with the execution of this Agreement.  "Due Diligence" means all ~~correspondence~~"Correspondence" between Seller and Claimholder or their respective representatives, affiliates, counsel, advisors and employees related to: the Chapter 11 Cases, the Claim, the Proof of Claim, and any rights of Seller or Claimholder with respect to the Chapter 11 Cases, the Claim or the Proof of Claim. "Correspondence" means any and all written correspondence such as mail, email, instant messenger messages (including those transmitted through a Bloomberg terminal), text messages, notes, documents, details of conversations in person or by phone, and audio recordings of any conversations in Seller's possession related to the Claim, the Chapter 11 Cases, the Proof of Claim and Claimholder's participation in the Chapter 11 Cases.

**13.**    ~~12.~~ Seller agrees to indemnify, defend, reimburse and hold Buyer and its affiliates and its and their officers, directors, partners, employees, agents and controlling persons harmless from and against any and all losses, claims, damages, judgments, costs, penalties, expenses and liabilities, including, without limitation, attorneys' fees and expenses, which are incurred by or threatened against, on account of or in any way resulting from or relating to (a) Seller's breach of any of Seller's representations, warranties, covenants or agreements set forth herein, and (b) any obligation of Seller or Buyer to disgorge, in whole or in part, or otherwise reimburse (by setoff or otherwise) Debtor or any other person or entity for any payments, distributions, property, setoffs or recoupments received, applied or effected by or for the account of Seller under or in connection with the Transferred Rights or otherwise from, against or on account of Debtor or any of its guarantors or affiliates or any person or entity obligated in respect thereof. Buyer agrees to indemnify, defend, reimburse and hold Seller and its affiliates and its and their officers, directors, partners, employees, agents and controlling persons harmless from and against any and all losses, claims, damages, judgments, costs, penalties, expenses and liabilities, including, without limitation, attorneys' fees and expenses, which are incurred by or threatened against, on account of or in any way resulting from or relating to Buyer~~'s assertion of any claims assigned to it by Seller pursuant to this Agreement~~'s breach of any of Buyer's representations, warranties, covenants or agreements set forth herein.

**14.**    ~~13.~~ **This Agreement and all matters arising out of or relating to it shall be governed by and construed in accordance with the laws of the State of New York without reference to any conflicts of law provisions that would require or permit the application of the laws of any other jurisdiction.  Each Party consents to service of process by certified mail at its address listed on Schedule I.  Each Party irrevocably and unconditionally (a) WAIVES ITS RIGHT TO TRIAL BY JURY and (b) consents to the exclusive jurisdiction of the federal and state courts located in the State of New York, Borough of Manhattan, in any action to enforce, interpret or construe any provision of this Agreement.**

**15.**    ~~14.~~ Seller agrees to execute and deliver (or cause to be executed and delivered) all such instruments and documents, and take all such action as Buyer may reasonably request, at Buyer's

OHSUSA:~~766794552~~766869828.1

CONFIDENTIAL

WBA-0000815

cost and expense, in order to effectuate the intent and purpose of, and to carry out the terms of, this Agreement.

**16.**   ~~15.~~ Each Party agrees to maintain the confidentiality of this Agreement except to the extent (a) required or advisable to enforce or preserve such Party's rights hereunder or (b) required or requested pursuant to applicable law, regulation, or by the order of any court or governmental authority of competent jurisdiction; provided that either Party may disclose this Agreement and the transactions contemplated hereby to their legal counsel and other professionals and representatives, provided that such parties shall be obligated to maintain the confidentiality provisions contained herein, and provided further that Buyer may disclose this Agreement (but not the purchase rate or the purchase price) to potential purchasers, transferees, assignees or participants ("Transferees") provided that such Transferees have agreed to be bound by confidentiality provisions no less restrictive than contained herein.

**17.**   ~~16.~~ This Agreement may be executed in multiple counterparts and all of such counterparts when taken together shall be deemed to constitute one and the same instrument. Delivery of an executed counterpart by facsimile or PDF transmission shall be as effective as delivery of a manually executed counterpart.  No amendment of any provision of this Agreement shall be effective unless it is in writing and signed by the Parties and no waiver of any provision of this Agreement, nor consent to any departure by either Party from it, shall be effective unless it is in writing and signed by the affected Party, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

**18.**   ~~17.~~ The Parties have participated jointly in the negotiation and drafting of this Agreement and, in the event of ambiguity or question of intent or interpretation arises, this Agreement shall be construed as jointly drafted by the Parties and no presumption or burden of proof shall arise favoring or disfavoring either Party by virtue of the authorship of any provision of this Agreement.  This Agreement constitutes the complete agreement of the Parties with respect to the subject matters referred to herein and supersedes all prior or contemporaneous negotiations, agreements or representations of every nature whatsoever with respect thereto, all of which have become merged and finally integrated herein.

**19.**   ~~18.~~ If any provision of this Agreement or any other agreement or document delivered in connection with this Agreement, if any, is partially or completely invalid or unenforceable in any jurisdiction, then that provision shall be ineffective in that jurisdiction to the extent of its invalidity or unenforceability, but the invalidity or unenforceability of that provision shall not affect the validity or enforceability of any other provision of this Agreement, all of which shall be construed and enforced as if that invalid or unenforceable provision were omitted, nor shall the invalidity or unenforceability of that provision in one jurisdiction affect its validity or enforceability in any other jurisdiction.

**20.**   ~~19.~~ No failure on the part of either Party to exercise, and no delay in exercising, any right hereunder or under any related document shall operate as a waiver thereof by such Party, nor shall any single or partial exercise of any right hereunder or under any other related document preclude any other or further exercise thereof or the exercise of any other right.  The rights and remedies of each Party provided herein and in other related documents (a) are cumulative and are in addition to, and not exclusive of, any rights or remedies provided by law and (b) are not

OHSUSA:~~766794552~~766869828.1

CONFIDENTIAL                                                                                                                      WBA-0000816

conditional or contingent on any attempt by such Party to exercise any of its rights under any other related documents against the other Party or any other entity.

**21.**    20. Seller hereby acknowledges and consents to all terms set forth in this Agreement and agrees not to litigate or otherwise pursue any of the Rights (including, without limitation, the amount of the Claim and, to the extent related thereto, the Proofs of Claim).

**22.**    21. All demands, notices, consents, and communications hereunder shall be in writing and shall be deemed to have been duly given when e-mailed with acknowledgment of receipt by recipient, hand-delivered or duly deposited in the mails, by certified or registered mail, postage prepaid-return-receipt requested, to the addresses set forth in Schedule I, or such other address as may be furnished hereafter by notice in writing.   Each payment to be made by either Party shall be made without set-off, counterclaim or deduction of any kind.  All payments made pursuant to this Agreement shall be made in the lawful currency of the United States by wire transfer of immediately available funds, in accordance with the wire instructions specified in Schedule I.

*[signature page follows]*

OHSUSA:766794552766869828.1

CONFIDENTIAL                                                                                    WBA-0000817

**IN WITNESS WHEREOF**, the undersigned have duly executed this Agreement by their duly authorized representatives as of the Agreement Date written above.

WHITEBOX MULTI-STRATEGY
PARTNERS, LP


By: _____
Name:
Title:


COWEN SPECIAL INVESTMENTS
LLC


By: _____
Name:
Title:


By: _____
Name:
Title:

11

OHSUSA:766794552766869828.1

## SCHEDULE I: NOTICE AND WIRE INSTRUCTIONS

**Seller's Wire Instructions**

**Seller Notice Address:**

Cowen Special Investments LLC
Attention: General Counsel
599 Lexington Avenue, 21st Floor
New York, NY 10022
owen.littman@cowen.com

with a copy to:

Scott Balber
Herbert Smith Freehills New York LLP
450 Lexington Avenue, 14th Floor
New York, NY 10017
scott.balber@hsf.com

**Buyer Notice Address:**

OHSUSA:766794552766869828.1

Document comparison by Workshare Compare on Monday, May 15, 2017
2:56:27 PM

| Input: | |
|---|---|
| Document 1 ID | interwovenSite://NCUSADMS01/USA/766867966/1 |
| Description | #766867966v1<USA> - AA Caesars (Cowen to Whitebox)-SB Revisions |
| Document 2 ID | interwovenSite://NCUSADMS01/USA/766869828/1 |
| Description | #766869828v1<USA> - Caesars -- Orrick Comments to Assignment Clean |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 62 |
| Deletions | 48 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 110 |

CONFIDENTIAL

**To:**    Pasacreta, Amy[apasacreta@orrick.com]; Mintz, Douglas S.[dmintz@orrick.com]
**Cc:**    Fechik, Matthew[mfechik@orrick.com]
**From:**    Balber, Scott
**Sent:**    Thur 5/4/2017 3:37:10 PM
**Subject:**    RE: Caesars -- EOS Claim

Doug –

Good speaking with you earlier.   As discussed Cowen has two principal issues with the draft assignment agreement:

1.   Cowen is not willing to agree to any reps and warranties regarding the underlying claim or any rights it may have against the seller with respect to the claim.   I suspect we will be amenable to agreeing to ordinary course business term reps and warranties (i.e., that we are duly organized, etc) but nothing beyond that.

2.   Only the potential claims for intentional misconduct should be preserved until after the expiration of the 60 day period. All other claims (i.e., for negligence, gross negligence, breach of contract, etc.) must be released upon execution of the assignment agreement.

Of course, we reserve the right to do a thorough review of the agreement and to give your more specific comments on the draft, but let's see if we can get past these two issues first.   Happy to discuss further.

Best,

Scott

**From:** Pasacreta, Amy [mailto:apasacreta@orrick.com]
**Sent:** Wednesday, May 03, 2017 2:32 PM
**To:** Mintz, Douglas S.; Balber, Scott
**Cc:** Fechik, Matthew
**Subject:** RE: Caesars -- EOS Claim

Scott—

Assignment agreement attached.

**Amy G. Pasacreta**

Attorney At Law

Orrick
New York  ⊙

T +1-212-506-5159
apasacreta@orrick.com



Distressed Download Blog



**From:** Mintz, Douglas S.
**Sent:** Wednesday, May 03, 2017 2:24 PM

WBA-0000838

**To:**      Mintz, Douglas S.[dmintz@orrick.com]; 'Balber, Scott'[Scott.Balber@hsf.com]
**Cc:**      Fechik, Matthew[mfechik@orrick.com]
**From:**    Pasacreta, Amy
**Sent:**    Wed 5/3/2017 6:32:20 PM
**Subject:** RE: Caesars -- EOS Claim
766794552(3)_AA Caesars (Cowen to Whitebox) (2).docx

Scott—

Assignment agreement attached.

**Amy G. Pasacreta**

Attorney At Law

Orrick
New York ⊙

T +1-212-506-5159
apasacreta@orrick.com



Distressed Download Blog



---

**From:** Mintz, Douglas S.
**Sent:** Wednesday, May 03, 2017 2:24 PM
**To:** 'Balber, Scott' <Scott.Balber@hsf.com>
**Cc:** Pasacreta, Amy <apasacreta@orrick.com>; Fechik, Matthew <mfechik@orrick.com>
**Subject:** Caesars -- EOS Claim

Scott – as I mentioned in my vmail, my colleague Amy Pasacreta (ccd) will be sending over to you an Assignment Agreement
shortly.  We are happy to discuss at your convenience.

DM

**Douglas S. Mintz**

Partner

Orrick
Washington, DC 

T +1-202-339-8518
dmintz@orrick.com



Distressed Download Blog

                                                              WBA-0000846

**To:**     Mintz, Douglas S.[dmintz@orrick.com]
**Cc:**     Balber, Scott[Scott.Balber@hsf.com]
**From:**  Miller, Diane
**Sent:**  Thur 4/20/2017 9:05:25 PM
**Subject:**  Cowen Special Investments / Whitebox
D. Mintz ltr (signed).PDF

Dear Mr. Mintz:

Please see the attached letter from Scott Balber.

*Diane Miller*
**Secretary to Scott S. Balber**
**Herbert Smith Freehills New York LLP**
**Direct Tel +917 542 7617**

Herbert Smith Freehills New York LLP and Herbert Smith Freehills, an Australian Partnership, are separate member firms of the international legal practice known as Herbert Smith Freehills.

This message is confidential and may be covered by legal professional privilege. If you are not the intended recipient you must not disclose or use the information contained in it. If you have received this email in error please notify us immediately by return email or by calling our main switchboard on +1 917 542 7600 and delete the email.

Further information is available from www.herbertsmithfreehills.com, including our Privacy Policy which describes how we handle personal information.

Herbert Smith Freehills New York LLP is a limited liability partnership registered in England and Wales with registered number OC375072. Its registered office is at Exchange House, Primrose Street, London EC2A 2EG.

This message was not intended or written to be used, and it cannot be used by any taxpayer, for the purpose of avoiding penalties that may be imposed on the taxpayer under U.S. Federal tax law.

Some of this material may constitute attorney advertising within the meaning of sections 1200.1 and 1200.6-8 of Title 22 of the New York Codes, Rules and Regulatory Advertising Regulations. The following statement is made in accordance with those rules: ATTORNEY ADVERTISING: PRIOR RESULTS DO NOT GUARANTEE A SIMILAR OUTCOME.



HERBERT
SMITH
FREEHILLS

Douglas S. Mintz
Orrick, Herrington & Sutcliffe LLP
Columbia Center
1152 15th Street, N.W.
Washington, DC 20005-1706

Herbert Smith Freehills New York LLP
450 Lexington Avenue, 14th floor
New York, NY 10017
USA
T +1 917 542 7600
F +1 917 542 7601
D +1 917 542 7810
E scott.balber@hsf.com
www.herbertsmithfreehills.com

Our ref

Your ref

Date
April 20, 2017

Re: Whitebox

Dear Doug:

This firm represents Cowen Special Investments LLC ("Cowen") and we write in response to your letter to Danny Phillips dated April 18, 2017 (the "April 18 Letter") regarding Whitebox's desire to purchase two claims in the Caesars Entertainment Operating Company Bankruptcy (the "Claims"). As you know, the Claims are held by Earl of Sandwich (the "Putative Seller").

As expressly referenced in the January 12, 2017 email attached as Exhibit A to your April 18 Letter, Whitebox's contemplated purchase of the Claims was subject to several conditions, notably "satisfactory completion of due diligence", "execution of a mutually acceptable Assignment of Claim" and "Cowen executing an Assignment of Claim Agreement with original holder of Claim." Despite Cowen's best efforts, it has not been able to procure the Claims from the Putative Seller who has declined to sell them. Accordingly, because the conditions precedent have not been met, no binding obligation of Cowen was created by the January 12 email. In the event that a contract was formed by the January 12 email, Cowen's performance of its obligation -- notably to deliver the Claims – is excused under the doctrine of impossibility of performance. Finally, any damages claimed by Whitebox as the result of its inability to acquire the Claims is wholly speculative – it is impossible to predict what, if any, recovery would be obtained by Whitebox in excess of the contemplated purchase price.

While Cowen has absolutely no further obligation with respect to this contemplated transaction, Cowen does value its relationship with Whitebox and wants to cooperate in Whitebox's efforts to complete the purchase of the Claims. In this regard, Cowen is amenable to discussing the assignment to Whitebox of any cause of action that it may have against the Putative Seller, in exchange for a release of any potential claims against Cowen. Please feel free to contact me to discuss this.

Best regards,

Scott S. Balber

Herbert Smith Freehills New York LLP and Herbert Smith Freehills, an Australian Partnership, are separate member firms of the international legal practice known as Herbert Smith Freehills.

Herbert Smith Freehills New York LLP is a limited liability partnership registered in England and Wales with registered number OC375072. Its registered office is at Exchange House, Primrose Street, London EC2A 2EG.

**To:**     Mintz, Douglas S.[dmintz@orrick.com]
**From:**   Balber, Scott
**Sent:**   Fri 6/16/2017 11:12:09 PM
**Subject:** Re: Caesars EOS Claim

Yes, we deserve medals!

Scott Balber
Herbert Smith Freehills NY LLP

---

**From**: Mintz, Douglas S. [mailto:dmintz@orrick.com]
**Sent**: Friday, June 16, 2017 06:36 PM
**To**: Balber, Scott
**Subject**: Re: Caesars EOS Claim

We did it!

Douglas S. Mintz
Orrick
Phone: 646-234-6773
Email: dmintz@orrick.com
        douglasmintz@gmail.com

On Jun 16, 2017, at 6:29 PM, Balber, Scott <Scott.Balber@hsf.com> wrote:

Ok to circulate now. I will do the same.

Scott Balber
Herbert Smith Freehills NY LLP

---

**From**: Pasacreta, Amy [mailto:apasacreta@orrick.com]
**Sent**: Friday, June 16, 2017 06:26 PM
**To**: Balber, Scott
**Cc**: Fechik, Matthew <mfechik@orrick.com>; Mintz, Douglas S. <dmintz@orrick.com>
**Subject**: RE: Caesars EOS Claim

Scott—

The afternoon got away from Whitebox so we need to make the assignment effective on Monday.

As such, attached is the executed assignment agreement effective MONDAY June 19, 2017.

Please let me know if you are comfortable with me circulating the attached to Whitebox now or if you want us to wait until Monday.  Thanks and enjoy your weekend!

**Amy G. Pasacreta**

Attorney At Law

Orrick

New York    <image001.jpg>

T +1-212-506-5159
apasacreta@orrick.com

<image002.png>

CONFIDENTIAL                                                          WBA-0000906

**To:**    'Balber, Scott'[Scott.Balber@hsf.com]; Mintz, Douglas S.[dmintz@orrick.com]
**Cc:**    Fechik, Matthew[mfechik@orrick.com]
**From:**    Pasacreta, Amy
**Sent:**    Fri 5/26/2017 9:40:36 PM
**Subject:**    RE: Caesars -- EOS Claim

Scott—

I understand Doug left you a message to discuss the declaration.   Not sure if you connected with him yet but, based on your comments, it seems there are several open issues. For instance, my understanding was Cowen was going to provide all of the diligence related to Cowen's deal with Earl of Sandwich to Whitebox on the Effective Date and would represent that what was provided was all the diligence on the matter but you removed these provisions from the draft. You also removed the provision regarding appointing Whitebox as Cowen's attorney in fact; it is my understanding this was also agreed upon. Finally, I understood Cowen had agreed to make the Rule 11 representation regarding Cowen's deal with Earl of Sandwich.

I wanted to point out these initial reactions.  Hopefully, you can resolve the foregoing, and the other open issues, when working on the declaration with Doug.

Enjoy your weekend.

**Amy G. Pasacreta**

Attorney At Law

Orrick
New York 

T +1-212-506-5159
apasacreta@orrick.com



Distressed Download Blog

**From:** Balber, Scott [mailto:Scott.Balber@hsf.com]
**Sent:** Thursday, May 25, 2017 5:06 PM
**To:** Pasacreta, Amy <apasacreta@orrick.com>; Mintz, Douglas S. <dmintz@orrick.com>
**Cc:** Fechik, Matthew <mfechik@orrick.com>
**Subject:** RE: Caesars -- EOS Claim

Our comments are attached.   Happy to discuss.

**From:** Pasacreta, Amy [mailto:apasacreta@orrick.com]
**Sent:** Thursday, May 25, 2017 2:06 PM
**To:** Balber, Scott; Mintz, Douglas S.
**Cc:** Fechik, Matthew
**Subject:** RE: Caesars -- EOS Claim

Scott—

Following up on this one… thanks!

CONFIDENTIAL

WBA-0001234

**To:**    Pasacreta, Amy[apasacreta@orrick.com]; Mintz, Douglas S.[dmintz@orrick.com]
**Cc:**    Fechik, Matthew[mfechik@orrick.com]
**From:**    Balber, Scott
**Sent:**    Thur 5/25/2017 9:06:28 PM
**Subject:**    RE: Caesars -- EOS Claim
<u>Assignment and Release Agreement.docx</u>

Our comments are attached.   Happy to discuss.

---

**From:** Pasacreta, Amy [mailto:apasacreta@orrick.com]
**Sent:** Thursday, May 25, 2017 2:06 PM
**To:** Balber, Scott; Mintz, Douglas S.
**Cc:** Fechik, Matthew
**Subject:** RE: Caesars -- EOS Claim

Scott—

Following up on this one… thanks!

**Amy G. Pasacreta**

Attorney At Law

Orrick
New York  

T +1-212-506-5159
apasacreta@orrick.com



Distressed Download Blog

---



---

**From:** Pasacreta, Amy
**Sent:** Tuesday, May 23, 2017 5:20 PM
**To:** 'Balber, Scott' <Scott.Balber@hsf.com>; Mintz, Douglas S. <dmintz@orrick.com>
**Cc:** Fechik, Matthew <mfechik@orrick.com>
**Subject:** RE: Caesars -- EOS Claim

Scott—

Per Doug, attached is the updated AA.

**Amy G. Pasacreta**

Attorney At Law

Orrick
New York

CONFIDENTIAL                                                                         WBA-0001239

**FRE 408 CONFIDENTIAL COMMUNICATION**

**HSF COMMENTS 5/25/17**

### ASSIGNMENT AND RELEASE AGREEMENT

SELLER:     Cowen Special Investments LLC
Address:    830 Third Avenue, 4th Floor,
              New York, NY 10022
Attention:   Bradly D. Schwab
Phone:      646-616-3081
Email:       Bradly.schwab@cowen.com

BUYER:      Whitebox Multi-Strategy Partners, LP
Address:    3033 Excelsior Blvd, Ste 300 Minneapolis, MN 55416
Attention:   Scott Specken
Email:       sspecken@whiteboxadvisors.com
Phone:      612-253-6061

AGREEMENT DATE:    May__, 2017

DEBTOR:              Caesars Entertainment Operating Company, Inc., et. al.

PROCEEDINGS:      Case No. 15-01145 jointly administered (the "Chapter 11 Cases") and currently pending in the United States Bankruptcy Court for the Northern District of Illinois Eastern Division (the "Bankruptcy Court").

PETITION DATE:      January 14, 2015

CLAIM:             general unsecured claim asserted by Earl of Sandwich (Atlantic City) LLC (the "Claimholder") against the Debtor in a principal amount of not less than $3,600,000.00

WHEREAS, on April 18, 2015, the Claimholder filed with the Bankruptcy Court a proof of claim with respect to a lease termination, which was assigned claim number 5497 (the "Original Proof of Claim").

WHEREAS, on September 1, 2016, Claimholder filed an amended proof of claim which was assigned claim number 5858 and amended and superseded the Original Proof of Claim which was expunged pursuant to the Order Sustaining Debtors' Twentieth Omnibus Objection to Certain Proofs of Claim (Amended and Replaced Claims) (Non-Substantive) (the "Proof of Claim").

WHEREAS, on October 20, 2016, the Debtors filed their Third Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code (as amended or modified, the

12/899967_21

      WBA-0001243

"Plan"), which was confirmed by the Bankruptcy Court pursuant to that certain order dated January 17, 2017.

WHEREAS, on or about January 12, 2017, Seller sought to purchase from Claimholder (the "Seller Transaction"): (i) the Claim, together with any and all right to receive principal, interest, fees, damages, penalties and other amounts in respect of the Claim (in each case whether accruing prior to, on, or after the date of this Agreement), (ii) the Proof of Claim and any other proofs of claim filed (regardless of filing date) with respect to the Claim; (iii) any actions, claims, rights, lawsuits and/or causes of action against the Debtor arising out of or in connection with any of the foregoing; and (iv) all proceeds of any kind of the foregoing, including, without limitation, all cash, securities or other property distributed or payable on account thereof, or exchanged in return therefor for ((i)-(iv) collectively, the "Rights").

WHEREAS, Seller corresponded with Claimholder regarding the Rights and the Proceedings.

WHEREAS, the Claimholder has not executed any assignment agreement or other documentation or filed a notice of transfer with respect to the Proof of Claim.

WHEREAS, on May 17, 2017, Seller allowed Buyer's counsel to view copies of the Due Diligence (defined below); and

WHEREAS, upon the terms and subject to the conditions set forth in this Agreement, Seller desires to sell, transfer, assign, grant and convey to Buyer, and Buyer desires to purchase, acquire and receive, the Transferred Rights (as defined hereinafter).

NOW THEREFORE, Buyer and Seller (each a "Party" and collectively, the "Parties") agree as follows:

1.      Seller, for good and valuable consideration, does hereby irrevocably sell, convey, transfer and assign unto Buyer (a) any and all rights Seller may have to purchase the Rights directly from Claimholder and (b) any and all actions, claims, rights, remedies, lawsuits and/or causes of action Seller has against the Claimholder arising out of or in connection with the Seller Transaction (the "Transferred Rights").   This assignment shall be deemed an absolute and unconditional assignment of the Transferred Rights for the purpose of collection and satisfaction and shall not be deemed to create a security interest.

2.      Seller's obligation to sell, transfer, assign, grant and convey the Transferred Rights to Buyer is subject to all of the following: (a) Buyer's representations and warranties being true and correct, (b) Buyer having complied with all covenants required by this Agreement to be complied with by it, (c) Buyer having received (i) copies of the Due Diligence and (ii) fully executed Declaration [WHAT IS THIS?  NO ATTACHMENT] (attached hereto as Exhibit A), (d) Seller having received this Agreement fully executed by Buyer and (e) Seller having received the one dollar (the "Purchase Price") by wire transfer of immediately available funds in accordance with written wire instructions specified by Seller.

12/899967_22

**3.**      Seller represents, warrants and covenants to Buyer and Buyer's successors and assigns as of the date hereof that:

(a)   Seller is duly organized and validly existing under the laws of its jurisdiction of organization, is in good standing under such laws, and is authorized and empowered to execute, deliver and perform this Agreement, and this Agreement constitutes the valid, legal and binding agreement of Seller, enforceable against Seller in accordance with its terms;

(b) Except for filings that are expressly contemplated by this Agreement, no consent, approval, filing or corporate, partnership or other action is required as a condition to or in connection with execution, delivery and performance of this Agreement and the transactions contemplated herein;

(c)   To the best of Seller's knowledge, the Claimholder has timely and properly filed the Proof of Claim and Buyer shall assume no obligations or liabilities in respect of the Rights, including but not limited to the obligation to file any proof of claim with respect to the Claim;

(d) To the best of Seller's knowledge, neither the execution, delivery or performance of this Agreement, nor consummation of the transactions contemplated hereby, will violate or contravene any law, rule, regulation, order or agreement affecting Seller;

(e)   Seller is the sole legal and beneficial owner of, and has good title to, the Transferred Rights, free and clear of (i) any legal, regulatory or contractual restriction on transfer or (ii) any pledge, lien, claim, security interest, participation, factoring agreement or other encumbrance of any type or kind (collectively, the "Liens") and will transfer to Buyer such good title free and clear of Liens;

(f)   To the best of Seller's knowledge, the Claim is a valid, liquidated, non-contingent, enforceable, "Class I" general unsecured claim against the Debtor;

(g)   Seller has not previously sold, transferred, assigned, participated or otherwise conveyed the Transferred Rights, nor has Seller agreed to do any of the foregoing (whether in whole or in part);

(h)   No payment or distribution has been received by or on behalf of Seller, in full or partial satisfaction of the Rights;

(i)   To the best of Seller's knowledge, Seller has not engaged, and shall not engage, in any act, conduct or omission, or had any relationship with the Debtor or any of its affiliates that would result in Buyer receiving in respect of the Rights proportionately less in payments or distributions, or less favorable treatment (including the timing of payments or distributions) for the Rights than will be received on behalf of other general unsecured claims and administrative expense claims, as applicable;

(j)      Seller is not an "insider" of the Debtor or its affiliates within the meaning of Section 101(31) of the Bankruptcy Code, and is not a member of any official or unofficial committee in the Proceedings;

12/899967_23

CONFIDENTIAL

(k)  Seller has not received any written notice (except as otherwise publicly available in the Proceedings (if any)), that the Rights or any portion thereof is void, voidable, or unenforceable;

(l)  Upon execution of this Agreement, Seller shall provide to Buyer a copy of the documents which Buyer's counsel reviewed (the "Due Diligence"), a watermarked copy of which is attached hereto as Exhibit __;

(m)  The Due Diligence, which Buyer's counsel was allowed to view in its entirety, includes all written communications between Seller and Claimholder with respect to Seller's purchase of the Claim from Claimholder;

(n)  Seller is not "insolvent" within the meaning of Section 1-201(23) of the Uniform Commercial Code or Section 101(32) of the Bankruptcy Code, has adequate capital to conduct its business and has not filed a petition seeking protection under the Bankruptcy Code or similar statute; and

(o) either (i) no interest in the Transferred Rights is being sold by or on behalf of one or more Benefit Plans (as defined below) or (ii) the transaction exemption set forth in one or more prohibited transaction class exemption issued by the U.S. Department of Labor ("PTE"), such as PTE 84-14 (a class exemption for certain transactions determined by independent qualified professional asset managers), PTE 95-60 (a class exemption for certain transactions involving insurance company general accounts), PTE 90-1 (a class exemption for certain transactions involving insurance company pooled separate accounts), PTE 91-38 (a class exemption for certain transactions involving bank collective investment funds), and PTE 96-23 (a class exemption for certain transactions determined by in-house asset managers) is applicable with respect to the sale of the Transferred Rights.  "Benefit Plan" means an "employee benefit plan" (as defined in ERISA) that is subject to Title I of the Employee Retirement Income Security Act of 1974, as amended, and the rules and regulations promulgated under it ("ERISA"), a "plan" as defined in Section 4975 of the Code or any Entity whose assets include (for purposes of ERISA Section 3(42) or otherwise for purposes of Title I of ERISA or Section 4975 of the Code) the assets of any such "employee benefit plan" or "plan".

**4.**     Buyer represents and warrants to Seller as of the date hereof that:

(a)  Buyer is duly organized and validly existing under the laws of its jurisdiction of organization, is in good standing under such laws, and is authorized and empowered to execute, deliver and perform this Agreement, and this Agreement constitutes the valid, legal and binding agreement of Buyer, enforceable against Buyer in accordance with its terms;

(b) except for filings that are expressly contemplated by this Agreement, no consent, approval, filing or corporate, partnership or other action is required as a condition to or in connection with execution, delivery and performance of this Agreement and the transactions contemplated herein;

(c)  neither the execution, delivery or performance of this Agreement, nor consummation of the transactions contemplated hereby, will violate or contravene any law, rule, regulation, order or agreement affecting Buyer;

12/899967_24

CONFIDENTIAL                                                                                      WBA-0001246

(d)  Buyer has (i) reviewed the terms and provisions of this Agreement, and has evaluated the restrictions and obligations contained herein and therein; (ii) agreed to the Release based on its own independent investigation and credit determination; and (iii) not relied on any representation or warranty made by Seller, except as expressly set forth herein;

(e) either (i) no interest in the Transferred Rights is being acquired by or on behalf of an entity that is, or at any time while the Transferred Rights are held thereby will be, one or more Benefit Plans or (ii) the transaction exemption set forth in one or more PTEs, such as PTE 84-14 (a class exemption for certain transactions determined by independent qualified professional asset managers), PTE 95-60 (a class exemption for certain transactions involving insurance company general accounts), PTE 90-1 (a class exemption for certain transactions involving insurance company pooled separate accounts), PTE 91-38 (a class exemption for certain transactions involving bank collective investment funds), and PTE 96-23 (a class exemption for certain transactions determined by in-house asset managers) is applicable with respect to the purchase and holding of the Transferred Rights and the exercise of Buyer's rights thereunder; and

(f) it has the authority to bind Whitebox Advisors, LLC and its affiliated and related entities.

**5.**     Each Party represents and warrants that it is a sophisticated entity and has adequate information concerning the financial condition of Debtor and the Proceedings to make an informed decision regarding the purchase/sale of the Transferred Rights and that it has independently and without reliance on the other Party, and based on such information as it has deemed appropriate, made its own decision to enter into this Agreement, except that it has relied on the other Party's express representations, warranties, covenants, agreements and indemnities as contained herein.  Each Party is aware that information which may be pertinent to the decision to transfer the Transferred Rights is available to it and can be obtained from the files of the Proceedings or other publicly available sources.  Each Party is aware that the consideration received/paid herein for the purchase/sale of the Transferred Rights may differ both in kind and amount from any distributions made pursuant to any plan of reorganization confirmed in the Proceedings.   Each Party acknowledges that the other may possess, and may come into possession of, material non-public information concerning the Transferred Rights, Debtor and/or the Proceedings ("Excluded Information").   Each Party further acknowledges that it has not requested to receive such Excluded Information from the other Party and has nevertheless determined to proceed with the transaction contemplated herein, and neither shall have any liability to the other Party, and each waives and releases any claims that it might have against the other, arising out of the non-disclosure of such Excluded Information; provided, however, that the Excluded Information shall not limit, contradict or render untrue any representation or warranty made by Seller or Buyer herein.

**6.**     Each Party acknowledges and agrees that the Purchase Price and the Release set forth in section 10 below are intended to represent "fair consideration" (as such term is used in Article 10 of the New York Debtor and Creditor Law, N.Y. Debt. & Cred. §§ 270 et seq.) and "reasonably equivalent value" (as such term is used in 11 U.S.C. § 548), or as analogously provided under similar statute or applicable law, for the transfer of such assets.

**7.**     Seller agrees that in the event Seller actually receives any distributions with respect to the Rights after the date hereof, Seller shall accept the same and shall hold the same in trust for the

12/899967_25

sole benefit of Buyer and shall promptly deliver the same to Buyer in the same form received (free of any withholding, set-off, claims or deduction of any kind except as required by law) within five Business Days in the case of cash ("Cash Distribution"). If any such amounts are not received by the Buyer within five Business Days, then beginning on the next calendar day, the amount payable shall begin to accrue interest at a rate of LIBOR + 5% per annum, and within seven business days in the case of non-Cash Distributions, with the endorsement of Seller (without recourse, representation or warranty) when necessary or appropriate. In the event Seller receives any notices (not otherwise publicly available) in respect of the Rights, Seller shall promptly deliver the same to Buyer.

(a) As used herein:

"Business Day" means any day that is not a Saturday, a Sunday or any other day on which the Federal Reserve Bank of New York is closed.

"LIBOR" means, for any day, the one-month London Interbank Offered Rate for deposits in U.S. Dollars as set by the British Bankers Association ("BBA") and published by the BBA at approximately 11:00 a.m. London time on such day.  For any day that is not a business day, LIBOR shall be the rate published by the BBA on the immediately preceding business day.

**8.**      (a) Upon execution of this Agreement Buyer shall have any and all rights the Seller may have to enforce the terms of the Seller Transaction as against the Claimholder including without limitation filing pleadings, motions or notices of transfer with respect to the transfer of the Rights;

(b) Seller agrees to cooperate with the Buyer in good faith to effectuate the intent and purpose of, and to carry out the terms of, this Agreement.

**9.**      If for any reason, Seller (and not Buyer) is entitled to exercise any rights with respect to the Rights, then Seller agrees that with respect to any request, act, decision or vote to be made by Seller in respect of the Rights (each, an "Action"), Seller shall act in accordance with the written directions (if timely given) of Buyer. Seller may refuse to follow the instructions of Buyer only if such instructions violate any applicable law, regulation or direction of a regulatory or governmental authority.

**10.**      Buyer hereby releases and forever discharges (the "Release") Seller and/or its respective direct and indirect affiliates, subsidiaries, partners of subsidiaries, its successors and assigns, (and each of such entities' or persons' officers, directors, employees, representatives, attorneys, and agents, collectively, the "Releasees") of and from any and all claims, liabilities, demands, losses, costs, damages, expenses, attorneys' fees and causes of action whatsoever, whether individual, class or derivative in nature, whether at law or in equity, whether based on federal, state or foreign law or right of action, foreseen or unforeseen, matured or unmatured, known or unknown, accrued or not accrued, which Buyer has or had against any Releasee, arising out of or relating to the Seller Transaction or the Claim (collectively, the "Released Claims"), and covenants not to institute, maintain, finance or prosecute any action, claim, suit, proceeding or cause of action of any kind to enforce any of the Released Claims.  Buyer expressly covenants

12/899967_26

and agrees that the Release and Waiver shall each be binding in all respects upon its respective successors, assigns and transferees, as well as Whitebox Advisors LLC, its affiliated and related entities, successors, assigns and transferees.  Buyer further covenants that the Release and Waiver shall inure to the benefit of the successors and assigns of the Releasees.

**11.**    The Parties hereby represent and warrant to each other that: the delivery and performance of the Release and the Waiver have been duly authorized by all requisite corporate action and will not violate (a) any provision of applicable law, statute, rule or regulation or its organizational documents, (b) any order of any governmental authority or (c) any provision of any agreement to which the Party is a party or by which they are bound.

**12.**    Seller agrees to indemnify, defend, reimburse and hold Buyer and its affiliates and its and their officers, directors, partners, employees, agents and controlling persons harmless from and against any and all losses, claims, damages, judgments, costs, penalties, expenses and liabilities, including, without limitation, attorneys' fees and expenses, which are incurred by or threatened against, on account of or in any way resulting from or relating to Seller's breach of any of Seller's representations, warranties, covenants or agreements set forth herein.  Buyer agrees to indemnify, defend, reimburse and hold Seller and its affiliates and its and their officers, directors, partners, employees, agents and controlling persons harmless from and against any and all losses, claims, damages, judgments, costs, penalties, expenses and liabilities, including, without limitation, attorneys' fees and expenses, which are incurred by or threatened against, on account of or in any way resulting from or relating to Buyer's breach of any of Buyer's representations, warranties, covenants or agreements set forth herein.

**13.**    **This Agreement and all matters arising out of or relating to it shall be governed by and construed in accordance with the laws of the State of New York without reference to any conflicts of law provisions that would require or permit the application of the laws of any other jurisdiction.  Each Party consents to service of process by certified mail at its address listed on Schedule I.  Each Party irrevocably and unconditionally (a) WAIVES ITS RIGHT TO TRIAL BY JURY and (b) consents to the exclusive jurisdiction of the federal and state courts located in the State of New York, Borough of Manhattan, in any action to enforce, interpret or construe any provision of this Agreement.**

**14.**    Seller agrees to execute and deliver (or cause to be executed and delivered) all such instruments and documents, and take all such action as Buyer may reasonably request, including cooperation with any litigation regarding the Seller Transaction and/or the Claim, at Buyer's cost and expense, in order to effectuate the intent and purpose of, and to carry out the terms of, this Agreement.

**15.**    Each Party agrees to maintain the confidentiality of this Agreement except to the extent (a) required or advisable to enforce or preserve such Party's rights hereunder or (b) required or requested pursuant to applicable law, regulation, or by the order of any court or governmental authority of competent jurisdiction; provided that either Party may disclose this Agreement and the transactions contemplated hereby to their legal counsel and other professionals and representatives, provided that such parties shall be obligated to maintain the confidentiality provisions contained herein.

12/899967_27

CONFIDENTIAL

WBA-0001249

**16.**     This Agreement may be executed in multiple counterparts and all of such counterparts when taken together shall be deemed to constitute one and the same instrument.  Delivery of an executed counterpart by facsimile or PDF transmission shall be as effective as delivery of a manually executed counterpart.  No amendment of any provision of this Agreement shall be effective unless it is in writing and signed by the Parties and no waiver of any provision of this Agreement, nor consent by either Party from it, shall be effective unless it is in writing and signed by the affected Party, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

**17.**     The Parties have participated jointly in the negotiation and drafting of this Agreement and, in the event of ambiguity or question of intent or interpretation arises, this Agreement shall be construed as jointly drafted by the Parties and no presumption or burden of proof shall arise favoring or disfavoring either Party by virtue of the authorship of any provision of this Agreement.  This Agreement constitutes the complete agreement of the Parties with respect to the subject matters referred to herein and supersedes all prior or contemporaneous negotiations, agreements or representations of every nature whatsoever with respect thereto, all of which have become merged and finally integrated herein.

**18.**     If any provision of this Agreement or any other agreement or document delivered in connection with this Agreement, if any, is partially or completely invalid or unenforceable in any jurisdiction, then that provision shall be ineffective in that jurisdiction to the extent of its invalidity or unenforceability, but the invalidity or unenforceability of that provision shall not affect the validity or enforceability of any other provision of this Agreement, all of which shall be construed and enforced as if that invalid or unenforceable provision were omitted, nor shall the invalidity or unenforceability of that provision in one jurisdiction affect its validity or enforceability in any other jurisdiction.

**19.**     No failure on the part of either Party to exercise, and no delay in exercising, any right hereunder or under any related document shall operate as a waiver thereof by such Party, nor shall any single or partial exercise of any right hereunder or under any other related document preclude any other or further exercise thereof or the exercise of any other right.  The rights and remedies of each Party provided herein and in other related documents (a) are cumulative and are in addition to, and not exclusive of, any rights or remedies provided by law and (b) are not conditional or contingent on any attempt by such Party to exercise any of its rights under any other related documents against the other Party or any other entity.

**20.**     Seller hereby acknowledges and consents to all terms set forth in this Agreement and agrees not to litigate or otherwise pursue any of the Rights (including, without limitation, the amount of the Claim and, to the extent related thereto, the Proofs of Claim).

**21.**     All demands, notices, consents, and communications hereunder shall be in writing and shall be deemed to have been duly given when e-mailed with acknowledgment of receipt by recipient, hand-delivered or duly deposited in the mails, by certified or registered mail, postage prepaid-return-receipt requested, to the addresses set forth in Schedule I, or such other address as may be furnished hereafter by notice in writing.   Each payment to be made by either Party shall be made without set-off, counterclaim or deduction of any kind.  All payments made pursuant to

12/899967_28

CONFIDENTIAL                                                                                            WBA-0001250

this Agreement shall be made in the lawful currency of the United States by wire transfer of immediately available funds, in accordance with the wire instructions specified in <u>Schedule I</u>.

[*signature page follows*]

12/899967_29

CONFIDENTIAL

WBA-0001251

**IN WITNESS WHEREOF**, the undersigned have duly executed this Agreement by their duly authorized representatives as of the Agreement Date written above.

WHITEBOX MULTI-STRATEGY
PARTNERS, LP

By:_____
Name:
Title:

COWEN SPECIAL INVESTMENTS
LLC

By:_____
Name:
Title:

By:_____
Name:
Title:

12/899967_210

SCHEDULE I: NOTICE AND WIRE INSTRUCTIONS

Seller's Wire Instructions

Seller Notice Address:

Cowen Special Investments LLC
Attention: General Counsel
599 Lexington Avenue, 21st Floor
New York, NY 10022
**owen.littman@cowen.com**

with a copy to:

Scott Balber
Herbert Smith Freehills New York LLP
450 Lexington Avenue, 14th Floor
New York, NY 10017
**scott.balber@hsf.com**

Buyer Notice Address:

12/899967_211

EXHIBIT A: DECLARATION

12/899967_212

CONFIDENTIAL

WBA-0001254

**To:**      Pasacreta, Amy[apasacreta@orrick.com]
**From:**    Balber, Scott
**Sent:**    Tue 6/20/2017 6:05:20 PM
**Subject:** Re: Just left you a message

To me. I may take it and run off to Mexico!

Scott Balber
Herbert Smith Freehills NY LLP

---

**From**: Pasacreta, Amy [mailto:apasacreta@orrick.com]
**Sent**: Tuesday, June 20, 2017 01:48 PM
**To**: Balber, Scott
**Subject**: Re: Just left you a message

That works! Do I mail to you to to Cowen?

Sent from my iPhone

On Jun 20, 2017, at 1:45 PM, Balber, Scott <Scott.Balber@hsf.com> wrote:


Do you want to just drop it in the mail?

Scott Balber
Herbert Smith Freehills NY LLP

---

**From**: Pasacreta, Amy [mailto:apasacreta@orrick.com]
**Sent**: Tuesday, June 20, 2017 01:39 PM
**To**: Balber, Scott
**Subject**: Just left you a message

Please let me know when you have a minute.  I am not in the office today but can arrange to get you the
dollar today or I can deliver tomorrow.

Please let me know the times that work and I will arrange for the dollar delivery. Thanks!


**Amy G. Pasacreta**

Attorney At Law


Orrick
New York   <image001.jpg>

T +1-212-506-5159
apasacreta@orrick.com

<image002.png>

Distressed Download Blog

---

**To:** Pasacreta, Amy[apasacreta@orrick.com]
**Cc:** Fechik, Matthew[mfechik@orrick.com]; Mintz, Douglas S.[dmintz@orrick.com]
**From:** Balber, Scott
**Sent:** Tue 6/20/2017 4:17:43 PM
**Subject:** Re: Caesars EOS Claim

Yes, but I only accept pennies.

Scott Balber
Herbert Smith Freehills NY LLP

**From:** Pasacreta, Amy [mailto:apasacreta@orrick.com]
**Sent:** Tuesday, June 20, 2017 10:58 AM
**To:** Balber, Scott
**Cc:** Fechik, Matthew <mfechik@orrick.com>; Mintz, Douglas S. <dmintz@orrick.com>
**Subject:** RE: Caesars EOS Claim

Scott—

We just found out there is a problem with sending the $1.00 to the wire instructions provided.

Can we send the dollar to you (e.g. drop it at your office)?

Please let me know and we will arrange.  Thanks!

**Amy G. Pasacreta**

Attorney At Law

Orrick
New York ⊙

T +1-212-506-5159
apasacreta@orrick.com



Distressed Download Blog



**From:** Balber, Scott [mailto:Scott.Balber@hsf.com]
**Sent:** Friday, June 16, 2017 6:30 PM
**To:** Pasacreta, Amy <apasacreta@orrick.com>
**Cc:** Fechik, Matthew <mfechik@orrick.com>; Mintz, Douglas S. <dmintz@orrick.com>
**Subject:** Re: Caesars EOS Claim

Ok to circulate now. I will do the same.

Scott Balber

CONFIDENTIAL

**To:**       Pasacreta, Amy[apasacreta@orrick.com]
**From:**     Balber, Scott
**Sent:**     Mon 6/12/2017 3:53:45 PM
**Subject:**  RE: Caesars EOS Claim
Assignment and Release Agreement 6-12-17.pdf

---

**From:** Pasacreta, Amy [mailto:apasacreta@orrick.com]
**Sent:** Monday, June 12, 2017 11:43 AM
**To:** Balber, Scott
**Subject:** Re: Caesars EOS Claim

Thx Scott!

Any chance you can you send a PDF redline? Thx!!

Sent from my iPhone

On Jun 12, 2017, at 9:02 AM, Balber, Scott <Scott.Balber@hsf.com> wrote:

Revised draft attached.

---

**From:** Pasacreta, Amy [mailto:apasacreta@orrick.com]
**Sent:** Thursday, June 08, 2017 2:32 PM
**To:** Balber, Scott
**Subject:** RE: Caesars EOS Claim

Scott—

Attached…

I think what we discussed yesterday works conceptually but we really need to see how you will (i) revise the representations on the diligence and (ii) bifurcate the agreement before we finally agree. Please update those sections so we can finalize.

Also we can leave Whitebox Advisors BUT we need to add acting on behalf of the three Whitebox entities…does that work?

Thanks!


**Amy G. Pasacreta**

Attorney At Law


Orrick
New York    <image001.jpg>

T +1-212-506-5159
apasacreta@orrick.com

<image005.png>


Distressed Download Blog

---

<image004.png>

---

**From:** Balber, Scott [mailto:Scott.Balber@hsf.com]
**Sent:** Thursday, June 08, 2017 12:46 PM
**To:** Pasacreta, Amy <apasacreta@orrick.com>

CONFIDENTIAL                                                                    WBA-0001613

**Subject:** RE: Caesars EOS Claim

Can you send this back to me as a word document?

---

**From:** Pasacreta, Amy [mailto:apasacreta@orrick.com]
**Sent:** Monday, June 05, 2017 4:01 PM
**To:** Balber, Scott
**Cc:** Mintz, Douglas S.; Fechik, Matthew; Amend, Peter J.
**Subject:** Caesars EOS Claim

Scott-

Attached is a blackline of the assignment and release reflecting many of the changes you requested.  Also attached is the declaration you have been discussing with Doug.  Both the revised assignment and release and declaration are being sent prior to review by Whitebox and as such both remain subject to further review and comments.

Please note, the parties providing the release will be Whitebox Asymmetric Partners, L.P., Whitebox Multi-Strategy Partners, L.P., and Whitebox Institutional Partners, L.P. ; Whitebox Advisors, LLC will not be providing the release. Also note, there will be an assignment and release for each of the Whitebox entities.


**Amy G. Pasacreta**

Attorney At Law

Orrick

New York    <image001.jpg>

T +1-212-506-5159
apasacreta@orrick.com

<image005.png>

Distressed Download Blog

---

<image006.png>

---

NOTICE TO RECIPIENT | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

For more information about Orrick, please visit http://www.orrick.com.


Herbert Smith Freehills New York LLP and Herbert Smith Freehills, an Australian Partnership, are separate member firms of the international legal practice known as Herbert Smith Freehills.

This message is confidential and may be covered by legal professional privilege. If you are not the intended recipient you must not disclose or use the information contained in it. If you have received this email in error please notify us immediately by return email or by calling our main switchboard on +1 917 542 7600 and delete the email.

Further information is available from www.herbertsmithfreehills.com, including our Privacy Policy which describes how we handle personal information.

Herbert Smith Freehills New York LLP is a limited liability partnership registered in England and Wales with registered number OC375072. Its registered office is at Exchange House, Primrose Street, London EC2A 2EG.

**FRE 408 CONFIDENTIAL COMMUNICATION**

~~ORRICK~~ HSF COMMENTS 6/9~~1~~/17

**ASSIGNMENT AND RELEASE AGREEMENT**

| | |
|---|---|
| SELLER: | Cowen Special Investments LLC |
| Address: | 830 Third Avenue, 4th Floor, |
| | New York, NY 10022 |
| Attention: | Bradly D. Schwab |
| Phone: | 646-616-3081 |
| Email: | Bradly.schwab@cowen.com |

| | |
|---|---|
| BUYER: | Whitebox Multi-Strategy Partners, LP |
| Address: | 3033 Excelsior Blvd, Ste 300 Minneapolis, MN 55416 |
| Attention: | Scott Specken |
| Email: | sspecken@whiteboxadvisors.com |
| Phone: | 612-253-6061 |

AGREEMENT DATE:    June__, 2017

DEBTOR:                    Caesars Entertainment Operating Company, Inc., et. al.

PROCEEDINGS:        Case No. 15-01145 jointly administered (the "Chapter 11 Cases") and currently pending in the United States Bankruptcy Court for the Northern District of Illinois Eastern Division (the "Bankruptcy Court").

PETITION DATE:        January 14, 2015

CLAIM:                        general unsecured claim asserted by Earl of Sandwich (Atlantic City) LLC (the "Claimholder") against the Debtor in a principal amount of not less than $3,600,000.00

WHEREAS, on April 18, 2015, the Claimholder filed with the Bankruptcy Court a proof of claim with respect to a lease termination, which was assigned claim number 5497 (the "Original Proof of Claim").

WHEREAS, on September 1, 2016, Claimholder filed an amended proof of claim which was assigned claim number 5858 and amended and superseded the Original Proof of Claim which was expunged pursuant to the Order Sustaining Debtors' Twentieth Omnibus Objection to Certain Proofs of Claim (Amended and Replaced Claims) (Non-Substantive) (the "Proof of Claim").

WHEREAS, on October 20, 2016, the Debtors filed their Third Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code (as amended or modified, the

CONFIDENTIAL                                                                          WBA-0001616

"Plan"), which was confirmed by the Bankruptcy Court pursuant to that certain order dated January 17, 2017.

WHEREAS, on or about January 12, 2017, Seller sought to purchase the following from Claimholder (the "Seller Transaction"): (i) the Claim, together with any and all right to receive principal, interest, fees, damages, penalties and other amounts in respect of the Claim (in each case whether accruing prior to, on, or after the date of this Agreement), (ii) the Proof of Claim and any other proofs of claim filed (regardless of filing date) with respect to the Claim; (iii) any actions, claims, rights, lawsuits and/or causes of action against the Debtor arising out of or in connection with any of the foregoing; and (iv) all proceeds of any kind of the foregoing, including, without limitation, all cash, securities or other property distributed or payable on account thereof, or exchanged in return therefor for ((i)-(iv) collectively, the "Rights").

WHEREAS, Seller corresponded with Claimholder regarding the Rights and the Proceedings.

WHEREAS, the Claimholder has not executed any assignment agreement or other documentation or filed a notice of transfer with respect to the Proof of Claim.

WHEREAS, on May 17, 2017, Seller allowed Buyer's counsel to view copies of the Due Diligence (defined below); and

WHEREAS, upon the terms and subject to the conditions set forth in this Agreement, Seller desires to sell, transfer, assign, grant and convey to Buyer, and Buyer desires to purchase, acquire and receive, the Transferred Rights (as defined hereinafter).

NOW THEREFORE, Buyer and Seller (each a "Party" and collectively, the "Parties") agree as follows:

**1.**    Seller, for good and valuable consideration, does hereby irrevocably sell, convey, transfer and assign unto Buyer (a) any and all rights Seller may have to purchase the Rights directly from Claimholder and (b) any and all actions, claims, rights, remedies, lawsuits and/or causes of action Seller has against the Claimholder arising out of or in connection with the Seller Transaction (the "Transferred Rights").  This assignment shall be deemed an absolute and unconditional assignment of the Transferred Rights for the purpose of collection and satisfaction and shall not be deemed to create a security interest.  In order to allow Buyer to disclose this assignment to third parties, Seller and Buyer shall execute a short form assignment agreement in the form attached hereto as Exhibit A (the "Assignment").

> **Formatted:** Underline

**2.**    Seller's obligation to sell, transfer, assign, grant and convey the Transferred Rights to Buyer is subject to all of the following: (a) Buyer's representations and warranties being true and correct, (b) Buyer having complied with all covenants required by this Agreement to be complied with by it, (c) Buyer having received (i) copies of the Due Diligence and (ii) fully executed Declaration (attached hereto as Exhibit A), (d) Seller having received this Agreement fully executed by Buyer and (e) Seller having received the one dollar (the "Purchase Price") by wire transfer of immediately available funds in accordance with written wire instructions specified by Seller.

12/907718_212/908100_1                                                                                             2

**3.**      Seller represents, warrants and covenants to Buyer and Buyer's successors and assigns as of the date hereof (the "<u>Effective Date</u>") that:

(a) Seller is duly organized and validly existing under the laws of its jurisdiction of organization, is in good standing under such laws, and is authorized and empowered to execute, deliver and perform this Agreement, and this Agreement constitutes the valid, legal and binding agreement of Seller, enforceable against Seller in accordance with its terms;

(b) Except for filings that are expressly contemplated by this Agreement, no consent, approval, filing or corporate, partnership or other action is required as a condition to or in connection with execution, delivery and performance of this Agreement and the transactions contemplated herein;

(c) To the best of Seller's knowledge, the Claimholder has timely and properly filed the Proof of Claim and Buyer shall assume no obligations or liabilities in respect of the Rights, including but not limited to the obligation to file any proof of claim with respect to the Claim;

(d) To the best of Seller's knowledge, neither the execution, delivery or performance of this Agreement, nor consummation of the transactions contemplated hereby, will violate or contravene any law, rule, regulation, order or agreement affecting Seller;

(e) Seller is the sole legal and beneficial owner of, and has good title to, the Transferred Rights, free and clear of (i) any legal, regulatory or contractual restriction on transfer or (ii) any pledge, lien, claim, security interest, participation, factoring agreement or other encumbrance of any type or kind (collectively, the "<u>Liens</u>") and will transfer to Buyer such good title free and clear of Liens;

(f) Seller believes that it would be able to assert a claim, that would not violate Rule 11 of the Federal Rules of Civil Procedure or Rule 9011 of the Federal Rules of Bankruptcy Procedure, that the Seller Transaction constitutes a valid and binding agreement which remains in full force and effect;

(g)(f) To the best of Seller's knowledge, the Claim is a valid, liquidated, non-contingent, enforceable, "Class I" general unsecured claim against the Debtor;

(h)(g)  Seller has not previously sold, transferred, assigned, participated or otherwise conveyed the Transferred Rights, nor has Seller agreed to do any of the foregoing (whether in whole or in part);

(i)(h)  No payment or distribution has been received by or on behalf of Seller, in full or partial satisfaction of the Rights;

(j)(i)  To the best of Seller's knowledge, Seller has not engaged, and shall not engage, in any act, conduct or omission, or had any relationship with the Debtor or any of its affiliates that would result in Buyer receiving in respect of the Rights proportionately less in payments or distributions, or less favorable treatment (including the timing of payments or distributions) for the Rights than will be received on behalf of other  general unsecured claims and administrative expense claims, as applicable;

12/907718_212/908100_1                                                                                                  3

(k)(j) Seller is not an "insider" of the Debtor or its affiliates within the meaning of Section 101(31) of the Bankruptcy Code, and is not a member of any official or unofficial committee in the Proceedings;

(l)(k) Seller has not received any written notice (except as otherwise publicly available in the Proceedings (if any)), that the Rights or any portion thereof is void, voidable, or unenforceable;

(m)(l) Upon execution of this Agreement, Seller shall provide to Buyer true and complete copies of the Due Diligence (a watermarked copy of which is attached hereto as Exhibit B);

(m) The Due Diligence includes all written communications between Seller and Claimholder with respect to Seller's purchase of the Claim and Seller is not aware of any no other written communications between Seller and Claimholder exist which conflict with the Seller's assertion that it has the right to purchase the Claim;

(n)  In addition to the Due Diligence, there were telephone and voicemail communications (the "Oral Communications") between (x) representatives of Seller and (y) Thomas Avallone, on behalf of the Claimholder.  Based on conversations with the Seller's representatives, Seller is not aware of any Oral Communication that is inconsistent with the Due Diligence.

(o) Seller is not "insolvent" within the meaning of Section 1-201(23) of the Uniform Commercial Code or Section 101(32) of the Bankruptcy Code, has adequate capital to conduct its business and has not filed a petition seeking protection under the Bankruptcy Code or similar statute; and

(p) either (i) no interest in the Transferred Rights is being sold by or on behalf of one or more Benefit Plans (as defined below) or (ii) the transaction exemption set forth in one or more prohibited transaction class exemption issued by the U.S. Department of Labor ("PTE"), such as PTE 84-14 (a class exemption for certain transactions determined by independent qualified professional asset managers), PTE 95-60 (a class exemption for certain transactions involving insurance company general accounts), PTE 90-1 (a class exemption for certain transactions involving insurance company pooled separate accounts), PTE 91-38 (a class exemption for certain transactions involving bank collective investment funds), and PTE 96-23 (a class exemption for certain transactions determined by in-house asset managers) is applicable with respect to the sale of the Transferred Rights.  "Benefit Plan" means an "employee benefit plan" (as defined in ERISA) that is subject to Title I of the Employee Retirement Income Security Act of 1974, as amended, and the rules and regulations promulgated under it (ERISA"), a "plan" as defined in Section 4975 of the Code or any Entity whose assets include (for purposes of ERISA Section 3(42) or otherwise for purposes of Title I of ERISA or Section 4975 of the Code) the assets of any such "employee benefit plan" or "plan".

**4.**    Buyer represents and warrants to Seller as of the Effective Date that:

(a) Buyer is duly organized and validly existing under the laws of its jurisdiction of organization, is in good standing under such laws, and is authorized and empowered to execute, deliver and perform this Agreement, and this Agreement constitutes the valid, legal and binding agreement of Buyer, enforceable against Buyer in accordance with its terms;

CONFIDENTIAL                                                                         WBA-0001619

(b) except for filings that are expressly contemplated by this Agreement, no consent, approval, filing or corporate, partnership or other action is required as a condition to or in connection with execution, delivery and performance of this Agreement and the transactions contemplated herein;

(c) neither the execution, delivery or performance of this Agreement, nor consummation of the transactions contemplated hereby, will violate or contravene any law, rule, regulation, order or agreement affecting Buyer;

(d) Buyer has (i) reviewed the terms and provisions of this Agreement, and has evaluated the restrictions and obligations contained herein and therein; (ii) agreed to the Release based on its own independent investigation and credit determination; and (iii) not relied on any representation or warranty made by Seller, except as expressly set forth herein; and

(e) either (i) no interest in the Transferred Rights is being acquired by or on behalf of an entity that is, or at any time while the Transferred Rights are held thereby will be, one or more Benefit Plans or (ii) the transaction exemption set forth in one or more PTEs, such as PTE 84-14 (a class exemption for certain transactions determined by independent qualified professional asset managers), PTE 95-60 (a class exemption for certain transactions involving insurance company general accounts), PTE 90-1 (a class exemption for certain transactions involving insurance company pooled separate accounts), PTE 91-38 (a class exemption for certain transactions involving bank collective investment funds), and PTE 96-23 (a class exemption for certain transactions determined by in-house asset managers) is applicable with respect to the purchase and holding of the Transferred Rights and the exercise of Buyer's rights thereunder.

**5.** Each Party represents and warrants that it is a sophisticated entity and has adequate information concerning the financial condition of Debtor and the Proceedings to make an informed decision regarding the purchase/sale of the Transferred Rights and that it has independently and without reliance on the other Party, and based on such information as it has deemed appropriate, made its own decision to enter into this Agreement, except that it has relied on the other Party's express representations, warranties, covenants, agreements and indemnities as contained herein. Each Party is aware that information which may be pertinent to the decision to transfer the Transferred Rights is available to it and can be obtained from the files of the Proceedings or other publicly available sources. Each Party is aware that the consideration received/paid herein for the purchase/sale of the Transferred Rights may differ both in kind and amount from any distributions made pursuant to any plan of reorganization confirmed in the Proceedings. Each Party acknowledges that the other may possess, and may come into possession of, material non-public information concerning the Transferred Rights, Debtor and/or the Proceedings ("Excluded Information"). Each Party further acknowledges that it has not requested to receive such Excluded Information from the other Party and has nevertheless determined to proceed with the transaction contemplated herein, and neither shall have any liability to the other Party, and each waives and releases any claims that it might have against the other, arising out of the non-disclosure of such Excluded Information; provided, however, that the Excluded Information shall not limit, contradict or render untrue any representation or warranty made by Seller or Buyer herein.

12/907718_2 12/908100_1                                                                                                5

6.      Each Party acknowledges and agrees that the Purchase Price and the Release set forth in section 10 below are intended to represent "fair consideration" (as such term is used in Article 10 of the New York Debtor and Creditor Law, N.Y. Debt. & Cred. §§ 270 et seq.) and "reasonably equivalent value" (as such term is used in 11 U.S.C. § 548), or as analogously provided under similar statute or applicable law, for the transfer of such assets.

7.      Seller agrees that in the event Seller actually receives any distributions with respect to the Rights after the date hereof, Seller shall accept the same and shall hold the same in trust for the sole benefit of Buyer and shall promptly deliver the same to Buyer in the same form received (free of any withholding, set-off, claims or deduction of any kind except as required by law) within five Business Days in the case of cash ("Cash Distribution"). If any such amounts are not received by the Buyer within five Business Days, then beginning on the next calendar day, the amount payable shall begin to accrue interest at a rate of LIBOR + 5% per annum, and within seven business days in the case of non-Cash Distributions, with the endorsement of Seller (without recourse, representation or warranty) when necessary or appropriate. In the event Seller receives any notices (not otherwise publicly available) in respect of the Rights, Seller shall promptly deliver the same to Buyer.

 (a) As used herein:

        "Business Day" means any day that is not a Saturday, a Sunday or any other day on which the Federal Reserve Bank of New York is closed.

        "LIBOR" means, for any day, the one-month London Interbank Offered Rate for deposits in U.S. Dollars as set by the British Bankers Association ("BBA") and published by the BBA at approximately 11:00 a.m. London time on such day.  For any day that is not a business day, LIBOR shall be the rate published by the BBA on the immediately preceding business day.

8.       (a) Upon execution of this Agreement, Buyer shall have any and all rights the Seller may have to enforce the terms of the Seller Transaction as against the Claimholder including without limitation filing pleadings, motions or notices of transfer with respect to the transfer of the Rights;

(b) Seller agrees to cooperate with the Buyer to effectuate the intent and purpose of, and to carry out the terms of, this Agreement.

9.      If for any reason, Seller (and not Buyer) is entitled to exercise any rights with respect to the Rights, then Seller agrees that with respect to any request, act, decision or vote to be made by Seller in respect of the Rights (each, an "Action"), Seller shall act in accordance with the written directions (if timely given) of Buyer. Seller may refuse to follow the instructions of Buyer only if such instructions violate any applicable law, regulation or direction of a regulatory or governmental authority.

10.     Buyer hereby releases and forever discharges (the "Release") Seller and/or its respective direct and indirect affiliates, subsidiaries, partners of subsidiaries, its successors and assigns, (and each of such entities' or persons' officers, directors, employees, representatives, attorneys, and agents, collectively, the "Releasees") of and from any and all claims, liabilities, demands,

CONFIDENTIAL                                                        WBA-0001621

losses, costs, damages, expenses, attorneys' fees and causes of action whatsoever, whether individual, class or derivative in nature, whether at law or in equity, whether based on federal, state or foreign law or right of action, foreseen or unforeseen, matured or unmatured, known or unknown, accrued or not accrued, which Buyer has ~~or~~ had against any Releasee, arising out of or relating to the Seller Transaction or the Claim occurring prior to the Effective Date (collectively, the "Released Claims"), and covenants not to institute, maintain, finance or prosecute any action, claim, suit, proceeding or cause of action of any kind to enforce any of the Released Claims. Buyer expressly covenants and agrees that the Release and Waiver shall each be binding in all respects upon its respective successors, assigns and transferees and shall inure to the benefit of the successors and assigns of the Releasees.

11.     The Parties hereby represent and warrant to each other that: the delivery and performance of the Release and the Waiver have been duly authorized by all requisite corporate action and will not violate (a) any provision of applicable law, statute, rule or regulation or its organizational documents, (b) any order of any governmental authority or (c) any provision of any agreement to which the Party is a party or by which they are bound. ~~The foregoing is subject to all of the following: (a) Seller's representations and warranties being true and correct on the Release Effective Date, (b) Seller having complied with all covenants required by this Agreement to be complied with by it on or before the Release Effective Date, and (c) Buyer having received this Agreement fully executed by Seller.~~

12.     Seller agrees to provide Buyer with the "Due Diligence" on the Effective Date. <u>Other than the Due Diligence, Seller is not aware of any written communications between Seller and Claimholder related to:</u> ~~"Due Diligence" means all "Correspondence" between Seller and Claimholder or their respective representatives, affiliates, counsel, advisors and employees related to:~~ the Chapter 11 Cases, the Claim, the Proof of Claim, and any rights of Seller or Claimholder with respect to the Chapter 11 Cases, the Claim or the Proof of Claim. ~~"Correspondence" means any and all written correspondence such as mail, email, instant messenger messages (including those transmitted through a Bloomberg terminal), text messages, notes, documents, details of conversations in person or by phone, and audio recordings of any conversations in Seller's possession related to the Claim, the Chapter 11 Cases, the Proof of Claim and Claimholder's participation in the Chapter 11 Cases, provided; however, no internal correspondence shall be included in this definition.~~

13.     Seller agrees to indemnify, defend, reimburse and hold Buyer and its affiliates and its~~and~~ their officers, directors, partners, employees, agents and controlling persons harmless from and against any and all losses, claims, damages, judgments, costs, penalties, expenses and liabilities, including, without limitation, attorneys' fees and expenses, which are incurred by or threatened against, on account of or in any way resulting from or relating to Seller's breach of any of Seller's representations, warranties, covenants or agreements set forth herein. Buyer agrees to indemnify, defend, reimburse and hold Seller and its affiliates and its and their officers, directors, partners, employees, agents and controlling persons harmless from and against any and all losses, claims, damages, judgments, costs, penalties, expenses and liabilities, including, without limitation, attorneys' fees and expenses, which are incurred by or threatened against, on account of or in any way resulting from or relating to Buyer's breach of any of Buyer's representations, warranties, covenants or agreements set forth herein.

CONFIDENTIAL                                                                 WBA-0001622

**14.     This Agreement and all matters arising out of or relating to it shall be governed by and construed in accordance with the laws of the State of New York without reference to any conflicts of law provisions that would require or permit the application of the laws of any other jurisdiction.  Each Party consents to service of process by certified mail at its address listed on Schedule I.  Each Party irrevocably and unconditionally (a) WAIVES ITS RIGHT TO TRIAL BY JURY and (b) consents to the exclusive jurisdiction of the federal and state courts located in the State of New York, Borough of Manhattan, in any action to enforce, interpret or construe any provision of this Agreement.**

15.     Seller agrees to execute and deliver (or cause to be executed and delivered) all such instruments and documents, and take all such action as Buyer may reasonably request, including cooperation with any litigation regarding the Seller Transaction and/or the Claim, at Buyer's cost and expense, in order to effectuate the intent and purpose of, and to carry out the terms of, this Agreement.

16.     Each Party agrees to maintain the confidentiality of this Agreement except to the extent (a) required or advisable to enforce or preserve such Party's rights hereunder or (b) required or requested pursuant to applicable law, regulation, or by the order of any court or governmental authority of competent jurisdiction; provided that either Party may disclose this Agreement and the transactions contemplated hereby to their legal counsel and other professionals and representatives, provided that such parties shall be obligated to maintain the confidentiality provisions contained herein, and provided further for the avoidance of doubt that Buyer may disclose the Assignment~~this Agreement (but not the purchase rate or the purchase price) to potential purchasers, transferees, assignees or participants ("Transferees") provided that such Transferees have agreed to be bound by confidentiality provisions no less restrictive than contained herein.~~

17.     This Agreement may be executed in multiple counterparts and all of such counterparts when taken together shall be deemed to constitute one and the same instrument.  Delivery of an executed counterpart by facsimile or PDF transmission shall be as effective as delivery of a manually executed counterpart.  No amendment of any provision of this Agreement shall be effective unless it is in writing and signed by the Parties and no waiver of any provision of this Agreement, nor consent to any departure by either Party from it, shall be effective unless it is in writing and signed by the affected Party, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

18.     The Parties have participated jointly in the negotiation and drafting of this Agreement and, in the event of ambiguity or question of intent or interpretation arises, this Agreement shall be construed as jointly drafted by the Parties and no presumption or burden of proof shall arise favoring or disfavoring either Party by virtue of the authorship of any provision of this Agreement.  This Agreement constitutes the complete agreement of the Parties with respect to the subject matters referred to herein and supersedes all prior or contemporaneous negotiations, agreements or representations of every nature whatsoever with respect thereto, all of which have become merged and finally integrated herein.

19.     If any provision of this Agreement or any other agreement or document delivered in connection with this Agreement, if any, is partially or completely invalid or unenforceable in any

CONFIDENTIAL                                                                    WBA-0001623

jurisdiction, then that provision shall be ineffective in that jurisdiction to the extent of its invalidity or unenforceability, but the invalidity or unenforceability of that provision shall not affect the validity or enforceability of any other provision of this Agreement, all of which shall be construed and enforced as if that invalid or unenforceable provision were omitted, nor shall the invalidity or unenforceability of that provision in one jurisdiction affect its validity or enforceability in any other jurisdiction.

20.     No failure on the part of either Party to exercise, and no delay in exercising, any right hereunder or under any related document shall operate as a waiver thereof by such Party, nor shall any single or partial exercise of any right hereunder or under any other related document preclude any other or further exercise thereof or the exercise of any other right.  The rights and remedies of each Party provided herein and in other related documents (a) are cumulative and are in addition to, and not exclusive of, any rights or remedies provided by law and (b) are not conditional or contingent on any attempt by such Party to exercise any of its rights under any other related documents against the other Party or any other entity.

21.     Seller hereby acknowledges and consents to all terms set forth in this Agreement and agrees not to litigate or otherwise pursue any of the Rights (including, without limitation, the amount of the Claim and, to the extent related thereto, the Proofs of Claim).

22.     All demands, notices, consents, and communications hereunder shall be in writing and shall be deemed to have been duly given when e-mailed with acknowledgment of receipt by recipient, hand-delivered or duly deposited in the mails, by certified or registered mail, postage prepaid-return-receipt requested, to the addresses set forth in Schedule I, or such other address as may be furnished hereafter by notice in writing.   Each payment to be made by either Party shall be made without set-off, counterclaim or deduction of any kind.  All payments made pursuant to this Agreement shall be made in the lawful currency of the United States by wire transfer of immediately available funds, in accordance with the wire instructions specified in Schedule I.

*[signature page follows]*

12/907718_2 12/908100_1                                                                                   9

CONFIDENTIAL                                                                                   WBA-0001624

    **IN WITNESS WHEREOF**, the undersigned have duly executed this Agreement by their duly authorized representatives as of the Agreement Date written above.

<div align="center">WHITEBOX ADVISORS</div>

BY:  WHITEBOX MULTI-STRATEGY PARTNERS, LP.

By:_____
Name:
Title:


COWEN SPECIAL INVESTMENTS LLC


By:_____
Name:
Title:


By:_____
Name:
Title:

12/907718  212/908100_1

CONFIDENTIAL

WBA-0001625

SCHEDULE I: NOTICE AND WIRE INSTRUCTIONS

Seller's Wire Instructions

Seller Notice Address:

Cowen Special Investments LLC
Attention: General Counsel
599 Lexington Avenue, 21st Floor
New York, NY 10022
**owen.littman@cowen.com**

with a copy to:

Scott Balber
Herbert Smith Freehills New York LLP
450 Lexington Avenue, 14th Floor
New York, NY 10017
**scott.balber@hsf.com**

Buyer Notice Address:

12/907718 212/908100_1

11

EXHIBIT A: ~~DECLARATION~~FORM OF ASSIGNMENT AGREEMENT

CONFIDENTIAL                                                                    WBA-0001627

EXHIBIT B: DUE DILIGENCE

12/907718_212/908100_1                                                        13

CONFIDENTIAL                                                   WBA-0001628