# EXHIBIT C

Case 15-01145   Doc 8405-3   Filed 09/19/18   Entered 09/19/18 16:27:04   Desc
Exhibit C - Assignment and Release Agreement   Page 2 of 16

Case 15-01145   Doc 8199-5   Filed 07/31/18   Entered 07/31/18 18:13:03   Desc
Exhibit 5   Page 16 of 168

DocuSign Envelope ID: 26353A3B-2545-4C10-8CC9-FE5DB62FE284

**FRE 408 CONFIDENTIAL COMMUNICATION**

**ASSIGNMENT AND RELEASE AGREEMENT**

| | |
|---|---|
| SELLER: | Cowen Special Investments LLC |
| Address: | 830 Third Avenue, 4th Floor, New York, NY 10022 |
| Attention: | Bradly D. Schwab |
| Phone: | 646-616-3081 |
| Email: | Bradly.schwab@cowen.com |
| | |
| BUYER: | Whitebox Advisors, LLC on behalf of certain funds in the amounts listed on Schedule II |
| Address: | 3033 Excelsior Blvd, Ste 300 Minneapolis, MN 55416 |
| Attention: | Scott Specken |
| Email: | sspecken@whiteboxadvisors.com |
| Phone: | 612-253-6061 |
| | |
| AGREEMENT DATE: | June 19, 2017 |
| | |
| DEBTOR: | Caesars Entertainment Operating Company, Inc., et. al. |
| | |
| PROCEEDINGS: | Case No. 15-01145 jointly administered (the "Chapter 11 Cases") and currently pending in the United States Bankruptcy Court for the Northern District of Illinois Eastern Division (the "Bankruptcy Court"). |
| | |
| PETITION DATE: | January 14, 2015 |
| | |
| CLAIM: | general unsecured claim asserted by Earl of Sandwich (Atlantic City) LLC (the "Claimholder") against the Debtor in a principal amount of not less than $3,600,000.00 |

WHEREAS, on April 18, 2015, the Claimholder filed with the Bankruptcy Court a proof of claim with respect to a lease termination, which was assigned claim number 5497 (the "Original Proof of Claim").

WHEREAS, on September 1, 2016, Claimholder filed an amended proof of claim which was assigned claim number 5858 and amended and superseded the Original Proof of Claim which was expunged pursuant to the Order Sustaining Debtors' Twentieth Omnibus Objection to Certain Proofs of Claim (Amended and Replaced Claims) (Non-Substantive) (the "Proof of Claim").

WHEREAS, on October 20, 2016, the Debtors filed their Third Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code (as amended or modified, the "Plan"), which was confirmed by the Bankruptcy Court pursuant to that certain order dated January 17, 2017.

Case 15-01145   Doc 8405-3   Filed 09/19/18   Entered 09/19/18 16:27:04   Desc
Exhibit C - Assignment and Release Agreement   Page 3 of 16

Case 15-01145   Doc 8199-5   Filed 07/31/18   Entered 07/31/18 18:13:03   Desc
Exhibit 5   Page 17 of 168

WHEREAS, on or about January 12, 2017, Seller sought to purchase the following from Claimholder (the "Seller Transaction"): (i) the Claim, together with any and all right to receive principal, interest, fees, damages, penalties and other amounts in respect of the Claim (in each case whether accruing prior to, on, or after the date of this Agreement), (ii) the Proof of Claim and any other proofs of claim filed (regardless of filing date) with respect to the Claim; (iii) any actions, claims, rights, lawsuits and/or causes of action against the Debtor arising out of or in connection with any of the foregoing; and (iv) all proceeds of any kind of the foregoing, including, without limitation, all cash, securities or other property distributed or payable on account thereof, or exchanged in return therefor for ((i)-(iv) collectively, the "Rights").

WHEREAS, Seller corresponded with Claimholder regarding the Rights and the Proceedings.

WHEREAS, the Claimholder has not executed any assignment agreement or other documentation or filed a notice of transfer with respect to the Proof of Claim.

WHEREAS, on May 17, 2017, Seller allowed Buyer's counsel to view copies of the Due Diligence (defined below); and

WHEREAS, upon the terms and subject to the conditions set forth in this Agreement, Seller desires to sell, transfer, assign, grant and convey to Buyer, and Buyer desires to purchase, acquire and receive, the Transferred Rights (as defined hereinafter).

NOW THEREFORE, Buyer and Seller (each a "Party" and collectively, the "Parties") agree as follows:

1.   Seller, for good and valuable consideration, does hereby irrevocably sell, convey, transfer and assign unto Buyer (a) any and all rights Seller may have to purchase the Rights directly from Claimholder and (b) any and all actions, claims, rights, remedies, lawsuits and/or causes of action Seller has against the Claimholder arising out of or in connection with the Seller Transaction (the "Transferred Rights"). This assignment shall be deemed an absolute and unconditional assignment of the Transferred Rights for the purpose of collection and satisfaction and shall not be deemed to create a security interest and shall be evidenced for purposes of any Bankruptcy Court filings by the attached notice of assignment attached hereto as Exhibit A (the "Notice").

2.   Seller's obligation to sell, transfer, assign, grant and convey the Transferred Rights to Buyer is subject to all of the following: (a) Buyer's representations and warranties being true and correct, (b) Buyer having complied with all covenants required by this Agreement to be complied with by it, (c) Buyer having received (i) copies of the Due Diligence and (ii) fully executed Notice, (d) Seller having received this Agreement fully executed by Buyer and (e) Seller having received the one dollar (the "Purchase Price") by wire transfer of immediately available funds in accordance with written wire instructions specified by Seller.

OHSUSA:766869828.5

CONFIDENTIAL                                                                                    WBA-0000146

Case 15-01145   Doc 8405-3   Filed 09/19/18   Entered 09/19/18 16:27:04   Desc
Exhibit C - Assignment and Release Agreement   Page 4 of 16

Case 15-01145   Doc 8199-5   Filed 07/31/18   Entered 07/31/18 18:13:03   Desc
Exhibit 5   Page 18 of 168

3. Seller represents, warrants and covenants to Buyer and Buyer's successors and assigns as of the date hereof (the "Effective Date") that:

(a) Seller is duly organized and validly existing under the laws of its jurisdiction of organization, is in good standing under such laws, and is authorized and empowered to execute, deliver and perform this Agreement, and this Agreement constitutes the valid, legal and binding agreement of Seller, enforceable against Seller in accordance with its terms;

(b) Except for filings that are expressly contemplated by this Agreement, no consent, approval, filing or corporate, partnership or other action is required as a condition to or in connection with execution, delivery and performance of this Agreement and the transactions contemplated herein;

(c) To the best of Seller's knowledge, the Claimholder has timely and properly filed the Proof of Claim and Buyer shall assume no obligations or liabilities in respect of the Rights, including but not limited to the obligation to file any proof of claim with respect to the Claim;

(d) To the best of Seller's knowledge, neither the execution, delivery or performance of this Agreement, nor consummation of the transactions contemplated hereby, will violate or contravene any law, rule, regulation, order or agreement affecting Seller;

(e) Seller is the sole legal and beneficial owner of, and has good title to, the Transferred Rights, free and clear of (i) any legal, regulatory or contractual restriction on transfer or (ii) any pledge, lien, claim, security interest, participation, factoring agreement or other encumbrance of any type or kind (collectively, the "Liens") and will transfer to Buyer such good title free and clear of Liens;

(f) To the best of Seller's knowledge, the Claim is a valid, liquidated, non-contingent, enforceable, "Class I" general unsecured claim against the Debtor;

(g) Seller has not previously sold, transferred, assigned, participated or otherwise conveyed the Transferred Rights, nor has Seller agreed to do any of the foregoing (whether in whole or in part);

(h) No payment or distribution has been received by or on behalf of Seller, in full or partial satisfaction of the Rights;

(i) To the best of Seller's knowledge, Seller has not engaged, and shall not engage, in any act, conduct or omission, or had any relationship with the Debtor or any of its affiliates that would result in Buyer receiving in respect of the Rights proportionately less in payments or distributions, or less favorable treatment (including the timing of payments or distributions) for the Rights than will be received on behalf of other general unsecured claims and administrative expense claims, as applicable;

(j) Seller is not an "insider" of the Debtor or its affiliates within the meaning of Section 101(31) of the Bankruptcy Code, and is not a member of any official or unofficial committee in the Proceedings;

OHSUSA:766869828.5

CONFIDENTIAL                                                                                    WBA-0000147

Case 15-01145   Doc 8405-3   Filed 09/19/18   Entered 09/19/18 16:27:04   Desc
Exhibit C - Assignment and Release Agreement   Page 5 of 16

Case 15-01145   Doc 8199-5   Filed 07/31/18   Entered 07/31/18 18:13:03   Desc
Exhibit 5   Page 19 of 168

(k) Seller has not received any written notice (except as otherwise publicly available in the Proceedings (if any)), that the Rights or any portion thereof is void, voidable, or unenforceable;

(l) Upon execution of this Agreement, Seller shall provide to Buyer true and complete copies of all written communications between Seller and Claimholder related to the Chapter 11 Cases, the Claim, the Proof of Claim, and any rights of Seller or Claimholder with respect to the Chapter 11 Cases, the Claim or the Proof of Claim (collectively, the "Due Diligence") (a watermarked copy of which is attached hereto as Exhibit B);

(m) Seller is not aware of any written communication which conflicts with Seller's assertion that it has the right to purchase the Claim;

(n) In addition to the Due Diligence, there were telephone and voicemail communications (the "Oral Communications") between Seller and the Claimholder. Seller is not aware of any Oral Communications that conflicts with Seller's assertion that it has the right to purchase the Claim.

(o) Seller is not "insolvent" within the meaning of Section 1-201(23) of the Uniform Commercial Code or Section 101(32) of the Bankruptcy Code, has adequate capital to conduct its business and has not filed a petition seeking protection under the Bankruptcy Code or similar statute; and

(p) either (i) no interest in the Transferred Rights is being sold by or on behalf of one or more Benefit Plans (as defined below) or (ii) the transaction exemption set forth in one or more prohibited transaction class exemption issued by the U.S. Department of Labor ("PTE"), such as PTE 84-14 (a class exemption for certain transactions determined by independent qualified professional asset managers), PTE 95-60 (a class exemption for certain transactions involving insurance company general accounts), PTE 90-1 (a class exemption for certain transactions involving insurance company pooled separate accounts), PTE 91-38 (a class exemption for certain transactions involving bank collective investment funds), and PTE 96-23 (a class exemption for certain transactions determined by in-house asset managers) is applicable with respect to the sale of the Transferred Rights. "Benefit Plan" means an "employee benefit plan" (as defined in ERISA) that is subject to Title I of the Employee Retirement Income Security Act of 1974, as amended, and the rules and regulations promulgated under it ("ERISA"), a "plan" as defined in Section 4975 of the Code or any Entity whose assets include (for purposes of ERISA Section 3(42) or otherwise for purposes of Title I of ERISA or Section 4975 of the Code) the assets of any such "employee benefit plan" or "plan".

4.   Buyer represents and warrants to Seller as of the Effective Date that:

(a) Buyer is duly organized and validly existing under the laws of its jurisdiction of organization, is in good standing under such laws, and is authorized and empowered to execute, deliver and perform this Agreement, and this Agreement constitutes the valid, legal and binding agreement of Buyer, enforceable against Buyer in accordance with its terms;

(b) except for filings that are expressly contemplated by this Agreement, no consent, approval, filing or corporate, partnership or other action is required as a condition to or in connection with execution, delivery and performance of this Agreement and the transactions contemplated herein;

OHSUSA:766869828.5

CONFIDENTIAL                                                                                           WBA-0000148

Case 15-01145   Doc 8405-3   Filed 09/19/18   Entered 09/19/18 16:27:04   Desc
Exhibit C - Assignment and Release Agreement   Page 6 of 16

Case 15-01145   Doc 8199-5   Filed 07/31/18   Entered 07/31/18 18:13:03   Desc
Exhibit 5   Page 20 of 168

(c) neither the execution, delivery or performance of this Agreement, nor consummation of the transactions contemplated hereby, will violate or contravene any law, rule, regulation, order or agreement affecting Buyer;

(d) Buyer has (i) reviewed the terms and provisions of this Agreement, and has evaluated the restrictions and obligations contained herein and therein; (ii) agreed to the Release based on its own independent investigation and credit determination; and (iii) not relied on any representation or warranty made by Seller, except as expressly set forth herein; and

(e) either (i) no interest in the Transferred Rights is being acquired by or on behalf of an entity that is, or at any time while the Transferred Rights are held thereby will be, one or more Benefit Plans or (ii) the transaction exemption set forth in one or more PTEs, such as PTE 84-14 (a class exemption for certain transactions determined by independent qualified professional asset managers), PTE 95-60 (a class exemption for certain transactions involving insurance company general accounts), PTE 90-1 (a class exemption for certain transactions involving insurance company pooled separate accounts), PTE 91-38 (a class exemption for certain transactions involving bank collective investment funds), and PTE 96-23 (a class exemption for certain transactions determined by in-house asset managers) is applicable with respect to the purchase and holding of the Transferred Rights and the exercise of Buyer's rights thereunder.

5.  Each Party represents and warrants that it is a sophisticated entity and has adequate information concerning the financial condition of Debtor and the Proceedings to make an informed decision regarding the purchase/sale of the Transferred Rights and that it has independently and without reliance on the other Party, and based on such information as it has deemed appropriate, made its own decision to enter into this Agreement, except that it has relied on the other Party's express representations, warranties, covenants, agreements and indemnities as contained herein. Each Party is aware that information which may be pertinent to the decision to transfer the Transferred Rights is available to it and can be obtained from the files of the Proceedings or other publicly available sources. Each Party is aware that the consideration received/paid herein for the purchase/sale of the Transferred Rights may differ both in kind and amount from any distributions made pursuant to any plan of reorganization confirmed in the Proceedings. Each Party acknowledges that the other may possess, and may come into possession of, material non-public information concerning the Transferred Rights, Debtor and/or the Proceedings ("Excluded Information"). Each Party further acknowledges that it has not requested to receive such Excluded Information from the other Party and has nevertheless determined to proceed with the transaction contemplated herein, and neither shall have any liability to the other Party, and each waives and releases any claims that it might have against the other, arising out of the non-disclosure of such Excluded Information; provided, however, that the Excluded Information shall not limit, contradict or render untrue any representation or warranty made by Seller or Buyer herein.

6.  Each Party acknowledges and agrees that the Purchase Price and the Release set forth in section 10 below are intended to represent "fair consideration" (as such term is used in Article 10 of the New York Debtor and Creditor Law, N.Y. Debt. & Cred. §§ 270 et seq.) and "reasonably equivalent value" (as such term is used in 11 U.S.C. § 548), or as analogously provided under similar statute or applicable law, for the transfer of such assets.

OHSUSA:766869828.5

CONFIDENTIAL                                                                                       WBA-0000149

Case 15-01145   Doc 8405-3   Filed 09/19/18   Entered 09/19/18 16:27:04   Desc
Exhibit C - Assignment and Release Agreement   Page 7 of 16

Case 15-01145   Doc 8199-5   Filed 07/31/18   Entered 07/31/18 18:13:03   Desc
Exhibit 5   Page 21 of 168

7. Seller agrees that in the event Seller actually receives any distributions with respect to the Rights after the date hereof, Seller shall accept the same and shall hold the same in trust for the sole benefit of Buyer and shall promptly deliver the same to Buyer in the same form received (free of any withholding, set-off, claims or deduction of any kind except as required by law) within five Business Days in the case of cash ("Cash Distribution"). If any such amounts are not received by the Buyer within five Business Days, then beginning on the next calendar day, the amount payable shall begin to accrue interest at a rate of LIBOR + 5% per annum, and within seven business days in the case of non-Cash Distributions, with the endorsement of Seller (without recourse, representation or warranty) when necessary or appropriate. In the event Seller receives any notices (not otherwise publicly available) in respect of the Rights, Seller shall promptly deliver the same to Buyer.

(a) As used herein:

"Business Day" means any day that is not a Saturday, a Sunday or any other day on which the Federal Reserve Bank of New York is closed.

"LIBOR" means, for any day, the one-month London Interbank Offered Rate for deposits in U.S. Dollars as set by the British Bankers Association ("BBA") and published by the BBA at approximately 11:00 a.m. London time on such day. For any day that is not a business day, LIBOR shall be the rate published by the BBA on the immediately preceding business day.

8. (a) Upon execution of this Agreement, Buyer shall have any and all rights the Seller may have to enforce the terms of the Seller Transaction as against the Claimholder including without limitation filing pleadings, motions or notices of transfer with respect to the transfer of the Rights;

(b) Seller agrees to cooperate with the Buyer to effectuate the intent and purpose of, and to carry out the terms of, this Agreement.

9. If for any reason, Seller (and not Buyer) is entitled to exercise any rights with respect to the Rights, then Seller agrees that with respect to any request, act, decision or vote to be made by Seller in respect of the Rights (each, an "Action"), Seller shall act in accordance with the written directions (if timely given) of Buyer. Seller may refuse to follow the instructions of Buyer only if such instructions violate any applicable law, regulation or direction of a regulatory or governmental authority.

10. Buyer hereby releases and forever discharges (the "Release") Seller and/or its respective direct and indirect affiliates, subsidiaries, partners of subsidiaries, its successors and assigns, (and each of such entities' or persons' officers, directors, employees, representatives, attorneys, and agents, collectively, the "Releasees") of and from any and all claims, liabilities, demands, losses, costs, damages, expenses, attorneys' fees and causes of action whatsoever, whether individual, class or derivative in nature, whether at law or in equity, whether based on federal, state or foreign law or right of action, foreseen or unforeseen, matured or unmatured, known or unknown, accrued or not accrued, which Buyer has or had against any Releasee, arising out of or relating to the Seller Transaction or the Claim occurring prior to the Effective Date (collectively,

OHSUSA:766869828.5

Case 15-01145    Doc 8405-3    Filed 09/19/18    Entered 09/19/18 16:27:04    Desc
Exhibit C - Assignment and Release Agreement    Page 8 of 16

Case 15-01145    Doc 8199-5    Filed 07/31/18    Entered 07/31/18 18:13:03    Desc
Exhibit 5    Page 22 of 168

the "Released Claims"), and covenants not to institute, maintain, finance or prosecute any action, claim, suit, proceeding or cause of action of any kind to enforce any of the Released Claims. Buyer expressly covenants and agrees that the Release and Waiver shall each be binding in all respects upon its respective successors, assigns and transferees and shall inure to the benefit of the successors and assigns of the Releasees.

11.  The Parties hereby represent and warrant to each other that: the delivery and performance of the Release and the Waiver have been duly authorized by all requisite corporate action and will not violate (a) any provision of applicable law, statute, rule or regulation or its organizational documents, (b) any order of any governmental authority or (c) any provision of any agreement to which the Party is a party or by which they are bound. The foregoing is subject to all of the following: (a) Seller's representations and warranties being true and correct on the Release Effective Date, (b) Seller having complied with all covenants required by this Agreement to be complied with by it on or before the Release Effective Date, and (c) Buyer having received this Agreement fully executed by Seller.

12.  Seller agrees to provide Buyer with the Due Diligence on the Effective Date. Other than the Due Diligence, Seller is not aware of any written communications between Seller and the Claimholder or their respective representatives, affiliates, counsel, advisors and employees related to the Chapter 11 Cases, the Claim, the Proof of Claim, and any rights of Seller or Claimholder with respect to the Chapter 11 Cases, the Claim or the Proof of Claim.

13.  Seller agrees to indemnify, defend, reimburse and hold Buyer and its affiliates and its and their officers, directors, partners, employees, agents and controlling persons harmless from and against any and all losses, claims, damages, judgments, costs, penalties, expenses and liabilities, including, without limitation, attorneys' fees and expenses, which are incurred by or threatened against, on account of or in any way resulting from or relating to Seller's breach of any of Seller's representations, warranties, covenants or agreements set forth herein. Buyer agrees to indemnify, defend, reimburse and hold Seller and its affiliates and its and their officers, directors, partners, employees, agents and controlling persons harmless from and against any and all losses, claims, damages, judgments, costs, penalties, expenses and liabilities, including, without limitation, attorneys' fees and expenses, which are incurred by or threatened against, on account of or in any way resulting from or relating to Buyer's breach of any of Buyer's representations, warranties, covenants or agreements set forth herein.

14.  This Agreement and all matters arising out of or relating to it shall be governed by and construed in accordance with the laws of the State of New York without reference to any conflicts of law provisions that would require or permit the application of the laws of any other jurisdiction. Each Party consents to service of process by certified mail at its address listed on Schedule I. Each Party irrevocably and unconditionally (a) WAIVES ITS RIGHT TO TRIAL BY JURY and (b) consents to the exclusive jurisdiction of the federal and state courts located in the State of New York, Borough of Manhattan, in any action to enforce, interpret or construe any provision of this Agreement.

15.  Seller agrees to execute and deliver (or cause to be executed and delivered) all such instruments and documents, and take all such action as Buyer may reasonably request, including cooperation with any litigation regarding the Seller Transaction and/or the Claim, at Buyer's cost

OHSUSA:766869828.5

CONFIDENTIAL    WBA-0000151

Case 15-01145   Doc 8405-3   Filed 09/19/18   Entered 09/19/18 16:27:04   Desc
Exhibit C - Assignment and Release Agreement    Page 9 of 16

Case 15-01145   Doc 8199-5   Filed 07/31/18   Entered 07/31/18 18:13:03   Desc
Exhibit 5    Page 23 of 168

and expense, in order to effectuate the intent and purpose of, and to carry out the terms of, this Agreement.

16. Each Party agrees to maintain the confidentiality of this Agreement except to the extent (a) required or advisable to enforce or preserve such Party's rights hereunder or (b) required or requested pursuant to applicable law, regulation, or by the order of any court or governmental authority of competent jurisdiction; provided that either Party may disclose this Agreement and the transactions contemplated hereby to their legal counsel and other professionals and representatives, provided that such parties shall be obligated to maintain the confidentiality provisions contained herein, and provided further that Buyer may disclose the Notice to the Bankruptcy Court or any other third parties selected by Buyer.

17. This Agreement may be executed in multiple counterparts and all of such counterparts when taken together shall be deemed to constitute one and the same instrument. Delivery of an executed counterpart by facsimile or PDF transmission shall be as effective as delivery of a manually executed counterpart. No amendment of any provision of this Agreement shall be effective unless it is in writing and signed by the Parties and no waiver of any provision of this Agreement, nor consent to any departure by either Party from it, shall be effective unless it is in writing and signed by the affected Party, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

18. The Parties have participated jointly in the negotiation and drafting of this Agreement and, in the event of ambiguity or question of intent or interpretation arises, this Agreement shall be construed as jointly drafted by the Parties and no presumption or burden of proof shall arise favoring or disfavoring either Party by virtue of the authorship of any provision of this Agreement. This Agreement constitutes the complete agreement of the Parties with respect to the subject matters referred to herein and supersedes all prior or contemporaneous negotiations, agreements or representations of every nature whatsoever with respect thereto, all of which have become merged and finally integrated herein.

19. If any provision of this Agreement or any other agreement or document delivered in connection with this Agreement, if any, is partially or completely invalid or unenforceable in any jurisdiction, then that provision shall be ineffective in that jurisdiction to the extent of its invalidity or unenforceability, but the invalidity or unenforceability of that provision shall not affect the validity or enforceability of any other provision of this Agreement, all of which shall be construed and enforced as if that invalid or unenforceable provision were omitted, nor shall the invalidity or unenforceability of that provision in one jurisdiction affect its validity or enforceability in any other jurisdiction.

20. No failure on the part of either Party to exercise, and no delay in exercising, any right hereunder or under any related document shall operate as a waiver thereof by such Party, nor shall any single or partial exercise of any right hereunder or under any other related document preclude any other or further exercise thereof or the exercise of any other right. The rights and remedies of each Party provided herein and in other related documents (a) are cumulative and are in addition to, and not exclusive of, any rights or remedies provided by law and (b) are not conditional or contingent on any attempt by such Party to exercise any of its rights under any other related documents against the other Party or any other entity.

OHSUSA:766869828.5

CONFIDENTIAL                                                                                          WBA-0000152

Case 15-01145   Doc 8405-3   Filed 09/19/18   Entered 09/19/18 16:27:04   Desc
Exhibit C - Assignment and Release Agreement   Page 10 of 16

Case 15-01145   Doc 8199-5   Filed 07/31/18   Entered 07/31/18 18:13:03   Desc
Exhibit 5   Page 24 of 168

21. Seller hereby acknowledges and consents to all terms set forth in this Agreement and agrees not to litigate or otherwise pursue any of the Rights (including, without limitation, the amount of the Claim and, to the extent related thereto, the Proofs of Claim).

22. All demands, notices, consents, and communications hereunder shall be in writing and shall be deemed to have been duly given when e-mailed with acknowledgment of receipt by recipient, hand-delivered or duly deposited in the mails, by certified or registered mail, postage prepaid-return-receipt requested, to the addresses set forth in Schedule I, or such other address as may be furnished hereafter by notice in writing. Each payment to be made by either Party shall be made without set-off, counterclaim or deduction of any kind. All payments made pursuant to this Agreement shall be made in the lawful currency of the United States by wire transfer of immediately available funds, in accordance with the wire instructions specified in Schedule I.

*[signature page follows]*

OHSUSA:766869828.5

CONFIDENTIAL

WBA-0000153

Case 15-01145   Doc 8405-3   Filed 09/19/18   Entered 09/19/18 16:27:04   Desc
Exhibit C - Assignment and Release Agreement   Page 11 of 16

Case 15-01145   Doc 8199-5   Filed 07/31/18   Entered 07/31/18 18:13:03   Desc
Exhibit 5   Page 25 of 168

**IN WITNESS WHEREOF**, the undersigned have duly executed this Agreement by their duly authorized representatives as of the Agreement Date written above.

WHITEBOX MULTI-STRATEGY PARTNERS, LP

By: _____
Name:
Title:

COWEN SPECIAL INVESTMENTS LLC

By: _____
Name: Bryon Syfries
Title: Authorized Signatory

WHITEBOX INSTITUTIONAL PARTNERS, L.P.

By: _____
Name: Owen Littman
Title: Authorized Signatory

By: _____
Name:
Title:

WHITEBOX ASYMMETRIC PARTNERS, L.P.

By: _____
Name:
Title:

OHSUSA:768869828.5

CONFIDENTIAL                                                                WBA-0000154

Case 15-01145　Doc 8405-3　Filed 09/19/18　Entered 09/19/18 16:27:04　Desc
Exhibit C - Assignment and Release Agreement　Page 12 of 16

Case 15-01145　Doc 8199-5　Filed 07/31/18　Entered 07/31/18 18:13:03　Desc
Exhibit 5　Page 26 of 168

DocuSign Envelope ID: 26353A3B-2545-4C10-8CC9-FE5DB62FE284

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement by their duly authorized representatives as of the Agreement Date written above.

WHITEBOX MULTI-STRATEGY PARTNERS, LP

6/16/2017 | 08:10 PDT

By: *[signature]*
Name: Mark Strefling
Title: CEO

COWEN SPECIAL INVESTMENTS LLC

By:
Name:
Title:

WHITEBOX INSTITUTIONAL PARTNERS, L.P.

6/16/2017 | 08:10 PDT

By:
Name:
Title:

By: *[signature]*
Name: Mark Strefling
Title: CEO

WHITEBOX ASYMMETRIC PARTNERS, L.P.

6/16/2017 | 08:10 PDT

By: *[signature]*
Name: Mark Strefling
Title: CEO

OHSUSA:766869828.5

Case 15-01145   Doc 8405-3   Filed 09/19/18   Entered 09/19/18 16:27:04   Desc
Exhibit C - Assignment and Release Agreement   Page 13 of 16

Case 15-01145   Doc 8199-5   Filed 07/31/18   Entered 07/31/18 18:13:03   Desc
Exhibit 5   Page 27 of 168

SCHEDULE I: NOTICE AND WIRE INSTRUCTIONS

| Seller's Wire Instructions: | Buyer's Wire Instructions: |
|---|---|
| Seller Notice Details:<br>Cowen Special Investments LLC<br>Attention: General Counsel<br>599 Lexington Avenue, 21st Floor<br>New York, NY 10022<br>owen.littman@cowen.com<br><br>with a copy to:<br><br>Scott Balber<br>Herbert Smith Freehills New York LLP<br>450 Lexington Avenue, 14th Floor<br>New York, NY 10017<br>scott.balber@hsf.com | Buyer's Notice Details: |

OHSUSA:766869828.5

Case 15-01145   Doc 8405-3   Filed 09/19/18   Entered 09/19/18 16:27:04   Desc
Exhibit C - Assignment and Release Agreement   Page 14 of 16

Case 15-01145   Doc 8199-5   Filed 07/31/18   Entered 07/31/18 18:13:03   Desc
Exhibit 5   Page 28 of 168

SCHEDULE II:

| WHITEBOX FUND | AMOUNT |
|---|---|
| Whitebox Asymmetric Partners, L.P., | $1,368,000.00 |
| Whitebox Multi-Strategy Partners, L.P. | $2,088,000.00 |
| Whitebox Institutional Partners, L.P. | $144,000.00 |

OHSUSA:766869828.5

CONFIDENTIAL                                                                                           WBA-0000157

Case 15-01145    Doc 8405-3    Filed 09/19/18    Entered 09/19/18 16:27:04    Desc
Exhibit C - Assignment and Release Agreement    Page 15 of 16

Case 15-01145    Doc 8199-5    Filed 07/31/18    Entered 07/31/18 18:13:03    Desc
Exhibit 5    Page 29 of 168

EXHIBIT A

NOTICE OF ASSIGNMENT

On or about June __, 2017, Cowen Special Investments LLC ("Seller"), for good and valuable consideration, irrevocably sold, conveyed, transferred and assigned unto the Buyers, who are signatories to this notice, any and all rights Seller may have to purchase the general unsecured claim asserted by Earl of Sandwich (Atlantic City) LLC (the "Claimholder") against the Debtor in a principal amount of not less than $3,600,000.00.

WHITEBOX MULTI-STRATEGY             COWEN SPECIAL INVESTMENTS LLC
PARTNERS, LP

                                    By: _____
By: _____  Name: Bryan Seyfried
Name:                                Title: Authorized Signatory
Title:

WHITEBOX INSTITUTIONAL PARTNERS,
L.P.                                By: _____
                                    Name: Owen Littman
                                    Title: Authorized Signatory
By: _____
Name:
Title:

WHITEBOX ASYMMETRIC PARTNERS,
L.P.


By: _____
Name:
Title:

OHSUSA:766869828.5

CONFIDENTIAL                                                              WBA-0000158

Case 15-01145   Doc 8405-3   Filed 09/19/18   Entered 09/19/18 16:27:04   Desc
Exhibit C - Assignment and Release Agreement   Page 16 of 16

Case 15-01145   Doc 8199-5   Filed 07/31/18   Entered 07/31/18 18:13:03   Desc
Exhibit 5   Page 30 of 168

**EXHIBIT B: DUE DILIGENCE**

OHSUSA:766869828.5

CONFIDENTIAL

WBA-0000159