**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>CAESARS ENTERTAINMENT OPERATING COMPANY, INC., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 15-01145 (ABG)<br><br>Jointly Administered |

**EARL OF SANDWICH'S REPLY TO WHITEBOX'S
COUNTERSTATEMENT OF MATERIAL FACTS**

Pursuant to Local Rule 7056-1.C, Earl of Sandwich (Atlantic City), LLC ("Earl") replies as follows to the Counterstatement of Facts filed by Whitebox Advisors LLC ("Whitebox").[1]

1. On April 18, 2015, Earl of Sandwich (Atlantic City), LLC ("Earl") filed proof of bankruptcy claim no. 5497 (as amended, the "Claim") against Showboat Atlantic City Operating Company, LLC in this bankruptcy.

**Response:** Admitted.

2. The Claim is a general unsecured claim in the amount of $3,600,000 and is eligible for payment as a Class I claim under the Third Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code filed by the Debtors on October 20, 2016. (Dkt. No. 5325.)

**Response:** Earl admits Claim No. 5858, filed by Earl on September 1, 2016 in the amount of $3.6 million, and which amended and superseded Claim No. 5497 [ECF No. 6811, Schedule 1], is an allowed Class I claim, but denies that it is eligible for payment under the chapter 11 plan filed October 20, 2016; rather, the subject Claim is eligible for payment under the chapter 11 plan, filed January 13, 2017 [ECF No. 6318], that was confirmed January 17, 2018 [ECF No. 6334].

---

[1] Local Rule 7056-2.A permits a party opposing a summary judgment motion to submit, with its response to the movant's statement of material facts, "any additional facts that require denial of summary judgment." Whitebox's Counterstatement of Material Facts does not include "additional facts," but instead attempts to reframe facts included in Earl's Statement of Material Facts [ECF No. 8198] ("SMF"), virtually all of which Whitebox admitted.

3. Earl agreed to sell its Claim to Cowen Special Investments LLC ("Cowen") in January of 2017. Specifically, in a series of email and telephone communications occurring on January 11 and 12, 2017, Bradley Schwab, Managing Director at Cowen, and Thomas Avallone, Vice Chairman of Earl Enterprises, agreed to material terms of a claims trade whereby Earl committed to sell, convey and otherwise transfer the Claim to Cowen (the "Transaction") for $2.15 million. (Casey Decl., Ex. A, WBA-166-185.)

**Response:** Denied. Earl did not agree to sell its Claim to Cowen at any time, whether by the referenced e-mails, which speak for themselves, or telephone communications, which Mr. Schwab testified he did not recall the substance of (Schwab Tr. 31:5-18), nor did Earl agree to any material term for a potential bankruptcy claim trade of the Claim other than price.

4. On January 11, 2017 at 2:04 p.m. (ET), Mr. Avallone confirmed to Mr. Schwab via email that Earl was offering to sell the Claim at $2.15 million, or 59.72% of its allowed face value. (*Id..*, WBA-169.)

**Response:** Denied. Paragraph 4 is an attempt to summarize or paraphrase the referenced e-mail, which is quoted in SMF ¶10 and annexed as Exhibit 6 to the Chubak Decl.

5. On January 12, 2017 at 8:34 a.m., Mr. Schwab confirmed Cowen's acceptance of Earl's offer and advised Mr. Avallone that, if Earl was prepared to go forward with the trade, Cowen would prepare and send to Mr. Avallone a draft Assignment of Claim agreement. (*Id..* WBA-166-67.) Mr. Schwab also stated that Cowen's acceptance "is good through 11 am eastern time today, January 12th." (*Id..*, WBA-167.)

**Response:** Denied. Paragraph 5 is an attempt to summarize or paraphrase the referenced e-mail, which is at WBA-166 (not WBA-167) and was quoted in SMF ¶14.

6. At 9:47 a.m. that same day, Mr. Avallone replied "Please forward draft document," indicating his agreement to the trade and the additional negotiations necessary to document the transaction. (*Id.*.)

**Response:** Denied, except to admit that on January 12, 2017, at 9:47 a.m., Mr. Avallone e-mailed Mr. Schwab "Please forward draft document."

7. Following Mr. Avallone's agreement to move forward on the trade, Gail Rosenblum, a vice president at Cowen, sent Mr. Avallone a draft claims assignment agreement later that day. (*Id.*., WBA-175-185.)

**Response:** Admitted, except to deny that Mr. Avallone had "agree[d] to move forward on the trade."

8. Parties trading bankruptcy claims routinely negotiate binding and enforceable agreements over the telephone, through email communications, and even through instant messaging communications, prior to the preparation of any formal contract. (Declaration of Peter M. Lupoff ("Lupoff Decl."), Ex. A (Summary and Opinion of Peter M. Lupoff), at 1, 4.)

**Response:** Denied. Paragraph No. 8 is not supported by citation to admissible evidence, as required by Rule 56(c) and Local Rule 7056-2.

9. This practice is necessitated by the volatility in prices in the claims trading market. (*Id.*., at 4.) Because the secondary market price for a bankruptcy claim may rise or fall sharply on any given day, parties routinely ask each other to agree to the economics of the deal prior to either side preparing any document or performing any due diligence. (*Id.*., at 4-5.) Otherwise, a party may incur the expense of preparing a draft contract only to find that its counterparty has decided to abandon the deal based on a sudden increase or decrease in market prices. (*Id.*., at 4.)

**Response:** Denied. Paragraph No. 9 is not supported by citation to admissible evidence, as required by Rule 56(c) and Local Rule 7056-2.

10. On or about January 12, 2017, Cowen initiated discussions with Whitebox concerning a subsequent sale of the Claim. At 11:12 a.m. (ET) on that same day (hours after Mr. Schwab accepted Mr. Avallone's offer), Cowen sent an e-mail to Whitebox that confirmed the terms of Whitebox's acquisition of the Claim. (Casey Decl, Ex. B, CSI-485-486.)

**Response:** Admitted, except to deny that Mr. Schwab had accepted Mr. Avallone's offer.

11. On January 17, 2017, during the week following the above discussions, the Court confirmed the Plan [Dkt. No. 6339], and the prices of claims similar to the one at issue in this matter began to rise. From January 11, 2017 to January 18, 2017, the trading price of the Debtors' 10% Second-Priority Senior Secured Notes due December 15, 2018 increased from $76.25 to $77.94. (Declaration of Douglas Mintz [Dkt. No. 7120-2], Ex. C.)

**Response:** Admitted, except to deny that a $1.69 increase (2%) in the price of 10% Second Lien Notes over a one-week period constitutes a material rise in trading prices.

12. Over the next several weeks into late February of 2017, Cowen reached out to Mr. Avallone to ensure that Earl would honor its obligations to Cowen. However, Mr. Avallone remained silent and unresponsive to Cowen's requests to have the parties move quickly to close the Transaction. (Casey Decl., Ex. A, WBA-160-164).

**Response:** Denied. Paragraph 12 is an attempt to summarize or paraphrase the referenced e-mails, which speak for themselves.

13. Before February 28, 2017, Mr. Avallone never communicated to Cowen that a trade did not take place or that there was a misunderstanding between the parties. (*Id..*)

**Response:** Denied. *See* SMF ¶¶16, 35-36.

14. Having received no response from Earl, Cowen sent a letter to Mr. Avallone on February 22, 2017 seeking to enforce the terms of the trade agreed to by the parties. (*Id..*, WBA-165.)

**Response:** Denied. Paragraph 14 is an attempt to summarize or paraphrase the referenced letter, which speaks for itself.

15. On February 28, 2017, in response to this letter, Mr. Avallone communicated to Ms. Rosenblum that Earl's sale of the Claim always required approval "from the owner of the business." (*Id..*, WBA-160.) This response marked the first time that Mr. Avallone (or any other representative of Earl) wrote anything to the effect that approval of the Transaction was conditioned on or required approval from someone other than Mr. Avallone.

**Response:** Admitted, except to state that Avallone previously told Schwab and Rosenblum that any sale required Robert Earl's prior approval. (SMF ¶¶16, 35-36.)

16. On June 7, 2017, Triax Capital Advisors notified Whitebox that the Claim was now on sale for $3 million (or approximately 83 cents on the dollar) rather than $2.15 million, the price the parties had agreed to. (Casey Decl., Ex. A, WBA-188.)

**Response:** Admitted, except to deny that Earl had ever agreed with Whitebox to any terms for a potential sale of the Claim.

17. On July 10, 2017, Whitebox commenced this disputed action by filing a motion asking the Court to make a determination regarding Earl's obligation to proceed with the trade. (Dkt. No. 7120.)

**Response:** Denied. The subject motion sought entry of an order: (a) finding "Whitebox is the lawful owner of the Claim … by virtue of the Transaction between Earl and Cowen, and the subsequent execution of the Assignment and Release Agreement," with "Transaction" defined as follows: "On January 11-12, 2017, Bradley Schwab … and Thomas Avallone … agreed to material

5

terms of a claims trade whereby Earl committed to sell, convey and otherwise transfer the Claim to Cowen (the 'Transaction') for $2.15 million"; and (b) determining that "Pursuant to Federal Rule of Bankruptcy Procedure 3001(e), Whitebox is fully authorized and empowered to file a transfer notice and evidence of transfer with this Court with respect to the Claim" [ECF No. 7120-1].

18. At a hearing held on August 16, 2017, the Court ruled that Whitebox's motion was procedurally improper and that Whitebox must file a Rule 3001 Notice of Transfer before the Court would adjudicate the parties' respective rights. (Dkt. No. 7214.)

**Response:** Denied. The Order denying the motion [ECF No. 7214] stated it was denied for reasons reflected in the hearing transcript [ECF No. 7232], and those documents speak for themselves.

19. Whitebox filed a Notice of Transfer for the Claim on October 5, 2017. (Dkt. No. 7471.)

**Response:** Admitted.

Dated: October 8, 2018

Respectfully submitted,

/s/ Jeffrey Chubak
Joseph D. Frank (No. 6216085)
FRANKGECKER LLP
325 North LaSalle Street, Suite 625
Chicago, Illinois 60654
Tel: (312) 276-1400
Fax: (312) 276-0035
jfrank@fgllp.com

- and -

Jeffrey Chubak (admitted pro hac vice)
STORCH AMINI PC
140 East 45th Street, 25th Floor
New York, New York 10017
Tel: (212) 497-8247
Fax: (212) 490-4208
jchubak@storchamini.com

Counsel to Earl of Sandwich (Atlantic City), LLC